RICHARD ARJUN KAUL, MD
440c SOMERSET DRIVE
PEARL RIVER, NY 10965
862 881 9703
drrichardkaul@gmail.com

**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| RICHARD ARJUN KAUL, MD<br><br>Plaintiff,<br><br>v.<br><br>BOSTON PARTNERS, INC; STATE STREET CORPORATION; CHRISTOPHER J. CHRISTIE, ESQ (in his ex-official and individual capacity); JAY HOWARD SOLOMON, ESQ (in his individual capacity); THE NEW JERSEY BOARD OF MEDICAL EXAMINERS; STEVEN LOMAZOW, MD; ANDREW KAUFMAN, MD (in his individual and official capacity); PETER STAATS, MD; GREGORY PRZYBYLSKI, MD (in his individual and official capacity); ALLSTATE INSURANCE COMPANY; GEICO; GEICO INDEMNITY; GEICO GENERAL INSURANCE COMPANY AND GEICO CASUALTY; ROBERT HEARY, MD; MARC COHEN, MD; NORTH JERSEY MEDIA GROUP, INC (AKA 'FOURTH EDITION"); LINDY WASHBURN; HACKENSACK UNIVERSITY MEDICAL CENTER; ROBERT GARRETT; ATLANTIC HEALTH SYSTEM; CONGRESS OF NEUROLOGICAL SURGEONS; AMERICAN SOCIETY OF INTERVENTIONAL PAIN PHYSICIANS; | **COMPLAINT** |

| DOREEN HAFNER, ESQ; TD BANK, NA; DANIEL STOLZ, ESQ; JOHN DIIORIO, ESQ; RICHARD CRIST; ERIC KANEFSKY, ESQ; | |

# __Contents__

Kaul respectfully asserts that the organization of the Complaint/Exhibits will clarify to the Court and Parties that the claims are either proved, or will be readily proved with limited discovery.

1. **The Kaul Cases** - Page 7.


2. **Summary Judgment** - Page 8.


3. **Excerpts of Complaint + Exhibits** - Page 9.


4. **Parties** - Page 20.


5. **Jurisdiction + Venue** - Page 27.


6. **Preliminary Statement** - Page 28.
    a. Case Themes - Page 29.
    b. Public Interest Issues - Page 29.
    c. Referenced Sources - Books/Articles - Page 29.
    d. Defendants Tactics of Obstruction of Justice + Kaul's prosecution of K11-2 - Page 30.
    e. Request for judicial disclosure of financial holdings/conflicts of interest - Page 31.


7. **Evidence** - Page 32.


8. **Statement of Fact** - Page 34.

a. Kaul, a recognized pioneer in minimally invasive spine surgery,  revolutionized the specialty when in 2005 he performed the first outpatient minimally invasive lumbar fusion.


b. Defendant Allstate and GEICO have corrupted the New Jersey Superior Court, Union County into using the IFPA (N.J.S.A. 17:33A-1 et seq.) to violate the Constitutional due process rights of members of the medical community.


c. Defendants Solomon, Przybylski and Kaufman collectively committed two hundred and seventy-eight (278) separate instances of perjury, misrepresentation, evidential omission and gross mischaracterization in the

proceeding in the New Jersey Office of Administrative Law (April 9, 2013 – June 28, 2013) + The Defendants committed bribery in quid pro quo schemes with Defendant Christie, in order to have Kaul's medical license revoked.

d.  Kaul has consistently been denied substantive justice in administrative, state and federal courts in New Jersey.

e.  Kaul's medical license was revoked because of Political Corruption at the New Jersey Board of Medical Examiners and because the Mechanism of Physician Regulation in New Jersey is illegally Configured.

f.  Kaul's pioneering work in the field of minimally invasive spine surgery caused professional jealousy amongst his business and professional competitors.

g.  The Defendants conspired to eliminate Kaul from the practice of medicine by encouraging patients to file complaints with Defendant New Jersey Board of Medical Examiners.

h.  The Defendants conspired to engage in media censorship and suppress Kaul's First Amendment Right to Free Speech

i.  Kaul's medical license was revoked because of the massive fraud detailed in **'The Solomon Critique'**.

j.  Defendants Allstate + GEICO propagated knowing falsehoods that Kaul had committed insurance fraud + Defendant TD negligently failed to perform any due diligence before acting on Defendants Allstate and GEICO's patent falsehoods + Defendants Stolz/DiOrio conspired with Defendants Allstate/GEICO to commit fraud against Kaul/Creditors of the Bankruptcy Estate.

k.  Kaul is Qualified, Educated, Credentialed and Trained to perform Minimally Invasive Spine Surgery, contrary to the Defendants' false allegations. Kaul has performed eight hundred (800) cases with good to very good outcomes in 90-95% of cases.

l.  Kaul has sustained a new and independent injury consequent to the defendants' **"pattern of racketeering"**

8. **Overview of Plaintiff's Legal Claims**  - Page 64.

4

9. **Legal Claims** - Page 65.

a. COUNT ONE - RICO - Against Allstate/Boston Partners/State Street Partners.

b. COUNT TWO - RICO - Against Christie/Kaufman/Przybylski/Heary/Staats Lomazow/Hafner/Cohen/CNS/ASIPP.

c. COUNT THREE - RICO - Against Christie/GEICO/Allstate/TD/Stolz/DiIorio/Crist/Solomon/Hafner.

d. COUNT FOUR - RICO - Against Christie/HUMC/AHS/Garrett/Hafner/NJBME/Kanefsky.

e. COUNT FIVE - RICO - Against Christie/HUMC/Washburn/NJMG.

f. COUNT SIX - For Declaratory and Injunctive Relief Under Section 16 of the Clayton Act for Defendants' Violations of Sections 1 and 2 of the Sherman Act Against Defendants Kaufman/Staats/Przybylski/CNS/Heary/Cohen/HUMC/AHS.

g. COUNT EIGHT - For Conspiracy to Monopolize under State Law Against Defendants Przybylski/Kaufman/Staats/Lomazow/Cohen/Heary/HUMC/AHS).

h. COUNT NINE - For Conspiracy and Combination in Restraint of Trade Under State Law Against Defendants Przybylski/Kaufman/Solomon (in his official + personal capacity)/Staats/Cohen/Heary/HUMC/AHS/Allstate/Geico.

i. COUNT TEN - For Unfair and Deceptive Trade Practices Under State Law Against Defendants ASIPP/Kaufman/Staats/Przybylski/CNS/Heary/Cohen/HUMC/AHS.

j. COUNT ELEVEN - Unjust Enrichment Against ASIPP/Kaufman/Przybylski/CNS /Heary/Cohen/HUMC/AHS/Stolz/DiIorio.

k. COUNT TWELVE - Deprivation of Right Under Color of Law Against Defendants Christie (in his ex-official capacity)/Kaufman (in his official capacity)/Przybylski (in his official capacity)/Solomon (in his official capacity)/Hafner (in her official capacity) /Allstate/Geico/NJBME.

l. COUNT THIRTEEN - Commercial Disparagement Against Defendants ASIPP /Kaufman/Przybylski/Allstate/GEICO/Heary/Cohen/HUMC/AHS.

m. COUNT FOURTEEN - Intentional Interference With Prospective Economic Advantage Against Defendants ASIPP/Kaufman/Staats/Przybylski/CNS/Allstate /GEICO/Heary/Cohen/HUMC/AHS).

n. COUNT FIFTEEN  - Violation of Kaul's due process rights pursuant to the Excessive Fines Clause of the Eight Amendment and due process Clause of the Fourteenth Amendment Against Defendant NJBME.

o. COUNT SIXTEEN - Aid in the Commission of Tort Against all Defendants.

10. **Demand for Judgment** - Page 284.

11. **Demand for Jury** - Page 285.

12. **Demand for Insurance + Demand for Referral of Defendants to the Criminal Division of the US Department of Justice** - Page 285.

# <u>The Kaul Cases</u>

K1 - Kaul v Christie: 16-CV-02364

K2 - Kaul v Christie: 18-CV-08086

K3 - Kaul v Schumer: 19-CV-13477

K4 - Kaul v Stolz: 18-CV-01489

K5 - Kaul v Federation: 19-CV-3050

K6 - Kaul v Kaufman: State Criminal Indictment

K7 - Kaul v Federation: 20-CV-01612

K11-1 - Kaul v Federation: 21-CV-00057

K11-2 - Kaul v Boston Partners: Docket Number Pending

K11-3 - Kaul v Allstate: Docket Number Pending

P1 - Kaul/Patel v Crist: 19-CV-08946

P2 - Kaul/Patel v Allstate: 19-CV-09232

# <u>Summary Judgment</u>

Kaul asserts that there exists evidence conclusive of the claims in **<u>The Kaul Cases</u>** of which there is no dispute from the majority of the Defendants. Kaul respectfully asserts that with a limited amount of discovery, Kaul will procure evidence to prove his claims in their entirety against all Defendants.

To use an analogy rooted in ancient Egypt, Kaul respectfully asserts that K11-2 constitutes the final stone block of the Great Pyramid of Khufu. The initial architectural design of this legal pyramid commenced on April 2, 2012 and construction commenced on February 22, 2016, with the filing of K1. Completion of the legal edifice of K11-2 need no more time than the remainder of 2021 would provide.

Kaul respectfully asserts that with the Court's permission, motions for summary judgment will be filed shortly after docketing, in order that they be part of the discussions regarding a Joint Discovery Plan. Kaul asserts that this sequence of events is consistent with the first rule of the Federal Rules of Civil Procedure, i.e. that a **"just, speedy, and inexpensive determination …"**

# Excerpts of Complaint + Exhibits

Political Corruption:

**"Kaul's medical license was revoked because of Political Corruption at the New Jersey Board of Medical Examiners and because the Mechanism of Physician Regulation in New Jersey is illegally Configured"** - Complaint.

**"The proceedings to revoke Kaul's license were conducted criminally and the resultant revocation was illegal. Kaul was subjected to political corruption and judgments that were summary in nature, that deprived him of his livelihood and his ability to support his family."** - Complaint.

**"The facts and circumstances surrounding the said proceeding evidence a pattern of fraud, political corruption and professional jealousy, elements of which are described in an affidavit (copy enclosed) filed on August 9, 2017 in a lawsuit pending in the United States District Court, District of New Jersey. Gregory Przybylski's pattern of fraud was notably exposed when he was publicly disciplined on April 21, 2017 by the American Association of Neurological Surgery, for having repeatedly committed perjury in his capacity as an 'expert' witness. A copy of this disciplinary notice is included in a letter I filed on May 21, 2018 in the said lawsuit (copy enclosed)."** - KAUL:0116.

**"The Jews:**
**Towards the ostensible fall of the British Empire, the global underline insurance industry, still orchestrated by and through Lloyd's of London, continued its inexorable and genocidal expansion by conspiring/colluding and furthering in an ongoing "pattern of racketeering" that commenced with the slaving industry. The RICO predicate acts of murder, extortion, conspiracy and human trafficking were perpetrated by the Nazi War Machine, on millions of Jews, Russians, Poles and people with physical and psychological handicaps, through multiple association-in-fact enterprises that included Nazi courts, Nazi Judges, The Nazi Justice Ministry, The Nazi Medical Boards/Medical Profession, Nazi Politicians, Nazi Prosecutors/Lawyers, German Industry and the insurance industry. Multiple RICO schemes were perpetrated through, by and with the political, medical, legal and business elements of the Nazi's genocidal machine, in collusion/conspiracy with the insurance industry. The purpose of the Nazi-Insurance Association-In-Fact Enterprise was to further the political/economic agendas of**

the scheme's orchestrators/perpetrators/aiders/abettors/abstentors of willful ignorance." - KAUL:0331.

"The insurance industry, having developed its model of using the ostensibly legitimate cover of legal/judicial/political authority with the slaving industry, simply employed the same tactics/strategy on those enslaved/imprisoned/murdered in the years from 1939 to 1945. The <u>insurance industry</u> continued its "pattern of continuity" of murder/exploitation/false imprisonment/abuse of legal process/political corruption/judicial corruption/bribery/extortion/kickbacks/racial profiling and discinimation against the mentally/physically infirm." - KAUL:0331.

Judicial Corruption:

"This case is one of <u>The Kaul Cases</u>, a series of expanding legal interventions that officially commenced on February 22, 2016, but that took root in the UK on February 2, 1999. It represents the work of many Americans who are seeking to have eradicated the cancer of corporate/political/judicial corruption that is killing them and their families. This case exposes the immense damage that this corruption has caused to America, to Americans and America's reputation in the world. It has exposed the lawlessness that exists in state medical boards, state courts, certain federal courts and the government." - Complaint.

"This case is about the most pernicious variant of corruption, that of judicial corruption, a crime that corrodes the fabric of democratic society, and threatens the good order of civilization and society (Exhibit 1). Judicial corruption is a crime the Defendants have been committing since at least 1999. At the core of this case is a coterie of white collar crooks who continue to launder the proceeds of their crimes through the legal/judicial machinery of the United States District Court for the District of New Jersey ("DNJ-N"). The Defendants have conspired and continue to conspire to both launder these proceeds and provide ostensibly legitimate 'legal cover' for a series of massive crimes they have committed through administrative/medical board/state/bankruptcy/federal/appellate courts within the physical and legal boundaries of New Jersey. These crimes, ones committed under color of law and perpetrated with/through the politico-legal machinations of state commenced in 2006 and are ongoing and include:" - Complaint.

**"JUDICIAL CORRUPTION FUELS IMPUNITY, CORRODES RULE OF LAW, SAYS NEW TRANSPARENCY INTERNATIONAL REPORT"** - KAUL:0269.

**"Bribery, the other dark thread of judicial corruption, can occur throughout the fabric of the judicial process. As 32 country reports in the Global Corruption Report demonstrate, judges may accept bribes to delay or accelerate cases, accept or deny appeals, influence other judges or simply to decide a case in a certain way"** - KAUL:0272.

*"Corruption in the judiciary is a central focus of the global anti-corruption effort because of the powerful and corrosive influence a corrupt judiciary can exert on the rule of law and on society as a whole. Success in attacking judicial corruption will boost citizens' trust and national efforts to achieve transparency and accountability,"* **said Cobus de Swardt, TI's Acting Managing Director."** - KAUL:0274.

**"Recent surveys and events indicate that judicial corruption could be a significant problem in the United States. This Note builds an economic model of bribery to better understand the incentives behind this pernicious phenomenon"** - KAUL:0281.

**"Transparency International's Global Corruption Report 2007  brings together scholars, legal professionals and civil society activists from around the world to examine how, why and where corruption mars judicial processes, and to reflect on remedies for corruption-tainted systems. It focuses on judges and courts, situating them within the broader justice system and exploring the impact of judicial corruption on human rights, economic development and governance."** - KAUL:0431.

**"Two problems are analysed: political interference to pressure judges for rulings in favour of political or economic interests, including in corruption cases; and petty bribery involving court personnel. The result is a thorough analysis of how judicial independence and judicial accountability, two concepts key to the promotion of judicial integrity, can be bolstered to tackle corruption in judicial systems."**  - KAUL:0431.

**"Table 2: Percentage of respondents who described their judiciary/legal system as corrupt ( i.e.  gave it a score of 4 or 5, when 1=not all corrupt and 5= extremely corrupt)."** - KAUL:0432. Out of sixty-two (62) countries surveyed, the most corrupt was Paraguay, the least corrupt was Denmark while the United States was ranked as the thirtieth (30th) most corrupt, just above Greece and just below Serbia.

**"Special Courts subjected Jews of all nationalities, Poles, Ukranians, Russians, and other nationals of the occupied Eastern territories, indiscriminately classed as "Gypsies", to discriminatory and special penal laws and trials, and denied them all semblance of judicial process … turned over to the Gestapo for final detention …"** - KAUL:0382.

Corporate Corruption:

**"Defendants Allstate/Boston Partners/State Street Corporation in forming an Association-In-Fact Enterprise ("ABS Enterprise"), with the intent and purpose of conducting a "pattern of racketeering" to advance a knowingly illegal scheme of grand corruption, through the commission of the predicate acts mail fraud/wire fraud/judicial corruption/public corruption/bribery/kickbacks, purposed for executive/corporate profit, did intentionally cause an immense injury to Kaul."** - Complaint.

**"This fact is included as it provides further context to the corporate corruption/profiteering of medicine, of which Defendant Allstate/Boston Partners/State Street Corporation stand accused."** - Complaint.

**"The increase in fentanyl laced heroin is the direct and proximate cause of increased rates of overdose deaths, for which the Defendants are liable. The Defendants corporate greed/corruption is killing innocent Americans, whom Defendant NJBME professes to "protect". A lie on par with that perpetuated by murderous slave plantation owners that Africans were ⅗ of a human, and more recently with that disseminated by the Nazis that Germany's economic woes in the 1930s were due to the Jews. American state medical boards are nothing more than cogs in the genocidal corporate machine, steered by Defendants Allstate/Geico."** - Complaint.

**"DEADLY SPIN - AN INSURANCE COMPANY INSIDER SPEAKS OUT ON HOW CORPORATE PR IS KILLING HEALTH CARE AND DECEIVING AMERICANS - Wendell Potter - Bloomsbury Press."** - KAUL:0125.

**"None of the corporate defendants disclosed the information to the shareholders or the New York Stock Exchange (NYSE), in violation of SEC regulations and the law. The lack of disclosure caused an illegal rise in their share prices, and deprived their market competitors of their right to honest competition and constitutes Honest Services Fraud, a crime defined in 18 U.S.C. §**

1346 (the federal mail and wire fraud statute). On November 22, 2018 Kaul brought the lawsuit to the attention of Allstate's top ten corporate shareholders, one of which communicated to Kaul that it has commenced an investigation. - KAUL:0134.

"In 2021, the tools of torture used by Defendants Allstate/Geico (insurance industry) are those of the courts/lawyers/prosecutors/loss of livelihood/incarceration/false convictions/false imprisonment/media defamation/harassment of physicians families/children/a global public humiliation over the internet. No longer is it iron cuffs in crowded slave ships, suffocating trains destined for work camps or summary executions. The methods of extermination have become bureaucratized, sterile and conducted under 'color of state', with the apparent legitimacy of state medical boards, state/federal judges/courts/prosecutors and a corporate media only too willing to knowingly perpetuate the crimes of the insurance industry. False claims of insurance fraud, alleged over-prescribing of opiate medications, sting operations to entrap unsuspecting physicians in compromising sexual situations, are just some of the excuses/pre-texts used to exterminate physicians, in order to increase corporate/executive profit through reducing the number of so called "healthcare providers" and thus the total amount of health insurance premiums spent on healthcare. In essence, eliminate the physicians and the patients, and divert a greater percentage of the public's health insurance premiums to the executives/corporate coffers of Defendants Allstate/Geico." - KAUL:0327.

Public Corruption:

"The Defendants through their schemes, as detailed above, have engaged in the illegal practice of medicine through the corruption of state medical boards, the Federation of State Medical Boards and the political/legislative/judicial branches of state/federal government." - Complaint.

"The Defendants through their schemes, as detailed above, have engaged in the illegal practice of medicine through the corruption of state medical boards, the Federation of State Medical Boards and the political/legislative/judicial branches of state/federal government." - Complaint.

"The Chair of Integrity Initiatives International, Mark L. Wolf is a Senior United States District Judge and the former Chief Judge of the United States District Court for the District of Massachusetts. Prior to his appointment in 1985, among other things, Judge Wolf served as a Special Assistant to the Attorney General of the United States Watergate and as the Deputy United States Attorney for the

**District of Massachusetts. In 1984, he received the Attorney General's Distinguished Service Award for exceptional success in prosecuting public corruption in Massachusetts."** - KAUL:0111.

**"Kleptocracy is not just a domestic problem. The consequences of grand corruption are devastating"** - KAUL:0112.

<u>Obstruction of Justice:</u>

**"<u>Request for judicial disclosure of financial holdings/conflicts of interest</u>:**

**<u>The Kaul Cases</u> Defendants have, in a period from April 2, 2012 to the present engaged in massive schemes of judicial corruption and obstruction of justice, purposed to cover their crimes, as identified below. Thus, Kaul respectfully requests that the U.S.D.J. and U.S.M.J. assigned to the case do disclose to the court record their Forms AO10 for the last five (5) years and do certify that neither they nor any members of their family to the third degree have any conflicts of interest to any aspect of any of <u>The Kaul Cases</u>. This, Kaul respectfully asserts, will ensure justice is faithfully and properly served, in a case, the outcome of which will have life/death consequences of millions of Americans."** - Complaint.

**"The network was used to disseminate the aforementioned falsehoods to the minimally invasive spine surgery community, in order to dissuade them from pursuing their accounts receivable. This permitted Defendants Allstate and GEICO to improperly profit from a scheme polluted with bribes, fraud, kickbacks, obstruction of justice, perjury and a criminally fraudulent opinion rendered by Defendant Solomon."** - Complaint.

**"However, as you are aware, I will be moving in the New Jersey Supreme Court, to have made null + void every order entered on behalf of your client by Kenneth Grispin and Mark. P. Ciarrocca, based on a 'Fraud on the Court' ... Please also be informed that I intend on serving information subpoenas on Kenneth Grispin + Mark. P. Ciarrocca and requests for informal interviews on all members of the New Jersey State Government, regarding any and all communications pertaining to the subject matter of your case. I would advise you not to engage in any acts constituting Obstruction of Justice."** - KAUL:0108.

14

Fraud:

**"In devising and executing the illegal scheme, the CAD RICO Association-In-Fact Defendants devised and knowingly carried out a material scheme and/or artifice to defraud Kaul of the property rights of his reputation, medical license and healthcare business, by communicating to the public, Kaul's patients and his professional colleagues, that Kaul was not qualified to perform minimally invasive spine surgery and had committed insurance and bank fraud, materially false representations. For the purpose of executing the illegal scheme, the CAD RICO Association-In-Fact Defendants committed these racketeering acts, which number in the thousands, intentionally and knowingly with the specific intent to advance the illegal Scheme."** - Complaint.

**"In devising and executing the illegal scheme, the CAD RICO Association-In-Fact Defendants devised and knowingly carried out a material scheme and/or artifice to defraud Kaul of the property rights of his reputation, medical license and healthcare business, by communicating to the public, Kaul's patients and his professional colleagues, that Kaul was not qualified to perform minimally invasive spine surgery and had committed insurance and bank fraud, materially false representations. For the purpose of executing the illegal scheme, the CAD RICO Association-In-Fact Defendants committed these racketeering acts, which number in the thousands, intentionally and knowingly with the specific intent to advance the illegal Scheme."** - Complaint.

**"The case is based partly on the defendants having engaged in a prolonged "pattern of racketeering" that involved, amongst other things, evidence tampering + obstruction of justice +bribery + conspiracy + fraud + kickbacks. The criminal elements of the case have been referred to J.P. Coney, Chief, Fraud+ Public Corruption Unit, United States Department of Justice. The case has also been brought to the attention of the nine (9) justices of the United States Supreme Court. Defendants Allstate + TD + Geico have immense financial exposure, which they were obliged to report to their shareholders and the market. They have not, and this letter is to inform you of that fact."** - KAUL:0120.

Perjury:

**"Conspired to and did commit Perjury, Evidential Falsification, Evidential Fabrication, Evidential Omission during the administrative board proceedings (April 9, 2013 to December 13, 2013) that resulted in the revocation of Kaul's license + Conspired to did commit subornation of perjury in administrative board**

proceedings (April 9, 2013 to December 13, 2013) that resulted in the revocation of Kaul's license + Conspired to and did obstruct justice by encouraging Kaul's patients to commit perjury, with the promise that the revocation of his license would permit them to file malpractice claims, and that the revocation would increase the monies they received from Kaul's insurance carrier." - Complaint.

"Conspired to and did commit Perjury, Evidential Falsification, Evidential Fabrication, Evidential Omission during the administrative board proceedings (April 9, 2013 to December 13, 2013) that resulted in the revocation of Kaul's license + Conspired to did commit subornation of perjury in administrative board proceedings (April 9, 2013 to December 13, 2013) that resulted in the revocation of Kaul's license + Conspired to and did obstruct justice by encouraging Kaul's patients to commit perjury, with the promise that the revocation of his license would permit them to file malpractice claims, and that the revocation would increase the monies they received from Kaul's insurance carrier." - Complaint.

"Dear Mr. Cooney: I wish to file a formal complaint against New Jersey Administrative Law Judge, Jay Howard Solomon, Esq, and New Jersey physicians, Gregory Przybylski, MD and Andrew Kaufman, MD who collectively committed two hundred and seventy-eight (278) separate instances of perjury and evidential omissions, misrepresentations and gross mischaracterizations, in a period from April 9, 2013 to December 13, 2013. These offenses occurred during and after a proceeding in the New Jersey Office of Administrative law (OAL Docket No. BOS 08959-2012N) that resulted in the illegal revocation of my medical license. The revocation caused four (4) medium sized healthcare corporations to file for Chapter 11 bankruptcy on June 17, 2013 (13-23366-DHS) and caused immense harm to my family, my professional and personal standing and my patients. These damages were a direct consequence of crimes committed against me by the aforementioned individuals, the details of which are contained in a document entitled 'The Solomon Critique' (copy enclosed)." - KAUL:0116.

<u>Kickbacks:</u>

"Conspired to and did convert the United States Bankruptcy Court for the District of New Jersey, into a racketeering enterprise, in which were committed the predicate acts of bribery, mail fraud and wire fraud + Conspired to and did knowingly and willfully commit within the United States Bankruptcy Court for the District of New Jersey the felonies/offenses of: (i) Fraud on the Court; (ii) Breach of Fiduciary Duty; (iii) Willful Negligence; (iv) Estate Embezzlement; (v) Money Laundering; (vi) Kickbacks; (vi) Honest Services Fraud. <u>Location:</u>

**Christie/Republican political fundraisers + United States Bankruptcy Court for the District of New Jersey + Law offices of Wasserman + Jurista + Stolz, Basking Ridge, NJ + Law offices of Pringle + Quinn + Anzano, Belmar, NJ + Law offices of Rivkin Radler, Hackensack, NJ + Law offices of Shapiro Croland, Hackensack, NJ + Office of the New Jersey Attorney General."** - Complaint.

**"Defendants Allstate/Boston Partners/State Street Corporation in forming an Association-In-Fact Enterprise ("ABS Enterprise"), with the intent and purpose of conducting  a "pattern of racketeering" to advance a knowingly illegal scheme of grand corruption, through the commission of the predicate acts mail fraud/wire fraud/judicial corruption/public corruption/bribery/kickbacks, purposed for executive/corporate profit, did intentionally cause an immense injury to Kaul."** - Complaint.

<u>Racketeering:</u>

**"Kaul's work caused immense professional jealousy that caused the physician Defendants to engage in conduct that was unethical, unprofessional and illegal (K2-D.E. 2 Page ID 139). Their racketeering schemes commenced in approximately 2007/8, and incorporated multi-pronged strategies that involved encouraging patients to file lawsuits and medical board complaints against Kaul, threatening to withdraw business from spinal device representatives unless they stopped supplying Kaul, conspiring to prevent Kaul from obtaining hospital privileges, and issuing reports for insurance companies that denied Kaul reimbursement for procedure he performed."** - Complaint.

**"The Defendants calculated that the return on their bribes, would be more than compensated for by (i) the debt avoidance (Defendants Allstate + GEICO) that the revocation of Kaul's license would permit, and (ii) by the diversion to the Defendant Physicians and Hospitals of an increased percentage of the capital reservoir, for reimbursement for their professional services. Defendant Christie benefitted by receiving these racketeering profits into his political campaigns, and off-shore bank accounts and trusts located in tax havens."** - Complaint.

<u>Evidence Witness/Tampering:</u>

**"On January 29, 2015 Kaul filed a complaint with the US Attorney for the District of New Jersey that sought an investigation into the evidence tampering. Two weeks after Kaul had filed the complaint, he telephoned the office of the US Attorney to ascertain the status of the complaint and was told, "We are not an**

investigative agency". Kaul had initially approached the FBI but was referred to the US Attorney, Paul Fishman. The latter individual had worked under Defendant Christie, when he was the US Attorney for the District of New Jersey (**K2-D.E. 2-1 Page ID 244**)." - Complaint.

"**The Defendants tampered with evidence to fit their fraudulent narrative. The irrefutable evidence of this is contained within, 'The Solomon Critique' (<u>K1-D.E. 225 –PageID: 4940 to 5273</u>), which proves that Defendants Solomon, Przybylski and Kaufman collectively committed two hundred and seventy-eight (278) separate instances of perjury and evidential misrepresentation, omission and gross mischaracterization. Defendant Washburn discussed the issue of evidence tampering with Kaul on August 13, 2013, at the commencement of an interview that took place on the second floor of Kaul's Medicare Certified, AAAHC accredited surgical center in Pompton Lakes, NJ (<u>K2-D.E. 2 Page ID 224</u>).**" - Complaint.

Bribery:

"**Defendants Allstate/Boston Partners/State Street Corporation in forming an Association-In-Fact Enterprise ("ABS Enterprise"), with the intent and purpose of conducting  a "pattern of racketeering" to advance a knowingly illegal scheme of grand corruption, through the commission of the predicate acts mail fraud/wire fraud/judicial corruption/public corruption/bribery/kickbacks, purposed for executive/corporate profit, did intentionally cause an immense injury to Kaul.**" - Complaint.

"<u>**Defendant Christie + Defendant Heary**</u>:
<u>**Date range**</u>: **2008 to 2021**
<u>**Conduits of Communication + Bribery to Christie**</u>: **Public relations firms Mercury Public Relations + Princeton Public Relations.**
<u>**Mode of Communication**</u>: **Face to face.**
<u>**Substance of communication**</u>: **Schemes to revoke Kaul's license + destroy Kaul's reputation + destroy Kaul's economic standing + cause Kaul to be ostracized + cause Kaul to leave the United States.**
<u>**Tactics employed**</u>: **Use of the US mail and wires to organize and further schemes to bribe Defendant Christie, in order to have him order Defendant NJBME to revoke Kaul's license + Use of law and public relation firms to funnel bribes to Christie as part of quid pro quo schemes to revoke Kaul's license, destroy his reputation and cause him to leave the United States**" - Complaint.

"**Judge Mark Wolf: The greatest impediment is the inability of countries controlled by kleptocrats, people who abuse high office for private profit, to enforce the laws; their own people. Kleptocracy, or grand corruption, exists not because there is a lack of laws in kleptocratic countries, but because the existing laws are not enforced. One hundred and seventy-eight countries have signed the UN Convention Against Corruption (UNCAC), which obligates signatories to have laws prohibiting bribery, ext money laundering, and misappropriation of national resources. Signatories also have an obligation to enforce those laws, including against their highest officials, but highest officials will not permit the honest and effective investigation, prosecution, and punishment of their colleagues, friends, families, and indeed themselves kleptocrats control the police, the prosecutors, and the courts, they are able to stymie proper legal channels in their countries.**" - KAUL:0112.

Conspiracy:

"**Defendant Hafner knowingly cooperated with the other Defendants in a scheme that she understood was illegal, in both motive and means. Defendant Hafner played a central role in the drafting of Defendant Solomon's fraudulent opinion and knew that the document had been falsified. Defendant Hafner knew that she had a duty to report the crime to federal authorities, but willfully ignored that duty and did not report the crime to federal authorities. Defendant Hafner was a willing participant in the criminal conspiracy, and because of her cooperation is criminally liable.**" - Complaint.

"**The CHN RICO Association-In-Fact Defendants comprise a group of "persons" who influence public opinion, while engaging in political and commercial activities, that are contrary to independent news reporting. They and their co-conspirators engaged in a pattern of racketeering activity, which involved a revenue enhancing fraudulent conspiracy, that was part of a wider scheme to have Kaul's license revoked.**" - Complaint.

# **Parties**

Plaintiff Richard Arjun Kaul, MD (**"Kaul"**): 440c Somerset Drive, Pearl River, NY 10965. Application for medical license granted by the State of Pennsylvania on May 28, 2020. Medical license illegally suspended/revoked by Defendant New Jersey Board of Medical Examiners ("NJBME") on April 2, 2012/March 24, 2014.

Defendant Christopher J. Christie, Esq  (**"Christie"**): 47 Corey Lane, Mendham, NJ 07945. Ex-NJ Governor (2009 to 2017). Lost 2016 bid to President Trump for Republican nomination for Presidency of the United States. As NJ Governor abused power to 'weaponize' Defendant NJBME/state AG/state courts/federal AG/NJ federal court to eliminate (suspend/revoke medical licenses)/incarcerate physicians whose medical practices threatened/undermined the political/economic agendas of physicians/hospitals/insurance companies from whom he/his associates (law firms/political lobbyists/public relation firms) received bribes (disguised as 'legal fees', 'public relation fees' and or 'political lobbying fees'.). The entire mechanism (Defendant NJBME/State AG/NJ OAL) is controlled by the executive branch of state government, of which Defendant Christie exercised absolute power.

Defendant  Jay Howard Solomon, Esq, (**"Solomon"**) was a New Jersey Administrative Law Judge, who was employed by the State of New Jersey in the Office of  Administrative Law (OAL). The OAL, Defendant New Jersey Board of Medical Examiners (**"NJBME"**) and The New Jersey Office of the Attorney General are agencies under the  sole control of the Executive Branch of State Government.

Defendant  New Jersey Board of Medical Examiners (**"NJBME"**) is a state agency whose members are political appointees that serve at the pleasure of  the Governor. The New Jersey Office of the Attorney General simultaneously prosecutes  cases against physicians, while providing internal counsel to Defendant NJBME. The  New Jersey Attorney General is appointed by the Governor.

Defendant  Steven Lomazow, MD, (**"Lomazow"**) is a neurologist who was a senior member of Defendant NJBME from 2008 to 2014, who engages in healthcare business  with defendants,  Heary, Kaufman, Przybylski, Allstate and Geico.

Defendant Boston Partners (**"BP"**) is a hedge fund that is one of the top ten corporate shareholders in Defendant Allstate. The top ten hold approximately eight percent (80%) of stock. Defendant BP, as a knowing co-conspirator in the crimes of Defendant Allstate, did illegally and unjustly enrich itself/its clients at the expense of Kaul. It is a resident of Massachusetts.

Defendant State Street Corporation (**"SS"**) is a hedge fund that is one of the top ten corporate shareholders in Defendant Allstate. The top ten hold approximately eight percent (80%) of stock. Defendant SS, as a knowing co-conspirator in the crimes of Defendant Allstate, did illegally and unjustly enrich itself/its clients at the expense of Kaul. It is a resident of Massachusetts.

Defendant, Allstate Insurance Company (**"ALL"**) is a publicly traded corporation that sells insurance products. It maximizes corporate/executive/shareholder profit through schemes of political/judicial/legislative corruption that permit it to arbitrarily raise the public's insurance premiums, while reducing the percentage paid to healthcare providers. Defendant ALL, through its schemes of political/judicial/legislative corruption eliminates healthcare providers and debts owed to these individuals, through the filing of knowingly false administrative/civil/criminal complaints, in administrative/state/bankruptcy/federal courts whose judges they have bribed or otherwise corrupted.

Defendants,  Government Employees Insurance Co., Geico Indemnity, Geico General Insurance Company and Geico Casualty (**"GEICO"**) is a publicly traded corporation that sells insurance products. It maximizes corporate/executive/shareholder profit through schemes of political/judicial/legislative corruption that permit it to arbitrarily raise the public's insurance premiums, while reducing the percentage paid to healthcare providers. Defendant ALL, through its schemes of political/judicial/legislative corruption eliminates healthcare providers and debts owed to these individuals, through the filing of knowingly false administrative/civil/criminal complaints, in administrative/state/bankruptcy/federal courts whose judges they have bribed or otherwise corrupted.

Defendant, Atlantic Health System (**"AHS"**),  is a private  healthcare  company  whose headquarters are in  Morristown,  New  Jersey. It is  the  parent  company  for Morristown Memorial Hospital,  Overlook  Hospital,  Chilton  Memorial  Hospital  and Hackettstown Hospital. Its business covers Morris, Sussex and Passaic counties. Defendants, Cohen, Heary, Lomazow  and Kaufman  engage  in  healthcare  business with AHS. Defendant AHS bribed Defendant Christie to abuse his executive power to have Defendant NJBME suspend/revoke Kaul's license, because Kaul had developed

and was developing outpatient surgical centers, which posed an enormous economic threat to Defendant AHS. Defendant AHS operated businesses within five (5) miles of Kaul's surgical centers and had on staff, physicians (mostly neurosurgeons) who competed with Kaul in the minimally invasive spine surgery sector, physicians who conspired to have Kaul eliminated.

Defendant, Hackensack University Medical Center (**"HUMC"**),  is a  900-bed private hospital seven miles west of New York City. Defendant neurosurgeons, Peterson and Heary, engage in healthcare business with Defendant HUMC and competed with Kaul in the minimally invasive spine surgery sector.

Defendant,  Dr. Robert Heary (**"Heary"**) is the Director of the Neurological  Institute of the New Jersey Spine Center located  in Newark, New Jersey. The defendant is an attending at HUMC and Overlook Hospital in Summit, New Jersey, which is part  of  Defendant AHS. Defendant Heary competed with Kaul in the minimally invasive spine surgery sector.

Defendant, Dr. Gregory Przybylski (**"Przybylski"**) is the director of  neurosurgery at the New Jersey Neuroscience Institute at JFK Medical Center located in  Edison, Middlesex County, New Jersey. He was also the 2011 President of the North American Spine Society and is a member  of Defendant Congress of Neurological Surgeons ("CNS"). As an 'expert witness'' for Defendant NJBME, in the administrative hearing (April 9 to June 28, 2013) to revoke Kaul's NJ license, Defendant Przybylski committed perjury on at least thirty (30) occasions. On April 21, 2017, Defendant Przybylski was found guilty by the American Association of Neurological Surgeons for having lied in his capacity as an 'expert witness'.

Defendant, Dr. Peter Staats (**"Staats"**) was the 2015 President of Defendant American Society of Interventional Pain Physicians (**"ASIPP"**) and was the editor of Pain Medicine News. On Thursday 25, 2019, his corporation, the National Spine and Pain Centers paid $3.3 million to the US DOJ to settle Medicare Fraud Claims. The case was initiated by a physician assistant whistleblower. In May 2012 Defendant Staats rendered an opinion in an article in Pain Medicine News in which he referred to Kaul's performance of minimally invasive spine surgery as **"unethical"**. Defendant ASIPP, of which he was the 2015 President, has been training its members how to perform minimally invasive spine surgery since 2015.

Defendant, Dr. Marc Cohen (**"Cohen"**) is an orthopedic spine surgeon with a medical office at 221 Madison Avenue, Morristown, New Jersey 07960. He engages in  healthcare  business  with  defendant AHS and competed with Kaul in the

minimally invasive spine sector. Defendant Cohen had met with and bribed Defendant Christie, as part of a quid pro quo scheme to eliminate the threat of Kaul's rapidly expanding and innovative minimally invasive spine surgery practice.

Defendant, Dr. Andrew Gregory Kaufman, MD (**"Kaufman"**) is an individual with a business located at 90 Bergen Street #3400, Newark, New Jersey 07103. Defendant Kaufman was paid  by the State of New Jersey to provide testimony against Kaul. Defendant  Kaufman was a market competitor of the Plaintiff, and engaged  in healthcare business  with Defendants Heary, Przybylski and AHS. Defendant Kaufman committed perjury in the case/hearing (April 9 to June 28, 2013) that resulted in the illegal revocation of Kaul's NJ license. Defendant Kaufman verbally abused, publicly humiliated and provided willfully negligent care to a number of patients that had received care from Kaul. Many of these individuals sustained permanent neurological injuries consequent to Defendant Kaufman's gross negligence. Defendant Kaufman receives monies from Defendants Allstate/Geico to provide false testimony that has resulted in the wrongful incarceration of physicians to whom Defendants Allstate/Geico owe monies.

Defendant Lindy Washburn (**"Washburn"**) is an individual employed by Defendant North Jersey Media Group, Inc (**"NJMG"**) as a journalist. On August 13, 2013, Defendant Washburn knowingly violated Kaul''s legal rights by illegally recording an interview on the second floor of the building (111 Wanaque Avenue, Pompton Lakes, NJ) in which his surgical center was located.

Defendant North Jersey Media Group, Inc (**"NJMG"**) is a corporation located at 1 Garret Mountain Plaza, Woodland Park, New Jersey 07424. It publishes The Bergen Record and engages  in  business with Defendants  HUMC and AHS. On November 17, 2013 it used the US mail and wires to transmit a knowingly fraudulent legal instrument in furtherance of the below detailed violations of RICO.

Defendant Robert Garrett (**"Garrett"**) is the  president  of Defendant HUMC, and conspired with Defendant Christie to have funelled bribes from Defendant HUMC, it's physicians and other business associates into his political/personal accounts. In 2020, Defendant HUMC conspired with Defendant Christie, in his capacity as an unregistered lobbyist, to divert millions of dollars from the federal tax purse into Defendant HUMC's rapidly expanding healthcare related businesses, including a private medical school.

Defendant Congress of Neurological Surgeon (**"CNS"**) is a professional neurosurgical society/business located at 725 Fifteenth Street, NW, Suite 500,  Washington, D.C. 20005.  Defendants Heary  and Przybylski  are  members.  The business of

Defendant CNS is funnelling bribes from its members to state/federal politicians as part of multiple and ongoing quid pro quo schemes purposed to advance its economic/political agenda at the expense of good medicine and the health/welfare of the American public. The Defendants funnelled bribes through Defendant CNS to Defendant Christie in order to have him abuse the power of the governor's office to have Kaul's license illegally revoked.

Defendant American Society of Interventional Pain Physicians (**"ASIPP"**) is a professional medical society located at 2831 Lone Oak Road, Paducah, Kentucky, 42003. Defendant Staats was the 2015 President and Defendant Kaufman is a senior board member. Defendant ASIPP is a front for bribes funnelled from its members to state/federal politicians to advance their political/economic agendas at the expense of good medicine and the health/welfare of the American public. The Defendants funnelled bribes through Defendant ASIPP to Defendant Christie as part of a quid pro quo scheme to have him abuse his power to have Defendant NJBME illegally revoke Kaul's license (April 2, 2012 to March 24, 2014). Defendant ASIPP bribed Defendant Christie to have him, in 2017, appoint K5 Defendant, Scott Metzger, MD, to Defendant NJBME. Defendant NJBME, in collusion and conspiracy with others, obstructed Kaul's 2014/2019 applications to have his NJ license reinstated, unless he first paid $475,000 for an opportunity for only a hearing on the issue. Defendant ASIPP bribes state/federal politicians/lobbyists/lawyers to have its members appointed to state medical boards, not based on merit, but simply on corruption.

Defendant Doreen Hafner (**"Hafner"**) is a Deputy Attorney General in the Office of the New Jersey Attorney General. Defendant Hafner began illegally conspiring with Defendant Kaufman and others, in or around 2009, to have Kaul's license revoked. Defendant Hafner knew she was participating in a scheme of public corruption and caused subornation of perjury with six (6) of Kaul's patients, whom she had lie under oath (April 9 to June 28, 2013-NJ OAL Hearing), by falsely stating that their back/leg pain worsened after the care they received from Kaul. The evidence of the patients' clinical notes proved that these six (6) patients improved after the care, but Kaul's lawyer failed to include this evidence in his case (it would likely have made no difference as Defendant Solomon, the OAL Judge, had been corrupted by Defendants Allstate/Geico).

Defendant TD Bank (**"TD"**) is a Canadian bank that is publicly traded on the New York Stock Exchange.

Defendant Daniel Stolz, Esq (**"Stolz"**) is a New Jersey based attorney, who was counsel to the Chapter 7 trustee for Kaul's corporations and the real estate holding,

which contained his surgical center. Stolz  was bribed by Defendants Allstate/Geico with monies disguised as 'legal fees' as part of a  quid pro quo scheme conducted in conspiracy/collusion with K11-3 Defendant, John Sherwood (the bankruptcy judge) in the United States Bankruptcy Court for the District of New Jersey. In return for the bribes Defendant Stolz willfully failed to file claims against Defendants Allstate/Geico/Horizon Blue Cross-Blue Shield and other NJ based insurance carriers that owed approximately forty-five million ($45,000,000) to Kaul and his corporations, for clinical services (spine care) he had rendered to almost six thousand (6,000) patients from 2004 to 2012. In February 2020, Defendant Stolz, in collusion and conspiracy with Defendant Sherwood, abused the authority of the American federal court system to have Defendant Sherwood enter a knowingly illegal order attempting to obstruct Kaul's prosecution of the crimes of Defendant Stolz. In approximately July 2020, Defendant Stolz used the US mail and wires to transmit this knowingly fraudulent legal instrument into the United States District Court for the District of Columbia, in furtherance of the Defendants scheme to conceal their massive scheme of criminal racketeering (2006 to the present). Notably the judge in the DC court failed to publish to the court docket, Kaul's response that exposed the crimes of Defendants Stolz/Sherwood/Allstate/Geico et al, but instead threatened Kaul with sanctions for prosecuting Defendant Stolz. Those sanctions never materialized.

Defendant John DiIorio (**"DiIOrio"**) is a New Jersey based attorney, who represented the Plaintiff in his capacity as the Debtor in the Chapter 7 proceeding. Defendant DIORIO commenced representing Defendant GEICO in approximately late 2015, at which time he attempted to persuade Kaul to file for personal bankruptcy, which Kaul did not. Kaul plans to have reversed every judgement that was the product of the massive 'Fraud on the Court' committed by the Defendants in the period from at least 2012 to the present.

Defendant Richard Crist (**"Crist"**) was the CEO of Defendant Allstate New Jersey Insurance Company from approximately 2006 to 2017. Defendant Crist remains a major private shareholder in Defendant Allstate. Defendant Crist was an orchestrator, participator, co-conspirator, aider/abettor and facilitator of schemes of political/judicial corruption conducted through, and in collusion/conspiracy with members of the executive/legislative/judicial branches of state/federal government. The schemes converted these elements of government into **"racketeering enterprises"**, in which political lobbyists/lawyers/public relation persons aided and abetted the furtherance of racketeering schemes, purposed to illegally increase corporate/executive/shareholder profit at the expense of the health and welfare of the American public and physicians. The injuries caused by the crimes of Crist range from the destruction of reputation, career and property to the knowingly illegal deprivation of liberty.

Defendant Eric Kanefsky, Esq (**"Kanefsky"**) was the acting director of the New Jersey division of consumer affairs, having been appointed to the position by Defendant  Christie in May 2012, one month after Defendant Hafner filed her complaint to revoke  Kaul's medical license. On May 16, 2012, Defendant Kanefsky illegally, arbitrarily and in an unprecedented manner, suspended Kaul's CDS prescribing license, purposed to negate an interim consent agreement Kaul signed with Defendant NJBME on May 9, 2012, in which Kaul agreed pending the outcome of a full hearing to limit his clinical practice to interventional spinal procedures. Kaul moved in the state court for a TRO and in retaliation, Kanefsky submitted a knowingly fraudulent motion to Defendant NJBME to make null and void the interim consent agreement and suspend Kaul's license in its entirety, thus completely destroying his livelihood. That suspension occurred on June 13, 2012.

Defendants, JOHN ROE 1-50, and JOHN DOE 1-50 are as yet unidentified individuals who have assisted the named defendants in the commission of their crimes.

Defendants, ABC CORP. 1-50, AND/OR XYZ, P.C. 1-50 are as yet unidentified corporations that have assisted the named Defendants in the commission of their  crimes.

# Jurisdiction + Venue

U.S.C. § 1331 because Plaintiff's claims arise under federal law, and under 18 U.S.C. § 1964(c) because this action alleges violations of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1962. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1337 because this action alleges violations of an Act of Congress regulating commerce or protecting trade and commerce against restraints and monopolies. And 15 U.S.C. § 4 and § 16 confer subject matter jurisdiction on this Court over claims brought under the Sherman Act. This Court also has supplemental jurisdiction over the state law claims in this action pursuant to 28 U.S.C. § 1367. This Court also has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2)(A), (5), because Plaintiff is a citizen of a different state to certain Defendants, the aggregate amount in controversy exceeds seventy-thousand dollars.

Personal Jurisdiction: The Court has personal jurisdiction over each Defendant. Each Defendant has transacted business, maintained substantial contacts, and/or committed overt acts in furtherance of the illegal scheme and conspiracy throughout the United States, including in this district. The scheme and conspiracy have been directed at and have had the intended effect of causing injury to persons residing in, located in, or doing business throughout the United States including this District. This Court also has personal jurisdiction over all Defendants pursuant to Fed. R. Civ. P. 4(k)(1)(A) because they would be subject to the jurisdiction of a court of general jurisdiction in Massachusetts.

This district has jurisdiction over this case, as Kaul has sustained a **"new racketeering injury"** in being foreclosed from obtaining a license to practice and surgery in this district consequent to the illegal suspension/revocation (2012/2014) of his New Jersey license, itself one of the many permanent injuries caused to Kaul consequent to the Defendants' ongoing **"pattern of racketeering".**

In addition this district has authority/jurisdiction over this case, as the court/judges in the District of New Jersey are Defendants in K11-1 and K11-3, as well as having been reported to state/federal investigatory/prosecutorial authorities.

# **Preliminary Statement**

This case is about corruption of the American healthcare sector by publicly-traded for-profit corporations that has resulted in the deaths and disability of millions of innocent Americans. There are many medical/legal/political/business parallels between the crimes of these ruthless for-profit pharmaceutical/insurance corporations and those crimes committed against humanity by the Nazis. These are illustrated in **Exhibit 33** by reference to the indictments filed in the Nuremberg Trials.

The Defendants in this case include a corporate executive, a NJ state attorney general, a state medical board, three physicians, a private equity firm and an ex-state governor. It is a case that involves an interweaving of the worlds of medicine/business/law/politics, and a case that exposes an endemic and pervasive corruption in the American political/judicial/medical/business establishment. This case is one of **The Kaul Cases**, a series of expanding legal interventions that officially commenced on February 22, 2016, but that took root in the UK on February 2, 1999. It represents the work of many Americans who are seeking to have eradicated the cancer of corporate/political/judicial corruption that is killing them and their families. This case exposes the immense damage that this corruption has caused to America, to Americans and America's reputation in the world. It has exposed the lawlessness that exists in state medical boards, state courts, certain federal courts and the government.

Within the last two decades, four distinct plagues have descended on America, and they are:

1. COVID-19 pandemic.
2. Opiate epidemic.
3. Pain epidemic.
4. Physician suicides

These four (4) plagues have caused millions of avoidable deaths, for which the Defendants greed/corruption/abuse of power are responsible. This case seeks to lift the lid off the Defendants' cauldron of corruption, in order to provide the American public their right to examine the cause of the sickness of their society. To educate the people as to the truth of why so many Americans live in poverty, are homeless, are disease ridden and are deprived of basic human rights, rights enshrined in the Constitution, but rights that the Defendants and those like them, have stolen from the good people of America.

**Themes**

The four (4) themes of K11-2 are: 1. Political corruption: 2. Judicial corruption: 3.Corporate corruption: 4. Public corruption: 5. Medical corruption.

**Public Interest**

This case is of immense public interest as its subject matter pertains to the corruption of American healthcare by for-profit publicly traded corporations, whose ruthless profiteering is largely responsible for the following public health crises: 1. The opiate epidemic: 2. The COVID-19: 3. Pain epidemic: 4. Physician suicide epidemic: 5. The "War on Drugs" in relation to the diversion of public resources from prosecuting drug cartels to prosecuting physicians.

**Referenced Sources**

Relevant excerpts from the following books/articles are included within the **Exhibits**:

THE NUREMBERG MILITARY TRIBUNALS: Property of the U.S. Army - The Judge Advocate General's School Library -OFFICE OF MILITARY GOVERNMENT FOR GERMANY (US) NUREMBERG 1946.

EVIL GENIUSES - THE UNMAKING OF AMERICA: Kurt Anderson - Random House (2020).

THE FINEST JUDGES MONEY CAN BUY - AND OTHER FORMS OF JUDICIAL POLLUTION: Charles R. Ashman - Nash Publishing (1973)

DEADLY SPIN - AN INSURANCE COMPANY INSIDER SPEAKS OUT ON HOW CORPORATE PR IS KILLING HEALTH CARE AND DECEIVING AMERICANS: Wendell Potter -  Bloomsbury Press (2011).

NATION ON THE TAKE - HOW BIG MONEY CORRUPTS OUR DEMOCRACY AND WHAT WE CAN DO ABOUT IT: Wendell Potter/Nick Penniman -  Bloomsbury Press (2016).

DENY, DELAY, DEFEND - WHY INSURANCE COMPANIES DON'T PAY CLAIMS AND WHAT WE CAN DO ABOUT IT: Jay M. Feinman - Delden Press (2010).

CORRUPTION IN OUR COURTS - WHAT IT LOOKS LIKE AND WHERE IT IS HIDDEN: The Yale Law Journal, Volume 118, Issue 8, Article 6 - Stratos Pahis (2009). FORUM Q&A: JUDGE MARK WOLF ON KLEPTOCRACY AND THE INTERNATIONAL ANTI-CORRUPTION COURT - National Endowment for Democracy - Supporting Freedom Around The World (2017).

JUDICIAL CORRUPTION FUELS IMPUNITY, CORRODES RULE OF LAW, SAYS NEW TRANSPARENCY INTERNATIONAL REPORT - Transparency International (2007). OUT OF ORDER - ARROGANCE, CORRUPTION AND INCOMPETENCE ON THE BENCH: Max Boot - Basic Books (1998).

THE SECRET INSURANCE AGENT MEN: Mark Fritz - The Los Angeles Times (2000). INSURERS SWINDLED JEWS, NAZI FILES SHOW: Christopher S. Wren - The New York Times (1998).

FAMILY'S QUEST FOR TRUTH REVEALS TOP INSURER'S LINK TO SS DEATH CAMPS: Michael Freedland - The Guardian (2016).

**Defendants Tactics of Obstruction of Justice + Kaul's prosecution of K11-2**:

Kaul respectfully informs this Court that the Defendants, cognizant of their guilt and its consequences, will employ the following tactics, amongst others, to obstruct justice: **(i)** refuse to waive service of summons; **(ii)** attempt to have the court not issue a summons; **(iii)** attempt to interfere with the issuance of IFP status to Kaul; **(iv)** attempt to interfere with the NJ field office of the US Marshals in order to delay service; **(v)** fail to file an answer or otherwise plead upon service, whether it be from the US Marshals Service or other person; **(vi)** attempt to delay the commencement of discovery by obligating Kaul to file motions for default; **(vii)** move the Court to vacate the defaults; **(viii)** file motions that seek to have K11-2 transferred to the District of New Jersey (Camden/Trenton/Newark); **(ix)** file motions that seek to have this Court stay K11-2, in using the same patently false argument placed before Defendants/Judges Vazquez/Dickson, that the case is identical to K1; **(x)** file motions seeking to have this Court stay discovery in K11-2 until the U.S.C.A. has adjudicated Case No. 20-3522, a case whose legal posture has been willfully and knowingly manipulated by certain judges in the U.S.D.C.-DNJ and U.S.C.A.-Third Circuit, in order to paralyze Kaul's prosecution of K1. On January 8, 2021, the U.S.C.A.-Third Circuit received a request from Kaul for disclosure to the record of Forms AO10 and any conflicts of interest. This information, as of February 15, 2021, has not been produced.

The U.S.D.C.-DNJ is a  Defendant in K11-1 and the judges are Defendants in K11-3, as well as being the subject of Kaul's petition to state/federal investigatory/prosecutorial authorities. **The Kaul Cases** include Defendant/US Senator/Senate Majority Leader Schumer + Defendant/US Senator (D-NJ) Cory Booker + Defendant/NJ State Senate President Steven Sweeney. The Defendants decades-long schemes of public corruption have wrecked murderous havoc on the American public and if ever there was a case for an International Anti Corruption Court (IACC), that case is **The Kaul Cases**.

Kaul respectfully requests: **(i)** that upon filing of K11-2, this Court enter an order setting a conference date regarding the submission of a Joint Discovery Plan: **(ii)** that this Court be informed that the Defendants corruption of the American healthcare sector/state medical boards is directly responsible for the highest COVID-19 related mortality/morbidity rate in the western world, as is detailed in K7; **(iii)** that this Court be informed that the central purpose of **The Kaul Cases** is to effectuate a **"Reformation of American Medical Boards"** in order to compel the system of physician regulation, which is currently configured in violation of an entire body of antitrust law and the fifth (5th), eight (8th) and fourteenth (14th) amendments of the US Constitution, to become compliant with the law; **(iv)** that this Court have service effectuated by any field office of the U.S.M.S. other than that in the District of New Jersey.

**Request for judicial disclosure of financial holdings/conflicts of interest**:

**The Kaul Cases** Defendants have, in a period from April 2, 2012 to the present engaged in massive schemes of judicial corruption and obstruction of justice, purposed to cover their crimes, as identified below. Thus, Kaul respectfully requests that the U.S.D.J. and U.S.M.J. assigned to the case do disclose to the court record their Forms AO10 for the last five (5) years and do certify that neither they nor any members of their family to the third degree have any conflicts of interest to any aspect of any of **The Kaul Cases**. This, Kaul respectfully asserts, will ensure justice is faithfully and properly served, in a case, the outcome of which will have life/death consequences of millions of Americans.

31

# Evidence

The below evidence, contained in the exhibits, is organized in reference to claim elements and themes:

1. Political corruption.
2. Judicial corruption.
3. Corporate corruption.
4. Public corruption.
5. Obstruction of Justice
6. Fraud
7. Perjury
8. Kickbacks
9. Racketeering
10. Evidence/Witness Tampering
11. Bribery
12. Conspiracy

E1 - Judicial corruption/Public Corruption/Bribery/Racketeering/Conspiracy/Evidence Tampering (KAUL:0001)
E2 - Conspiracy/Racketeering/Political corruption (KAUL:0074).
E3 - Conspiracy/Public corruption (KAUL:0085).
E4 - Evidence tampering/Conspiracy/Public corruption (KAUL:0098).
E5 - Evidence/Witness tampering/Judicial corruption/Public corruption (KAUL:0101).
E6 - Judicial corruption/Public corruption/Obstruction of justice (KAUL:0103).
E7 - Judicial corruption/Public corruption/Racketeering (KAUL:0105).
E8 - Perjury/Fraud/Obstruction of justice (KAUL:0107).
E9 - Public corruption (KAUL:0110).
E10 - Public corruption/Perjury/Obstruction of justice (KAUL:0115).
E11 - Public corruption/Fraud/Racketeering (KAUL:0118).
E12 - Judicial corruption/Public corruption (KAUL:0121).
E13 - Judicial corruption/Public corruption (KAUL:0123).
E14 - Conspiracy/Racketeering (KAUL:0136).
E15 - Public corruption/Fraud/Racketeering (KAUL:0153).
E16 - Public corruption/Fraud/Racketeering (KAUL:0157).
E17 - Conspiracy/Racketeering (KAUL:0161).
E18 - Racketeering (**"pattern"**)/Corporate corruption (KAUL:0165).
E19 - Judicial corruption/Public corruption/Bribery/Racketeering/Conspiracy (KAUL:0174).
E20 - Bribery/Public corruption/Obstruction of justice (KAUL:0219).

E21 - Conspiracy/Public corruption/Witness tampering (KAUL:0221).

E22 - Evidence tampering/Judicial corruption/Fraud/Perjury (KAUL:0231).

E23 - Conspiracy/Public corruption (KAUL:0242).

E24 - Obstruction of justice/Public corruption (KAUL:0245).

E25 - Public corruption/Racketeering/Conspiracy (KAUL:0249).

E26 - Judicial corruption/Public corruption (KAUL:0254).

E27 - Racketeering (**"pattern"**) (KAUL:0259).

E28 - Racketeering (**"pattern"**) (KAUL:0264).

E29 - Judicial corruption/Public corruption/Political corruption (KAUL:0268).

E30 - Judicial corruption (KAUL:0280).

E31 - Racketeering (**"pattern"**) (KAUL:0326).

E32 - Racketeering (**"pattern"**) (KAUL:0354).

E33 - Racketeering/Public corruption/Political corruption/Bribery/Judicial corruption/Fraud (KAUL:0400).

# __Statement of Fact__

### __Kleptocrats at the medico-legal gate:__

On June 13, 2012 on the fourth (4th) floor of the Richard J. Hughes Justice Complex in Trenton, New Jersey IN THE MATTER OF THE SUSPENSION OR REVOCATION OF LICENSE OF RICHARD A. KAUL, M.D. LICENSE NO. 24MA63281 TO PRACTICE MEDICINE AND SURGERY IN THE STATE OF NEW JERSEY - ADMINISTRATIVE ACTION, Kaul's lawyer, Robert Conroy (now deceased) argued from approximately 10am to 6 pm EST, to a room, in which there were at least sixty-six (66) individuals. This audience had been organized by Defendant Christie, and consisted of members of the medical board, the office of the NJ Attorney General, representatives of Defendants Allstate/Geico, Defendants Przybylski/Kaufman and numerous members of the media. A veritable circus of political theater. On that day, Conroy made the following statement (__Exhibit 1-KAUL:0021__):

__"When those charged to uphold the laws act in a lawless way, they were faced with tyranny … Richard Nixon and any number of other people found out, it's always the cover up that gets you … You're not a man who takes away somebody's livelihood, and he does so, but he doesn't know any better ... "__

__"Is his [Kaul] mere existence a risk? That's really what you're being asked to find. And you're being asked to do so in a summary fashion without the doctor having his full day in court".__

### __Defendant/Senator Cory Booker Obstructs Justice in the United States District Court:__

On December 18, 2020, Kaul had served a letter (__Exhibit 2-KAUL:0074__) on U.S.D.J. Chutkan and U.S.C.A. for the DC Circuit, Chief Judge Srinivasan. This document has still not been published to the district court docket, as is the case with at least eight (8) submissions filed by Kaul in K5. In the letter Kaul states:

__"You are aligned with the American Democratic Party and were appointed to the bench by President Obama. Booker [Senator Cory Booker-(D)-NJ] and Menendez [Senator Robert Menendez-(D)-NJ] are Democrats. The submission exposes the bribes ('protection money') paid by Defendant Heary to Booker as part of a quid pro quo, in which Booker abused his political power to have you prevent me from prosecuting Defendant Heary."__

**Kaul brings Defendant Booker into Court on charges of racketeering/public corruption/judicial corruption/conspiracy:**

On January 11, 2021, Kaul filed K11-1 in the United States District Court for the Northern District of Texas (**Exhibit 3-KAUL:0085**). The Dallas Court granted Kaul IFP status, but then transferred the case to the Fort Worth Court, where the Defendants are continuing to obstruct justice and their "**pattern of racketeering**" by coercing the district judge to not have service of the summons/complaint effectuated on the Defendants. As of February 14, 2021, the court has without legitimate cause issued no summons and no defendants have been served.

**Kaul Notice to US Congress/Senate re: refrain from Obstruction of Justice**:

On February 4, 2021/February 13, 2021 letters (**Exhibit 1-KAUL:0005**) were sent to every US Senator/Congressmen requesting they/their agents refrain from any word/act that could in any way be interpreted as obstructing Kaul's prosecution of **The Kaul Cases**:

**"I write this letter to alert you to the above matters and to the fact that the Defendants or agents representing the Defendants will attempt to have you abuse your political power to obstruct my prosecution of The Kaul Cases. The legal/political bodies in America are interminably intertwined and when quasi-criminal cases that involve senior members of either party, Democratic/Republican, are filed, cases that expose the rampant corporate corruption of American politics, there is a 'closing of ranks'. Money trumps political partisanship, and in these cases, one of which involves Defendant/Senator Cory Booker, Defendant/Senate Majority Leader Charles E. Schumer and Defendant/NJ Senate President Steven Sweeney, the risk of political interference is certain. All of these Defendants have been bribed by the health insurance/banking/hospital/medical industries, of which the Defendants are members. I am sure this is not news to you."**

**Defendants failure to attend Conference for Joint Discovery Plan + Corruption of the U.S.C.A. for The Third Circuit:**

In K5, in a period from October 1, 2019 to December 12, 2020 filed multiple voluminous motions to have the case transferred from the U.S.D.C. for the D.C. to the U.S.D.C. for the D.N.J. On December 12, 2020, the case was improperly transferred to the D.N.J. in Camden, and on December 16, 2020, Judges Hillman/Donio issued an order regarding a conference to establish a Joint Discovery Plan (**K5-D.E. 155**). The Defendants moved

to have the case transferred to the U.S.D.C. in Newark, which Defendant/Chief Judge Wolfson granted. The Defendants then moved to have Defendant/U.S.D.J. Vazquez stay the case, a motion that was granted. Kaul submitted letters/motions that sought to have the case transferred out of the corrupted Newark court (**Exhibit 33-KAUL:0439**) These letters/motions were ignored. On January 26, 2021 Kaul attended the U.S.D.C. in Camden. The Defendants failed to attend and counsel for many of the Defendants had/have blocked Kaul's emails and refused to communicate with him regarding the scheduling of any discovery. The Defendants have falsely claimed that K1 is identical to K5, and that until the U.S.C.A. for the Third Circuit adjudicates the appeal of K1, K5 should be stayed.On January 7, 2021 Kaul submitted a request to the judges on the U.S.C.A. for the Third Circuit regarding disclosure of their Forms AO10 and any conflicts of interest. The information has not yet been published to the record. The Defendants in collusion/conspiracy with certain judges in the U.S.D.C.-Newark and U.S.C.A. for the Third Circuit has obstructed justice by knowingly/willfully and with knowledge of its illegality, manipulated the legal posture of K1, in an attempt to paralyze the prosecution of K1 and all **The Kaul Cases.**

Kaul, a recognized pioneer in minimally invasive spine surgery, revolutionized the specialty when in 2005 he performed the first outpatient minimally invasive lumbar fusion:

https://www.youtube.com/watch?v=JX4bnRPPucI&t=1s.

Kaul, as with other similarly trained physicians, came into professional conflict with neurosurgeons, who believed that they were the only practitioners with the skills necessary to perform these procedures. However, the majority of neurosurgeons had received no training in FGI during their residencies, and they obtained little experience after graduation. This was in contrast to the vast experience obtained by Kaul and similarly trained physicians. From the mid 1990s onwards, the video-endoscopic technology and fluoroscopic technologies continued to evolve, as did anesthetic techniques that permitted rapid postoperative recoveries:

https://www.youtube.com/watch?v=oxaV5IJuZ7c&t=9s

When Kaul performed the first outpatient lumbar interbody fusion, he used an expandable interbody device to place bone graft in the intervertebral space. This was performed through an 8mm incision, and did not require any destruction of the muscles, bones or ligaments in the patient's back. The device was inserted in a collapsed format and was then expanded when in the correct position. This specific part of the procedure revolutionized the spine industry and has led to the development of numerous other

expandable devices. This technique has become the standard of care for the treatment of degenerative spinal disorders.

Kaul's work caused immense professional jealousy that caused the physician Defendants to engage in conduct that was unethical, unprofessional and illegal (**K2-D.E. 2 Page ID 139**). Their racketeering schemes commenced in approximately 2007/8, and incorporated multi-pronged strategies that involved encouraging patients to file lawsuits and medical board complaints against Kaul, threatening to withdraw business from spinal device representatives unless they stopped supplying Kaul, conspiring to prevent Kaul from obtaining hospital privileges, and issuing reports for insurance companies that denied Kaul reimbursement for procedures he performed.

However, when it became apparent that none of the aforementioned tactics had worked, the Defendants conspired to bribe and did bribe Defendant Christie, to have him order Defendant NJBME to revoke Kaul's license (**K2-D.E. 2 Page ID 142**). The proceedings to revoke Kaul's license were conducted criminally and the resultant revocation was illegal. Kaul was subjected to political corruption and judgments that were summary in nature, that deprived him of his livelihood and his ability to support his family. The proceedings in the New Jersey Office of Administrative Law were a massive fraud (Reference: IN THE MATTER OF THE SUSPENSION OR REVOCATION OF THE LICENSE OF RICHARD A. KAUL, MD TO PRACTICE MEDICINE AND SURGERY IN NEW JERSEY–OAL DOCKET NO.: BDS 08959-2012N), in which Defendants Solomon, Przybylski and Kaufman collectively committed two hundred and seventy-eight (278) separate instances of perjury and evidential omission, misrepresentation and gross mischaracterization (**K1-D.E. 225 + 225-1 + 225-2: Page ID 4940 to 5273**).

**Defendant Allstate and GEICO have corrupted the New Jersey Superior Court, Union County into using the IFPA (N.J.S.A. 17:33A-1 et seq.) to violate the Constitutional due process rights of members of the medical community.**

The IFPA is an ostensibly civil statute designed to combat insurance fraud in New Jersey, but the text and applications of the statute are decidedly criminal in nature. There is a symbiotic relationship between the Special Investigations Units of the Insurance Carriers and the New Jersey Office of the Insurance Fraud Prosecutor, the latter being affiliated with the Department of Banking and Insurance.

Defendant GEICO filed a lawsuit against Kaul, in the United States District Court, District of New Jersey on April 24, 2013, in which it alleged he had violated the IFPA. The claim was dismissed with prejudice on December 8, 2014, with no evidence ever having been presented. Defendant Allstate filed a claim against Kaul on February 15,

2015 that was identical to the IFPA claims filed by GEICO on April 24, 2013, and dismissed on the aforesaid date.

The IFPA has been increasingly used by joint SIU(private)/OIFP(state) entities to conduct investigations that portend to be civil, but are in actuality investigations whose purpose is to improperly collect evidence to file criminal charges. Defendant Allstate has repeatedly conspired with the OIFP to use the civil process to circumvent the constitutional protections normally afforded to individuals who are the subject of criminal investigations.

The IFPA has been interpreted by corrupted New Jersey state courts (Morris + Union) to deny physician defendants the right to a jury. The argument adopted by the state courts is based on an erroneous finding that the relief sought by Defendant Allstate was in equity and not law, and thus there was no entitlement to a jury. In these cases, Defendant Allstate argued that the reason the legislature did not expressly ascribe the right of a jury trial, was because it allegedly did not want anything impeding a speedy trial.

The IFPA and its unconstitutional application in New Jersey state courts, has been associated with jury denials and motion applications that are rarely, if ever, decided in favor of the Defendant.

Defendants Allstate and GEICO have engaged in widespread violations of the due process rights of the provider community in multiple states. They have been able to perpetrate these schemes through the purchasing of local politicians and collusion with state agencies.

**Defendants Solomon, Przybylski and Kaufman collectively committed two hundred and seventy-eight (278) separate instances of perjury, misrepresentation, evidential omission and gross mischaracterization in the proceeding in the New Jersey Office of Administrative Law (April 9, 2013 – June 28, 2013) + The Defendants committed bribery in quid pro quo schemes with Defendant Christie, in order to have Kaul's medical license revoked.**

In or about the beginning of September 2017, Kaul obtained, for the first time, an entire copy of the trial transcript IN THE MATTER OF THE SUSPENSION OR REVOCATION OF THE LICENSE OF RICHARD A. KAUL, MD, TO PRACTICE MEDICINE AND SURGERY IN NEW JERSEY. The proceeding was conducted in the New Jersey Office of Administrative Law between April 9, 2013 and June 28, 2013, and was adjudicated,

without a jury, by Defendant Jay Howard Solomon, Esq. Defendant Solomon issued his Final Opinion on December 13, 2013.

Between September 2017 and January 11, 2018, Kaul conducted a comparative analysis of Defendant Solomon's Final Opinion with the trial transcript and submitted evidence. The analysis resulted in the production of a document entitled, 'The Solomon Critique', which proves that Defendants Solomon, Przybylski and Kaufman collectively committed two hundred and seventy-eight (278) separate instances of perjury and evidential omission, misrepresentation and gross mischaracterization. Defendant Solomon's fraudulent opinion provided an illegal basis for the revocation of Kaul's license. The revocation of Kaul's license caused the loss of his livelihood and the collapse of six (6) medium sized corporations, that were forced to file for Chapter 11 Bankruptcy on June 17, 2013 in the District of New Jersey (Case No. 13-23366(VFP).

The Defendants bribed and conspired with Defendant Christie and his agents, to have Defendant NJBME revoke Kaul's license. The Defendants were economic competitors of Kaul, that all lost money when Kaul made money. The financial reserves for which the Parties competed, consisted of the auto/health premiums paid by patients/clients to Defendants Allstate and GEICO. This reservoir of capital, intended to cover the costs associated with auto related injuries, was finite, and as Kaul's minimally invasive spine surgery practice expanded, he commandeered a greater percentage of the reservoir. The Defendants calculated that the return on their bribes, would be more than compensated for by (i) the debt avoidance (Defendants Allstate + GEICO) that the revocation of Kaul's license would permit, and (ii) by the diversion to the Defendant Physicians and Hospitals of an increased percentage of the capital reservoir, for reimbursement for their professional services. Defendant Christie benefitted by receiving these racketeering profits into his political campaigns, and off-shore bank accounts and trusts located in tax havens.

**Kaul has consistently been denied substantive justice in administrative, state and federal courts in New Jersey.**

In early January 2012 two inspectors from the State made an unannounced visit to NJSR Surgical Center, Kaul's Medicare Certified, AAAHC accredited surgical center in Pompton Lakes, NJ. These individuals willfully concealed the purpose of their visit from Kaul, as they interviewed Kaul's staff and collected evidence. When asked by Kaul the reason for the visit they falsely told him that it was a routine inspection. They did not inform him that it was part of an investigation, the purpose of which was to revoke his medical license. These individuals appeared on Tuesday January 3, 2012, at a time

when Kaul was operating and requested to enter the operating room while Kaul was performing a minimally invasive spinal fusion. Kaul denied their request.

The inspectors presented no warrants, despite the fact that the proceedings were quasi-criminal in nature that sought to deprive him of his property. These individuals did not inform Kaul or his staff of their rights, before they commenced their interviews and gathering of evidence.

On April 2, 2012 Defendant NJBME suspended Kaul's license based on false allegations that he was not qualified to perform minimally invasive spine. The allegations were premised on the reports of two 'experts', Defendants Przybylski and Kaufman, who were market competitors of Kaul, and who had received money from the State to testify. Defendants Przybylski and Kaufman continued their false testimony in April 2013, when they testified against Kaul in the proceedings in the New Jersey Office of Administrative Law, in Newark, NJ. The latter proceeding resulted in the illegal revocation of Kaul's license. Defendants Kaufman and Przybylski took an oath, and then participated in the massive fraud detailed in 'The Solomon Critique' (**K1-D.E. 225**).

Kaul commenced performing minimally invasive spine surgery in 2002 and successfully performed eight hundred (800) cases with good to very good outcomes in 90-95% of cases with a 0.1% complication.

Kaul was more educated, qualified, trained and credentialed to perform minimally invasive spine surgery than Defendants Przybylski and Kaufman. Kaul (i) possessed a license to practice medicine and surgery; (ii) was board certified by the American Academy of Minimally Invasive Spinal Medicine and Surgery; (iii) was credentialed by at least six (6) surgical centers to perform minimally invasive spine surgery; (iv) was credentialed by the federal government to perform minimally invasive spine surgery; (v) had commenced his training in minimally invasive spine surgery in 2002, three (3) years before Defendant Przybylski.

On May 9, 2012 Kaul signed an interim consent order with Defendant NJBME, in which he agreed, pending the outcome of a full hearing, to limit his practice to interventional spinal procedures. The order permitted Kaul to apply for minimally invasive spine privileges at a hospital, and on, or about May 16, 2012, Kaul submitted an application to a local hospital.

On May 9, 2012 Defendant Christie's Attorney General, Jeffrey Chiesa ("Chiesa") made highly prejudicial pre-hearing comments to Marla Diamond, a New York radio show host, in which he stated that Kaul was not qualified to perform minimally invasive spine

surgery. These comments were made before any evidentiary proceedings and were intended to prejudice Kaul's right to a fair hearing (**K2-D.E. 2 Page ID 152**).

On or about May 16, 2012 Kaul commenced discussions with Bayonne Medical Center in Bayonne, NJ, to obtain privileges for minimally invasive spine surgery.

On May 22, 2012 the acting director of the division of consumers affairs and Defendant Kanefsky, filed a motion to suspend Kaul's CDS prescribing license, in the knowledge that it would prevent him from obtaining hospital privileges. This was an illegal and unilateral act perpetrated by a subordinate of the New Jersey Governor, and denied Kaul his right to due process (**K2-D.E. 2 Page ID 152**).

Kaul indicated that unless the CDS license was reinstated he would commence legal action, and on May 29, 2012, in retaliation, Kanefsky filed a motion to rescind the consent agreement. The motion was based on false allegations that Kaul had not modified his website or complied with an improper subpoena.

On June 7, 2012 Kaul, based on the aforesaid actions of Chiesa and Defendant Kanefsky, filed a motion in the Mercer County Superior Court that sought the appointment of a special prosecutor and ad hoc medical board. Kaul argued that he would not receive a fair and impartial hearing in New Jersey, and that Chiesa's prejudicial comments evidenced the prejudicial nature of the proceedings (**K2-D.E. 2 Page ID 179**).

The motion was denied, as was the appeal, and neither Defendant Chiesa nor Kanefsky responded to testimony subpoenas, arguing that the proper forum was the pending hearing before Defendant NJBME. The denials further evidenced Kaul's argument that he would not receive justice in New Jersey.

On June 13, 2012 Kanefsky's motion to rescind the consent agreement was argued before Defendant NJBME. Chiesa and Defendant Kanefsky ignored testimony subpoenas and had them quashed by Defendant NJBME. Kaul's right to cross examine parties who were seeking to deprive him of his property violated his Fourteenth Amendment right to due process (**K2-D.E. 2 Page ID 203**).

On June 13, 2012, Defendant Hafner played a video of a patient, who improved after Kaul had performed a successful minimally invasive outpatient lumbar fusion:

https://www.youtube.com/watch?v=guwx5kuBiEg&t=3s

Hafner considered the video evidence that Dr. Kaul had deviated from Defendant Przybylski's fictitious standard of care, a standard that he admitted on May 6, 2013 did not exist. However, it mattered not to Hafner that the patient improved, because she must have held the same view that Defendant Lomazow expressed at the end of his 2014 video interview, which is that patients "know nothing"

https://www.youtube.com/watch?v=sFtE8EvEMsU

On June 13, 2012 Defendant NJBME rescinded the consent agreement, based on false allegations that Kaul had not modified his website and had not responded to subpoenas from Defendant NJBME. The subpoenas were improper, because the matter had been transferred from Defendant NJBME to the New Jersey Office of Administrative Law on May 28, 2012, which thus assumed subpoena jurisdiction. Upon the transfer from Defendant NJBME Kaul became entitled to discovery from Defendant NJBME, and submitted testimony subpoenas to AG Jeffrey Chiesa, DCA Acting Director Eric Kanefsky and Investigator Susan Sugalski, an individual who had worked with Defendant NJBME as an investigator. Defendant Hafner did not produce these witnesses because she falsely claimed that the matter had been transferred back to Defendant NJBME. The subpoenas were then quashed by Defendant NJBME, and Kaul was denied his due process right to examine two witnesses who had respectively made public prejudicial comments and illegally suspended Kaul's CDS prescribing license.

Kaul never had the opportunity to cross-examine Chiesa, Defendants Hafner and Kanefsky. Kaul's motions for a special prosecutor and ad hoc medical board were denied in the New Jersey Superior Court System at both the trial and appellate levels, and his testimony subpoenas were quashed by Defendant NJBME.

On August 30, 2012, Kaul's attorney, Jeffrey Randolph, sent a letter to Jessie Sheffert, Esq, an attorney who represented a surgical center at which Kaul had worked. In the letter, Randolph explained that Defendant NJBME's assertion that Kaul should have had alternative privileges to perform minimally invasive spine surgery was wrong. Defendant Solomon prevented this letter from being entered into evidence in the administrative law proceedings, because Defendant Hafner falsely claimed she had not received the document (**K2-D.E. 2−1 Page ID 425**).

On December 20, 2012 the State issued a cease and desist letter to Kaul that ordered him to close the NJSR Surgical Center. Subsequent to the suspension of Kaul's license, other physicians had been performing procedures at the facility. Kaul appealed the order, which was stayed pending the outcome of the licensure proceedings. The cease and desist letter was arbitrary and had no basis in law or fact. It was just one of many

examples of how Defendant Christie abused state agencies, to further the defendants' schemes against Kaul's properties, interests and reputation.

From April 9, 2013 to June 28, 2013 the matter was tried in the New Jersey Office of Administrative Law (IN THE MATTER OF THE SUSPENSION OR REVOCATION OF THE LICENSE OF RICHARD A. KAUL, MD TO PRACTICE MEDICINE AND SURGERY IN NEW JERSEY – BDS 08959-2012N).  The two main issues litigated in the hearing pertained to patient outcomes, and whether Kaul was qualified to perform minimally invasive spine surgery.

The case advanced by Hafner was founded principally on the opinions of Defendants Przybylski and Kaufman, who falsely testified that Kaul had grossly deviated from the standard of care in his treatment of eleven (11) patients in the following six (6) clinical and administrative categories: (1) clinical outcomes; (2) hospital privileges; (3) education and training; (4) surgical technique; (5) consent forms; (6) discography.

Defendants Przybylski and Kaufman falsely testified that: (a) the patients had poor clinical outcomes – **however**, the clinical files indicated that the patients improved after the care they received from Kaul; (b) because Kaul did not have hospital privileges, he had grossly deviated from the standard of care – **however**, as Defendants Przybylski and Kaufman either knew or ought to have known, the possession or non-possession of hospital privileges has no legal relevance to the standard of care, as was articulated by Judge Howard Coburn on January 25, 2012 in the matter of Jarrell v Kaul (MRS-L-2634-07); (c) because Kaul had obtained his minimally invasive spine surgery training through mini-fellowships and continuing medical education courses, he had grossly deviated from the standard of care – **however**, Defendant Przybylski admitted that he had obtained his minimally invasive spine surgery training by attending the same continuing medical education courses as Kaul, but had commenced his training in 2005, three (3) years after Kaul. Defendants Przybylski and Kaufman either knew or ought to have known that education and training have no legal relevance to the standard of care, as was articulated Judge Howard Coburn in Jarrell v Kaul; d) because Kaul used devices in an off-label manner he had grossly deviated from the standard of care – **however**, Defendant Przybylski admitted that he frequently used devices in an off-–label manner; (e) because patient consent forms were allegedly unsigned, Kaul had deviated from the standard of care – **however**, Kaul submitted into evidence signed consent forms for all eleven (11) patients; (f) because Kaul utilized discography in as a diagnostic tool, that he had deviated from the standard of care –**however**, the use of discography contributed to the fact that the eleven (11) patients improved after surgery

The proceeding was adjudicated by Defendant Solomon, prosecuted by Defendant Hafner, and 'expert' testimony was provided by Defendants Przybylski and Kaufman. The entire proceeding was a massive fraud, in which Defendants Solomon, Przybylski and Kaufman collectively committed two hundred and seventy-eight (278) separate instances of perjury and evidential misrepresentations, omissions and gross mischaracterizations. These are detailed in 'The Solomon Critique' (**K1-D.E. 225**) copies of which were sent to the nine justices of the United States Supreme Court. Letters were also sent to the US Attorney and the New Jersey Attorney General, that sought the matter be criminally investigated.

On the days that Defendant Przybylski testified, Kaul ensured that an independent transcriptionist recorded the proceedings, an act that visibly agitated Defendant Solomon.

In support of their case, the state relied on eleven (11) patients, whom they alleged had sustained complications consequent to surgeries performed by Kaul. Only six (6) patients actually testified, but Defendant Solomon permitted Defendant Przybylski's testimony about the other five (5) patients to be entered onto the record. This testimony was subsequently used by Defendant Solomon to wrongfully recommend the revocation of Kaul's license. Kaul was denied the opportunity to examine these five (5) patients.

In early September Kaul was made aware that evidence from the OAL hearing had been tampered with and falsified. Kaul sent letters, dated September 12 and 13, 2013 respectively, to Defendants Solomon and Christie, that requested the matter be investigated (**K2-D.E. 2 Page ID 215**). The matter was not investigated.

On September 16, 2013 Kaul filed an ethics complaint against Defendant Hafner (**K2-D.E. 2 Page ID 226**). In 2014 Kaul brought this complaint to the attention of the attorney assisting him with his application for license reinstatement. Kaul suggested that Hafner should have no involvement in the proceeding. The attorney, Michael Keating dismissed Kaul's concerns, despite the fact that Hafner had used prejudicial and pejorative language in her opposition to Kaul's application. Kaul subsequently discovered that Keating was a partner at the law firm at which Defendant Christie had been a partner. Keating never disclosed this conflict of interest to Kaul.

On October 15, 2013 Kaul submitted a post-trial brief in the administrative law proceeding (**K1-D.E. 179-1 Page ID 2672 to 2711**).

On Sunday November 17, 2013, Defendant NJMG published Defendant Washburn's illegally recorded interview. It was a six-thousand (6000) word article that slandered

Kaul's appearance and accent. Washburn described Kaul was having a **"frayed wallet … laceless shoes"** and referred to his accent disparagingly as an **"upper crust British accent."** The purpose of this characterization was to portray Kaul as an elitist, an individual out of touch with the 'common man.' Defendant Washburn did this in the knowledge that it would create antipathy and eliminate any sympathy for Kaul. Defendant Washburn confuses clear diction with social class.

The truth, however, of Kaul's life is that he grew up in poverty and became an orphan at sixteen (16), after his mother died of cancer when he was fourteen (14) and his father died of a heart attack when he was sixteen (16). Kaul entered medical school at the age of eighteen (18). These were details Defendant Washburn knew, but chose not to include in her defamatory and slanderous story, a story that involved her criminally violating Kaul's rights under federal and state law. Defendant Washburn illegally recorded the interview. Kaul sent Defendant Washburn a letter dated January 9, 2014 that requested a copy of the illegally obtained audio recording (**K2-D.E. 2 Page ID 224**) but Defendant Washburn refused his request.

In response to Defendant Washburn's article, a number of Kaul's patients provided a video response and on December 26, 2013 Kaul sent a letter (**K2-D.E. 2 Page ID 230**) to Defendant Solomon, in which he asked Defendant Solomon, a Bergen County resident, if he had read the article. If Solomon had read the article it would have been an act of judicial misconduct, because Solomon was effectively the judge, jury and prosecutor. The timing of the release of Defendant Washburn's article was intended to prejudice the local population against Kaul. Members of Defendant NJBME lived in this population. This was the same tactic used by Chiesa on May 9, 2012 when he declared to CBS New York journalist, Marla Diamond, that Kaul was not qualified to perform minimally invasive spine surgery. These acts are further evidence of Kaul's argument that he will not receive justice in New Jersey.

Defendant NJMG removed Defendant Washburn's article from the internet in approximately late 2017.

On December 13, 2013 Defendant Solomon issued his opinion. It was a one hundred and five-page (105) document that bore little resemblance to the trial testimony and evidence. Defendant Solomon recommended that Kaul's license be revoked. In his opinion Defendant Solomon ignored the law that permits the holder of a plenary license the right to practice Medicine and Surgery. Kaul had an active unrestricted plenary license, for the period during which he performed minimally invasive spine surgery.

The law regarding plenary licenses was stated by Judge Howard Coburn in the matter of Jarrell v Kaul (MRS-L-2634-07). His recitation directly contradicts the fraudulent testimony that was given on June 12, 2012 and in April 2013 by Defendant Przybylski, regarding what constitutes the standard of care (**K2-D.E. 2 Page ID 233**).

On January 5, 2014 Kaul sent a letter to President Obama that sought the assistance of the federal government in the investigation of the tampering with evidence (**K2-D.E. 2 Page ID 236**). Kaul, confident in the strength of his case, had no hesitation in sending a letter to the President of the United States, that invited the United States Government to review the case.

On January 9, 2014 Kaul sent a letter to Defendant Washburn that requested a copy of the audio recording of the interview she had conducted with Kaul on August 13, 2013. At the commencement of the interview Defendant Washburn acknowledged that state actors had tampered with evidence in the administrative proceedings.

After the issuance on December 13, 2013 of Defendant Solomon's fraudulent opinion, the matter was returned to Defendant NJBME, and a hearing was scheduled for February 12, 2014. Kaul sent a letter to Defendant NJBME, dated February 6, 2014, in which he brought their attention to the malfeasant conduct of Defendants Kaufman and Lomazow and advised them that he would not attend the hearing (**K2-D.E. 2-1 Page ID 241**).

On March 12, 2014 Defendant NJBME entered its final order, which revoked Kaul's license and imposed a financial penalty of $450,000.00. The amount was based on the inflated legal fees of the New Jersey Attorney General and fines imposed for alleged instances of 'gross malpractice'. These alleged instances were entered onto the record in the administrative law proceedings (April 9, 2013 to June 28, 2013) through the testimony of Defendant Przybylski, who as is detailed in 'The Solomon Critique', committed perjury thirty (30) times. The revocation was illegal. The fine was thus illegal, and violative of the Eight Amendment, in the same manner as was found in Timbs v Indiana (17–1091).

Kaul chose not to appeal the matter in New Jersey Superior Court, Appellate Division, as he did not believe, based on his experience, that he would be able to procure justice in New Jersey. From 2012 to 2019 Kaul's belief has been proven to be true by administrative + state + bankruptcy + federal courts within the geographic boundaries of New Jersey.

Kaul chose not to appeal the matter in New Jersey Superior Court, Appellate Division, as he did not believe, based on his experience, that he would be able to procure justice in New Jersey. From 2012 to 2019 Kaul's belief has been proven to be true by administrative + state + bankruptcy + federal courts within the geographic boundaries of New Jersey.

On January 29, 2015 Kaul filed a complaint with the US Attorney for the District of New Jersey that sought an investigation into the evidence tampering. Two weeks after Kaul had filed the complaint, he telephoned the office of the US Attorney to ascertain the status of the complaint and was told, **"We are not an investigative agency"**. Kaul had initially approached the FBI but was referred to the US Attorney, Paul Fishman. The latter individual had worked under Defendant Christie, when he was the US Attorney for the District of New Jersey (**K2-D.E. 2-1 Page ID 244**).

In 2015 Kaul submitted multiple letters to the New Jersey Attorney General, the US Attorney for the District of New Jersey and insurance carriers, that sought their assistance in retrieving a copy of his file from Defendant NJBME, and investigating the evidence tampering and illegal audio recording. Kaul received no responses (**K2-D.E. 2–1 Page ID 248**).

On February 22, 2016 Kaul filed a lawsuit in the United States District Court, Southern District of New York (16-CV-1397) in which the Defendants were accused, amongst other things, of violating RICO and committing antitrust violations. The Complaint sought the reinstatement of Kaul's medical license, monetary compensation and a public apology. Kaul filed the matter in the SDNY because he had been a New York resident from 2005 to 2012, had venue privilege and was convinced that he would not receive justice in New Jersey, due to the politico-legal nexus he described in his brief to the Second Circuit Court of Appeals (**UNITED STATES COURT OF APPEALS FOR THE SECOND CIRCUIT – CASE NO. 16–1397–CV-D.E. 41**).

The Judge assigned to the case, Richard Sullivan, transferred the matter sua sponte to the District of New Jersey. Kaul sent the Judge a letter, in which he objected to the transfer, based on his opinion that he would not receive justice in New Jersey (**K2-D.E. 2-1 Page ID 257**). The Judge ignored Kaul's pleas and on April 27, 2016 transferred the file to the District of New Jersey. Kaul filed an interlocutory appeal (**UNITED STATES COURT OF APPEALS FOR THE SECOND CIRCUIT – CASE NO. 16-1397–CV–D.E. 41**) with the Second Circuit Court of Appeals, which was denied by a three-member panel on September 9, 2016, based on the Court's assertion that because the order from the SDNY was not a final order, it did not have jurisdiction. Kaul filed a motion for an en banc review but received no response from the Court. If and when a final order is

entered in the District of New Jersey, the matter will return to the United States Court of Appeals for the Second Circuit for adjudication on the question of venue.

On July 26, 2016, Kaul submitted a motion to the DNJ that sought to have the matter transferred back to the SDNY. Counsel for Defendant Cohen objected (**K2-D.E. 2-1 Page ID 263**) and the Court entered a TEXT ORDER on July 27, 2016 that stated, **"The issue, however, may be discussed during the next scheduled conference."** The next conference was held on March 23, 2017 and was limited to discussions regarding a motion by Defendant Heary and Rutgers to vacate default.

On September 8, 2016 Kaul submitted a letter to the District of New Jersey, that highlighted Kaul's profound concerns about the impartiality of the venue and requested that his motion to transfer the matter back to the S.D.N.Y be considered (**K2-D.E. 2-1 Page ID 265**). The Court never considered the motion.

In mid August 2016 Kaul served information subpoenas on a number of Third Party Witnesses. The State Defendants objected to Kaul's efforts at evidence gathering, Kaul responded, but the Court prohibited Kaul from gathering evidence relevant to the claims (**K2-D.E. 2−1 Page ID 267**).

The matter had been pending in the DNJ since April 27, 2016, during which time Kaul has filed several motions for default judgment against Defendant Lewis Stein, Esq. On March 3, 2016, Defendant Stein was sent a Waiver of Summons and Notice of Litigation that was accompanied with a flash drive that contained a copy of the Summons, Complaint and Exhibits. On the flash drive was a small white label, on which Kaul had written the number four (4). Defendant Stein ignored the Waiver of Summons. On May 2, 2016 Defendant Stein was served with a hard copy of the Summons and Complaint (**K2-D.E. 2-1 Page ID 376**), but failed to plead or otherwise answer. On December 22, 2016 Kaul requested entry of Default against Defendant Stein (**K2-D.E. 2−1 Page ID 381**) and Default was entered by the Clerk on December 28, 2016. On June 13, 2017 Kaul filed a motion to enter Default Judgment (**K1−D.E. 192−2–Page ID: 3567 to 3611**) and on July 7, 2017 the Court denied the motion (**K1−D.E. 202–Page ID: 3767 to 3772**). In its opinion the Court suggested that one of the reasons Defendant Stein failed to answer, was that he might have been confused about the venue of the case. On November 17, 2017, Defendant Stein was served with a  copy of the summons and First Amended Complaint, and signed a document entitled CONFIRMATION OF SERVICE (**K2-D.E. 2−1 Page ID 378**).

On June 30, 2017 the Court entered an Order that dismissed Kaul's First Amended Complaint, but permitted him to file a Second Amended Complaint, which he submitted on August 10, 2017.

On October 18, 2017 the Court filed an Order that required the Second Amended Complaint be reduced in length. Kaul believes it is relevant to this record that every complaint filed in the United States District Court for the District of New Jersey, by Defendant Geico, within the last ten years has been in excess of three hundred (300) pages. At a case management conference on October 18, 2017, the Court and Kaul agreed to submit a revised Second Amended Complaint of approximately one and hundred and forty (140) pages. The Defendants were granted forty-five (45) days to respond, and Kaul was granted thirty (30) days to file his response.

On October 18, 2017, during the case management conference, the Court denied Kaul's request to commence the service of information subpoenas.

Similarly, the Court has not permitted Kaul any discovery, and quashed information subpoenas that Kaul served on Third Party Witnesses in July/August 2016 (**K1-D.E. 111 – Page ID: 990**).

On October 27, 2017 Kaul filed a revised Second Amended Complaint that was, with exhibit dividers, one hundred and fifty (150) pages.

Forty-five (45) days later, the Defendants had failed to respond to Kaul's revised Second Amended Complaint, and on December 22, 2017 Kaul sent a letter to the Court that brought its attention to the issue (**K2-D.E. 2−1 Page ID 380**).

The Court issued a letter order on February 8, 2018 that identified purported deficiencies in Kaul's revised Second Amended Complaint. Kaul responded by filing on February 22, 2018, an abbreviated version of the revised Second Amended Complaint.

The Defendants did not respond to Kaul's revised Second Amended Complaint, and on April 4, 2018 Kaul filed a letter with the Court that requested it set a deadline for the Defendants to answer or otherwise plead (**K2-D.E. 2-1 Page ID 385**).

Kaul's Complaint remained pending in the DNJ for two (2) years, during which Kaul's efforts at discovery were either quashed or denied. Kaul's motions for default judgment were all denied.

The illegal suspension and revocation of Kaul's license in 2012 and 2014 respectively, were accompanied by a prolonged period of highly defamatory and prejudicial media coverage. This caused Kaul to become the target of multiple lawsuits from patients and insurance carriers, that were filed in the New Jersey Superior Court System. Kaul was arrested on September 21, 2016 on a warrant for unpaid child support, at which time he became aware that the State, a defendant in K1, had, in May 2016, initiated criminal proceedings against him for unpaid taxes. These legal actions were a direct consequence of the illegal suspension (2012) and revocation (2014) of Kaul's license.

In October 2016 Kaul submitted a request with the Court that sought permission to file a TRO and injunction against the state, pending the outcome of the federal proceedings (**K2-D.E. 2-1 Page ID 387**).

Within the New Jersey State Courts, Kaul's motions for various forms of relief have been universally denied. The Union County Court repeatedly denied Kaul's requests for discovery in Allstate v Kaul (Docket No. UNN-L-322-15) (**K2-D.E. 2-1 Page ID 324**), but continued to enter adverse orders against Kaul due to his inability to provide discovery (**K2-D.E. 2-1 Page ID 357**).

A large majority of the state court judges were appointed to their positions by Defendant Christie, and in one particularly egregious case, Allstate v Kaul, the judge denied every motion filed by Kaul, granted every motion filed by Defendant Allstate, and repeatedly denied Kaul's requests for discovery from Defendant Allstate.

The same Judge, in December 2016 and February 2017 in the matter of Santos v Kaul (Docket No. UNN–L–322–15) quashed deposition and document subpoenas served by Kaul on Third Party Witnesses, the majority of whom are neurosurgeons (**K2-D.E. 2–1 Page ID 361**). The denials were based, illegally, on the res judicata and collateral estoppel effect of the K1 federal claims. Kaul explained to the Court that there had been no adjudication of the K1 claims, and that the preclusion doctrines were thus inapplicable. The argument was met with silence.

The subpoenas were directed to multiple neurosurgeons and a member of the medical board, Jacqueline Degregorio, who had voted on June 13, 2012 against rescinding the consent agreement into which Kaul and the medical board had entered on May 9, 2012.

The irrefutable evidence of the administrative, state and federal proceedings indicate that Kaul has not been the recipient of Justice in New Jersey, and has, at least since 2012 been the victim of a profoundly corrupt politico-legal network, that has suppressed Kaul's efforts at gathering evidence necessary to advance and defend his interests.

These are some of the reasons Kaul sought the appointment of a special prosecutor and ad hoc medical board, to oversee Defendant NJBME's administration of Kaul's licensing proceeding in 2012.

Kaul vigorously fought to have K1 remain in the SDNY for good cause. The central thrust of Kaul's argument in early 2016 was that he would not be afforded substantial justice in New Jersey, and the evidence in 2019 has proven that to be the case.

Kaul has brought the 'The Solomon Critique' to the attention of the Justices of the United States Supreme Court. Kaul did this in order to alert them to the criminal conduct of individuals, who as the evidence proves, so willfully perverted the course of justice, to suit the economic and political agendas of the K1 + K2 Defendants. Defendants Solomon, Przybylski, Kaufman and Hafner 'pulled the trigger', while their co−conspirators supplied the bribes, propagated the lies and profited from Kaul's losses (**K1-D.E. 233-Page ID: 5545 to 5600**).

**Kaul's medical license was revoked because of Political Corruption at the New Jersey Board of Medical Examiners and because the Mechanism of Physician Regulation in New Jersey is illegally Configured**

The Division of Consumer Affairs controls the medical board. Its members are political appointees, with no senate approval, who occupy their positions at the pleasure of the Governor.

The Office of the Attorney General is controlled by the Department of Law and Public Safety (DLPS), and assigns lawyers who simultaneously prosecute cases against physicians, while acting as internal counsel to the board. The Governor controls the DLPS. This constitutes an unconstitutional, and illegal merger of investigative, prosecutorial and adjudicatory functions of physician regulation.

The Office of Administrative Law is part of the executive branch of state government, and its members are politically appointed. The executive is the Governor.

The unconstitutional configuration of physician regulation permitted Defendant Christie to exercise complete control of the legal proceedings that caused the revocation of Kaul's license. At best it was a charade, at worst a 'kangaroo court', that dispensed a politically motivated judgment based on false expert and patient testimony. The Defendants have many decades of experience in 'kangaroo' justice and went to immense lengths to ensure that there was an appearance of the **"full panoply"** of due process. The earliest indication that the outcome had been preordained was when

Defendant Christie's Attorney General, Jeffrey Chiesa, on May 9, 2012, broadcast to the media that Kaul was not qualified to perform minimally invasive spine surgery. These comments were made before the commencement of any evidentiary proceedings (**K2-D.E. 2 Page ID 162**).

The Defendants exercised control of the aforementioned process by funneling bribes, to Defendant Christie, disguised as 'campaign donations', and by paying fees to lobbyists and public relation companies commercially intertwined with New Jersey politicians.

The process is not independent, is purely political and is in gross violation of the due process clause of the Fourteenth Amendment, that requires an impartial tribunal, when life, liberty and property are at stake. Simply by virtue of the fact that the mechanism of physician regulation is unconstitutional, none of these protections/rights were afforded to Kaul.

On April 5, 2018 a Physician's Bill of Rights (SENATE BILL NO. 286) introduced by Louisiana Senator, John Milkovich, was approved by the Louisiana Senate (**K2-D.E. 2-1 Page ID 391**). The purpose of the bill is to ensure that physician regulation is conducted lawfully and in accordance with the due process protections of the United States Constitution. Kaul was not afforded these protections. The Defendants gross violations of his Constitutional right to due process, have conferred criminal liability on the defendants.

**Kaul's pioneering work in the field of minimally invasive spine surgery caused professional jealousy amongst his business and professional competitors**

In 2005 Kaul performed the first outpatient lumbar spinal fusion at the Market Street Surgical Center Saddle Brook, New Jersey. Kaul's innovative work caused overt hostility within the New Jersey neurosurgical community, whose members frequently slandered Kaul. One such example occurred in late 2013, when neurosurgeon Thomas Peterson publicly called Kaul a **"murderer"** in front of one of Kaul's employees, Linda Reyes, on whose brother Peterson had just operated **(K2-D.E. 2-1 Page ID 458)**.

Kaul, based upon his own knowledge of the views held by many neurosurgeons, understood that their hostility towards Kaul was partly rooted in their false belief that anyone who did not participate in their training programs, could not possibly have the skills to perform minimally invasive spine surgery. This self-serving view, however, does not accurately reflect the technological advances that have occurred in the field of minimally invasive spine surgery. The most significant advance has been that of

Fluoroscopic Guidance and Interpretation (FGI), which is the most critical component of minimally invasive spine surgery.

Kaul, through multiple communications with members of the New Jersey medico-legal community came to know that the commercial success of his practice, and the publicity associated with his philanthropic work with The Spine Africa Project, contributed to the jealousy that is evidenced in the Zerbini Affidavit (**K2-D.E. 2 Page ID 143**).

In 2005 the Defendant neurosurgeons used their influence within the credentialing committees of hospitals, to prevent Kaul from obtaining clinical privileges at Meadowlands Hospital.

Between 2010 to 2012 multiple articles were published about Kaul's minimally invasive spine surgery work and in 2011 it was reported in the Bergen Record, that NJSR Surgical Center had a zero percent (0%) post-operative infection rate.

On March 3, 2011 the Kaul opened the NJSR Surgical Center, a Medicare certified, AAAHC accredited facility in Pompton Lakes, New Jersey. It is a four-thousand (4000) square foot facility, in which Kaul successfully performed interventional spinal procedures and outpatient minimally invasive fusions and discectomies.

In the period from 2005 to 2012 Kaul came to know through conversations with spine device representatives, patients and physicians, that his professional and commercial success had caused immense jealousy within the medical community. Examples of this defamatory conduct included: (i) comments made by Defendant Heary to Kaul's patient, Frances Kuren in 2008, in which Defendant Heary told Kuren that Kaul was not qualified to perform minimally invasive spine surgery, and that she should file a complaint with Defendant NJBME and initiate a lawsuit. Kuren's fraudulent actions precipitated the proceeding that resulted in the illegal revocation of Kaul's license; (ii) comments made by Defendant Kaufman to Kaul's patients Corey Johnson in 2010, in which Defendant Kaufman, just before he stuck a ten-inch needle into Johnson's spine, loudly exclaimed, "That motherfucker Richard Kaul is trying to take over the spine business, and we are going to put stop to it."; (iii) comments made by Defendant Kaufman to John Zerbini in 2012, in which Defendant Kaufman described how he and another group of doctors were going to destroy Kaul's reputation and medical career, and leave him and his family with nothing (**K2-D.E. 2 Page ID 140**).

From April 2013 to June 2013 there were several press releases and articles that highlighted the Defendants' misconduct (**K2-D.E. 2–2 Page ID 482**).

On September 23, 2013 Johnson filed a complaint with the President of University Hospital, James Gonzalez, but received no reply (**K2-D.E. 2 Page ID 140**).

Kaul's commercial success presented an economic threat to defendants Allstate and GEICO, who bribed Christie to have Kaul's license revoked. The purpose was to negate their statutory economic obligation to pay Kaul for clinical services that he had legitimately rendered to their customers.

From approximately 2006 to 2012 Kaul successfully treated thousands of patients who had sustained spinal injuries consequent to car accidents. Hundreds of these individuals had purchased expensive personal injury protection policies from defendants GEICO and Allstate, with the understanding that should they require medical attention for traumatic injuries, the costs would be covered. New Jersey has a no-fault system that over the last decade has incorporated a fee arbitration system that ensures healthcare providers and facilities are compensated for the provision of clinical services. The arbitrators are lawyers, well versed in healthcare law, and render payment decisions based on the medical evidence presented.

From 2006 to 2012 Kaul prevailed on almost ninety-nine percent (99%) of all claims presented for arbitration. Defendants GEICO and Allstate employed their legions of lawyers to contest each and every claim and lost almost ninety-nine percent (99%) of all claims. When defendants Allstate and GEICO are unable to prevail in state sanctioned arbitration forums, they resort to filing frivolous lawsuits in corrupted federal and state courts, in the knowledge that the majority of providers are unable to match their legal resources, and the judges have been bribed.

Defendants Allstate and GEICO's pattern of racketeering is that Defendant GEICO runs into federal court, while its racketeering comrade, Defendant Allstate, runs into the New Jersey Superior Court, Union County. Defendant GEICO, unable to defeat Kaul in the arbitration forums, filed a one-hundred and eight-page (108), three hundred and thirty-nine paragraph complaint against Kaul, his corporations, and three of his employee physicians, on April 24, 2013.

The matter was dismissed without prejudice on December 8, 2014, with absolutely no evidence ever having been presented to support any of the eleven (11) causes of action.

On February 15, 2015 Defendant Allstate filed an almost identical lawsuit against Kaul in the New Jersey Superior Court, Union County Court, and as with Defendant GEICO, Defendant Allstate has not presented any evidence in support of its one hundred and

eleven (111) page, three hundred and sixty-four (364) paragraph, seventeen (17) count complaint. It is simply Defendant Allstate's avenue to re-litigate claims it lost against Kaul in state sanctioned arbitration forums.

The accounts receivable of Kaul's practice grew three hundred percent (300%) from March 2011 to April 2012, and he performed cases on an outpatient basis, that although termed "complex" by neurosurgeons, proved to be simple, because of the surgical techniques he employed. Kaul observed, during many of the CME courses, that many neurosurgeons do not have good stereo-tactical hand-eye coordination, a prerequisite for the effective use of FGI, the most critical component of minimally invasive spine surgery. These technical deficits are a consequence of neurosurgical training, which does not expose the student to FGI, to the same degree experienced by physicians from interventional pain and radiological backgrounds.

In the US the completion of a residency and board certification do not require the graduate to pass a technical skills test, but simply a written and oral examination. That would be akin to issuing a driver's license without the road test. Thus, the only way that one could compare the abilities of two surgeons, as for example with two baseball players, is to observe them in action. Kaul's videos demonstrate him in action, while no video evidence exists to support the technical abilities, or lack thereof, of any of the other physician defendants. In fact, many of Kaul's colleagues observed him operating, and submitted letters that attested to his surgical skills (**K2-D.E. 2−1 Page ID 410**). When Kaul's license was suspended in April 2012, he suggested to Defendant NJBME that he be independently observed. This common sense suggestion was ignored.

Kaul's reputation in the field of minimally invasive spine surgery grew steadily from 2002, and he frequently taught his technique to other physicians, who both observed him in the operating room and attended hands-on cadaver training courses. At many of these courses the attendees included neurosurgeons and orthopedic spine surgeons (**K1−D.E. 225−1–Page ID: 5119**).

Commencing in 2010 Kaul's philanthropic and professional work received extensive media coverage. A segment on Channel 12 news in August 2011 apparently caused members of the New Jersey neurosurgical community to tell Spineology representative, Robert McGann that "it [the Channel 12 interview] was the last straw":

https://www.youtube.com/watch?v=q_HBzqfggrg&t=336s

**The Defendants conspired to eliminate Kaul from the practice of medicine by encouraging patients to file complaints with Defendant New Jersey Board of Medical Examiners**

Defendants Kaufman, Heary, Przrbylski, Cohen and Staats commenced a campaign of legal harassment in approximately 2007, when they began to file complaints against Kaul with Defendant NJBME. At approximately the same time these defendants encouraged patients to file lawsuits against Kaul. These defendants conspired with Defendant Hafner and local malpractice lawyers to initiate the claims, in which Defendants Kaufman and Przybylski invariably provided 'expert testimony'.

Defendants Kaufman, Heary, Przybylski, Cohen and Staats used their senior positions within their professional societies and hospitals to further these schemes, which were planned and orchestrated at meetings that occurred in New Jersey, Illinois and Washington, D.C. A majority of the communications occurred via email and text.

Defendants Kaufman, Heary, Przybylski, Cohen and Staats discussed these schemes with other physicians and patients on the premises of Defendants HUMC and AHS, in a period that commenced in approximately 2007 and continues to this day.

**The Defendants conspired to engage in media censorship and suppress Kaul's First Amendment Right to Free Speech**

In early April 2013, Rutgers student, Sidra Bajwa, attended the administrative proceeding in the New Jersey Office of Administrative Law on the seventh (7th) floor of 33 Washington Street, Newark, NJ.

Bajwa wrote an opinion piece about her experience of the event. The article was published the following week in the print and online version of the Observer, the Rutger's student newspaper (**K2-D.E. 2-1 Page ID 419**).

The story garnered significant attention from the student body and eventually came to the attention of Defendant Christie, who upon information and belief, contacted the President of Rutgers, Dr. Robert Barchi, and demanded that the online version be removed (**K2-D.E. 2−1 Page ID 421**).

The student editors not only removed Bajwa's article but published a story that attacked Bajwa's objectivity and falsely reported a detail about a case from the UK that had occurred in 1999, in which Kaul had provided intravenous sedation to a patient. This act

of censorship caused a number of students to protest and caused Bajwa to complain to the Dean of Rutgers (**K2-D.E. 2-1 Page 456**).

In response to the false Observer article, Kaul's lawyer sent the student editors a letter that demanded a retraction (**K2-D.E. 2-1 Page ID 421**).

From the commencement of the proceedings against Kaul, the Defendants conspired with Defendant NJMG and other NJ media outlets to publish stories that were slanderous, defamatory and illegally procured.

**Kaul's medical license was revoked because of the massive fraud detailed in 'The Solomon Critique'.**

The Defendants tampered with evidence to fit their fraudulent narrative. The irrefutable evidence of this is contained within, 'The Solomon Critique' (**K1-D.E. 225-PageID: 4940 to 5273**), which proves that Defendants Solomon, Przybylski and Kaufman collectively committed two hundred and seventy-eight (278) separate instances of perjury and evidential misrepresentation, omission and gross mischaracterization. Defendant Washburn discussed the issue of evidence tampering with Kaul on August 13, 2013, at the commencement of an interview that took place on the second floor of Kaul's Medicare Certified, AAAHC accredited surgical center in Pompton Lakes, NJ (**K2-D.E. 2 Page ID 224**). Kaul's public relations officer, Kelley Blevins, was present during this interview and two weeks earlier had discussed the issue with Defendant Washburn, during a meeting at a hotel in Manhattan, New York.

Defendant NJBME took no internal or external investigatory action when Kaul informed them in February 2014 (**K2-D.E. 2-1 Page ID 241**), that evidence had been tampered with in the proceedings in the New Jersey Office of Administrative Law. Defendant NJBME simply discounted Kaul's claims, referring to them as **"insubstantial"** (**K2-D.E. 2-1 Page ID 424**). 'The Solomon Critique' has proven them to be immensely substantial and proves that Defendant NJBME provided cover to a criminal conspiracy in which they played a pivotal role.

Physician Kenneth Zahl, described to Kaul in 2016, how members of the Office of the New Jersey Attorney General had engaged in the illegal shredding of critical pieces of evidence in other cases. In Zahl v Warhaftig (Docket No. 13-CV-01345), Zahl filed a motion on August 6, 2013 that sought access to the OAL servers, based on the report of an expert in digital forensics, who raised the issue of evidence tampering. The expert, Robert Gezelter, stated in ¶ 29 of his report, "I can conclude, with a high degree of professional certitude, based upon my professional experience and familiarity with

Microsoft Word that, assuming that ALJ Gerson correctly dated his signature on Exhibit "3" before the close of court (4:00 PM EST) on December 7, 2008, that one or more individuals made changes to Exhibit "3" which are recorded as having been made after ALJ Gerson purportedly executed the subject Initial Decision." Zahl asserted, "There is clear evidence of an altered administrative law court decision, a cover-up of the tampering, and missing evidence."

Zahl had his license revoked in New Jersey in approximately 2005 and filed suit against Defendant Lomazow in the United States District Court, District of New Jersey in approximately 2009. The claim was dismissed and Zahl's appeal to the Third Circuit was denied. However, the litigation involved allegations that members of the Office of the New Jersey Attorney General had shredded critical pieces of evidence, and that Defendant Lomazow had used the power of his office to intimidate Zahl's experts into not testifying for him. This was a tactic used by Defendant NJBME to professionally isolate Kaul. The experts that testified on behalf of Kaul in the administrative law proceedings were Drs. Solomon Kamson and Kent Remley, who are based, respectively, in the States of Washington and Indiana.

On or about January 22, 2014, Defendant Lomazow gave an interview, in which he discussed the events of his eight (8) year tenure at Defendant NJBME. During the interview he suggested that Dr. Kenneth Zahl was responsible for the death/suicide in 2006 of Deputy Attorney General, Paul Kenny, and described his interactions with Zahl. For three years Kenny's wife tried unsuccessfully to have her husband's untimely death investigated. The interview concludes with Lomazow's scathing description of the patients who had come to support Zahl:

https://www.youtube.com/watch?v=sFtE8EvEMsU

**Defendants Allstate + GEICO propagated knowing falsehoods that Kaul had committed insurance fraud + Defendant TD negligently failed to perform any due diligence before acting on Defendants Allstate and GEICO's patent falsehoods + Defendants Stolz + DiOrio conspired with Defendants Allstate + GEICO to commit fraud against Kaul + Creditors of the Bankruptcy Estate.**

In approximately 2008/2009 Kaul entered into loan agreements with Defendant TD, in order to procure funding for the development of the NJSR Surgical Center, in Pompton Lakes, NJ. Defendant TD demanded that Kaul assign them all of his banking and financial services, both business and personal.

In May 2011 Defendant TD accelerated their loans and demanded full repayment on their business and personal loans. At this time Kaul was unaware of their conspiracy with the other Defendants.  Kaul had two meetings with legal and business representatives of Defendant TD. The first was with senior loan officer, Terry McCoy, at the Lawrenceville location in NJ, and the second was with the Defendant's lawyer, William Fiore, Esq in Newark. Both meetings were exceptionally hostile, and demands were made for immediate repayment of the loans. Kaul was current with the loans, and no good cause was given by Defendant TD. In fact, at the meeting in Newark, when Kaul explained he first had to service a federal IRS debt, Fiore retorted: "I don't give a fuck about the IRS." The meeting concluded shortly thereafter. Kaul intends on referring Fiore's law firm, Meyner and Landis to the Inland Revenue Service, with a recommendation to investigate whether the lawyers for Defendant TD have engaged in tax evasion.

Kaul agreed to increase the monthly payments and repeatedly requested that Defendant TD provide a structured payment plan. Defendant TD ignored Kaul's efforts to structure an agreement.

On October 26, 2012, Defendant TD filed a lawsuit in the New Jersey Superior Court, Morris County, that sought to mandate Kaul and his corporations immediately repay Defendant TD's loans. Kaul, upon receiving the complaint, gave it to a lawyer, and requested it be answered. The lawyer failed to file answers, and because Kaul was preoccupied with preparing for the administrative law proceeding, he did not follow up, and thus the complaint went unanswered.

Defendant TD obtained a default judgment, and on April 2, 2013 the Morris County Court entered an order for the appointment of a receiver. On April 9, 2013, the first day of the administrative law proceeding, the receiver seized all of Kaul's personal and corporate assets and as a consequence, Kaul's attorney filed a motion to withdraw from the administrative case. The motion was denied.

At the end of May 2013 Kaul became homeless.

On June 17, 2013 Kaul, on behalf of his corporations filed for Chapter 11 Bankruptcy. On July 21, 2014 the proceedings were converted to a Chapter 7 liquidation, consequent to the revocation of Kaul's license on March 12, 2014.

Kaul retained Defendant DiIOrio to defend his interests in the Chapter 7. The Court appointed Defendant Stolz as the trustee to the estate. The estate's largest asset was its accounts receivable (AR), of approximately forty-five million dollars

($45,000,000.00). The estate also possessed a surgical center registration for NJSR Surgical Center and a license to build a new surgical center. Kaul obtained one of the last licenses issued by the State in 2009, before the commencement of a moratorium on surgical center development.

Defendant Stolz has collected less than 0.1% of the AR from Defendants Allstate and GEICO, and none of the forty-four (44) plus creditors have received any monies from Defendant Stolz. In fact, the only monies that were 'clawed back' were from lawyers and accountants who had provided professional advice to Kaul and his corporations. Defendant Stolz filed numerous claims against these practitioners, the majority of whom have small businesses.

Defendant DiIOrio provided fraudulent legal advice to Kaul during the Chapter 7 proceedings. The real estate that contained the NJSR Surgical Center was not part of the Chapter 11 estate. However, on its conversion to a Chapter 7 Defendant Stolz and his now deceased partner, Robert Wasserman, threatened to file claims against Kaul and his ex-wife, unless he signed over the deed to the real estate. Kaul sent Wasserman a letter, dated December 14, 2015, in which Kaul advised Wasserman of the civil and criminal penalties that he would incur, if evidence emerged that he had aided and abetted the Defendants crimes (**K2-D.E. 2-2 Page ID 492**).  Kaul initially refused, but DiIOrio advised Kaul that if he did not transfer the deed, then it was likely that his ex-wife and children would become homeless. Under immense duress and fraudulent legal representation, Kaul was improperly divested of his ownership in the NJSR real estate.

In late 2015 Defendant DiIOrio suggested to Kaul that he file for personal bankruptcy. Kaul did not.

In mid May 2017, upon checking the Bankruptcy Docket, Kaul discovered that Defendant DiIOrio was listed as legal counsel for Defendant GEICO. Kaul sent a letter to Defendant DiIOrio that explained his concerns and his intention to commence legal action if DiIOrio did not consent to an interview (**K2-D.E. 2-1 Page ID 404**). DiIOrio did not respond to Kaul's letter.

In 2017 Kaul also sent several emails to Defendant Stolz that requested information on how much of the accounts receivable he had collected. Defendant Stolz, who provides legal services to Defendants Allstate and GEICO, did not provide the information. Upon information and belief Defendant Stolz has collected less than 0.1% of the monies owed to Kaul by Defendants Allstate and GEICO.

**Kaul is Qualified, Educated, Credentialed and Trained to perform Minimally Invasive Spine Surgery, contrary to the Defendants' false allegations. Kaul has performed eight hundred (800) cases with good to very good outcomes in 90-95% of cases.**

Kaul is a minimally invasive spine surgeon, who graduated in 1988 from the Royal Free Hospital School of Medicine in London, UK. He subsequently underwent eight (8) years of post-graduate training in the US and UK, in the fields of general surgery, anesthesiology, interventional pain and minimally invasive spine surgery.

In August 1996 Kaul became licensed to practice Medicine and Surgery in New Jersey.

In September 1996 Kaul became Board Certified by the American Board of Anesthesiology.

From 2002 to 2012 performed eight hundred (800) minimally invasive spine surgeries and a total of six thousand (6000) spine procedures, with good to very good outcomes in 90-95% of cases (average 65-70%) and a complication rate of 0.1% (average 5-15%):

https://www.youtube.com/watch?v=9NjJV7XhBB0&t=172s

From 1992 to 2001 Kaul administered approximately ten thousand (10,000) anesthetics.

In 2005 Kaul performed the first outpatient minimally invasive lumbar fusion:

https://www.youtube.com/watch?v=50R5N9bJMAg&t=202s

In 2011 Kaul performed the first outpatient corrections of an adolescent spondylolisthesis and a multi-level degenerative scoliosis

https://www.youtube.com/watch?v=oxaV5IJuZ7c&t=1s

From 2003 to 2012 Kaul was credentialed by at least six (6) state licensed surgical centers to perform minimally invasive spine surgery.

From 2002 to 2012 Kaul attended approximately eighty (80) hands on cadaver training courses, and also educated other physicians in the minimally invasive spinal technique.

Defendant Przybylski commenced performing minimally invasive spine surgery in 2005, three (3) years after Kaul.

In 2004 Kaul became board certified by the American Academy of Minimally Invasive Medicine and Surgery.

None of the Physician Defendants are board certified by the American Academy of Minimally Invasive Spinal Medicine and Surgery.

In 2008 Kaul established the Spine Africa Project, a 501 (c) 3 US based charity whose mission is to provide free healthcare and education to impoverished communities in Africa, India and the US:

https://www.youtube.com/watch?v=Zu50ik2l2Sc&t=1227s.

Defendant Christie's criminal conduct caused immense harm to the charity that resulted, in 2012, in the cessation of Kaul's philanthropic work.

On June 22, 2009 an independent arbitrator entered a judgment (NJSR a/s/o Frances Kuren v Palisades Ins. Forum File No. NJ1232047) against Palisades Ins. and awarded Kaul his fee for having performed a minimally invasive spinal fusion on patient FK. The arbitrator found that Kaul was properly licensed; the procedure was properly performed and was medically necessary. Significantly the arbitrator found, after a review of all of the clinical evidence:

**"Dr. Kaul recommended pain management intervention followed by surgical intervention. The course of treatment performed by Dr. Kaul was consistent with the clinically supported symptoms, diagnosis and indications of the patient. Dr. Kaul's treatment plan was the most appropriate level of service that is in accordance with the standards of good practice and standard professional treatment protocols"**.

Kaul utilized the same treatment algorithms on all of his patients.

On March 3, 2011 Kaul opened NJSR Surgical Center, a Medicare certified, AAAHC accredited facility in Pompton Lakes, New Jersey. The Center credentialed Kaul to perform interventional spinal procedures and minimally invasive fusions and discectomies.

Kaul's practice grew three hundred percent (300%) from March 2011 to April 2012, and he increasingly performed cases on an outpatient basis, that although termed "complex" by neurosurgeons, proved to be simple because of the surgical techniques employed by Kaul:

https://www.youtube.com/watch?v=oxaV5IJuZ7c&t=11s

Kaul's reputation in the field of minimally invasive spine surgery grew steadily from 2002, and he frequently taught his technique to other physicians, who observed him in the operating room and attended his lectures:

https://www.youtube.com/watch?v=AObxnXGmQkk&t=303s.

The following video was presented at the medical board hearing on June 13, 2012 by Defendant Hafner, as evidence, incredulously, of Kaul's alleged malfeasance. A procedure is done perfectly, the patient gets better, and Kaul is criticized:

https://www.youtube.com/watch?v=guwx5kuBiEg&t=162s

<u>Kaul has sustained a new and independent injury consequent to the defendants'</u>
<u>"pattern of racketeering"</u>

On May 21, 2019 the Pennsylvania Medical Board denied Kaul's application for licensure. It based its decision on the revocation of Kaul's medical license in New Jersey, on March 12, 2014. The denial constitutes a "new racketeering injury" that is a direct consequence of the defendants RICO violations, as detailed below. Kaul has once again been "injured in his business or property" and his right to sue for damages from this "new racketeering injury" began to accrue on May 21, 2019. The Supreme Court in Malley-Duff, 483 U.S. 107 held that each time a plaintiff suffers an injury caused by a violation of 18 U.S.C. § 1962, a cause of action to recover damages based on that injury accrues to Kaul at the time he discovered or should have discovered the injury.

# <u>Overview of Plaintiff's Legal Claims</u>

Defendants' commission of the crimes of wire fraud and mail fraud are the predicate acts that constitute the definition of a Racketeering Enterprise under the Racketeer Influenced and Corrupt Organizations Act of 1970 (RICO) (18 USC 1961, et seq.).

RICO, as enacted, constitutes a potent weapon against enterprise liability. RICO's civil law provisions (hereinafter "civil RICO") provide injured plaintiffs with the incentive to sue by providing a treble damage award plus attorneys' fees. As does antitrust litigation, civil RICO suits enable private party enforcement of criminal statutes.

With deterrence in mind, RICO includes a provision allowing private parties to bring a civil suit for treble damages. Kaul must overcome two pleading burdens to state a claim for damages under RICO.

First, Kaul must allege that the defendant has violated the substantive RICO statute, commonly known as "criminal RICO." In so doing, Kaul must allege the existence of seven constituent elements: **(1)** that the defendant **(2)** through the commission of two or more acts **(3)** constituting a "pattern" **(4)** of "racketeering activity"
**(5)** directly or indirectly invests in, or maintains an interest in, or participates in **(6)** an "enterprise" **(7)** the activities of which affect interstate or foreign commerce. Second, Kaul must allege that he was injured in his business or property by reason of a violation of section 1962.

Plaintiff submits that he can meet all of the requirements to establish a violation of Section 1962 of the Federal RICO Act and, thus, is entitled to an award of treble damages, attorney's fees and costs.

# Claims for Relief

**COUNT ONE**
**RICO**
**Allstate/Boston Partners/State Street Partners**

Defendants Allstate/Boston Partners/State Street Corporation in forming an Association-In-Fact Enterprise ("ABS Enterprise"), with the intent and purpose of conducting  a **"pattern of racketeering"** to advance a knowingly illegal scheme of grand corruption, through the commission of the predicate acts mail fraud/wire fraud/judicial corruption/public corruption/bribery/kickbacks, purposed for executive/corporate profit, did intentionally cause an immense injury to Kaul.

Evidence of this scheme is contained within the digital/non-digital communications (emails/texts/internal written memos/memorialized conversations/face-to-face meetings) contained on the ISP servers of the Defendants, and on their internal 'secure' networks, which limited discovery will further expose.

In a period from approximately 2010 to November 2018, Defendants Allstate, Boston Partners and State Street Partners, in their pursuit of executive/corporate profit did willfully and knowingly violate RICO, through the commission of the predicate acts mail fraud/wire fraud/bribery/conspiracy/public corruption and fraud.

Defendants Allstate/Boston Partners/State Street Corporation in collusion/conspiracy and under direct orders from their CEOs, Thomas Wilson, Mark Donovan and Joseph Hooley, did use the cover of their corporations to conduct **"patterns of racketeering"**. It was conducted in furtherance of their scheme to eliminate Kaul from the practice of medicine and minimally invasive spine surgery, in order to eliminate a $45 million debt owed principally by them to him/his corporations, for clinical services he had rendered to injured clients of Defendant Allstate.

The Defendants RICO scheme caused an immense injury to Kaul's reputation, his economic standing, his professional career and to the lives of his children and thousands of his patients/their families, a number of whom committed suicide when the Defendants had Kaul's license illegally revoked on March 24, 2014. Kaul had cared for many patients without insurance that no other physicians would treat, and it was these individuals, abandoned because of the Defendants' crimes, who ended their lives.

In approximately 2007, Defendant Allstate received consulting advice from McKinsey and Co., a American based global consulting firm that recently settled a case for $573

million, that was filed by forty-seven (47) states against Purdue Pharmaceuticals, the manufacturer of Oxycontin. McKinsey engineered a scheme for Defendant Allstate, the details of which were described in a book entitled: **"DELAY, DENY, DEFEND - WHY INSURANCE COMPANIES DON'T PAY CLAIMS AND WHAT YOU CAN DO ABOUT IT"** - By Jay M. Feinman - Delden Press. The book's synopsis is as follows:

**"An expose of insurance injustice and a plan for consumers and lawmakers to fight back. Now a paperback of a hard-hitting original. The denial of valid insurance claims is not occasional or accidental or the fault of a few bad employees. It's the result of an increasing and systematic focus on maximizing profits by major companies such as Allstate and State Farm. Citing dozens of stories of victims who were unfairly denied payment … It also lays out a plan for legal reforms needed to prevent future abuses."**

The book was published in 2010. In 2012, the CEO of McKinsey during the period that 'advice' was provided to Defendant Allstate and Purdue, was Rajat Gupta, who spent two years in federal jail in charges of insider-trading. Defendants Allstate/Boston Partners/State Street Corporation filed neither defamation claims against the author/publisher nor publicly denied the claims made in the book.

As a consequence of the Defendants implementation of McKinsey's patently illegal advice, they did illegally profit at the expense of Kaul and the professional services he had rendered to thousands of their injured clients. The Defendants' **"DELAY, DENY, DEFEND"** scheme resulted in a rise in share value that was a consequence of their knowing violation of RICO. In 2007 the share price of Defendant Allstate was approximately $47/share. In 2019 the share price was approximately $125, and in 2020 it dropped to $75.

The McKinsey proffered scheme, one that the Defendants knew was illegal, caused an increase in share price, as the Defendants bribed state politicians to facilitate arbitrary increases in premiums charged to the public, bribed state/federal judges to dismiss any and all claims filed against them for non-payment, implemented policies of blanket denials of payment to healthcare providers, including Kaul.

On February 8, 2021, it was reported in NBC that **"Consulting giant McKinsey allegedly fed the opioid crisis. Now an affiliate may profit from treating addicts … In addition, investment records show, during the years McKinsey was helping opioid makers propel sales of the drugs, MIO Partners held stakes in companies that profited from increased usage."**

This fact is included as it provides further context to the corporate corruption/profiteering of medicine, of which Defendant Allstate/Boston Partners/State Street Corporation stand accused.

The Defendants in collusion/conspiracy with state/federal investigative/prosecutorial authorities and state medical boards, targeted ethinic minority/solo practitioners/immigrant physicians to whom they owed monies, with license suspension/revocation/civil judgements and in the most sinister manner, criminal convictions/lengthy incarcerations, that they then used as an excuse to not pay physicians monies owed for clinical services rendered. These illegally procured profits were laundered on the NYSE which defrauded their business competitors of their right to honest services and fair competition.

From the commencement of **The Kaul Cases** (February 22, 2016), Defendant Allstate failed to disclose the litigation in its quarterly (13K) and annual (10K) reports to the market, thus committing a massive fraud on the NYSE and potential investors.

On November 22, 2018 Kaul sent a letter to Mark Donovan and Joseph Hooley, the CEOs respectively of Defendants Boston Partners and State Street Corporation, in which he alerted them to the failure of Defendant Allstate to report K1/K2 to the market (**Exhibit 11-KAUL:0118**).

Subsequent to receipt of the letter the Defendants did use the US mail and wires in furtherance of their conspiracy to perpetuate their **"pattern of racketeering"**, a **"pattern"** that they had conducted by converting their corporations/the executive/legislative/judicial branches of state/federal government, state/federal investigative/prosecutorial authorities and the NYSE into **"racketeering enterprises,"** all purposed to increase executive/corporate profit at the expense and to the injury of the American public and medical profession, both groups of which Kaul is a member.

**The Kaul Cases** expose the simple truth of the Defendants' crimes against Americans, and it is this: Defendants Allstate/Boston Partners/State Corporation in collusion/conspiracy with corrupted lawyers/physicians/politicians/judges/business executives/political lobbyists/public relation firms/media have perpetrated a massive and lethal fraud on the American public, as is now evident in the so called **"opiate epidemic,"** the excessive COVID-19 related mortality/morbidity rate in the US compared to most other western democracies and the **"pain epidemic"**.

The **"pain epidemic"** is a consequence of misguided opiate-prescribing CDC guidelines, promulgated by individuals such as Dr. Andrew Kolodny/PROP, as part of a

series of quid pro quo schemes in which he received bribes from Suboxone manufacturer, Indivior (a subsidiary of British pharmaceutical corporation, Reckitt Benckiser), that is seeking to eliminate Purdue from the opiate market in order to monopolize it with suboxone, simply another opiate. The CDC guidelines have recently been deemed unreliable by the AMA, but in the period from their inception to the present, thousands of physicians have been wrongly jailed for alleged crime of prescribing outside the bounds of medical practice, as defined in the now defunct CDC guidelines. Similarly, millions of patients with chronic pain have been denied life-saving care, with many committing suicide. The entire premise of the CDC guidelines was false. The increase in deaths from opiates was not related to prescription opiates, but to street grade heroin that had been laced with fentanyl. In fact, since the implementation of the CDC guidelines, the mass incarceration of physicians (many with jail terms well in excess of actual traffickers of illegal drugs) and the public vilification of Purdue, the deaths from opiate overdosing have increased, while the prescription of legal controlled opiates has substantially decreased (**Exhibit 33-KAUL:0450**).

Defendants Allstate/Boston Partners/State Street Corporation have profited from the **"pain epidemic"** in that less money was spent on pain patient prescriptions.

Subsequent to the November 22, 2019 letter, the Defendants conspired to conceal the information from the market, which caused an illegal rise in share price.

In the first quarter of 2020, Defendant Boston Partners, divested a majority of its holdings in Defendant Allstate. The share price of Allstate dropped to approximately $75.

On August 18, 2020, Kaul sent a second letter to Donovan and Hooley (**Exhibit 15-KAUL:0154**).

In late 2020, Defendant Allstate, through a series of buy-backs and other modes of market manipulation, caused an illegal rise in share price to approximately $102.

The Defendants in recognizing that **The Kaul Cases** have exposed their crimes in the political/judicial/legal bodies as well as in the financial sector have engaged in tactics of market manipulation in an attempt to mitigate the losses incurred consequent to **The Kaul Cases** induced reduction in investor confidence.

Within the **"ABS Enterprise"**, within which the above schemes have been committed, Defendants Allstate/Boston Partners/State Street Corporation and their CEOs, have interchangeably acted as **"persons"** and **"enterprises"** as defined within RICO, in

order to create legal opacity purposed to conceal their crimes under its cover and that of corporate veils, state/federal courts, state/federal government and the NYSE.

The Defendants, consequent to their massive schemes of **"racketeering",** that contributed to the illegal revocation of Kaul's license (March 24, 2014) have caused **"new racketeering injuries"** to Kaul, which include his inability to obtain a medical license in the State of Massachusetts (**Exhibit 17- KAUL:0162**). The Defendants are liable to Kaul for all injuries caused to him in the period from April 2, 2012 to the present that pertain, relate or are in any way associated with the damage caused to his reputation/economic standing/professional career and life. The Defendants crimes have caused Kaul to be illegally deprived of almost a decade of his professional career, the property of his medical license and his ability to find work in any field in any part of the world, because of the permanent damage caused to his reputation on the internet.

The Defendants through their schemes, as detailed above, have engaged in the illegal practice of medicine through the corruption of state medical boards, the Federation of State Medical Boards and the political/legislative/judicial branches of state/federal government. In the perpetration of these schemes, Defendant Allstate, as with many other for-profit healthcare corporations have attempted to immunize themselves from criminal prosecution by coercing physicians, or **"medical directors"** as they are euphemistically known, into signing denials for life-saving patient care (**Exhibit 33-KAUL:0482**). For-profit insurance companies have, since the early 1930s, been attempting to practice/control the practice of medicine. See: Group Life & Health Ins. Co. v. Royal Drug Co., Inc., 440 U.S. 205 (1979); Arizona v. Maricopa County Med. Soc'y, 457 U.S. 332 (1982); THE PEOPLE ex Rel. STATE BOARD OF MEDICAL EXAMINERS, Respondent, v. PACIFIC HEALTH CORPORATION, INC. (a Corporation), Appellant. S.F. No. 15690. Supreme Court of California. In Bank (September 2, 1938).

There exists little or no difference between the corporate tyranny exacted on Kaul and the American public/medical profession by Defendants Allstate/Boston Partners/State Street Corporation and that exacted on humanity by the slaving industry and the holocaust. The exploitation of power for the procurement of profit at the expense of people's property, liberty and life. The antithesis of America and its Constitution.

**COUNT TWO**
**VIOLATIONS OF 18 U.S.C. § 1962(C)-(D)**
**THE RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT, 18 U.S.C.**
**§ 1961, ET SEQ.**
**(By Plaintiff against Defendants Christie + Kaufman + Przybylski + Heary + Staats**
**+ Lomazow + Hafner + Cohen + CNS + ASIPP)**
**The CHC RICO Association-In-Fact-Enterprise**

Plaintiff incorporates by reference each preceding paragraph as though fully set forth herein.

Plaintiff brings this Count against Defendants Christie + Kaufman + Przybylski + Heary + Staats + Lomazow + Hafner + Cohen + CNS (inclusively, for the purpose of this count, the "CHC RICO Defendants'). At all relevant times each of the CHC RICO Defendants has been a "person" under 18 U.S.C. § 1961(3), because each is capable of holding, and does hold, "a legal or beneficial interest in property." Section 1962(c) makes it "unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity." See 18 U.S.C. § 1962(c).

Section 1962(d) makes it unlawful for "any person to conspire to violate" Section 1962(c), among other provisions. See 18 U.S.C. § 1962(d).

As explained in detail below, the CHC RICO Defendants sought, amongst other things, to eliminate Kaul from the practice of medicine, destroy his reputation in the field of minimally invasive spine surgery and destroy his economic standing.

The CHC RICO Defendants pursued these ends through a fraudulent scheme designed to secure increased revenues and market share, increase their political power within the medical community and secure their commercial relationships with each other. As explained in detail below, the CAC RICO Defendants years-long misconduct violated sections 1962(c) and (d).

**Description of the CHC RICO Enterprise**

RICO defines an enterprise as "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961 (4). An association-in-fact enterprise requires three

structural features: (1) a purpose; (2) relationship among those associated with the enterprise; and (3) longevity sufficient to permit those associates to pursue the enterprise's purpose.

For years ASIPP played a small but meaningful role in the emerging field of minimally invasive spine surgery. It entered into verbal agreements with the neurosurgical members of Defendant CNS, from whom its members were referred patients. The horizontal agreement required that members of Defendant ASIPP would artificially limit their members scope of practice to percutaneous discectomies. However, in 20

In the past decade, however, Defendant ASIPP began to exert influence in their role as the arbiters of who was qualified to perform minimally invasive spine surgery, to influence the success or failure of high profile interventional pain physicians who did not contribute financially to ASIPP, but who had expanded their scope of practice. Defendant ASIPP, because of its horizontal agreements with Defendant CNS and other spine societies, sought to control who entered the interventional pain and minimally invasive spine surgery sector.

Negotiations between the CHC RICO Defendants regarding the division of the spine market, took place in complex, closed-door meetings, during which the parties discussed the threat of Kaul's expanding outpatient minimally invasive spine surgery practice. In order to ensure that their members continued to receive referrals from the neurosurgeons who had become concerned that Kaul's practice would expand nationally. The Defendants ASIPP agreed to participate in a scheme to have Kaul's medical license revoked and stop him from performing minimally invasive spine surgery. The Defendant Neurosurgeons had become aware that Kaul was training other minimally invasive spine surgeons, and that his work was being widely publicized.

At all relevant times, the CHC RICO Defendants operated an ongoing association-in-fact enterprise, which was formed for the purpose of ensuring that that the horizontal agreements and market share distributions of the other CHC RICO Defendants continued to grow, by fraudulently excluding Kaul, monopolizing the market and then artificially increasing their prices. Most of these meetings occurred behind closed doors in Morris County, NJ and Washington, D.C. Defendants conducted a pattern of racketeering activity under § 18 U.S.C. 1961(4).

Alternatively, each of the CHC RICO Defendants constitutes a single legal entity "enterprise" within the meaning of 18 U.S.C. § 1961(4), through which the CHC RICO Defendants conducted their pattern of racketeering activity. The CHC RICO Defendants separate legal statuses facilitated the fraudulent scheme and provided a hoped-for

shield from liability for the CHC RICO Defendants and their co-conspirators. The enterprises, alleged in this and the previous paragraph, are referred to collectively as the "CHC RICO Association-In-Fact-Enterprise".

At all relevant times, the CHC RICO Association-In-Fact Enterprise constituted a single "enterprise" or multiple enterprises within the meaning of 18 U.S.C. § 1961(4), as legal entities, as well as individuals and legal entities associated-in-fact for the common purpose of engaging in the CHC RICO Defendants profit making scheme, and the fraudulent scheme to provide 'experts' to ensure the revocation of Kaul's license.

The CHC RICO Association-In-Fact Enterprise consisted of the following entities and individuals: (a) Defendants ASIPP, Kaufman and Staats; (b) Defendants CNS, Heary and Przybylski; (c) Defendants Christie, Lomazow and Hafner; (d) Defendant Cohen.

While each of the CHC RICO Defendants acquired, maintained control of, were associated with, and conducted or participated in the conduct of the CHC RICO Association-In-Fact Enterprise's affairs, at all relevant times, the CHC RICO Association-In-Fact Enterprise: (a) had an existence separate and distinct from each CHC RICO Defendant; (b) was separate and distinct from the pattern of racketeering in which the CHC RICO Defendants engaged; and (c) was an ongoing and continuing organization consisting of legal entities, including the CHC RICO Defendants, along with other individuals and entities, including unknown third parties.

The CHC RICO Association-In-Fact Defendants and their co-conspirators, through their illegal CHC RICO Association-In-Fact Enterprise, engaged in a pattern of racketeering activity, which involved a fraudulent scheme to increase revenue for the CHC RICO Association-In-Fact Enterprise's activities by illegally conspiring to have Kaul's license revoked, protecting their illegal horizontal 'fusion percutaneous' agreements, monopolizing the markets, artificially elevating their prices, and illegally reducing competition.

Defendants Staats, Kaufman, Przybylski, Heary and Cohen orchestrated the CHC RICO Association-In-Fact Scheme, whereby they leveraged their dominant political positions to have Kaul's medical license revoked. The purpose of the Scheme was to eliminate competition and facilitate the Defendant Neurosurgeons monopolization of the minimally invasive spine surgery market, from which Defendants Kaufman and Staats profited through increased referrals from the Defendant Neurosurgeons.

The CHC RICO Association-In-Fact Enterprise was provided with the use of state agencies (Defendant NJBME) personnel (Defendant Hafner + Defendant Solomon) and

resources (State Treasury) which they illegally used to revoke Kaul's license. These services were provided in return for bribes and 'campaign donations' paid by the CHC RICO Association-In-Fact Defendants to Defendant Christie.

In furtherance of the scheme, Defendants Kaufman, Staats, Heary, Przybylski and Cohen each affirmatively misrepresented or concealed from their members, the existence of bribes, and the fraudulent nature and purpose of the scheme to revoke Kaul's license. These Defendants understood that if the general members became aware of the scheme, they would have passed a vote against it, realizing the liability it would incur. Specifically, these Defendants claimed that the monies paid to Defendant Christie, were intended to assist them in their efforts to counter pending fee reductions from Defendant Allstate and GEICO, when, in fact, they were quid pro quo payments to Defendant Christie to have Kaul's license revoked. The majority of ASIPP and CNS members were not direct commercial competitors of Kaul, as was the case with Defendants Kaufman, Staats, Heary, Przybylski and Cohen, all of whom competed for patients from the same pool. i.e. New Jersey.

**The CHC RICO Enterprise Sought to Fraudulently Increase Defendants' Profits and Revenues.**

Each CHC RICO Association–In–Fact Defendant benefited financially from the CHC RICO Association-In-Fact Enterprise, as they took on the treatment of patients that had been under the care of Kaul. In addition, Defendants Kaufman and Staats, for their cooperation with the scheme, received more referrals from Defendants Heary, Przybylski and Cohen. The increased patient flow led to increased revenues, and the perception within the medical community of their increased professional standing, which in turn caused an increase in referrals from community physicians.

In exchange for the bribes paid to Defendant Christie by Defendants Staats and ASIPP, one of Staats's partners was appointed to Defendant NJBME, a position he used to block Kaul's application in 2014 for license reinstatement.

At all relevant times, the CHC RICO Association-In-Fact Enterprise: (a) had an existence separate and distinct from each CHC RICO Association–In–Fact Defendants; (b) was separate and distinct from the pattern of racketeering in which the CHC RICO Association–In–Fact Defendants engaged; and (c) was an ongoing and continuing organization consisting of legal entities, including the CHC RICO Association–In–Fact Defendants, along with other individuals and entities, including unknown third parties that operated an association–in–fact enterprise, which was formed for the purpose of bribing Governor Christie, in order to have the medical board revoke Kaul's license. The

revocation led to an increase in revenue to the CHC RICO Association–In–Fact Defendants, but not necessarily to the general members of Defendants ASIPP and CNS.

The CHC RICO Association–In–Fact Defendants, as well as Defendant Staats's partner, Scott Metzger, MD, all consult for the insurance industry, and regularly provide opinions that deny payment to other physicians, for services for which they themselves are reimbursed.

The CHC RICO Association–In–Fact Enterprise engaged in, and its activities affected, interstate and foreign commerce because it involved commercial activities across state boundaries. These activities included the marketing, promotion, advertisement and delivery of minimally invasive spine surgery throughout the country, and the receipt of monies from the provision of such services.

Within the CHC RICO Association–In–Fact Enterprise, there was a common communication network by which co-conspirators shared information on a regular basis. The CHC RICO Association-In-Fact Enterprise used this network for the purpose of promoting the revocation of Kaul's license, in order to intimidate other minimally invasive spine surgeons into not performing minimally invasive spinal fusions. The network was also used to attack Kaul's character and disseminate false allegations that he had engaged in insurance fraud. The falsity of these latter claims was proved when Defendant GEICO's lawsuit filed in the United States District Court, District of New Jersey on April 27, 2013, was dismissed with prejudice on December 8, 2014.

Each participant in the CHC RICO Association-In-Fact Enterprise had systematic linkages to each other through corporate ties, contractual relationships, financial ties, and a continuing coordination of activities. Through the CHC RICO Association-In-Fact Enterprise, the CHC RICO Association-In-Fact Defendants functioned as a continuing unit with the purpose of furthering the CHC RICO Association-In-Fact Scheme. The CHC RICO Association-In-Fact Defendants participated in the operation and management of the CHC RICO Association-In-Fact Enterprise by directing its affairs, as described herein. While the CHC RICO Association-In-Fact Defendants participated in, and are members of the enterprise, they have a separate existence from the enterprise, including distinct legal statuses, different offices and roles, bank accounts, officers, directors, employees, individual personhood, reporting requirements, and financial statements.

The CHC RICO Association-In-Fact Defendants exerted substantial control over the CHC RICO Association-In-Fact Enterprise, and participated in the affairs of the

enterprise by: (a) deciding how monies were dispersed from the political action committees; (b) communicating directly with lawyers, public relation agents and political lobbyists with direct connections to Defendant Christie, and members of both state and federal governments; (c) developing policies and guidelines for clinical care, that were consistent with the horizontal agreements and market share plans; (d) procuring appointments to regulatory boards and insurance panels, which they used to further their personal economic agendas; (e) procuring positions on hospital credentialing committees, which they used to exclude competition from the hospital; (f) procuring positions on medical expert panels, which they used to testify against their competition in medical malpractice suits; (g) misrepresenting and/or concealing from the general members the true nature of the relationship and agreements between the members of the enterprise and the scheme in their conspiracy to have Kaul's license revoked ;(h) otherwise misrepresenting and/or concealing the increased personal profits that inured to their benefit as a consequence of the illegal elimination of Kaul from the practice of medicine; (i) ensuring that the other CAC RICO Defendants and unnamed co-conspirators complied with and concealed the fraudulent scheme.

Without each CHC RICO Association-In-Fact Defendants willing participation, the CHC RICO Association-In-Fact Scheme and common course of conduct would not have been successful. The CHC RICO Association-In-Fact Defendants directed and controlled the ongoing organization necessary to implement the scheme at meetings and through communications of which Plaintiff cannot fully know at present, because such information lies in the Defendants' and others' hands.

**Predicate Acts: Mail Fraud + Wire Fraud + Bribery + Obstruction of Justice**

To carry out, or attempt to carry out, the scheme to defraud, the CHC RICO Association-In-Fact Defendants, each of whom is a person associated-in- fact with the CHC RICO Association-In-Fact Enterprise, did knowingly, conduct or participate, directly or indirectly, in the affairs of the CHC RICO Association-In-Fact Enterprise through a pattern of racketeering activity within the meaning of 18 U.S.C. §§ 1961(1), 1961(5) and 1962(c), and employed the use of the mail and wire facilities, in violation of 18 U.S.C. § 1341 (mail fraud) and § 1343 (wire fraud).

Specifically, the CHC RICO Association-In-Fact Defendants have committed, conspired to commit, and/or aided and abetted in the commission of, at least two predicate acts of racketeering activity (i.e. violations of 18 U.S.C. §§ 1341 and 1343), within the past ten years.

The multiple acts of racketeering activity which the CHC RICO Association-In-Fact Defendants committed, or aided and abetted in the commission of, were related to each other, posed a threat of continued racketeering activity, and therefore constitute a "pattern of racketeering activity." The racketeering activity was made possible by the CHC RICO Association-In-Fact Defendants' regular use of the facilities, services, distribution channels, and employees of the CHC RICO Association-In-Fact Enterprise. The CHC RICO Association-In-Fact Defendants participated in the scheme to defraud by using mail, telephone, and the Internet to transmit mailing and wires in interstate or foreign commerce.

The CHC RICO Association-In-Fact Defendants used, directed the use of, and/or caused to be used, thousands of interstate mail and wire communications in service of their scheme through virtually uniform misrepresentations, concealments, and material omissions.

In devising and executing the illegal scheme, the CHC RICO Association-In-Fact Defendants devised and knowingly carried out a material scheme and/or artifice to defraud Kaul of the property rights of his reputation, medical license and healthcare business, by communicating to the public and Kaul's patients, that Kaul was not qualified to perform minimally invasive spine surgery, a materially false representation. For the purpose of executing the illegal scheme, the CHC RICO Association-In-Fact Defendants committed these racketeering acts, which number in the thousands, intentionally and knowingly with the specific intent to advance the illegal scheme.

**From paragraph 217 to 264 Kaul has pled with particularity, fact specific to each element, of each claim, against each defendant, in a separate and distinct manner:**

**Defendant Christie + Defendant Heary**:
Date range: 2008 to 2021
Conduits of Communication + Bribery to Christie: Public relations firms Mercury Public Relations + Princeton Public Relations.
Mode of Communication: Face to face.
Substance of communication: Schemes to revoke Kaul's license + destroy Kaul's reputation + destroy Kaul's economic standing + cause Kaul to be ostracized + cause Kaul to leave the United States.
Tactics employed: Use of the US mail and wires to organize and further schemes to bribe Defendant Christie, in order to have him order Defendant NJBME to revoke Kaul's license + Use of law and public relation firms to funnel bribes to Christie as part of quid

pro quo schemes to revoke Kaul's license, destroy his reputation and cause him to leave the United States + Use of the US mails and wires to transmit written, telephone, or electronic communications regarding discussions between the CHC RICO Association-In-Fact Defendants and state and federal politicians about the illegal scheme to revoke Kaul's license + Use of the US mails and wires to transmit information in furtherance of Christie's scheme to illegally have his attorney general and acting director of the division of consumer affairs have Defendant NJBME revoke Kaul's license.

Location: Governor's office in Trenton + Christie/Republican political fundraisers

**Defendant Christie + Defendant Lomazow**:

Date range: 2008 to 2021.

Conduits of Communication + Bribery to Christie: Public relations firm (Mercury Public Relations + Princeton Public Relations + Law Firm (Brach Eichler + Wolf Samson).

Mode of Communication: Face to face.

Substance of communication: Scheme to revoke Kaul's license + Scheme to destroy Kaul's reputation + Scheme to destroy Kaul's economic standing + Scheme to have Kaul ostracized + Scheme to have Kaul leave the United States.

Tactics employed: Use of the US mail and wires to organize and further schemes to bribe Defendant Christie, in order to have him order Defendant NJBME to revoke Kaul's license + Use of law and public relation firms to funnel bribes to Christie as part of quid pro quo schemes to revoke Kaul's license, destroy his reputation and cause him to leave the United States + Use of the US mails and wires to transmit written, telephone, or electronic communications regarding discussions between the CHC RICO Association-In-Fact Defendants and state and federal politicians about the illegal scheme to revoke Kaul's license + Use of the US mails and wires to transmit information in furtherance of Christie's scheme to illegally have his attorney general and acting director of the division of consumer affairs have Defendant NJBME revoke Kaul's license.

Location: Governor's office in Trenton + Christie/Republican political fundraisers.

**Defendant Christie + Defendant Hafner**:

Date range: 2008 to 2021.

Conduits of communication + Bribery to Christie: Through state government intermediaries.

Mode of communication: Face to face.

Substance of communication: Scheme to revoke Kaul's license + Scheme to destroy Kaul's reputation + Scheme to destroy Kaul's economic standing + Scheme to have Kaul ostracized + Scheme to have Kaul leave the United States.

Tactics employed: Use of the US mail and wires to organize and further schemes to

bribe Defendant Christie, in order to have him order Defendant NJBME to revoke Kaul's license + Use of law and public relation firms to funnel bribes to Christie as part of quid pro quo schemes to revoke Kaul's license, destroy his reputation and cause him to leave the United States + Use of the US mails and wires to transmit written, telephone, or electronic communications regarding discussions between the CHC RICO Association-In-Fact Defendants and state and federal politicians about the illegal scheme to revoke Kaul's license + Use of the US mails and wires to transmit information in furtherance of Christie's scheme to illegally have his attorney general and acting director of the division of consumer affairs have Defendant NJBME revoke Kaul's license.

Location: Governor's office in Trenton + Christie/Republican political fundraisers.

**Defendant Christie + Defendant Cohen**:

Date range: 2008 to 2021.

Conduits of communication + Bribery to Christie: Public relations firm (Mercury Public Relations + Princeton Public Relations + Law Firm (Brach Eichler + Wolf Samson).

Mode of communication: Face to face.

Substance of communication: Scheme to revoke Kaul's license + Scheme to destroy Kaul's reputation + Scheme to destroy Kaul's economic standing + Scheme to have Kaul ostracized + Scheme to have Kaul leave the United States.

Tactics employed: Use of the US mail and wires to organize and further schemes to bribe Defendant Christie, in order to have him order Defendant NJBME to revoke Kaul's license + Use of law and public relation firms to funnel bribes to Christie as part of quid pro quo schemes to revoke Kaul's license, destroy his reputation and cause him to leave the United States + Use of the US mails and wires to transmit written, telephone, or electronic communications regarding discussions between the CHC RICO Association-In-Fact Defendants and state and federal politicians about the illegal scheme to revoke Kaul's license + Use of the US mails and wires to transmit information in furtherance of Christie's scheme to illegally have his attorney general and acting director of the division of consumer affairs have Defendant NJBME revoke Kaul's license.

Location: Governor's office in Trenton + Christie/Republican political fundraisers.

**Defendant Kaufman + Defendant Christie**:

Date range: 2009 to 2021.

Conduits of communication + Bribery to Christie: Public relations firm (Mercury Public Relations + Princeton Public Relations + Law Firm (Brach Eichler + Wolf Samson) + Through state government intermediary + Political campaign fundraisers + Political campaign donations campaign donations.

Mode of communication: Face to face.

<u>Substance of communication</u>: Scheme to revoke Kaul's license + Scheme to destroy Kaul's reputation + Scheme to destroy Kaul's economic standing + Scheme to have Kaul ostracized + Scheme to have Kaul leave the United States.

<u>Tactics employed</u>: Use of the US mail and wires to organize and further schemes to bribe Defendant Christie, in order to have him order Defendant NJBME to revoke Kaul's license + Use of law and public relation firms to funnel bribes to Christie as part of quid pro quo schemes to revoke Kaul's license, destroy his reputation and cause him to leave the United States + Use of the US mails and wires to transmit written, telephone, or electronic communications regarding discussions between the CHC RICO Association-In-Fact Defendants and state and federal politicians about the illegal scheme to revoke Kaul's license + Use of the US mails and wires to transmit information in furtherance of Christie's scheme to illegally have his attorney general and acting director of the division of consumer affairs have Defendant NJBME revoke Kaul's license.

<u>Location</u>: Governor's office in Trenton + Christie/Republican political fundraisers.

**<u>Defendant Kaufman + Defendant Przybylski</u>**:

<u>Date range</u>: 2008 to 2021.

<u>Mode of communication</u>: Email + Voice message + SMS (text) + Face to face.

<u>Substance of communications</u>: Scheme to revoke Kaul's license + Scheme to destroy Kaul's reputation + Scheme to destroy Kaul's economic standing + Scheme to have Kaul ostracized + Scheme to have Kaul leave the United States.

<u>Tactics employed</u>: Use of US mail and wires to file false complaints against him with Defendant NJBME + Use of US mail and wires to send patients letters encouraging them to file frivolous lawsuits against Kaul + Use of the US mail and wires to communicate false information to patients, that he was not qualified to perform minimally invasive spine surgery + Use of the US mail and wires to send false information to personal injury lawyers that Kaul was not qualified to perform minimally invasive spine surgery and had committed insurance fraud + Use of the US mail and wires to send false information to New Jersey politicians, encouraging them, with the promise of political campaign 'donations' to coerce Defendant NJBME and the New Jersey Attorney General to have Kaul's license revoked + Use of the US mail and wires to organize and further schemes to bribe Defendant Christie, in order to have him order Defendant NJBME to revoke Kaul's license + Use of law and public relation firms to funnel bribes to Christie as part of quid pro quo schemes to revoke Kaul's license, destroy his reputation and cause him to leave the United States + Use of US mail and wires to further scheme to have Kaul's license revoked by having Defendant Lomazow use his authority on Defendant NJBME to initiate an investigation against Kaul, in order to have his license revoked + Use of the US mail and wires to organize and further orders from Christie to revoke Kaul's license, in furtherance of quid pro quo

schemes of bribery + Use of the US mail and wires to transmit letters, emails and other materials negotiating the horizontal agreements and market share distributions + Use of the US mails and wires to transmit letters, emails and other materials indicating that the CHC RICO Association-In-Fact Defendants had instructed their members not to support Kaul in any litigation + Use of the US mails and wires to transmit written, telephone, or electronic communications regarding the knowingly fraudulent events surrounding the revocation of Kaul's license + Use of the US mails and wires to transmit written, telephone, or electronic communications regarding discussions between the CHC RICO Association-In-Fact Defendants and state and federal politicians about the illegal scheme to revoke Kaul's license  + Use of the US mails and wires to bill and collect the increased revenues that flowed from the illegal elimination of Kaul from the practice of medicine + Use of the US mails and wires to transmit information in furtherance of Christie's scheme to illegally have his attorney general and acting director of the division of consumer affairs have Defendant NJBME revoke Kaul's license.

Location: Morristown Memorial Medical Center + Surgicare Associates Surgical Center + Christie/Republican political fundraisers.


**Defendant Kaufman + Defendant Heary**:

Date range: 2008 to 2021.

Mode of communication: E-mail + Voice message + SMS (text) + Face to face.

Substance of communications: Scheme to revoke Kaul's license + Scheme to destroy Kaul's reputation + Scheme to destroy Kaul's economic standing + Scheme to have Kaul ostracized + Scheme to have Kaul leave the United States.

Tactics employed: Use of US mail and wires to file false complaints against him with Defendant NJBME + Use of US mail and wires to send patients letters encouraging them to file frivolous lawsuits against Kaul + Use of the US mail and wires to communicate false information to patients, that he was not qualified to perform minimally invasive spine surgery + Use of the US mail and wires to send false information to personal injury lawyers that Kaul was not qualified to perform minimally invasive spine surgery and had committed insurance fraud + Use of the US mail and wires to send false information to New Jersey politicians, encouraging them, with the promise of political campaign 'donations' to coerce Defendant NJBME and the New Jersey Attorney General to have Kaul's license revoked + Use of the US mail and wires to organize and further schemes to bribe Defendant Christie, in order to have him order Defendant NJBME to revoke Kaul's license + Use of law and public relation firms to funnel bribes to Christie as part of quid pro quo schemes to revoke Kaul's license, destroy his reputation and cause him to leave the United States + Use of the US mail and wires to further scheme to have Kaul's license revoked by having Defendant Lomazow use his authority on Defendant NJBME to initiate an investigation against Kaul, in order to have his license revoked + Use of the US mail and wires to organize

and further orders from Christie to revoke Kaul's license, in furtherance of quid pro quo schemes of bribery + Use of the US mail and wires to transmit letters, emails and other materials negotiating the horizontal agreements and market share distributions + Use of the US mails and wires to transmit letters, emails and other materials indicating that the CHC RICO Association-In-Fact Defendants had instructed their members not to support Kaul in any litigation + Use of the US mails and wires to transmit written, telephone, or electronic communications regarding the knowingly fraudulent events surrounding the revocation of Kaul's license + Use of the US mails and wires to transmit written, telephone, or electronic communications regarding discussions between the CHC RICO Association-In-Fact Defendants and state and federal politicians about the illegal scheme to revoke Kaul's license + Use of the US mails and wires to bill and collect the increased revenues that flowed from the illegal elimination of Kaul from the practice of medicine + Use of the US mails and wires to transmit information in furtherance of Christie's scheme to illegally have his attorney general and acting director of the division of consumer affairs have Defendant NJBME revoke Kaul's license.

Location: Morristown Memorial Medical Center + Hackensack Medical Center + Surgicare Associates Surgical Center + Christie/Republican political fundraisers.

**Defendant Kaufman + Defendant Staats**:

Date range: 2008 to 2021.

Mode of communication: Email + Voice message + SMS (text) + Face to face.

Substance of communications: Scheme to revoke Kaul's license + Scheme to destroy Kaul's reputation + Scheme to destroy Kaul's economic standing + Scheme to have Kaul ostracized + Scheme to have Kaul leave the United States.

Tactics employed: Use of US mail and wires to file false complaints against him with Defendant NJBME + Use of US mail and wires to send patients letters encouraging them to file frivolous lawsuits against Kaul + Use of the US mail and wires to communicate false information to patients, that he was not qualified to perform minimally invasive spine surgery + Use of the US mail and wires to send false information to personal injury lawyers that Kaul was not qualified to perform minimally invasive spine surgery and had committed insurance fraud + Use of the US mail and wires to send false information to New Jersey politicians, encouraging them, with the promise of political campaign 'donations' to coerce Defendant NJBME and the New Jersey Attorney General to have Kaul's license revoked + Use of the US mail and wires to organize and further schemes to bribe Defendant Christie, in order to have him order Defendant NJBME to revoke Kaul's license + Use of law and public relation firms to funnel bribes to Christie as part of quid pro quo schemes to revoke Kaul's license, destroy his reputation and cause him to leave the United States + Use of the US mail and wires to further scheme to have Kaul's license revoked by having Defendant Lomazow use his authority on Defendant NJBME to initiate an investigation against

Kaul, in order to have his license revoked + Use of the US mail and wires to organize and further orders from Christie to revoke Kaul's license, in furtherance of quid pro quo schemes of bribery + Use of the US mail and wires to transmit letters, emails and other materials negotiating the horizontal agreements and market share distributions + Use of the US mails and wires to transmit letters, emails and other materials indicating that the CHC RICO Association-In-Fact Defendants had instructed their members not to support Kaul in any litigation + Use of the US mails and wires to transmit written, telephone, or electronic communications regarding the knowingly fraudulent events surrounding the revocation of Kaul's license + Use of the US mails and wires to transmit written, telephone, or electronic communications regarding discussions between the CHC RICO Association-In-Fact Defendants and state and federal politicians about the illegal scheme to revoke Kaul's license  + Use of the US mails and wires to bill and collect the increased revenues that flowed from the illegal elimination of Kaul from the practice of medicine + Use of the US mails and wires to transmit information in furtherance of Christie's scheme to illegally have his attorney general and acting director of the division of consumer affairs have Defendant NJBME revoke Kaul's license.

Location: Morristown Memorial Medical Center + Hackensack Medical Center + Surgicare Associates Surgical Center + Christie/Republican political fundraisers.

**Defendant Kaufman + Defendant Lomazow**:

Date range: 2008 to 2019.

Mode of communication: Email + Voice message + SMS (text) + Face to face.

Substance of communications: Scheme to revoke Kaul's license + Scheme to destroy Kaul's reputation + Scheme to destroy Kaul's economic standing + Scheme to have Kaul ostracized + Scheme to have Kaul leave the United States.

Tactics employed: Use of US mail and wires to file false complaints against him with Defendant NJBME + Use of US mail and wires to send patients letters encouraging them to file frivolous lawsuits against Kaul + Use of the US mail and wires to communicate false information to patients, that he was not qualified to perform minimally invasive spine surgery + Use of the US mail and wires to send false information to personal injury lawyers that Kaul was not qualified to perform minimally invasive spine surgery and had committed insurance fraud + Use of the US mail and wires to send false information to New Jersey politicians, encouraging them, with the promise of political campaign 'donations' to coerce Defendant NJBME and the New Jersey Attorney General to have Kaul's license revoked + Use of the US mail and wires to organize and further schemes to bribe Defendant Christie, in order to have him order Defendant NJBME to revoke Kaul's license + Use of law and public relation firms to funnel bribes to Christie as part of quid pro quo schemes to revoke Kaul's license, destroy his reputation and cause him to leave the United States + Use of the US mail and wires to further scheme to have Kaul's license revoked by having Defendant

Lomazow use his authority on Defendant NJBME to initiate an investigation against Kaul, in order to have his license revoked + Use of the US mail and wires to organize and further orders from Christie to revoke Kaul's license, in furtherance of quid pro quo schemes of bribery + Use of the US mail and wires to transmit letters, emails and other materials negotiating the horizontal agreements and market share distributions + Use of the US mails and wires to transmit letters, emails and other materials indicating that the CHC RICO Association-In-Fact Defendants had instructed their members not to support Kaul in any litigation + Use of the US mails and wires to transmit written, telephone, or electronic communications regarding the knowingly fraudulent events surrounding the revocation of Kaul's license + Use of the US mails and wires to transmit written, telephone, or electronic communications regarding discussions between the CHC RICO Association-In-Fact Defendants and state and federal politicians about the illegal scheme to revoke Kaul's license  + Use of the US mails and wires to bill and collect the increased revenues that flowed from the illegal elimination of Kaul from the practice of medicine + Use of the US mails and wires to transmit information in furtherance of Christie's scheme to illegally have his attorney general and acting director of the division of consumer affairs have Defendant NJBME revoke Kaul's license.

<u>Location</u>: Morristown Memorial Medical Center + Hackensack Medical Center + Surgicare Associates Surgical Center + Christie/Republican political fundraisers.

**Defendant Kaufman + Defendant Hafner**:

<u>Date range</u>: 2008 to 2019.

<u>Mode of communication</u>: E-mail + Voice message + SMS (text) + Face to face.

<u>Substance of communications</u>: Scheme to revoke Kaul's license + Scheme to destroy Kaul's reputation + Scheme to destroy Kaul's economic standing + Scheme to have Kaul ostracized + Scheme to have Kaul leave the United States.

<u>Tactics employed</u>: Use of US mail and wires to file false complaints against him with Defendant NJBME + Use of US mail and wires to send patients letters encouraging them to file frivolous lawsuits against Kaul + Use of the US mail and wires to communicate false information to patients, that he was not qualified to perform minimally invasive spine surgery + Use of the US mail and wires to send false information to personal injury lawyers that Kaul was not qualified to perform minimally invasive spine surgery and had committed insurance fraud + Use of the US mail and wires to send false information to New Jersey politicians, encouraging them, with the promise of political campaign 'donations' to coerce Defendant NJBME and the New Jersey Attorney General to have Kaul's license revoked + Use of the US mail and wires to organize and further schemes to bribe Defendant Christie, in order to have him order Defendant NJBME to revoke Kaul's license + Use of law and public relation firms to funnel bribes to Christie as part of quid pro quo schemes to revoke Kaul's license, destroy his reputation and cause him to leave the United States + Use of the US mail

and wires to further scheme to have Kaul's license revoked by having Defendant Lomazow use his authority on Defendant NJBME to initiate an investigation against Kaul, in order to have his license revoked + Use of the US mail and wires to organize and further orders from Christie to revoke Kaul's license, in furtherance of quid pro quo schemes of bribery + Use of the US mail and wires to transmit letters, e-–mails and other materials negotiating the horizontal agreements and market share distributions + Use of the US mails and wires to transmit letters, emails and other materials indicating that the CHC RICO Association-In-Fact Defendants had instructed their members not to support Kaul in any litigation + Use of the US mails and wires to transmit written, telephone, or electronic communications regarding the knowingly fraudulent events surrounding the revocation of Kaul's license + Use of the US mails and wires to transmit written, telephone, or electronic communications regarding discussions between the CHC RICO Association-In-Fact Defendants and state and federal politicians about the illegal scheme to revoke Kaul's license  + Use of the US mails and wires to bill and collect the increased revenues that flowed from the illegal elimination of Kaul from the practice of medicine + Use of the US mails and wires to transmit information in furtherance of Christie's scheme to illegally have his attorney general and acting director of the division of consumer affairs have Defendant NJBME revoke Kaul's license.

Location: Morristown Memorial Medical Center + Hackensack Medical Center + Surgicare Associates Surgical Center + Christie/Republican political fundraisers.

**Defendant Kaufman + Defendant Cohen**:

Date range: 2008 to 2019.

Mode of communication: E-mail + Voice message + SMS (text) + Face to face.

Substance of communications: Scheme to revoke Kaul's license + Scheme to destroy Kaul's reputation + Scheme to destroy Kaul's economic standing + Scheme to have Kaul ostracized + Scheme to have Kaul leave the United States.

Tactics employed: Use of US mail and wires to file false complaints against him with Defendant NJBME + Use of US mail and wires to send patients letters encouraging them to file frivolous lawsuits against Kaul + Use of the US mail and wires to communicate false information to patients, that he was not qualified to perform minimally invasive spine surgery + Use of the US mail and wires to send false information to personal injury lawyers that Kaul was not qualified to perform minimally invasive spine surgery and had committed insurance fraud + Use of the US mail and wires to send false information to New Jersey politicians, encouraging them, with the promise of political campaign 'donations' to coerce Defendant NJBME and the New Jersey Attorney General to have Kaul's license revoked + Use of the US mail and wires to organize and further schemes to bribe Defendant Christie, in order to have him order Defendant NJBME to revoke Kaul's license + Use of law and public relation firms to

funnel bribes to Christie as part of quid pro quo schemes to revoke Kaul's license, destroy his reputation and cause him to leave the United States + Use of the US mail and wires to further scheme to have Kaul's license revoked by having Defendant Lomazow use his authority on Defendant NJBME to initiate an investigation against Kaul, in order to have his license revoked + Use of the US mail and wires to organize and further orders from Christie to revoke Kaul's license, in furtherance of quid pro quo schemes of bribery + Use of the US mail and wires to transmit letters, emails and other materials negotiating the horizontal agreements and market share distributions + Use of the US mails and wires to transmit letters, emails and other materials indicating that the CHC RICO Association-In-Fact Defendants had instructed their members not to support Kaul in any litigation + Use of the US mails and wires to transmit written, telephone, or electronic communications regarding the knowingly fraudulent events surrounding the revocation of Kaul's license + Use of the US mails and wires to transmit written, telephone, or electronic communications regarding discussions between the CHC RICO Association-In-Fact Defendants and state and federal politicians about the illegal scheme to revoke Kaul's license  + Use of the US mails and wires to bill and collect the increased revenues that flowed from the illegal elimination of Kaul from the practice of medicine + Use of the US mails and wires to transmit information in furtherance of Christie's scheme to illegally have his attorney general and acting director of the division of consumer affairs have Defendant NJBME revoke Kaul's license.
Location: Morristown Memorial Medical Center + Ridgedale Surgical Center + Surgicare Associates Surgical Center + Christie/Republican political fundraisers.

**Defendant Kaufman + Defendant ASIPP**:
Date range: 2008 to 2019.
Mode of communication: E-mail + Voice message + SMS (text) + Face to face.
Substance of communications: Scheme to revoke Kaul's license + Scheme to destroy Kaul's reputation + Scheme to destroy Kaul's economic standing + Scheme to have Kaul ostracized + Scheme to have Kaul leave the United States.
Tactics employed: Use of US mail and wires to file false complaints against him with Defendant NJBME + Use of US mail and wires to send patients letters encouraging them to file frivolous lawsuits against Kaul + Use of the US mail and wires to communicate false information to patients, that he was not qualified to perform minimally invasive spine surgery + Use of the US mail and wires to send false information to personal injury lawyers that Kaul was not qualified to perform minimally invasive spine surgery and had committed insurance fraud + Use of the US mail and wires to send false information to New Jersey politicians, encouraging them, with the promise of political campaign 'donations' to coerce Defendant NJBME and the New Jersey Attorney General to have Kaul's license revoked + Use of the US mail and wires to organize and further schemes to bribe Defendant Christie, in order to have him order

Defendant NJBME to revoke Kaul's license + Use of law and public relation firms to funnel bribes to Christie as part of quid pro quo schemes to revoke Kaul's license, destroy his reputation and cause him to leave the United States + Use of the US mail and wires to further scheme to have Kaul's license revoked by having Defendant Lomazow use his authority on Defendant NJBME to initiate an investigation against Kaul, in order to have his license revoked + Use of the US mail and wires to organize and further orders from Christie to revoke Kaul's license, in furtherance of quid pro quo schemes of bribery + Use of the US mail and wires to transmit letters, emails and other materials negotiating the horizontal agreements and market share distributions + Use of the US mails and wires to transmit letters, emails and other materials indicating that the CHC RICO Association-In-Fact Defendants had instructed their members not to support Kaul in any litigation + Use of the US mails and wires to transmit written, telephone, or electronic communications regarding the knowingly fraudulent events surrounding the revocation of Kaul's license + Use of the US mails and wires to transmit written, telephone, or electronic communications regarding discussions between the CHC RICO Association-In-Fact Defendants and state and federal politicians about the illegal scheme to revoke Kaul's license  + Use of the US mails and wires to bill and collect the increased revenues that flowed from the illegal elimination of Kaul from the practice of medicine + Use of the US mails and wires to transmit information in furtherance of Christie's scheme to illegally have his attorney general and acting director of the division of consumer affairs have Defendant NJBME revoke Kaul's license.
Location: Morristown Memorial Medical Center + Christie/Republican political fundraisers.

**Defendant Przybylski + Defendant Christie**:
See above. As with Defendant Kaufman + Defendant Christie.

**Defendant Przybylski + Defendant Kaufman**:
See above. As with Defendant Kaufman + Defendant Przybylski.

**Defendant Przybylski + Defendant Heary**:
See above. As with Defendant Kaufman + Defendant Heary.

**Defendant Przybylski + Defendant Staats**:
See above. As with Defendant Kaufman + Defendant Staats.

**Defendant Przybylski + Defendant Lomazow**:
See above. As with Defendant Kaufman + Defendant Lomazow.

**Defendant Przybylski + Defendant Hafner**:

See above. As with Defendant Kaufman + Defendant Hafner.

**Defendant Przybylski + Defendant Cohen**:
See above. As with Defendant Kaufman + Defendant Cohen.

**Defendant Przybylski + Defendant CNS**:
See above. As with Defendant Kaufman + Defendant ASIPP.

**Defendant Heary + Defendant Christie**:
See above. As with Defendant Kaufman + Defendant Christie.

**Defendant Heary + Defendant Lomazow**:
See above. As with Defendant Kaufman + Defendant Lomazow.

**Defendant Heary + Defendant Hafner**:
See above. As with Defendant Kaufman + Defendant Hafner.

**Defendant Heary + Defendant Cohen**:
See above. As with Defendant Kaufman + Cohen.

**Defendant Heary + Defendant CNS**:
See above. As with Defendant Kaufman + Defendant ASIPP.

**Defendant Staats + Defendant Christie**:
See above. As with Defendant Kaufman + Defendant Christie.

**Defendant Staats + Defendant Lomazow**:
See above. As with Defendant Kaufman + Defendant Lomazow.

**Defendant Staats + Defendant ASIPP**:
See above. As with Defendant Kaufman + Defendant ASIPP.

**Defendant Lomazow + Defendant Christie**:
See above. As with Defendant Kaufman + Defendant Christie.

**Defendant Lomazow + Defendant Hafner**:
See above. As with Defendant Kaufman + Defendant Hafner.

**Defendant Hafner + Defendant Christie**:
See above. As with Defendant Kaufman + Defendant Christie.

**Defendant Hafner + Defendant Kaufman**:
See above. As with Defendant Kaufman + Defendant Hafner.

**Defendant Hafner + Defendant Przybylsk**i:
See above. As with Defendant Kaufman + Defendant Przybylski.

**Defendant Hafner + Defendant Heary**:
See above. As with Defendant Kaufman + Defendant Heary.

**Defendant Hafner + Defendant Lomazow**:
See above. As with Defendant Kaufman + Defendant Lomazow.

**Defendant Hafner + Defendant CNS**:
See above. As with Defendant Kaufman + Defendant ASIPP.

**Defendant Hafner + Defendant ASIPP**:
See above. As with Defendant Kaufman + Defendant ASIPP.

**Defendant Cohen + Defendant Christie**:
See above. As with Defendant Kaufman + Defendant Christie.

**Defendant Cohen + Defendant Kaufman**:
See above. As with Defendant Kaufman + Defendant Cohen.

**Defendant Cohen + Defendant Przybylski**:
See above. As with Defendant Kaufman + Defendant Przybylski.

**Defendant Cohen + Defendant Heary**:
See above. As with Defendant Kaufman + Defendant Heary.

**Defendant Cohen + Defendant Staats**:
See above. As with Defendant Kaufman + Defendant Staats.

**Defendant Cohen + Defendant Lomazow**:
See above. As with Defendant Kaufman + Defendant Lomazow.

**Defendant CNS + Defendant Przybylski**:
See above. As with Defendant Przybylski + Defendant CNS.

**Defendant CNS + Defendant Hafner**:
See above. As with Defendant Hafner + Defendant ASIPP.

**Defendant ASIPP + Defendant Kaufman**:
See above. As with Defendant Kaufman + Defendant ASIPP.

**Defendant ASIPP + Defendant Staats**:
See above. As with Defendant Staats + Defendant ASIPP.

**Defendant ASIPP + Defendant Hafner**:
See above. As with Defendant Hafner + Defendant ASIPP.

The CHC RICO Association-In-Fact Defendants' predicate acts of racketeering (18 U.S.C. § 1961(1) include, but are not limited to:

(a)    Mail Fraud: The CHC RICO Association-In-Fact Defendants violated 18 U.S.C. § 1341 by sending or receiving, or by causing to be sent and/or received, materials via U.S. mail or commercial interstate carriers for the purpose of executing the unlawful scheme to revoke Kaul's medical license by means of misrepresentations and omissions.

(b)    Wire Fraud: The CHC RICO Association-In-Fact Defendants violated 18 U.S.C. § 1343 by transmitting and/or receiving, or by causing to be transmitted and/or received, materials by wire for the purpose of executing the unlawful scheme to defraud and obtain money on false pretenses, misrepresentations, promises, and omissions.

The CHC RICO Association-In-Fact Defendants' use of the mails and wires include, but are not limited to: (a) the transmission of letters, emails and other materials negotiating the horizontal agreements and market share distributions; (b) the transmission of letters, emails and other materials indicating that the CHC RICO Association-In-Fact Defendants had instructed their members not to support Kaul in any litigation; (c) written, telephone, or electronic communications regarding the events surrounding the revocation of Kaul's license; (d) written, telephone, or electronic communications instructing its members not to support Kaul in any litigation; (e) written, telephone, or electronic communications regarding discussions between the CHC RICO Association-In-Fact Defendants and state and federal politicians about the scheme to revoke Kaul's license; (f) the use of the mails or wires to bill for or collect the increased revenues that flowed from the elimination of Kaul from the practice of medicine.

The CHC RICO Association-In-Fact Defendants also communicated by U.S. mail, by interstate facsimile, and by interstate electronic mail with every state licensing board, the Federation of State Medical Boards, the American Board of Anesthesiology, the

General Medical Council of the United Kingdom, and other healthcare related third-party entities in furtherance of the scheme. The mail and wire transmissions described herein were made in furtherance of Defendants' scheme and common course of conduct designed to increase the revenues that flowed from the elimination of Kaul from the practice of medicine.

Many of the precise dates of the fraudulent uses of the mail and interstate wire facilities have been deliberately hidden and cannot be alleged without access to the Defendants' servers and digital records. However, Plaintiff has described the types of, and in some instances, occasions on which the predicate acts of mail and/or wire fraud occurred. They include thousands of communications to perpetuate and maintain the scheme, including the things and documents described above.

The CHC RICO Association-In-Fact Defendants have not undertaken the practices described herein in isolation, but as part of a common scheme and conspiracy. In Violation of 18 U.S.C. § 1962(d), the CHC RICO Association-In-Fact Defendants conspired to violate 18 U.S.C. § 1962(c), as described herein. Various other persons, firms, and corporations, including third-party entities and individuals not named as defendants in this Complaint, have participated as co-conspirators with the CHC RICO Association-Fact Defendants in these offenses. They have performed acts in furtherance of the conspiracy to increase revenues, increase market share, and or minimize losses for the Defendants and their unnamed co-conspirators, through the illegal scheme and their common course of conduct. The CHC RICO Association-In-Fact Defendants aided and abetted others in violation of the above laws.

To achieve their common goals, the CHC RICO Association-In-Fact Defendants encouraged patients to file lawsuits against Kaul, filed complaints with state and federal healthcare regulatory authorities, instructed their members to discontinue communications with Kaul and encouraged the media to publish defamatory articles.

The CHC RICO Association-In-Fact Defendants and each member of the conspiracy, with knowledge and intent, agreed to the overall objectives of the conspiracy and participated in the common course of conduct. Indeed, for the conspiracy to succeed, each of the CHC RICO Association-In-Fact Defendants and their co- conspirators had to agree to conceal their fraudulent scheme and illegal tactics. The CHC RICO Association-In-Fact Defendants knew, and intended that Plaintiff's patients and business network, would rely on the material misrepresentations and omissions made by them and would cease treating and engaging in healthcare commerce with Kaul. The CHC RICO Association-In-Fact Defendants engaged in this pattern of related and continuous predicate acts against Kaul for eight years. The predicated acts constituted

a variety of unlawful activities, each conducted with the common purpose of eliminating Kaul from the practice of medicine, and thus eliminating the competition he presented, and increasing the CHC RICO Association-In-Fact Defendants revenues. The predicate acts were related and not isolated events.

During the CHC RICO Association-In-Fact Defendants' perpetration of their scheme, the true purpose of the fraudulent nature of their racket, to increase revenues through the elimination of Kaul from the practice of medicine, was revealed to each of the CHC RICO Association-In-Fact Defendants. Nevertheless, in furtherance of their scheme, the CHC RICO Association-In-Fact Defendants continued to disseminate falsehoods that Kaul was not qualified to perform minimally invasive spine surgery.

By reason of, and as a result of the misconduct of the CHC RICO Association-In-Fact Defendants, and in particular, their pattern of racketeering activity, Plaintiff has been injured in his medical practice and/or property in multiple ways, including but not limited to the loss of his medical license, the loss of his reputation, the loss of his livelihood, the loss of his children's home and the fracturing of his relationship with his children.

The CHC RICO Association-In-Fact Defendants' violations of 18 U.S.C. §1962(c) and (d) have directly and proximately caused injuries and damage to Plaintiff who is entitled to bring this action for three times its actual damage, as well as injunctive/equitable relief, costs, and reasonable attorneys' fees pursuant to 18 U.S.C. § 1964(c).

## COUNT THREE
## VIOLATIONS OF 18 U.S.C. § 1962(C)-(D)
## THE RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT, 18 U.S.C. § 1961, ET SEQ.
## (By Plaintiff against Defendants Christie + GEICO + Allstate + TD + Stolz + DiOrio + Crist + Solomon + Hafner
## The CAD RICO Association-In-Fact-Enterprise

Plaintiff incorporates by reference each preceding paragraph as though fully set forth herein.

Plaintiff brings this Count against Defendants Christie + GEICO + Allstate + TD + Stolz + DiOrio + Crist + Solomon + Hafner (inclusively, for the purposes of this Count, the "CAD RICO Association-In-Fact Defendants").

At all relevant times the CAD RICO Association-In-Fact Defendants have been

"persons" under 18 U.S.C. § 1961(3) because they are capable of holding, and do hold, "a legal or beneficial interest in property." Section 1962(c) makes it "unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity." 18 U.S.C. § 1962(c).

Section 1962(d) makes it unlawful for "any person to conspire to violate" Section 1962(c), among other provisions. See 18 U.S.C. § 1962(d).

As explained in detail below, the CAD RICO Association-In-Fact Defendants sought, amongst other things, to eliminate Kaul from the practice of medicine, destroy his reputation in the field of minimally invasive spine surgery and destroy his economic standing. The purpose of their scheme was to manufacture an excuse to avoid paying Kaul's bills for the minimally invasive spine surgeries he had performed on customers of CAD RICO Association-In-Fact Defendants, Allstate and GEICO. The CAD RICO Association-In-Fact Defendants sought to achieve these ends, so that Kaul would leave the country, and not litigate the CAD RICO Association-In-Fact Defendants wrongful conduct. The CAD RICO Association-In-Fact Defendants pursued these ends through a fraudulent scheme of bribes and kickbacks to Defendant Christie, that were designed to secure increased revenues, an increased NYSE share price, increased political power over state legislators, increased market-share of the banking and insurance sector, and the manufacture of anticompetitive case law advantageous to their commercial agendas.  As explained in detail below, the CAD RICO Association-In-Fact Defendants' decades-long misconduct violated sections 1962(c) and (d).

Defendants Stolz and DiOrio benefitted from the illegal scheme through increased revenues from legal work from Defendants GEICO and Allstate. Stolz abused his position as the trustee of the Chapter 7 proceeding in refusing to file claims against Defendants Allstate and GEICO for the monies they owed Kaul's corporations. Stolz has collected less than 0.1% of the approximately ten million dollars ($10,000,000.00) owed by Defendants Allstate and GEICO to Kaul and his creditors.

Defendant DiOrio represented Kaul in the Chapter 7 proceeding. Defendant DiOrio received legal work from Defendant GEICO in return for advising Kaul to transfer the real estate title of his surgical center (NJSR Surgical Center) to the Chapter 7 estate. Defendant Stolz is the trustee of the Chapter 7 estate. Defendant Allstate is a client of Defendant Stolz and his law firm.

Defendant Crist was the CEO of Defendant Allstate. Defendant Crist is a major shareholder in Defendant Allstate. Defendant Crist reaped enormous profits from the four hundred percent (400%) increase in Defendant Allstate's share price that occurred between 2012 and 2016. This increase was a direct consequence of the monies that Defendant Allstate illegally obtained from not paying Kaul the millions they owed him.

Defendants Allstate and GEICO used the revocation of Kaul's license as an excuse to not pay hundreds of other minimally invasive spine surgeons the fees owed to them, and thus illegally diverted their clients' monies away from clinical care into executive compensation. As a consequence, their clients were deprived of pain-relieving procedures and many resorted to opiate painkillers. This is one of the causes of the opiate epidemic in New Jersey. The Defendants continue to increase the cost of insurance premiums, while denying care to patients and reducing fees to healthcare providers.

Defendant Solomon and members of his family received material favors from Defendants Allstate and GEICO, in exchange for issuing a fraudulent legal opinion and recommending the revocation of Kaul's license. Defendant Solomon was brought out of retirement to adjudicate the case against Kaul and returned to retirement immediately after the case.

Defendant Hafner knowingly cooperated with the other Defendants in a scheme that she understood was illegal, in both motive and means. Defendant Hafner played a central role in the drafting of Defendant Solomon's fraudulent opinion and knew that the document had been falsified. Defendant Hafner knew that she had a duty to report the crime to federal authorities, but willfully ignored that duty and did not report the crime to federal authorities. Defendant Hafner was a willing participant in the criminal conspiracy, and because of her cooperation is criminally liable.

### Description of the CAD RICO Enterprise

RICO defines an enterprise as "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4). An association-in-fact enterprise requires three structural features: (1) a purpose; (2) relationships among those associated with the enterprise; and (3) longevity sufficient to permit those associates to pursue the enterprise's purpose.

The CAD RICO Association-In-Fact Defendants have, through the increased revenue generated through their decades old scheme of kickbacks and bribery, increased their

control of the state government, its agencies, its legislature and certain members of its judiciary. This permitted them to exert control over the mechanism of physician regulation in order to revoke Kaul's medical license. The excuse given by the medical board to revoke Kaul's license was that he had, according to Defendants Przybylski and Kaufman, deviated from a standard of care, a standard that they ultimately admitted did not exist. The real reason for the revocation was their desire to avoid their financial obligations to Kaul. Discussions between the CAD RICO Association-In-Fact Defendants regarding Kaul's invoices for minimally invasive spine surgery took place in complex closed-door meetings, during which the parties discussed the threat to their corporate profits, of Kaul's expanding outpatient minimally invasive spine surgery practice.

In order to ensure that their corporate profits were not affected by the increasing commercial success of Kaul's minimally invasive spine surgery practice, and the expanding number of minimally invasive spine surgeons being trained by Kaul, the Defendant insurance carriers co-orchestrated a scheme, with the other CAD RICO Association-In-Fact Defendants to have Kaul's medical license revoked. As part of the scheme the defendant insurance carriers disseminated false information within the medico-legal community, that Kaul had committed insurance fraud. This was done in order to discredit Kaul and isolate him from his colleagues and patients.

The illegal scheme to maintain and increase the profits of Defendants Allstate and GEICO through the elimination of Kaul's practice, benefited the shareholders and Defendants Crist, Christie, Solomon, Stolz and DiOrio, all of whom are corrupted members of the political and legal establishment. The illegal scheme also benefited political lobbyists and public relations personnel, the 'middle-men' through whom Defendants Allstate and GEICO funneled bribes.

At all relevant times the CAD RICO Association-In-Fact Defendants operated an ongoing association-in-fact enterprise. This association-in-fact enterprise was formed for the purpose of ensuring that their fraudulent scheme to have Kaul's license revoked was perpetrated to its conclusion. A large majority of these meetings occurred behind closed doors in Newark and Trenton, many of which were attended by members of the Office of the New Jersey Attorney General, and most frequently by Defendant Hafner. The Defendants conducted a pattern of racketeering activity under § 18 U.S.C. 1961(4).

Alternatively, each of the CAD RICO Association-In-Fact Defendants constitutes a single legal entity "enterprise" within the meaning of 18 U.S.C. § 1961(4), through which the other Defendants conducted their pattern of racketeering activity. The CAD RICO Association-In-Fact Defendants' separate legal statuses facilitated the fraudulent

scheme and provided a hoped-for shield from liability for the other Defendants and their co-conspirators. The enterprises, alleged in this and the previous paragraph, are referred to collectively as the "CAD RICO Association-In-Fact Enterprise."

At all relevant times, the CAD RICO Association-In-Fact Enterprise constituted a single "enterprise" or multiple enterprises within the meaning of 18 U.S.C. § 1961(4), as legal entities, as well as individuals and legal entities associated –in-fact for the common purpose of engaging in the CAD RICO Association-In-Fact Defendants profit making scheme, and the fraudulent scheme to corrupt state agencies and actors to ensure the revocation of Kaul's license.

The CAD RICO Association-In-Fact Enterprise consisted of the following entities and individuals: (a) Defendant Allstate New Jersey Insurance Company; (b) Defendant GEICO; (c) Defendant TD Bank; (d) Defendant Christie; (e) Defendant Stolz; (f) Defendant DiOrio; (g) Defendant Christie; (h) Defendant Crist; (i) Defendant Solomon; (j) Defendant Hafner. While each of the CAD RICO Association-In-Fact Defendants acquired, maintained control of, were associated with, and conducted or participated in the conduct of the CAD RICO Association-In-Fact Enterprise's affairs, at all relevant times, the CAD RICO Association-In-Fact Enterprise: (a) had an existence separate and distinct from each CAD Association-In-Fact Enterprise Defendant; (b) was separate and distinct from the pattern of racketeering in which the CAD RICO Association-In-Fact Defendants engaged; and (c) was an ongoing and continuing organization consisting of legal entities, including the CAD RICO Association-In-Fact Enterprise Defendants, along with other individuals and entities, including unknown third parties.

The CAD RICO Association-In-Fact Defendants and their co-conspirators, through their illegal CAD RICO Association-In-Fact Enterprise, engaged in a pattern of racketeering activity, which involved a fraudulent scheme to increase revenue for the CAD RICO Association-In-Fact Enterprise's activities by conspiring to have Kaul's license illegally revoked, in order to manufacture an excuse to not pay Kaul monies for the provision of minimally invasive spine surgery. Defendants Allstate and GEICO used the revocation of Kaul's license as a basis to deny payment to other similarly trained minimally invasive spine surgeons.

Defendants Allstate and GEICO orchestrated the CAD RICO Association-In-Fact Enterprise's scheme, whereby they leveraged their control of Defendant NJBME to have Kaul's medical license revoked. The purpose of the Scheme which was to eliminate Kaul from the practice of medicine, and thus eradicate their debt and eliminate any future financial liability that would have developed had Kaul continued to practice minimally invasive spine surgery. The CAD RICO Association-In-Fact Defendants knew

that Kaul planned to open a four-operating room state licensed surgical center in New Jersey and had plans to expand nationally.

Defendant Christie provided the CAD RICO Association-In-fact Enterprise with the use of state agencies (Defendant NJBME), personnel (Defendant Solomon + Defendant Hafner) and the resources (State Treasury) necessary to revoke Kaul's license. Defendant Christie provided these services in return for bribes and monies disguised as 'campaign donations'. The monies were part of a quid pro quo scheme, not protected by Noerr-Pennington, in which there was an explicit understanding that the bribes were payment for the revocation of Kaul's license.

In furtherance of the scheme, the CAD RICO Association-In-Fact Defendants each affirmatively misrepresented or concealed from their shareholders and the public, the existence of bribes, and the fraudulent nature and purpose of the scheme to revoke Kaul's license. Defendants Allstate and GEICO understood that if the shareholders had become aware of the scheme, they would have passed a vote against it, realizing the liability it would incur. Defendants Christie, Solomon and Hafner understood that if the public became aware of the illegal use of their taxes to fund the illegal scheme, they would have demanded an investigation and not voted for Defendant Christie in the 2013 New Jersey Gubernatorial election. Specifically, the CAD RICO Association-In-Fact Defendants claimed that the bribes paid were intended to assist them in their legislative efforts, when in fact they were quid pro quo payments to Defendant Christie, in order to have Kaul's license revoked.

## The CAD RICO Enterprise Sought to Fraudulently Increase Defendants' Profits and Revenues

Each CAD RICO Association-In-Fact Defendant benefited financially from the CAD RICO Association-In-Fact Enterprise. Defendants Allstate and GEICO eliminated past debt, and future liability. Defendant TD was rewarded with regulatory favors not offered to their banking competitors. These favors led to increased profits, increased executive compensation and an increased NYSE share price. Defendant Christie in return acquired funds for his political campaigns.

As part of a quid pro quo that existed within the CAD RICO Association-In-Fact Enterprise, Defendant Christie discouraged the NJ Department of Banking and Insurance from enforcing regulatory violations against Defendant TD. This was in return for Defendant TD's **(i)** foreclosure in 2012 of Kaul's business loans, **(ii)** their scheme Each CAD RICO Association-In-Fact Defendant benefited financially from the CAD RICO Association-In-Fact Enterprise. Defendants Allstate and GEICO eliminated past

debt, and future liability. Defendant TD was rewarded with regulatory favors not offered to their banking competitors. These favors led to increased profits, increased executive compensation and an increased NYSE share price. Defendant Christie in return acquired funds for his political campaigns.

As part of a quid pro quo that existed within the CAD RICO Association-In-Fact Enterprise, Defendant Christie discouraged the NJ Department of Banking and Insurance from enforcing regulatory violations against Defendant TD. This was in return for Defendant TD's **(i)** foreclosure in 2012 of Kaul's business loans, **(ii)** furtherance of their knowingly illegal schemes.

At all relevant times, the CAD RICO Association-In-Fact Enterprise: (a) had an existence separate and distinct from each of the CAD RICO Association-In-Fact Defendants; (b) was separate and distinct from the pattern of racketeering in which the CAD RICO Association-In-Fact Enterprise Defendants engaged; and (c) was an ongoing and continuing organization consisting of legal entities, including the CAD RICO Association-In-Fact Defendants, along with other individuals and entities, including unknown third parties that operated an association-in-fact enterprise, which was formed for the purpose of bribing Defendant Christie. The purpose of the bribery was to have him order Defendant NJBME to revoke Kaul's license. The revocation caused an increase in revenue to the CAD RICO Association-In-Fact Defendants. Defendants Allstate, GEICO and TD's increased profits and increased share prices, have not resulted in lower insurance and banking fees to the public.

The CAD RICO Association-In-Fact Defendants and their co-conspirators, through their illegal Enterprise, engaged in a pattern of racketeering activity, which involved a fraudulent scheme to increase revenue for the CAD RICO Association-In-Fact Defendants and other entities and individuals associated-in-fact with the Enterprise's activities. The CAD RICO Association-In-Fact Defendants illegal scheme to have Kaul's license revoked, caused them to profit from the increased revenues that flowed from the eradication of past debt and the elimination of future liability. These illegal profits were distributed to Defendants Christie, Solomon, Crist, Stolz and DiOrio disguised as executive compensation, share dividends, legal fees, campaign donations and no-–show jobs for family members. The CAD RICO Defendants, comprise a group of "persons" who simultaneously regulate and profit from the New Jersey Banking and Insurance Sector.

The CAD RICO Association-In-Fact Enterprise engaged in, and its activities affected, interstate and foreign commerce because it involved commercial activities across state

boundaries, such as the commercialization of risk, the lending of capital and the sale of financial products, the consequences of which have generated enormous profits.

The CAD RICO Association-In-Fact Enterprise used their common communication network to promote false information that Kaul was not qualified to perform minimally invasive spine surgery, had committed insurance fraud. Medicare fraud and bank fraud. The purpose of this propaganda campaign was to isolate Kaul from the medico-legal community and any source of capital.

Defendant TD filed a complaint in 2013 with www.checksystems.com that prevented Kaul access to banking services. Defendant TD's misconduct caused Kaul to become homeless in 2013 and compromised his economic position, which temporarily hindered his ability to litigate pending legal matters, and collect monies owed by Defendants Allstate and GEICO.

Defendant GEICO filed a frivolous lawsuit against Kaul on April 24, 2013. The falsity of its insurance fraud claims was proved when Defendant GEICO's lawsuit filed was dismissed with prejudice on December 8, 2014.

The network was used to disseminate the aforementioned falsehoods to the minimally invasive spine surgery community, in order to dissuade them from pursuing their accounts receivable. This permitted Defendants Allstate and GEICO to improperly profit from a scheme polluted with bribes, fraud, kickbacks, obstruction of justice, perjury and a criminally fraudulent opinion rendered by Defendant Solomon.

Each participant in the CAD RICO Association-In-Fact Enterprise had systematic linkages to each other through corporate ties, contractual relationships, financial ties, and a continuing coordination of activities. Through the CAD RICO Association-In-Fact Enterprise, the CAD RICO Association-In-Fact Defendants functioned as a continuing unit with the purpose of furthering the CAD RICO Association-In-Fact Scheme. The CAD RICO Association-In-Fact Defendants participated in the operation and management of the CAD RICO Association-In-Fact Enterprise by directing its affairs, as described herein. While the CAD RICO Association-In-Fact Defendants participated in, and are members of, the enterprise, they have a separate existence from the enterprise, including distinct legal statuses, different offices and roles, bank accounts, officers, directors, employees, individual personhood, reporting requirements, and financial statements.

The CAD RICO Association-In-Fact Defendants exerted substantial control over the CAD RICO Association-In-Fact Enterprise, and participated in the affairs of the

enterprise by: (a) deciding how monies were dispersed from the political action committees; (b) communicating directly with lawyers, public relation agents and political lobbyists with direct connections to Defendant Christie, and members of both state and federal governments; (c) developing policies, guidelines and fee schedules for clinical care, in which the Defendants Allstate and GEICO colluded with other New Jersey No-Fault Carriers to fix the prices of both auto insurance and the fees paid to healthcare providers; (d) procuring appointments to regulatory state agencies, which they abused to further their personal economic agendas; (e) writing healthcare related legislation; (f) funding state administered litigation against minimally invasive spine surgeons to whom they owed substantial monies; (g) misrepresenting and/or concealing from the public the true nature of the relationship and agreements between the members of the enterprise and the scheme to bribe Defendant Christie in order to revoke Kaul's medical license; (h) otherwise misrepresenting and/or concealing the increased personal profits that inured to their benefit as a consequence of the illegal elimination of Kaul from the practice of medicine; (i) ensuring that the other CAD RICO Association-In-Fact Defendants and unnamed co-conspirators complied with and concealed the fraudulent scheme.

Without each CAD RICO Association-In-Fact Defendants' willing participation, the CAD RICO Association-In-Fact scheme and common course of conduct would not have been successful. The CAD RICO Association-In-Fact Defendants directed and controlled the ongoing organization necessary to implement the scheme at meetings and through communications of which Plaintiff cannot fully know at present, because such information lies in the Defendants' and others' hands.

**<u>Predicate Acts: Mail and Wire Fraud</u>**

To carry out, or attempt to carry out, the scheme to defraud, the CAD RICO Association-In-Fact Defendants, each of whom is a person associated-in-fact with the CAD RICO Association-In-Fact Enterprise, did knowingly, conduct or participate, directly or indirectly, in the affairs of the CAD RICO Association-In-Fact Enterprise through a pattern of racketeering activity within the meaning of 18 U.S.C. §§ 1961(1), 1961(5) and 1962(c), and employed the use of the mail and wire facilities, in violation of 18 U.S.C. § 1341 (mail fraud) and § 1343 (wire fraud).

Specifically, the CAD RICO Association-In-fact Defendants have committed, conspired to commit, and/or aided and abetted in the commission of, at least two predicate acts of racketeering activity (i.e. violations of 18 U.S.C. §§ 1341 and 1343), within the past ten years.

The multiple acts of racketeering activity which the CAD RICO Defendants committed, or aided or abetted in the commission of, were related to each other, posed a threat of continued racketeering activity, and therefore constitute a "pattern of racketeering activity." The racketeering activity was made possible by the CAD RICO Defendants' regular use of the facilities, services, distribution channels, and employees of the CAD RICO Enterprise. The CAD RICO Association-In-Fact Defendants participated in the scheme to defraud by using mail, telephone, and the Internet to transmit mailing and wires in interstate or foreign commerce.

The CAD RICO Association-In-Fact Defendants used, directed the use of, and/or caused to be used, thousands of interstate mail and wire communications in service of their scheme through virtually uniform misrepresentations, concealments, and material omissions.

In devising and executing the illegal scheme, the CAD RICO Association-In-Fact Defendants devised and knowingly carried out a material scheme and/or artifice to defraud Kaul of the property rights of his reputation, medical license and healthcare business, by communicating to the public, Kaul's patients and his professional colleagues, that Kaul was not qualified to perform minimally invasive spine surgery and had committed insurance and bank  fraud,  materially false representations. For the purpose of executing the illegal scheme, the CAD RICO Association-In-Fact Defendants committed these racketeering acts, which number in the thousands, intentionally and knowingly with the specific intent to advance the illegal Scheme.

**From paragraph 316 to 387 Kaul has pled with particularity, fact specific to each element, of each claim, against each defendant, in a separate and distinct manner:**

**Defendant Christie + Defendant GEICO**:
Date range: 2008 to 2019.
Conduits of Communication + Bribery to Christie: Public relations firm (Mercury Public Relations + Princeton Public Relations + Law Firm (Brach Eichler + Wolf Samson) + Through state government intermediary + Directly + Political campaign fundraisers + Political campaign donations.
Mode of communication: Email + face to face
Substance of communications: Scheme to revoke Kaul's license + Scheme to destroy Kaul's reputation + Scheme to destroy Kaul's economic standing + Scheme to have Kaul ostracized + Scheme to have Kaul leave the United States + Scheme to use the bankruptcy proceedings to defraud Kaul of his assets, his real estate holdings and $ 45

million owed to him by insurance companies, including defendants Allstate + Geico + Scheme to conceal from Kaul the defendants' pattern of racketeering in the United States Bankruptcy Court for the District of New Jersey.

Tactics employed: Use of US mail and wires to file false complaints against him with Defendant NJBME + Use of the US mail and wires to communicate false information to patients, that he was not qualified to perform minimally invasive spine surgery + Use of the US mail and wires to send false information to personal injury lawyers that Kaul was not qualified to perform minimally invasive spine surgery and had committed insurance fraud + Use of the US mail and wires to send false information to New Jersey politicians, encouraging them, with the promise of political campaign 'donations' to coerce Defendant NJBME and the New Jersey Attorney General to have Kaul's license revoked + Use of the US mail and wires to organize and further schemes to bribe Defendant Christie, in order to have him order Defendant NJBME to revoke Kaul's license + Use of law and public relation firms to funnel bribes to Christie as part of quid pro quo schemes to revoke Kaul's license, destroy his reputation and cause him to leave the United States + Use of the US mail and wires to further scheme to have Kaul's license revoked by having Defendant Lomazow use his authority on Defendant NJBME to initiate an investigation against Kaul, in order to have his license revoked + Use of the US mail and wires to organize and further orders from Christie to revoke Kaul's license, in furtherance of quid pro quo schemes of bribery + Use of the US mails and wires to transmit written, telephone, or electronic communications regarding the knowingly fraudulent events surrounding the revocation of Kaul's license + Use of the US mails and wires to transmit written, telephone, or electronic communications regarding discussions between the CHD RICO Association-In-Fact Defendants and state and federal politicians about the illegal scheme to revoke Kaul's license + Use of the US mails and wires to bill and collect the increased revenues that flowed from the illegal elimination of Kaul from the practice of medicine + Use of the US mails and wires to transmit information in furtherance of Christie's scheme to illegally have his attorney general and acting director of the division of consumer affairs have Defendant NJBME revoke Kaul's license + Use of the US mails and wires to transmit information in furtherance of their scheme of converting the United States Bankruptcy Court into a racketeering enterprise + Use of the US mails and wires to transmit false information that Kaul has committed insurance fraud, was not qualified to perform minimally invasive spine surgery, had committed bank fraud and was going to be criminally indicted for Medicare fraud + Obstruction of justice and evidence tampering ('The Solomon Critique' + 'The Solomon Critique 2') + Use of the US mail and wires to transmit the illegal consequences of the obstruction of justice and evidence tampering ('The Solomon Critique' + 'The Solomon Critique 2') to the public, national (state + federal) and international healthcare agencies and regulatory bodies, in furtherance of the defendants scheme to destroy Kaul's reputation globally, his livelihood, his

economic standing and prevent him from obtaining a medical license anywhere in the world, or indeed any form of employment.

Location: Governor's office in Trenton + Christie/Republican political fundraisers + United States Bankruptcy Court for the District of New Jersey + Law offices of Rivkin Radler, Hackensack, NJ.

**Defendant Christie + Defendant Allstate**:

See above. As with Defendant Christie + Defendant GEICO.

Location: Governor's office in Trenton + Christie/Republican political fundraisers + United States Bankruptcy Court for the District of New Jersey Law offices of Wasserman + Jurista + Stolz, Basking Ridge, NJ + Law offices of Pringle/Quinn/Anzano, Belmar, NJ + Law offices of Meyner Landis, Newark + NJ Office of the New Jersey Attorney General + Allstate corporate offices.

**Defendant Christie + Defendant TD**:

See above. As with Defendant Christie + Defendant GEICO

Location: Governor's office in Trenton + Christie/Republican political fundraisers + United States Bankruptcy Court for the District of New Jersey + Law offices of Meyner Landis, Newark, NJ + TD corporate offices.

**Defendant Christie + Defendant Stolz**:

Date range: 2014 to 2021

Conduits of Communication + Bribery to Christie: See above. As with Defendant Christie + Defendant GEICO

Mode of communication: See above. As with Defendant Christie + Defendant GEICO.

Substance of communications: See above. As with Defendant Christie + Defendant GEICO.

Tactics employed: Use of the US mail and wires to communicate false information to patients, that he was not qualified to perform minimally invasive spine surgery + Use of the US mail and wires to send false information to personal injury lawyers that Kaul was not qualified to perform minimally invasive spine surgery and had committed insurance fraud + Use of the US mails and wires to transmit letters, emails and other materials indicating that the CHC RICO (or appropriate name) Association-In-Fact Defendants had instructed their members not to support Kaul in any litigation + Use of the US mails and wires to transmit written, telephone, or electronic communications regarding the knowingly fraudulent events surrounding the revocation of Kaul's license + Use of the US mails and wires to transmit written, telephone, or electronic communications regarding discussions between the CHD RICO Association-In-Fact Defendants and state and federal politicians about the illegal scheme to revoke Kaul's license + Use of the US mails and wires to bill and collect the increased revenues that flowed from the

illegal elimination of Kaul from the practice of medicine + Use of the US mails and wires to transmit information in furtherance of their scheme of converting the United States Bankruptcy Court into a racketeering enterprise + Use of the US mails and wires to transmit false information that Kaul has committed insurance fraud, was not qualified to perform minimally invasive spine surgery, had committed bank fraud and was going to be criminally indicted for Medicare fraud + Obstruction of justice and evidence tampering ('The Solomon Critique' + 'The Solomon Critique 2') + Use of the US mail and wires to transmit the illegal consequences of the obstruction of justice and evidence tampering ('The Solomon Critique' + 'The Solomon Critique 2') to the public, national (state + federal) and international healthcare agencies and regulatory bodies, in furtherance of the defendants scheme to destroy Kaul's reputation globally, his livelihood, his economic standing and prevent him from obtaining a medical license anywhere in the world, or indeed any form of employment.

Location: United States Bankruptcy Court for the District of New Jersey + Law offices of Wasserman + Jurista + Stolz, Basking Ridge, NJ.

**Defendant Christie + Defendant Dilorio**:

Date range: See above. As with Defendant Christie + Defendant Stolz.

Mode of communication: US mail + Email + Voice message + SMS (text) + Face to face. Substance of communications: See above. As with Defendant Christie + Defendant Stolz. Tactics employed: Use of the US mail and wires to communicate false information to patients, that he was not qualified to perform minimally invasive spine surgery + Use of the US mail and wires to send false information to personal injury lawyers that Kaul was not qualified to perform minimally invasive spine surgery and had committed insurance fraud + Use of the US mails and wires to transmit letters, emails and other materials indicating that the CHD RICO Association-In-Fact Defendants had instructed their members not to support Kaul in any litigation + Use of the US mails and wires to transmit written, telephone, or electronic communications regarding the knowingly fraudulent events surrounding the revocation of Kaul's license + Use of the US mails and wires to transmit written, telephone, or electronic communications regarding discussions between the CHD RICO Association-In-Fact Defendants and state and federal politicians about the illegal scheme to revoke Kaul's license + Use of the US mails and wires to transmit information in furtherance of their scheme of converting the United States Bankruptcy Court into a racketeering enterprise + Use of the US mails and wires to transmit false information that Kaul has committed insurance fraud, was not qualified to perform minimally invasive spine surgery, had committed bank fraud and was going to be criminally indicted for Medicare fraud + Obstruction of justice and evidence tampering ('The Solomon Critique' + 'The Solomon Critique 2') + Use of the US mail and wires to transmit the illegal consequences of the obstruction of justice and evidence tampering ('The Solomon Critique' + 'The Solomon Critique 2') to

the public, national (state + federal) and international healthcare agencies and regulatory bodies, in furtherance of the defendants scheme to destroy Kaul's reputation globally, his livelihood, his economic standing and prevent him from obtaining a medical license anywhere in the world, or indeed any form of employment.

Location: United States Bankruptcy Court for the District of New Jersey + Law offices of Shapiro Croland, Hackensack, NJ.

**Defendant Christie + Defendant Crist**:

Date range: 2009 to 2019

Conduits of Communication + Bribery to Christie: See above. As with Defendant Christie + Defendant Allstate.

Mode of communication: See above. As with Defendant Christie + Defendant DiIorio.

Substance of communications: See above. As with Defendant Christie + Defendant Allstate.

Tactics employed: See above. As with Defendant Christie + Defendant Allstate.

Location: See above. As with Defendant Christie + Defendant Allstate.

**Defendant Christie + Defendant Solomon**:

Date range: 2013 to 2019

Conduits of Communication + Bribery to Christie: Directly + Political campaign fundraisers + Political campaign donations.

Mode of communication: See above. As with Defendant Christie + Defendant DiIorio.

Substance of communications: Scheme to revoke Kaul's license + Scheme to destroy Kaul's reputation + Scheme to destroy Kaul's economic standing + Scheme to have Kaul ostracized + Scheme to have Kaul leave the United States.

Tactics employed: Use of the US mail and wires to communicate false information to patients, that he was not qualified to perform minimally invasive spine surgery + Use of the US mail and wires to send false information to personal injury lawyers that Kaul was not qualified to perform minimally invasive spine surgery and had committed insurance fraud + Use of the US mail and wires to organize and further schemes to bribe Defendant Christie, in order to have him order Defendant NJBME to revoke Kaul's license + Use of the US mail and wires to further scheme to have Kaul's license revoked by having Defendant Lomazow use his authority on Defendant NJBME to initiate an investigation against Kaul, in order to have his license revoked + Use of the US mail and wires to organize and further orders from Christie to revoke Kaul's license, in furtherance of quid pro quo schemes of bribery + Use of the US mails and wires to transmit written, telephone, or electronic communications regarding the knowingly fraudulent events surrounding the revocation of Kaul's license + Use of the US mails and wires to transmit written, telephone, or electronic communications regarding discussions between the CAD RICO Association-In-Fact Defendants and state and

federal politicians about the illegal scheme to revoke Kaul's license + Use of the US mails and wires to globally transmit the knowingly illegal revocation of Kaul's license to national and international healthcare related agencies (Federation of State Medical Boards + American Board of Anesthesiology + General Medical Council of the UK) and regulatory bodies, in furtherance of the illegal scheme to destroy Kaul's global reputation and livelihood, with the intention of causing his death + Use of the US mails and wires to transmit information in furtherance of Christie's scheme to illegally have his attorney general and acting director of the division of consumer affairs have Defendant NJBME revoke Kaul's license + Use of the US mails and wires to transmit information in furtherance of their scheme of converting the United States Bankruptcy Court into a racketeering enterprise + Use of the US mails and wires to transmit false information that Kaul has committed insurance fraud, was not qualified to perform minimally invasive spine surgery, had committed bank fraud and was going to be criminally indicted for Medicare fraud + Obstruction of justice and evidence tampering ('The Solomon Critique' + 'The Solomon Critique 2') + Use of the US mail and wires to transmit the illegal consequences of the obstruction of justice and evidence tampering ('The Solomon Critique' + 'The Solomon Critique 2') to the public, national (state + federal) and international healthcare agencies and regulatory bodies, in furtherance of the defendants scheme to destroy Kaul's reputation globally, his livelihood, his economic standing and prevent him from obtaining a medical license anywhere in the world, or indeed any form of employment.

Location: Christie/Republican political fundraisers + New Jersey Office of Administrative Law.


**Defendant Christie + Defendant Hafner**:

Date range: 2009 to 2019.

Conduits of Communication + Bribery to Christie: Law Firm (Brach Eichler + Wolf Samson) + Through state government intermediary + Directly + Political campaign fundraisers.

Mode of communication: See above. As with Defendant Christie + Defendant DiIorio.

Substance of communications: See above. As with Defendant Christie + Defendant Crist.

Tactics employed: Use of US mail and wires to file false complaints against him with Defendant NJBME + Use of US mail and wires to send patients letters encouraging them to file frivolous lawsuits against Kaul + Use of the US mail and wires to communicate false information to patients, that he was not qualified to perform minimally invasive spine surgery + Use of the US mail and wires to send false information to personal injury lawyers that Kaul was not qualified to perform minimally invasive spine surgery and had committed insurance fraud + Use of the US mail and wires to organize and further schemes to bribe Defendant Christie, in order to have him

order Defendant NJBME to revoke Kaul's license + Use of the US mail and wires to further scheme to have Kaul's license revoked by having Defendant Lomazow use his authority on Defendant NJBME to initiate an investigation against Kaul, in order to have his license revoked + Use of the US mail and wires to organize and further orders from Christie to revoke Kaul's license, in furtherance of quid pro quo schemes of bribery + Use of the US mails and wires to transmit letters, emails and other materials indicating that the CAD RICO Association-In-Fact Defendants had instructed their members not to support Kaul in any litigation + Use of the US mails and wires to transmit written, telephone, or electronic communications regarding the knowingly fraudulent events surrounding the revocation of Kaul's license + Use of the US mails and wires to transmit written, telephone, or electronic communications regarding discussions between the CAD RICO Association-In-Fact Defendants and state and federal politicians about the illegal scheme to revoke Kaul's license + Use of the US mails and wires to bill and collect the increased revenues that flowed from the illegal elimination of Kaul from the practice of medicine + Use of the US mails and wires to globally transmit the knowingly illegal revocation of Kaul's license to national and international healthcare related agencies (Federation of State Medical Boards + American Board of Anesthesiology + General Medical Council of the UK) and regulatory bodies, in furtherance of the illegal scheme to destroy Kaul's global reputation and livelihood, with the intention of causing his death + Use of the US mails and wires to transmit information in furtherance of Christie's scheme to illegally have his attorney general and acting director of the division of consumer affairs have Defendant NJBME revoke Kaul's license + Use of the US mails and wires to transmit information in furtherance of their scheme of converting the United States Bankruptcy Court into a racketeering enterprise + Use of the US mails and wires to transmit false information that Kaul has committed insurance fraud, was not qualified to perform minimally invasive spine surgery, had committed bank fraud and was going to be criminally indicted for Medicare fraud + Obstruction of justice and evidence tampering ('The Solomon Critique' + 'The Solomon Critique 2') + Use of the US mail and wires to transmit the illegal consequences of the obstruction of justice and evidence tampering ('The Solomon Critique' + 'The Solomon Critique 2') to the public, national (state + federal) and international healthcare agencies and regulatory bodies, in furtherance of the defendants scheme to destroy Kaul's reputation globally, his livelihood, his economic standing and prevent him from obtaining a medical license anywhere in the world, or indeed any form of employment.

Location: Christie/Republican political fundraisers + New Jersey Office of Administrative Law + Office of the NJ Attorney General.


**Defendant GEICO + Defendant Christie**:
See above. As with Defendant Christie + Defendant GEICO.

**Defendant GEICO + Defendant Allstate**:

Date range: 2006 to 2021.

Mode of communication: US mail + Email + Voice message + SMS (text) + Face to face meetings.

Substance of communications: Scheme to revoke Kaul's license + Scheme to destroy Kaul's reputation + Scheme to destroy Kaul's economic standing + Scheme to have Kaul ostracized + Scheme to have Kaul leave the United States + Scheme to use the bankruptcy proceedings to defraud Kaul of his assets, his real estate holdings and $ 45 million owed to him by insurance companies, including defendants Allstate + Geico + Scheme to conceal from Kaul the defendants' pattern of racketeering in the United States Bankruptcy Court for the District of New Jersey.

Tactics employed: Use of US mail and wires to file false complaints against him with Defendant NJBME + Use of US mail and wires to send patients letters encouraging them to file frivolous lawsuits against Kaul + Use of the US mail and wires to communicate false information to patients, that he was not qualified to perform minimally invasive spine surgery + Use of the US mail and wires to send false information to personal injury lawyers that Kaul was not qualified to perform minimally invasive spine surgery and had committed insurance fraud + Use of the US mail and wires to send false information to New Jersey politicians, encouraging them, with the promise of political campaign 'donations' to coerce Defendant NJBME and the New Jersey Attorney General to have Kaul's license revoked + Use of the US mail and wires to organize and further schemes to bribe Defendant Christie, in order to have him order Defendant NJBME to revoke Kaul's license + Use of law and public relation firms to funnel bribes to Christie as part of quid pro quo schemes to revoke Kaul's license, destroy his reputation and cause him to leave the United States + Use of the US mail and wires to further scheme to have Kaul's license revoked by having Defendant Lomazow use his authority on Defendant NJBME to initiate an investigation against Kaul, in order to have his license revoked + Use of the US mail and wires to organize and further orders from Christie to revoke Kaul's license, in furtherance of quid pro quo schemes of bribery + Use of the US mails and wires to transmit letters, emails and other materials indicating that the CAD RICO Association-In-Fact Defendants had instructed their members not to support Kaul in any litigation + Use of the US mails and wires to transmit written, telephone, or electronic communications regarding the knowingly fraudulent events surrounding the revocation of Kaul's license + Use of the US mails and wires to transmit written, telephone, or electronic communications regarding discussions between the CAD RICO Association-In-Fact Defendants and state and federal politicians about the illegal scheme to revoke Kaul's license + Use of the US mails and wires to bill and collect the increased revenues that flowed from the illegal elimination of Kaul from the practice of medicine + Use of the US mails and wires to globally transmit the knowingly illegal revocation of Kaul's license to national and

107

international healthcare related agencies (Federation of State Medical Boards + American Board of Anesthesiology + General Medical Council of the UK) and regulatory bodies, in furtherance of the illegal scheme to destroy Kaul's global reputation and livelihood, with the intention of causing his death + Use of the US mails and wires to transmit information in furtherance of Christie's scheme to illegally have his attorney general and acting director of the division of consumer affairs have Defendant NJBME revoke Kaul's license + Use of the US mails and wires to transmit information in furtherance of their scheme of converting the United States Bankruptcy Court into a racketeering enterprise + Use of the US mails and wires to transmit false information that Kaul has committed insurance fraud, was not qualified to perform minimally invasive spine surgery, had committed bank fraud and was going to be criminally indicted for Medicare fraud + Obstruction of justice and evidence tampering ('The Solomon Critique' + 'The Solomon Critique 2') + Use of the US mail and wires to transmit the illegal consequences of the obstruction of justice and evidence tampering ('The Solomon Critique' + 'The Solomon Critique 2') to the public, national (state + federal) and international healthcare agencies and regulatory bodies, in furtherance of the defendants scheme to destroy Kaul's reputation globally, his livelihood, his economic standing and prevent him from obtaining a medical license anywhere in the world, or indeed any form of employment.

Location: Christie/Republican political fundraisers + United States Bankruptcy Court for the District of New Jersey + Law offices of Wasserman + Jurista + Stolz, Basking Ridge, NJ + Law offices of Pringle + Quinn + Anzano, Belmar, NJ + Law offices of Rivkin Radler, Hackensack, NJ + Law offices of Shapiro Croland, Hackensack, NJ + New Jersey Office of Administrative Law + Allstate corporate offices + Geico corporate offices.

**Defendant GEICO + Defendant TD**:

Date range: 2010 to 2019

Mode of communication: See above. As with Defendant GEICO + Defendant Allstate.

Substance of communications: See above. As with Defendant GEICO + Defendant Allstate.

Tactics employed: See above. As with Defendant GEICO + Defendant Allstate.

Location: Christie/Republican political fundraisers + United States Bankruptcy Court for the District of New Jersey + Law offices of Rivkin Radler, Hackensack, NJ + Law offices of Meyner Landis, Newark, NJ + Geico corporate offices.

**Defendant GEICO + Defendant Stolz**:

Date range: 2014 to 2019.

Mode of communication: See above. As with Defendant GEICO + Defendant Allstate.
Substance of communications: See above. As with Defendant GEICO + Defendant Allstate.
Tactics employed: See above. As with Defendant GEICO + Defendant Allstate.
Location: Christie/Republican political fundraisers + United States Bankruptcy Court for the District of New Jersey + Law offices of Wasserman + Jurista + Stolz, Basking Ridge, NJ + Law offices of Rivkin Radler, Hackensack, NJ + Geico corporate offices.

**Defendant GEICO + Defendant Dilorio**:
Date range: 2014 to 2019.
Mode of communication: See above. As with Defendant GEICO + Defendant Allstate.
Substance of communications: See above. As with Defendant GEICO + Defendant Allstate.
Tactics employed: See above. As with Defendant GEICO + Defendant Allstate.
Location: United States Bankruptcy Court for the District of New Jersey + Law offices of Rivkin Radler, Hackensack, NJ + Law offices of Shapiro Croland, Hackensack, NJ + Geico corporate offices

**Defendant GEICO + Defendant Crist**:
Date range: 2011 to 2019.
Mode of communication: See above. As with Defendant GEICO + Defendant Allstate.
Substance of communications: As above. As with Defendant GEICO + Defendant Allstate.
Tactics employed: See above. As with Defendant GEICO + Defendant Allstate.
Location: Christie/Republican political fundraisers + United States Bankruptcy Court for the District of New Jersey + Law offices of Pringle/Quinn/Anzano, Belmar, NJ + Law offices of Rivkin Radler, Hackensack, NJ + New Jersey Office of Administrative Law + Geico corporate offices

**Defendant GEICO + Defendant Solomon**:
Date range: 2011 to 2019.
Mode of communication: See above. As with Defendant GEICO + Defendant Allstate.
Substance of communications: Scheme to revoke Kaul's license + Scheme to destroy Kaul's reputation + Scheme to destroy Kaul's economic standing + Scheme to have Kaul ostracized + Scheme to have Kaul leave the United States.
Tactics employed: See above. As with Defendant GEICO + Defendant Allstate.
Location: United States Bankruptcy Court for the District of New Jersey + Law offices of Rivkin Radler, Hackensack, NJ + New Jersey Office of Administrative Law + Geico corporate offices.

**Defendant GEICO + Defendant Hafner**:

Date range: 2010 to 2019

Mode of communication: See above. As with Defendant GEICO + Defendant Allstate.

Substance of communications: See above. As with Defendant GEICO + Defendant Allstate.

Tactics employed: See above. As with Defendant GEICO + Defendant Allstate.

Location: Christie/Republican political fundraisers + United States Bankruptcy Court for the District of New Jersey + Law offices of Rivkin Radler, Hackensack, NJ + New Jersey Office of Administrative Law + Office of the New Jersey Attorney General + Geico corporate offices.

**Defendant Allstate + Defendant Christie**:

Date range: See above. As with Defendant Christie + Defendant Allstate.

Conduits of Communication + Bribery to Christie:

Mode of communications: See above. As with Defendant Christie + Defendant Allstate.

Substance of communications: See above. As with Defendant Christie + Defendant Allstate.

Tactics employed: See above. As with Defendant Christie + Defendant Allstate.

Location: See above. As with Defendant Christie + Defendant Allstate.

**Defendant Allstate + Defendant GEICO**:

Date range: See above. A with Defendant GEICO + Defendant Allstate.

Mode of communications: See above. As with Defendant GEICO + Defendant Allstate.

Substance of communications: See above. As with Defendant GEICO + Defendant Allstate.

Tactics employed: See above. As with Defendant GEICO + Defendant Allstate.

Location: See above. As with Defendant GEICO + Defendant Allstate.

**Defendant Allstate + Defendant TD**:

Date range: See above. As with Defendant GEICO + Defendant TD.

Mode of communications: See above. As with Defendant GEICO + Defendant TD.

Substance of communications: See above. As with Defendant GEICO + Defendant TD.

Tactics employed: See above. As with Defendant GEICO + Defendant TD.

Location: Christie/Republican political fundraisers + United States Bankruptcy Court for the District of New Jersey + Law offices of Rivkin Radler, Hackensack, NJ + Law offices of Meyner Landis, Newark, NJ + Allstate corporate offices.

**Defendant Allstate + Defendant Stolz**:

Date range: 2014 to 2019.

Mode of communications: See above. As with Defendant GEICO + Defendant Stolz.
Substance of communications: See above. As with Defendant GEICO + Defendant Stolz.
Tactics employed:  See above. As with Defendant GEICO + Defendant Stolz.
Location: Christie/Republican political fundraisers + United States Bankruptcy Court for the District of New Jersey + Law offices of Wasserman + Jurista + Stolz, Basking Ridge, NJ + Law offices of Meyner Landis, Newark + NJ Office of the New Jersey Attorney General + Allstate corporate offices.

**Defendant Allstate + Defendant DiIorio**:
Date range: 2014 to 2019.
Mode of communications: See above. As with Defendant GEICO + Defendant DiIorio.
Substance of communications: See above. As with Defendant GEICO + Defendant DiIorio.
Tactics employed: See above. As with Defendant GEICO + Defendant DiIorio.
Location: United States Bankruptcy Court for the District of New Jersey + Law offices of Wasserman/Jurista/Stolz, Basking Ridge, NJ + Law offices of Shapiro Croland, Hackensack, NJ + Office of the New Jersey Attorney General + Allstate corporate offices.

**Defendant Allstate + Defendant Crist**:
Date range: 2006 to 2019.
Mode of communications: See above. As with Defendant GEICO + Defendant Crist.
Substance of communications: See above. As with Defendant GEICO + Defendant Crist.
Tactics employed: See above. As with Defendant GEICO + Defendant Crist.
Location: United States Bankruptcy Court for the District of New Jersey Law offices of Pringle /Quinn/Anzano, Belmar + NJ Law offices of Meyner Landis, Newark, NJ + Office of the New Jersey Attorney General + Allstate corporate offices.

**Defendant Allstate + Defendant Solomon**:
Date range: 2011 to 2019.
Mode of communications: See above. As with Defendant GEICO + Defendant Solomon.
Substance of communications: See above. As with Defendant GEICO + Defendant Solomon.
Tactics employed: See above. As with Defendant GEICO + Defendant Solomon.
Location: United States Bankruptcy Court for the District of New Jersey Law offices of Pringle /Quinn/Anzano, Belmar + NJ Law offices of Meyner Landis, Newark + NJ New Jersey Office of Administrative Law + Office of the New Jersey Attorney General + Allstate corporate offices.

**Defendant Allstate + Defendant Hafner**:

Date range: 2010 to 2019

Mode of communications: See above. As with Defendant GEICO + Defendant Hafner.

Substance of communications: See above. As with Defendant GEICO + Defendant Hafner.

Tactics employed: See above. As with Defendant GEICO + Defendant Hafner.

Location: Christie/Republican political fundraisers + United States Bankruptcy Court for the District of New Jersey + Law offices of Pringle/Quinn/Anzano, Belmar, NJ + Law offices of Meyner Landis, Newark, NJ + Office of the New Jersey Attorney General + Allstate corporate offices.

**Defendant TD + Defendant Christie**:

Date range: 2011 to 2019.

Conduit of Communication + Bribery to Christie: See above. As with Defendant Christie + Defendant TD.

Mode of communications: See above. As with Defendant Christie + Defendant TD.

Substance of communications: See above. As with Defendant Christie + Defendant TD.

Tactics employed: See above. As with Defendant Christie + Defendant TD.

Location: Governor's office in Trenton + Christie/Republican political fundraisers + United States Bankruptcy Court for the District of New Jersey + Law offices of Meyner Landis, Newark, NJ + TD corporate offices.

**Defendant TD + Defendant GEICO**:

Date range: 2011 to 2019.

Mode of communications: See above. As with Defendant GEICO + Defendant TD.

Substance of communications: See above. As with Defendant GEICO + Defendant TD.

Tactics employed: See above. As with Defendant GEICO + Defendant TD.

Location: Christie/Republican political fundraisers + United States Bankruptcy Court for the District of New Jersey + Law offices of Meyner Landis, Newark, NJ + Office of the New Jersey Attorney General + Allstate corporate offices + TD corporate offices.

**Defendant TD + Defendant Allstate**:

Date range: 2011 to 2019.

Mode of communications: See above. As with Defendant Allstate + Defendant TD.

Substance of communications: See above. As with Defendant Allstate + Defendant TD.

Tactics employed: See above. As with Defendant Allstate + Defendant TD.

Location: Christie/Republican political fundraisers + United States Bankruptcy Court for the District of New Jersey + Law offices of Meyner Landis, Newark, NJ + Office of the New Jersey Attorney General + Allstate corporate offices + TD corporate offices.

**Defendant TD + Defendant Stolz**:
Date range: 2014 to 2019.
Mode of communications: See above. As with Defendant GEICO + Defendant Stolz.
Substance of communications: See above. As with Defendant GEICO + Defendant Stolz.
Tactics employed: See above. As with Defendant GEICO + Defendant Stolz.
Location: Christie/Republican political fundraisers + United States Bankruptcy Court for the District of New Jersey + Law offices of Wasserman/Jurista/Stolz, Basking Ridge, NJ + Law offices of Meyner Landis, Newark, NJ + TD corporate offices.

**Defendant TD + Defendant DiIorio**:
Date range: 2014 to 2019.
Mode of communications: See above. As with Defendant GEICO + Defendant DiIorio.
Substance of communications: See above. As with Defendant GEICO + Defendant DiIorio.
Tactics employed: See above. As with Defendant GEICO + Defendant DiIorio.
Location: Christie/Republican political fundraisers + United States Bankruptcy Court for the District of New Jersey + Law offices of Meyner Landis, Newark, NJ + Law offices of Shapiro Croland, Hackensack, NJ + TD corporate offices.

**Defendant TD + Defendant Crist**:
Date range: 2011 to 2019.
Mode of communications: See above. As with Defendant GEICO + Defendant Crist.
Substance of communications: See above. As with Defendant GEICO + Defendant Crist.
Tactics employed: See above. As with Defendant GEICO + Defendant Crist.
Location: Christie/Republican political fundraisers + United States Bankruptcy Court for the District of New Jersey + Law offices of Pringle + Quinn + Anzano, Belmar + NJ Law offices of Meyner Landis, Newark + NJ Office of the New Jersey Attorney General + Allstate corporate offices +  TD corporate offices.

**Defendant TD + Defendant Solomon**:
Date range: 2011 to 2019.
Mode of communications: See above. As with Defendant GEICO + Defendant Solomon.
Substance of communications: See above. As with Defendant GEICO + Defendant Solomon.
Tactics employed: See above. As with Defendant GEICO + Defendant Solomon.
Location: Law offices of Meyner Landis, Newark, NJ New Jersey Office of Administrative Law + Office of the New Jersey Attorney General + TD corporate offices.

**Defendant TD + Defendant Hafner**:

Date range: 2010 to 2019.

Mode of communications: See above. As with Defendant GEICO + Defendant Hafner:

Substance of communications: See above. As with Defendant GEICO + Defendant Hafner.

Tactics employed: See above. As with Defendant GEICO + Defendant Hafner.

Location: Christie/Republican political fundraisers + United States Bankruptcy Court for the District of New Jersey + Law offices of Meyner Landis, Newark, NJ + Office of the New Jersey Attorney General + TD corporate offices.

**Defendant Stolz + Defendant Christie**:

See above. As with Defendant Christie + Defendant Stolz.

**Defendant Stolz + Defendant GEICO**:

See above. As with Defendant GEICO + Defendant Stolz.

**Defendant Stolz + Defendant Allstate**:

See above. As with Defendant Allstate + Defendant Stolz.

**Defendant Stolz + Defendant TD**:

See above. As with Defendant TD + Defendant Stolz.

**Defendant Stolz + Defendant DiIorio**:

Date range: 2014 to 2021.

Mode of communications: See above. As with Defendant Allstate + Defendant DiIorio.

Substance of communications: See above. As with Defendant Allstate + Defendant DiIorio.

Tactics employed: See above. As with Defendant Allstate + Defendant DiIorio

Location: Christie/Republican political fundraisers + United States Bankruptcy Court for the District of New Jersey + Law offices of Wasserman/Jurista/Stolz, Basking Ridge, NJ + Law offices of Shapiro Croland, Hackensack, NJ + New Jersey Office of Administrative Law + Office of the New Jersey Attorney General.

**Defendant Stolz + Defendant Crist**:

Date range: 2014 to 2019.

Mode of communications: See above. As with Defendant Allstate + Defendant Crist.

Substance of communications: See above. As with Defendant Allstate + Defendant Crist. Tactics employed: See above. As with Defendant Allstate + Defendant Crist.

Location: Christie/Republican political fundraisers + United States Bankruptcy Court for the District of New Jersey + Law offices of Wasserman/Jurista/Stolz, Basking Ridge, NJ + Law offices of Pringle/Quinn/Anzano, Belmar, NJ + Office of the New Jersey Attorney General + Allstate corporate offices.

**Defendant Stolz + Defendant Solomon**:
Date range: 2014 to 2019.
Mode of communication: See above. As with Defendant Allstate + Defendant Solomon.
Substance of communications: See above. As with Defendant Allstate + Solomon.
Tactics employed: See above. As with Defendant Allstate + Solomon.
Location: Law offices of Wasserman/Jurista/Stolz, Basking Ridge, NJ + New Jersey Office of Administrative Law + Office of the New Jersey Attorney General.

**Defendant Stolz + Defendant Hafner**:
Date range: 2014 to 2019.
Mode of communication: See above. As with Defendant Allstate + Defendant Hafner.
Substance of communications: See above. As with Defendant Allstate + Defendant Hafner.
Tactics employed: See above. As with Defendant Allstate + Defendant Hafner.
Location: Christie/Republican political fundraisers + United States Bankruptcy Court for the District of New Jersey + Law offices of Wasserman/Jurista/Stolz, Basking Ridge, NJ + Office of the New Jersey Attorney General + Allstate corporate offices.

**Defendant DiIorio + Defendant Christie**:
See above. As with Defendant Christie + Defendant DiIorio.

**Defendant DiIorio + Defendant GEICO**:
See above. As with Defendant GEICO + Defendant DiIorio.

**Defendant DiIorio + Defendant Allstate**:
See above. As with Defendant Allstate + Defendant DiIorio.

**Defendant DiIorio + Defendant TD**:
See above. As with Defendant TD + Defendant DiIorio.

**Defendant DiIorio + Defendant Stolz**:
See above. As with Defendant Stolz + Defendant DiIorio.

**Defendant DiIorio + Defendant Crist**:
Date range: 2014 to 2019.

Mode of communications: See above. As with Defendant Allstate + Defendant DiIorio.
Substance of communications: See above. As with Defendant Allstate + Defendant DiIorio.
Tactics employed: See above. As with Defendant Allstate + Defendant DiIorio.
Location: See above. As with Defendant Allstate + Defendant DiIorio,

**Defendant DiIorio + Defendant Solomon**:
Date range: 2014 to 2019
Mode of communications: US mail + Email + Voice message + SMS (text) + Face to face meetings.
Substance of communications: Scheme to revoke Kaul's license + Scheme to destroy Kaul's reputation + Scheme to destroy Kaul's economic standing + Scheme to have Kaul ostracized + Scheme to have Kaul leave the United States + Scheme to use the bankruptcy proceedings to defraud Kaul of his assets, his real estate holdings and $ 45 million owed to him by insurance companies, including defendants Allstate + Geico + Scheme to conceal from Kaul the defendants' pattern of racketeering in the United States Bankruptcy Court for the District of New Jersey.
Tactics employed: Use of US mail and wires to send patients letters encouraging them to file frivolous lawsuits against Kaul + Use of the US mail and wires to communicate false information to patients, that he was not qualified to perform minimally invasive spine surgery + Use of the US mail and wires to send false information to personal injury lawyers that Kaul was not qualified to perform minimally invasive spine surgery and had committed insurance fraud + Use of the US mails and wires to transmit letters, emails and other materials indicating that the CAD RICO Association-In-Fact Defendants had instructed their members not to support Kaul in any litigation + Use of the US mails and wires to transmit written, telephone, or electronic communications regarding the knowingly fraudulent events surrounding the revocation of Kaul's license + Use of the US mails and wires to transmit written, telephone, or electronic communications regarding discussions between the CAD RICO Association-In-Fact Defendants and state and federal politicians about the illegal scheme to revoke Kaul's license + Use of the US mails and wires to bill and collect the increased revenues that flowed from the illegal elimination of Kaul from the practice of medicine + Use of the US mails and wires to transmit information in furtherance of Christie's scheme to illegally have his attorney general and acting director of the division of consumer affairs have Defendant NJBME revoke Kaul's license + Use of the US mails and wires to transmit information in furtherance of their scheme of converting the United States Bankruptcy Court into a racketeering enterprise + Use of the US mails and wires to transmit false information that Kaul has committed insurance fraud, was not qualified to perform minimally invasive spine surgery, had committed bank fraud and was going to be criminally indicted for Medicare fraud + Obstruction of justice and evidence tampering

('The Solomon Critique' + 'The Solomon Critique 2') + Use of the US mail and wires to transmit the illegal consequences of the obstruction of justice and evidence tampering ('The Solomon Critique' + 'The Solomon Critique 2') to the public, national (state + federal) and international healthcare agencies and regulatory bodies, in furtherance of the defendants scheme to destroy Kaul's reputation globally, his livelihood, his economic standing and prevent him from obtaining a medical license anywhere in the world, or indeed any form of employment.

Location: Law offices of Wasserman + Jurista + Stolz, Basking Ridge, NJ New Jersey Office of Administrative Law + Office of the New Jersey Attorney General + Allstate corporate offices + Geico corporate offices.

**Defendant DiIorio + Defendant Hafner**:

Date range: 2014 to 2019.

Mode of communications: See above. As with Defendant DiIorio + Defendant Solomon.

Substance of communications: See above. As with Defendant DiIorio + Defendant Solomon.

Tactics employed: Use of US mail and wires to file false complaints against him with Defendant NJBME + Use of US mail and wires to send patients letters encouraging them to file frivolous lawsuits against Kaul + Use of the US mail and wires to communicate false information to patients, that he was not qualified to perform minimally invasive spine surgery + Use of the US mail and wires to send false information to personal injury lawyers that Kaul was not qualified to perform minimally invasive spine surgery and had committed insurance fraud + Use of the US mails and wires to transmit written, telephone, or electronic communications regarding the knowingly fraudulent events surrounding the revocation of Kaul's license + Use of the US mails and wires to transmit written, telephone, or electronic communications regarding discussions between the CAD RICO Association-In-Fact Defendants and state and federal politicians about the illegal scheme to revoke Kaul's license + Use of the US mails and wires to globally transmit the knowingly illegal revocation of Kaul's license to national and international healthcare related agencies (Federation of State Medical Boards + American Board of Anesthesiology + General Medical Council of the UK) and regulatory bodies, in furtherance of the illegal scheme to destroy Kaul's global reputation and livelihood, with the intention of causing his death + Use of the US mails and wires to transmit information in furtherance of Christie's scheme to illegally have his attorney general and acting director of the division of consumer affairs have Defendant NJBME revoke Kaul's license + Use of the US mails and wires to transmit information in furtherance of their scheme of converting the United States Bankruptcy Court into a racketeering enterprise + Use of the US mails and wires to transmit false information that Kaul has committed insurance fraud, was not qualified to perform minimally invasive spine surgery, had committed bank fraud and was going to be criminally

indicted for Medicare fraud + Obstruction of justice and evidence tampering ('<u>The Solomon Critique</u>' + '<u>The Solomon Critique 2</u>') + Use of the US mail and wires to transmit the illegal consequences of the obstruction of justice and evidence tampering ('<u>The Solomon Critique</u>' + '<u>The Solomon Critique 2</u>') to the public, national (state + federal) and international healthcare agencies and regulatory bodies, in furtherance of the defendants scheme to destroy Kaul's reputation globally, his livelihood, his economic standing and prevent him from obtaining a medical license anywhere in the world, or indeed any form of employment.

<u>Location</u>: Christie/Republican political fundraisers + United States Bankruptcy Court for the District of New Jersey + Office of the New Jersey Attorney General + Allstate corporate offices + Geico corporate offices.

**Defendant Crist + Defendant Christie**:
See above. As with Defendant Christie + Defendant Crist.

**Defendant Crist + Defendant GEICO**:
See above. As with Defendant GEICO + Crist.

**Defendant Crist + Defendant Allstate**:
See above. As with Defendant Allstate + Defendant Crist.

**Defendant Crist + Defendant TD**:
See above. As with Defendant TD + Defendant Crist.

**Defendant Crist + Defendant Stolz**:
See above. As with Defendant Stolz + Defendant Crist.

**Defendant Crist + Defendant DiIorio**:
See above. As with Defendant DiIorio + Defendant Crist.

**Defendant Crist + Defendant Solomon**:
<u>Date range</u>: 2011 to 2021
<u>Mode of communications</u>: See above. As with Defendant DiIorio + Defendant Solomon.
<u>Substance of communications</u>: See above. As with Defendant Allstate + Defendant Solomon.
<u>Tactics employed</u>: Use of US mail and wires to file false complaints against him with Defendant NJBME + Use of US mail and wires to send patients letters encouraging them to file frivolous lawsuits against Kaul + Use of the US mail and wires to communicate false information to patients, that he was not qualified to perform minimally invasive spine surgery + Use of the US mail and wires to send false

information to personal injury lawyers that Kaul was not qualified to perform minimally invasive spine surgery and had committed insurance fraud + Use of the US mail and wires to send false information to New Jersey politicians, encouraging them, with the promise of political campaign 'donations' to coerce Defendant NJBME and the New Jersey Attorney General to have Kaul's license revoked + Use of the US mail and wires to organize and further schemes to bribe Defendant Christie, in order to have him order Defendant NJBME to revoke Kaul's license + Use of law and public relation firms to funnel bribes to Christie as part of quid pro quo schemes to revoke Kaul's license, destroy his reputation and cause him to leave the United States + Use of the US mail and wires to further scheme to have Kaul's license revoked by having Defendant Lomazow use his authority on Defendant NJBME to initiate an investigation against Kaul, in order to have his license revoked + Use of the US mail and wires to organize and further orders from Christie to revoke Kaul's license, in furtherance of quid pro quo schemes of bribery + Use of the US mails and wires to transmit letters, emails and other materials indicating that the CAD RICO Association-In-Fact Defendants had instructed their members not to support Kaul in any litigation + Use of the US mails and wires to transmit written, telephone, or electronic communications regarding the knowingly fraudulent events surrounding the revocation of Kaul's license + Use of the US mails and wires to transmit written, telephone, or electronic communications regarding discussions between the CAD RICO Association-In-Fact Defendants and state and federal politicians about the illegal scheme to revoke Kaul's license + Use of the US mails and wires to bill and collect the increased revenues that flowed from the illegal elimination of Kaul from the practice of medicine + Use of the US mails and wires to transmit information in furtherance of Christie's scheme to illegally have his attorney general and acting director of the division of consumer affairs have Defendant NJBME revoke Kaul's license + Use of the US mails and wires to transmit information in furtherance of their scheme of converting the United States Bankruptcy Court into a racketeering enterprise + Use of the US mails and wires to transmit false information that Kaul has committed insurance fraud, was not qualified to perform minimally invasive spine surgery, had committed bank fraud and was going to be criminally indicted for Medicare fraud + Obstruction of justice and evidence tampering ('The Solomon Critique' + 'The Solomon Critique 2') + Use of the US mail and wires to transmit the illegal consequences of the obstruction of justice and evidence tampering ('The Solomon Critique' + 'The Solomon Critique 2') to the public, national (state + federal) and international healthcare agencies and regulatory bodies, in furtherance of the defendants scheme to destroy Kaul's reputation globally, his livelihood, his economic standing and prevent him from obtaining a medical license anywhere in the world, or indeed any form of employment.

Location: United States Bankruptcy Court for the District of New Jersey + Law offices of Pringle/Quinn/Anzano, Belmar, NJ + New Jersey Office of Administrative Law Office of the New Jersey Attorney General + Allstate corporate offices.

**Defendant Crist + Defendant Hafner**:

Date range: 2010 to 2019.

Mode of communications: US mail + Email + Voice message + SMS (text) + Face to face.

Substance of communications: Scheme to revoke Kaul's license + Scheme to destroy Kaul's reputation + Scheme to destroy Kaul's economic standing + Scheme to have Kaul ostracized + Scheme to have Kaul leave the United States + Scheme to use the bankruptcy proceedings to defraud Kaul of his assets, his real estate holdings and $ 45 million owed to him by insurance companies, including defendants Allstate + Geico + Scheme to conceal from Kaul the defendants' pattern of racketeering in the United States Bankruptcy Court for the District of New Jersey.

Tactics employed: Use of US mail and wires to file false complaints against him with Defendant NJBME + Use of US mail and wires to send patients letters encouraging them to file frivolous lawsuits against Kaul + Use of the US mail and wires to communicate false information to patients, that he was not qualified to perform minimally invasive spine surgery + Use of the US mail and wires to send false information to personal injury lawyers that Kaul was not qualified to perform minimally invasive spine surgery and had committed insurance fraud + Use of the US mail and wires to send false information to New Jersey politicians, encouraging them, with the promise of political campaign 'donations' to coerce Defendant NJBME and the New Jersey Attorney General to have Kaul's license revoked + Use of the US mail and wires to organize and further schemes to bribe Defendant Christie, in order to have him order Defendant NJBME to revoke Kaul's license + Use of law and public relation firms to funnel bribes to Christie as part of quid pro quo schemes to revoke Kaul's license, destroy his reputation and cause him to leave the United States + Use of the US mail and wires to further scheme to have Kaul's license revoked by having Defendant Lomazow use his authority on Defendant NJBME to initiate an investigation against Kaul, in order to have his license revoked + Use of the US mail and wires to organize and further orders from Christie to revoke Kaul's license, in furtherance of quid pro quo schemes of bribery + Use of the US mails and wires to transmit letters, emails and other materials indicating that the CAD RICO Association-In-Fact Defendants had instructed their members not to support Kaul in any litigation + Use of the US mails and wires to transmit written, telephone, or electronic communications regarding the knowingly fraudulent events surrounding the revocation of Kaul's license + Use of the US mails and wires to transmit written, telephone, or electronic communications regarding discussions between the CAD RICO Association-In-Fact Defendants and state and

federal politicians about the illegal scheme to revoke Kaul's license + Use of the US mails and wires to bill and collect the increased revenues that flowed from the illegal elimination of Kaul from the practice of medicine + Use of the US mails and wires to globally transmit the knowingly illegal revocation of Kaul's license to national and international healthcare related agencies (Federation of State Medical Boards + American Board of Anesthesiology + General Medical Council of the UK) and regulatory bodies, in furtherance of the illegal scheme to destroy Kaul's global reputation and livelihood, with the intention of causing his death + Use of the US mails and wires to transmit information in furtherance of Christie's scheme to illegally have his attorney general and acting director of the division of consumer affairs have Defendant NJBME revoke Kaul's license + Use of the US mails and wires to transmit information in furtherance of their scheme of converting the United States Bankruptcy Court into a racketeering enterprise + Use of the US mails and wires to transmit false information that Kaul has committed insurance fraud, was not qualified to perform minimally invasive spine surgery, had committed bank fraud and was going to be criminally indicted for Medicare fraud + Obstruction of justice and evidence tampering ('The Solomon Critique' + 'The Solomon Critique 2') + Use of the US mail and wires to transmit the illegal consequences of the obstruction of justice and evidence tampering ('The Solomon Critique' + 'The Solomon Critique 2') to the public, national (state + federal) and international healthcare agencies and regulatory bodies, in furtherance of the defendants scheme to destroy Kaul's reputation globally, his livelihood, his economic standing and prevent him from obtaining a medical license anywhere in the world, or indeed any form of employment.

Location: Christie/Republican political fundraisers + United States Bankruptcy Court for the District of New Jersey + Law offices of Wasserman/Jurista/Stolz, Basking Ridge, NJ + Law offices of Pringle/Quinn/Anzano, Belmar, NJ + New Jersey Office of Administrative Law + Office of the New Jersey Attorney General + Allstate corporate offices.

**Defendant Solomon + Defendant Christie**:
See above. As with Defendant Christie + Defendant Solomon.

**Defendant Solomon + Defendant GEICO**:
See above. As with Defendant GEICO + Defendant Solomon.

**Defendant Solomon + Defendant Allstate**:
See above. As with Defendant Allstate + Defendant Solomon.

**Defendant Solomon + Defendant TD**:
See above. As with Defendant TD + Defendant Solomon.

**Defendant Solomon + Defendant Stolz**:
See above. As with Defendant Stolz + Defendant Stolz.


**Defendant Solomon + Defendant DiIorio**:
See above. As with Defendant DiIorio + Defendant Solomon.


**Defendant Solomon + Defendant Crist**:
See above. As with Defendant Crist + Defendant Solomon.


**Defendant Solomon + Defendant Hafner**:
Date range: 2013 to 2019.
Mode of communications: US mail + Email + Voice message + SMS (text) + Face to face.
Substance of communications: Scheme to revoke Kaul's license + Scheme to destroy Kaul's reputation + Scheme to destroy Kaul's economic standing + Scheme to have Kaul ostracized + Scheme to have Kaul leave the United States.
Tactics employed: Use of US mail and wires to file false complaints against him with Defendant NJBME + Use of US mail and wires to send patients letters encouraging them to file frivolous lawsuits against Kaul + Use of the US mail and wires to communicate false information to patients, that he was not qualified to perform minimally invasive spine surgery + Use of the US mail and wires to send false information to personal injury lawyers that Kaul was not qualified to perform minimally invasive spine surgery and had committed insurance fraud – 4
Use of the US mails and wires to transmit written, telephone, or electronic communications regarding the knowingly fraudulent events surrounding the revocation of Kaul's license + Use of the US mails and wires to transmit written, telephone, or electronic communications regarding discussions between the CAD RICO Association-In-Fact Defendants and state and federal politicians about the illegal scheme to revoke Kaul's license + Use of the US mails and wires to globally transmit the knowingly illegal revocation of Kaul's license to national and international healthcare related agencies (Federation of State Medical Boards + American Board of Anesthesiology + General Medical Council of the UK) and regulatory bodies, in furtherance of the illegal scheme to destroy Kaul's global reputation and livelihood, with the intention of causing his death + Use of the US mails and wires to transmit information in furtherance of Christie's scheme to illegally have his attorney general and acting director of the division of consumer affairs have Defendant NJBME revoke Kaul's license + Use of the US mails and wires to transmit information in furtherance of their scheme of converting the United States Bankruptcy Court into a racketeering enterprise + Use of the US mails and wires to transmit false information that Kaul has committed

insurance fraud, was not qualified to perform minimally invasive spine surgery, had committed bank fraud and was going to be criminally indicted for Medicare fraud + Obstruction of justice and evidence tampering ('The Solomon Critique' + 'The Solomon Critique 2') + Use of the US mail and wires to transmit the illegal consequences of the obstruction of justice and evidence tampering ('The Solomon Critique' + 'The Solomon Critique 2') to the public, national (state + federal) and international healthcare agencies and regulatory bodies, in furtherance of the defendants scheme to destroy Kaul's reputation globally, his livelihood, his economic standing and prevent him from obtaining a medical license anywhere in the world, or indeed any form of employment.

Location: New Jersey Office of Administrative Law + Office of the New Jersey Attorney General + Allstate corporate offices + Geico corporate offices.

**Defendant Hafner + Defendant Christie**:
See above. As with Defendant Christie + Defendant Hafner.

**Defendant Hafner + Defendant GEICO**:
See above. As with Defendant GEICO + Defendant Hafner.

**Defendant Hafner + Defendant Allstate**:
See above. As with Defendant Allstate + Defendant Hafner.

**Defendant Hafner + Defendant TD**:
See above. As with Defendant TD + Defendant Hafner.

**Defendant Hafner + Defendant Stolz**:
See above. As with Defendant Stolz + Defendant Hafner.

**Defendant Hafner + Defendant DiIorio**:
See above. As with Defendant DiIorio + Defendant Hafner.

**Defendant Hafner + Defendant Crist**:
See above. As with Defendant Crist + Defendant Hafner.

**Defendant Hafner + Defendant Solomon**:
See above. As with Defendant Solomon + Defendant Hafner.

The CAD RICO Association-In-Fact Defendants' predicate acts of racketeering (18 U.S.C. § 1961(1) include, but are not limited to:
(a) Mail Fraud: The CAD RICO Association-In-Fact Defendants violated 18 U.S.C. § 1341 by sending or receiving, or causing to be sent and /or received, materials via U.S.

mail or commercial interstate carriers for the purpose of executing the unlawful scheme of bribes and kickbacks, to have Kaul's license improperly revoked, his reputation destroyed, eradicate debt, eliminate future financial liability and prevent other minimally invasive spine surgeons from collecting monies that they were owed. These ends were pursued by means of false representations and omissions.

(b)      Wire Fraud: The CAD RICO Defendants violated 18 U.S.C. § 1343 by transmitting and/or receiving, or by causing to be received, materials by wire for the purpose of executing the unlawful scheme to defraud Kaul of monies he was owed for the provision of minimally invasive spine surgery, based on false pretenses, misrepresentations that Kaul was not qualified to perform minimally invasive spine surgery, and had committed insurance and bank fraud.

(c)      The CAD RICO Association-In-Fact Defendants' use of the mails and wires include, but are not limited to: (i) the transmission of letters, emails and other materials regarding the price fixing of auto insurance  policies and physician fee schedules; (ii) the transmission of letters, emails and other materials indicating that the CAD RICO Association-In-Fact Defendants had advised the medico-legal community not to support Kaul in any litigation; (iii) written, telephone, or electronic communications regarding the events surrounding the revocation of Kaul's license; (iv) written, telephone, or electronic communications instructing the medico-legal community not to support Kaul in any litigation; (v) written, telephone, or electronic communications regarding discussions between the CAD RICO Association-In-Fact Defendants and state and federal politicians about the scheme to revoke Kaul's license; (vi) the use of the mails or wires to further schemes to eradicate the CAD RICO Association-In-Fact Defendants' debt to Kaul, and eliminate future liability; (vii) the use of the mails and wires to instruct the Chapter 7 trustee not to pursue the monies owed to Kaul's corporations, and creditors.

The CAD RICO  Association-In-Fact Defendants also communicated by U.S. mail, by interstate facsimile, and by interstate electronic mail with every American state licensing board, the Federation of State Medical Boards, the American Board of Anesthesiology, the General Medical Council of the United Kingdom, and other healthcare related third-party entities in furtherance of the scheme, the purpose of which was to harm Kaul's economic and reputational standing. The mail and wire transmissions described herein were made in furtherance of Defendants' scheme and common course of conduct designed to increase the revenues that flowed from the elimination of the debt owed to Kaul, and the eradication of future financial liability. Many of the precise dates of the fraudulent uses of the mail and interstate wire facilities have been deliberately hidden and cannot be alleged without access to the Defendants' servers and digital records. However, Plaintiff has described the types of, and in some instances, occasions on which the predicate acts of mail and/or wire fraud occurred. They include

thousands of communications to perpetuate and maintain the scheme, including the things and documents described above.

The CAD RICO Association-In-Fact Defendants have not undertaken the practices described herein in isolation, but as part of a common scheme and conspiracy. In Violation of 18 U.S.C. § 1962(d), the CAD RICO Defendants conspired to violate 18 U.S.C. § 1962(c), as described herein. Various other persons, firms, and corporations, including third-party entities and individuals not named as defendants in this Complaint, have participated as co-conspirators with the CAD RICO Association-In-Fact Defendants in these offenses and have performed acts in furtherance of the conspiracy to increase revenues, increase market share, and or minimize losses for the Defendants and their unnamed co-conspirators throughout the illegal scheme and common course of conduct.

The CAD RICO Association-In-Fact Defendants aided and abetted others in violation of the above laws. To achieve their common goals, the CAD RICO Association-In-Fact Defendants encouraged their clients to file lawsuits against Kaul, filed complaints with state and federal healthcare regulatory authorities, instructed their members to discontinue communications with Kaul and encouraged the media to publish defamatory articles. The CAD RICO Association-In-Fact Defendants and each member of the conspiracy, with knowledge and intent, agreed to the overall objectives of the conspiracy and participated in the common course of conduct. Indeed, for the conspiracy to succeed, each of the CAD RICO Association-In-Fact Defendants and their co-conspirators had to agree to conceal the fraudulent intent of the scheme, and its illegal tactics.

The CAD RICO Association-In-Fact Defendants knew, and intended that Plaintiff's patients and business network, would cease communicating and engaging in healthcare commerce with Kaul, consequent to the material misrepresentations and omissions made by them. Indeed, the Defendants knew that their only chance of eradicating their debt, and eliminating any future financial liability was to professionally and economically isolate Kaul, with the expectation that he would leave the country.

The CAD RICO Association-In-Fact Defendants engaged in a pattern of related and continuous predicate acts for eight (8) years. The predicate acts constituted a variety of unlawful activities, each conducted with the common purpose of eliminating Kaul from the practice of medicine, and thus for **(i)** Defendants Allstate and GEICO eradicating their debt and increasing their revenues, executive compensation and NYSE share price and thus for **(ii)** Defendant Christie increasing political donations into his political campaign and bribes into off-shore bank accounts and trusts, and thus for **(iii)**

Defendant Solomon bribes into off-shore bank accounts and trusts and no-show jobs for family members, and thus for **(iv)** Defendant Crist increasing executive compensation and share dividends, and thus for **(v)** Defendants Stolz and DiOrio increasing legal fees, and thus for **(vi)** Defendant Hafner bribes funneled into off-shore accounts and trusts.

The predicate acts also had the same or similar results, participants and methods of commission.

During the CAD RICO Association-In-Fact Defendants' perpetration of their scheme the true purpose of the fraudulent racket was revealed to the CAD RICO Association-In-Fact Defendant, TD. Nevertheless, in furtherance of their scheme, Defendants TD continued to disseminate falsehoods that Kaul had committed insurance fraud, Medicare fraud, bank fraud and was not qualified to perform minimally invasive spine surgery.

By reason of, and as a result of the conduct of the CAD RICO Defendants, and in particular, their pattern of racketeering activity, Plaintiff has been injured in his business and/or property in multiple ways, including but not limited to the loss of his medical license, the loss of his reputation, the loss of his livelihood, the loss of monies earned, and the loss of future earnings.

The CAD RICO Association-In-Fact Defendants violations of 18 U.S.C. §1962(c) and (d) have directly and proximately caused injuries and damage to Plaintiff who is entitled to bring this action for three times its actual damage, as well as injunctive/equitable relief, costs, and reasonable attorneys' fees pursuant to 18 U.S.C. § 1964(c).

**COUNT FOUR**
**VIOLATIONS OF 18 U.S.C. § 1962(C)-−(D)**
**THE RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT, 18 U.S.C.**
**§ 1961, ET SEQ.**
**(By Plaintiff against Defendants Christie + HUMC + AHS + Garrett + Hafner + Stein + NJBME + Kanefsky)**
**The CAS RICO Association-In-Fact-Enterprise**

Plaintiff incorporates by reference each preceding paragraph as though fully set forth herein.

Plaintiff brings this Count against Defendants Christie + HUMC + AHS + Garrett + Hafner + Stein + NJBME (inclusively, for the purposes of this Count, the "CAS RICO Association-In-Fact Defendants"). At all relevant times the CAS RICO Association-In-Fact Defendants have been "persons" under 18 U.S.C. § 1961(3) because they are capable of holding, and do hold, "a legal or beneficial interest in property." Section 1962(c) makes it "unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity." 18 U.S.C. § 1962(c).

Section 1962(d) makes it unlawful for "any person to conspire to violate" Section 1962(c), among other provisions. See 18 U.S.C. § 1962(d).

As explained in detail below, the CAS RICO Association-In-Fact Defendants sought, amongst other things, to eliminate Kaul from the practice of medicine, eliminate the competition he and his surgical center presented, destroy his reputation in the field of minimally invasive spine surgery and destroy his economic standing. The purpose of their scheme was to divert patients requiring minimally invasive spine surgery away from Kaul's surgical center, and towards their facilities and physicians. As explained in detail below, the CAS RICO Defendants' decades-long misconduct violated sections 1962(c) and (d).

**Description of the CAS RICO Association-In-Fact Enterprise**

RICO defines an enterprise as "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4). An association-in-fact enterprise requires three structural features: (1) a purpose; (2) relationships among those associated with the enterprise; and (3) longevity sufficient to permit those associates to pursue the enterprise's purpose.

For years Defendants HUMC and AHS occupied the dominant role in the delivery of spine care in New Jersey, that positioned them at the center of the political and business sectors, with a wide and deep network of middlemen known as 'political lobbyists' and 'public relation gurus'. The Defendants market share in the minimally invasive spine surgery sector began to decrease in approximately 2004, with increased development of free standing, predominantly physician owned, surgical centers.

Kaul's performance in 2005 of the first outpatient minimally invasive spine fusion proved that the procedure could be done on a same day basis. As a consequence, Defendants

HUMC and AHS lost business, and then engaged in a scheme of bribes and kickbacks, in which Defendant Christie used Defendants NJBME, Hafner and Solomon to revoke Kaul's license, an event that caused his surgical center to file for Chapter 11 bankruptcy. As a consequence of Defendants HUMC and AHS bribing Defendant Christie, he vetoed a bill in approximately 2011 that would have permitted one operating room surgical centers to apply for state licensure. The effect of the veto was to artificially reduce competition.

Defendants HUMC and AHS also engineered legislative changes that reduced surgical center funding from Defendants Allstate and GEICO and restricted the performance of minimally invasive spinal fusions to the Defendant Hospitals. This caused the closure of approximately fifty percent of facilities from 2004 to 2012. The effect of these changes has been to reduce the availability of minimally invasive spine surgery, an etiological factor in the opiate epidemic. The Defendant HUMC and AHS monopolization of the minimally invasive spine surgery sector has permitted them to engage in price gouging with private health insurers, the extra cost of which has been passed onto the public.

In the past five years, the Defendant HUMC and AHS monopolization of the minimally invasive spine surgery market has caused an exponential increase in revenues, increased political power and disproportionate leverage in negotiations with private insurance companies. The increased monies have resulted in aggressive expansion projects that have focused on highly profitable outpatient spine centers. The reduced competition from surgical centers has given the CAS RICO Association-In-Fact Defendant Hospitals increased bargaining power with private health insurers, in which the CAS RICO Association-In-fact Defendants have forced excessive reimbursement rates, under threat of boycott to the private health insurer's clients. Kaul's outpatient spine surgery model presented an enormous threat to Defendants HUMC and AHS, whose revenues would have been reduced if Kaul's four operating room surgical center had opened.

Defendants HUMC and AHS conspired with Defendants Christie, Hafner and NJBME to eliminate and legally compromise physicians and surgical centers that competed in their market. This was achieved through bribing Defendant Christie into signing legislation that (i) limited surgical center development, (ii) eliminated reimbursement to surgical centers for minimally invasive spine surgery, (iii) entered legislation that permitted Defendants Allstate and GEICO to stop paying surgical centers for minimally invasive spine surgery and (iv) initiated medical licensing prosecutions against physicians who practiced minimally invasive spine surgery independently in surgical centers with no hospital affiliations.

Defendants HUMC and AHS illegal scheme to revoke Kaul's license was perpetrated through a series of quid pro quos with Defendant Christie in which Defendants HUMC and AHS funneled bribes into off-shore accounts and aggressively funded Defendant Christie's political activities.

Defendant Christie used state resources (State Treasury), agencies (Defendant NJBME) and personnel (Defendants Hafner + Solomon) to revoke Kaul's license. The revocation caused Kaul's corporations to file for Chapter 11 Bankruptcy and permitted Defendant Stolz to seize Kaul's surgical center and a license he had obtained in 2009 to build a thirty-six thousand square foot, four operating room surgical center in Pompton Lakes, NJ. A moratorium on surgical centers was issued in 2009 because of pressure from Defendants HUMC, AHD, Allstate and GEICO.

Kaul obtained one of the last licenses issued, and it was illegally seized, along with all of Kaul's property, as a consequence of the illegal schemes: **(i)** orchestrated by Defendant Christie, **(ii)** perpetrated by Defendants Hafner, Solomon, NJBME, Lomazow, Stolz and DiOrio and **(iii)** funded by Defendants Allstate, GEICO, HUMS, AHS, Heary, Kaufman, Przybyslski, Staats, Crist, Stein, Cohen, ASIPP and CNS, Garrett, **(iv)** facilitated by Defendants TD, NJMG, Washburn.

Discussions occurred between the CAS RICO Association-In-Fact Defendants regarding Kaul, during which the parties discussed the threat to their corporate profits, of Kaul's expanding outpatient minimally invasive spine surgery practice.

In order to ensure that their corporate profits were not affected by the increasing commercial success of Kaul's minimally invasive spine surgery practice, and the expanding number of minimally invasive spine surgeons being trained by Kaul, the Defendant HUMC and AHS co-orchestrated a scheme, with the other CAS RICO Association-In-Fact Defendants to have Kaul's medical license revoked. As part of the scheme the CAS RICO Association-In-Fact Defendants disseminated false information within the medico-legal community, that Kaul had committed insurance fraud and was not qualified to perform minimally invasive spine surgery. This was done in order to discredit Kaul and isolate him from his colleagues and patients.

The CAS RICO Association-In-Fact Defendants fraudulent scheme to eliminate Kaul's practice and increase the profits of the Defendants HUMC and AHS, benefited their corporate executives, and permitted increased monies to be funneled through middlemen to Defendant Christie.

At all relevant times the CAS RICO Association-In-Fact Defendants operated an ongoing association-in-fact enterprise. This association-in-fact enterprise was formed for the purpose of ensuring that their fraudulent scheme to have Kaul's license revoked was perpetrated to its conclusion. A majority of these meetings occurred behind closed doors in Morris County and Bergen County, many of which were attended by members of the Office of the New Jersey Attorney General, and most frequently, Defendant Hafner. Defendants conducted a pattern of racketeering activity under § 18 U.S.C. 1961(4).

Alternatively, each of the CAS RICO Association-In-Fact Defendants constitutes a single legal entity "enterprise" within the meaning of 18 U.S.C. § 1961(4), through which the other Defendants conducted their pattern of racketeering activity. The CAS RICO Association-In-Fact Defendants' separate legal statuses facilitated the fraudulent scheme and provided a hoped-for shield from liability for the other Defendants and their co-conspirators. The enterprises, alleged in this and the previous paragraph, are referred to collectively as the "CAS RICO Association-In-fact Enterprise."

At all relevant times, the CAS RICO Association-In-Fact Enterprise constituted a single "enterprise" or multiple enterprises within the meaning of 18 U.S.C. § 1961(4), as legal entities, as well as individuals and legal entities associated-in-fact for the common purpose of engaging in the CAS RICO Association-In-Fact Defendants profit making scheme, and the fraudulent scheme to corrupt state agencies and actors to ensure the revocation of Kaul's license.

418.    The association-in-fact CAS Enterprise consisted of the following entities and individuals: **(a)** Defendant HUMC; **(b)** Defendant AHS; **(c)** Defendant Garrett; **(d)** Defendant Stein; **(e)** Defendant NJBME; **(f)** Defendant Hafner; **(g)** Defendant Christie. While each of the CAS RICO Association-In-Fact Defendants acquired, maintained control of, were associated with, and conducted or participated in the conduct of the CAS RICO Association-In-Fact Enterprise's affairs, at all relevant times, the CAS RICO Association-In-fact Enterprise: **(a)** had an existence separate and distinct from each CAS RICO Association-In-Fact Defendants; **(b)** was separate and distinct from the pattern of racketeering in which the CAS RICO Association-In-Fact Defendants engaged; and **(c)** was an ongoing and continuing organization consisting of legal entities, including the CAS RICO Association-In-Fact Defendants, along with other individuals and entities, including unknown third parties.

The CAS RICO Association-In-Fact Defendants and their co-conspirators, through their illegal CAS RICO Association-In-Fact Enterprise engaged in a pattern of racketeering activity, which involved a fraudulent scheme to increase revenue for the CAS RICO

Association-In-Fact Enterprise's activities by bribing Defendant Christie to have Kaul's license revoked. The revocation was publicized by Defendants NJMG and Washburn, who defamed and slandered Kaul. The benefit to Defendant Stein of the revocation and defamation, was that it facilitated litigation he had commenced against Kaul. Defendants NJMG and Washburn publicized this litigation on multiple occasions, which assisted the litigation, and gave Defendant Stein information about Kaul's personal affairs.

Defendant Christie provided the CAS RICO Association-In-Fact Enterprise with the use of state agencies (Defendant NJBME + New Jersey Office of Administrative Law)) personnel (Defendants Solomon + Hafner) and resources (State Treasury) necessary to revoke Kaul's license. These services were provided in return for bribes funneled into off-shore accounts and trusts, and monies disguised as 'campaign donations' to Defendant Christie. The monies were part of a quid pro quo scheme, not protected under Noerr Pennington, in which there was an explicit understanding that the bribes were payment for the revocation of Kaul's license.

In furtherance of the scheme, the CAS RICO Association-In-Fact Defendants each affirmatively misrepresented or concealed from their corporate board members, the existence of bribes, and the fraudulent nature and purpose of the scheme to revoke Kaul's license. Defendants HUMC, AHS and Garrett understood that if the board members became aware of the scheme, they would have opposed it, realizing the liability it would incur. Specifically, the CAS RICO Association-In-Fact Defendants claimed that the monies paid to Defendant Christie were intended to assist them in their legislative efforts, when in fact, they were quid pro quo payments in order to have Kaul's license revoked.

## The CAS RICO Enterprise Sought to Fraudulently Increase Defendants' Profits and Revenues

At all relevant times, the CAS RICO Association-In-Fact Enterprise: **(a)** had an existence separate and distinct from each CAS RICO Association-In-fact Defendant; **(b)** was separate and distinct from the pattern of racketeering in which the CAS RICO Association-In-Fact Defendants engaged; and **(c)** was an ongoing and continuing organization consisting of legal entities, including the CAS RICO Association-In-Fact Defendants, along with other individuals and entities, including unknown third parties that operated an association-in-fact enterprise.

The CAS RICO Association-In-Fact Enterprise was formed for the purpose of bribing Governor Christie, in order to **(i)** have him instruct the medical board to revoke Kaul's license, to **(ii)** veto legislation contrary to the commercial interests of the Defendant

HUMC and AHS, and to **(iii)** use the licensing proceedings against Kaul to mischaracterize the clinical significance of hospital privileges. In fact, there is no evidence that connects clinical outcomes with the possession of hospital privileges, and hospitals have a far higher mortality and morbidity rate than outpatient surgical centers.

Defendants HUMC and AHS are able to conceal their complications because of the influence they have purchased with regulatory agencies and the media. The internal counsel for Defendant NJMG is on the board of Defendant HUMC. Defendants HUMC and AHS comprise a group of "persons" who simultaneously wield immense influence with regulatory agencies, while trading in the market regulated by these agencies.

The CAS RICO Association-In-Fact Enterprise engaged in, and its activities affected, interstate and foreign commerce because it involved commercial activities across state boundaries, such as national marketing strategies and the treatment of patients from within the tri-state area, the consequences of which have generated enormous profits.

Within the CAS RICO Association-In-Fact Enterprise, there was a common communication network by which co-conspirators shared information on a regular basis. The CAS RICO Association-In-Fact Enterprise used this common communication network for purposes of promoting false information that Kaul was not qualified to perform minimally invasive spine surgery, had committed insurance fraud, Medicare fraud and bank fraud. The purpose of this propaganda campaign was to isolate Kaul from the medico-legal community and any source of capital.

Each participant in the CAS RICO Association-In-Fact Enterprise had systematic linkages to each other through corporate ties, contractual relationships, financial ties, and a continuing coordination of activities. Through the CAS RICO Association-In-Fact Enterprise, the CAS RICO Association-In-Fact Defendants functioned as a continuing unit with the purpose of furthering the CAS RICO Association-In-Fact Scheme.

The CAS RICO Association-In-Fact Defendants participated in the operation and management of the CAS RICO Association-In-Fact Enterprise by directing its affairs, as described herein. While the CAS RICO Association-In-Fact Defendants participated in, and are members of, the enterprise, they have a separate existence from the enterprise, including distinct legal statuses, different offices and roles, bank accounts, officers, directors, employees, individual personhood, reporting requirements, and financial statements. The CAS RICO Association-In-Fact Defendants exerted substantial control over the CAS RICO Association-In-Fact Enterprise, and participated in the affairs of the enterprise by: **(a)** deciding how monies were dispersed from the political action committees; **(b)** communicating directly with lawyers, public relation agents and political

lobbyists with direct connections to Defendant Christie, and members of both state and federal governments; **(c)** developing policies, guidelines and regulations that controlled where and by whom clinical care was delivered; **(d)** procuring appointments to regulatory state agencies, which they abused to further their personal economic agendas; **(e)** writing healthcare related legislation; **(f)** misrepresenting and/or concealing from the public the true nature of  the relationship and agreements between the members of the enterprise and the scheme to bribe Defendant Christie in order to revoke Kaul's medical license; **(g)** otherwise misrepresenting and/or concealing the increased personal profits that inured to their benefit as a consequence of the illegal elimination of Kaul from the practice of medicine; **(h)** ensuring that the other CAS RICO Association-In-Fact Defendants and unnamed co-conspirators complied with and concealed the fraudulent scheme.

Without each CAS RICO Association-In-Fact Defendants' willing participation, the CAS RICO Association-In-fact Scheme and common course of conduct would not have been successful.

The CAS RICO Association-In-Fact Defendants directed and controlled the ongoing organization necessary to implement the scheme at meetings and through communications of which Plaintiff cannot fully know at present, because such information lies in the Defendants' and others' hands.

### Predicate Acts: Mail and Wire Fraud

To carry out, or attempt to carry out, the scheme to defraud, the CAS RICO Association-In-Fact Defendants, each of whom is a person associated-in-fact with the CAS RICO Association-In-Fact Enterprise, did knowingly, conduct or participate, directly or indirectly, in the affairs of the CAS  RICO Association-In-Fact Enterprise through a pattern of racketeering activity within the meaning of 18 U.S.C. §§ 1961(1), 1961(5) and 1962(c), and employed the use of the mail and wire facilities, in violation of 18 U.S.C. § 1341 (mail fraud) and § 1343 (wire fraud).

Specifically, the CAS RICO Association-In-Fact Defendants have committed, conspired to commit, and/or aided and abetted in the commission of, at least two predicate acts of racketeering activity (i.e. violations of 18 U.S.C. §§ 1341 and 1343), within the past ten years.

The multiple acts of racketeering activity which the CAS RICO Association-In-Fact Defendants committed, or aided or abetted in the commission of, were related to each other, posed a threat of continued racketeering activity, and therefore constitute a

"pattern of racketeering activity." The racketeering activity was made possible by the CAS RICO Association-In-Fact Defendants' regular use of the facilities, services, distribution channels, and employees of the CAS RICO Association-In-Fact Enterprise. The CAS RICO Association-In-Fact Defendants participated in the scheme to defraud by using mail, telephone, and the Internet to transmit mailing and wires in interstate or foreign commerce.

The CAS RICO Association-In-Fact Defendants used, directed the use of, and/or caused to be used, thousands of interstate mail and wire communications in perpetration of their scheme through virtually uniform misrepresentations, concealments, and material omissions.

In devising and executing the illegal scheme, the CAS RICO Association-In-Fact Defendants devised and knowingly carried out a material scheme and/or artifice to defraud Kaul of the property rights of his reputation, medical license and healthcare business, by communicating to the public, Kaul's patients and his professional colleagues, that Kaul was not qualified to perform minimally invasive spine surgery and had committed insurance and bank fraud, materially false representations. For the purpose of executing the illegal scheme, the CAS RICO Association-In-Fact Defendants committed these racketeering acts, which number in the thousands, intentionally and knowingly with the specific intent to advance the illegal scheme.

**From paragraph 437 to 491 Kaul has pled with particularity, fact specific to each element, of each claim, against each defendant, in a separate and distinct manner:**

<u>Defendant Christie + Defendant HUMC</u>:
<u>Date range</u>: 2006 to 2019.
<u>Conduits of Communication + Bribery to Christie</u>: Public relations firm (Mercury Public Relations + Princeton Public Relations + Law Firm (Brach Eichler + Wolf Samson) + Through state government intermediary + Directly + Political campaign fundraisers + Political campaign donations.
<u>Mode of Communications</u>: US mail + Email + Voice message + SMS (text) + Face to face.
<u>Substance of communication</u>: Scheme to revoke Kaul's license + Scheme to destroy Kaul's reputation + Scheme to destroy Kaul's economic standing + Scheme to have Kaul ostracized + Scheme to have Kaul leave the United States.
<u>Tactics employed</u>: Use of the US mail and wires to communicate false information to patients, that he was not qualified to perform minimally invasive spine surgery + Use of

the US mail and wires to send false information to New Jersey politicians, encouraging them, with the promise of political campaign 'donations' to coerce Defendant NJBME and the New Jersey Attorney General to have Kaul's license revoked + Use of the US mail and wires to organize and further schemes to bribe Defendant Christie, in order to have him order Defendant NJBME to revoke Kaul's license + Use of law and public relation firms to funnel bribes to Christie as part of quid pro quo schemes to revoke Kaul's license, destroy his reputation and cause him to leave the United States + Use of the US mail and wires to further scheme to have Kaul's license revoked by having Defendant Lomazow use his authority on Defendant NJBME to initiate an investigation against Kaul, in order to have his license revoked + Use of the US mail and wires to organize and further orders from Christie to revoke Kaul's license, in furtherance of quid pro quo schemes of bribery + Use of the US mail and wires to transmit letters, emails and other materials negotiating the horizontal agreements and market share distributions + Use of the US mails and wires to transmit letters, emails and other materials indicating that the CAS RICO Association-In-Fact Defendants had instructed their members not to support Kaul in any litigation + Use of the US mails and wires to transmit written, telephone, or electronic communications regarding the knowingly fraudulent events surrounding the revocation of Kaul's license + Use of the US mails and wires to transmit written, telephone, or electronic communications regarding discussions between the CAS RICO Association-In-Fact Defendants and state and federal politicians about the illegal scheme to revoke Kaul's license + Use of the US mails and wires to bill and collect the increased revenues that flowed from the illegal elimination of Kaul from the practice of medicine + Use of the US mails and wires to transmit information in furtherance of Christie's scheme to illegally have his attorney general and acting director of the division of consumer affairs have Defendant NJBME revoke Kaul's license + Use of the US mail and wires to transmit the illegal consequences of the obstruction of justice and evidence tampering ('The Solomon Critique' + 'The Solomon Critique 2') to the public, national (state + federal) and international healthcare agencies and regulatory bodies, in furtherance of the defendants scheme to destroy Kaul's reputation globally, his livelihood, his economic standing and prevent him from obtaining a medical license anywhere in the world, or indeed any form of employment

Location: Hackensack Medical Center + Governor's office in Trenton + Christie/Republican political fundraisers + Office of the New Jersey Attorney General

**Defendant Christie + Defendant AHS**:

Date range: See above. As with Defendant Christie + Defendant HUMC.

Conduits of Communication + Bribery to Christie: See above. As with Defendant Christie + Defendant HUMC.

Mode of Communications: See above. As with Defendant Christie + Defendant HUMC.
Substance of communication: See above. As with Defendant Christie + Defendant HUMC. Tactics employed: See above. As with Defendant Christie + Defendant HUMC.
Location: Morristown Memorial Hospital + Governor's office in Trenton + Christie/Republican political fundraisers + Office of the New Jersey Attorney General.

**Defendant Christie + Defendant Garrett**:
Date range: See above. As with Defendant Christie + Defendant HUMC.
Conduits of Communication + Bribery to Christie: See above. As with Defendant Christie + Defendant HUMC.
Mode of Communications: See above. As with Defendant Christie + Defendant HUMC.
Substance of communication: See above. As with Defendant Christie + Defendant HUMC. Tactics employed: See above. As with Defendant Christie + Defendant HUMC.
Location: Morristown Memorial Hospital + Governor's office in Trenton + Christie/Republican political fundraisers + Office of the New Jersey Attorney General

**Defendant Christie + Defendant Hafner**:
Date range: 2009 to 2019.
Conduits of Communication + Bribery to Christie: See above. As with Defendant Christie + Defendant HUMC.
Mode of Communications: See above. As with Defendant Christie + Defendant HUMC.
Substance of communication: See above. As with Defendant Christie + Defendant HUMC.
Tactics employed: See above. As with Defendant Christie + Defendant HUMC.
Location: Governor's office in Trenton + Christie/Republican political fundraisers + Office of the New Jersey Attorney General.

**Defendant Christie + Defendant Stein**:
Date range: 2006 to 2019.
Conduits of Communication + Bribery to Christie: See above. As with Defendant Christie + Defendant HUMC.
Mode of Communications: See above. As with Defendant Christie + Defendant HUMC.
Substance of communication: See above. As with Defendant Christie + Defendant HUMC. Tactics employed: See above. As with Defendant Christie + Defendant HUMC.
Location: Office of the New Jersey Attorney General + Governor's office in Trenton – 7 Christie/Republican political fundraisers.

**Defendant Christie + Defendant NJBME**:
Date range: 2009 to 2019.

Conduits of Communication + Bribery to Christie: See above. As with Defendant
Christie + Defendant HUMC
Mode of Communications: See above. As with Defendant Christie + Defendant HUMC.
Substance of communication: See above. As with Defendant Christie + Defendant
HUMC. Tactics employed: See above. As with Defendant Christie + Defendant HUMC.
Location: Governor's office in Trenton + Christie/Republican political fundraisers.

**Defendant Christie + Defendant Kanefsky**:
Date range: 2009 to 2019.
Conduits of Communication + Bribery to Christie: See above. As with Defendant
Christie + Defendant HUMC.
Mode of Communications: See above. As with Defendant Christie + Defendant HUMC.
Substance of communication: See above. As with Defendant Christie + Defendant
HUMC. Tactics employed: See above. As with Defendant Christie + Defendant HUMC.
Location: Governor's office in Trenton + Christie/Republican political fundraisers.

**Defendant HUMC + Defendant Christie**:
Date range: See above. As with Defendant Christie + Defendant HUMC.
Conduits of Communication + Bribery to Christie: See above. As with Defendant
Christie + Defendant HUMC.
Mode of Communications: See above. As with Defendant Christie + Defendant HUMC.
Substance of communication: See above. As with Defendant Christie + Defendant
HUMC. Tactics employed: See above. As with Defendant Christie + Defendant HUMC.
Location: Governor's office in Trenton + Christie/Republican political fundraisers +
HUMC.

**Defendant HUMC + Defendant AHS**:
Date range: 2006 to 2019.
Conduits of Communication + Bribery to Christie: See above. As with Defendant
Christie + Defendant HUMC.
Mode of Communications: See above. As with Defendant Christie + Defendant HUMC.
Substance of communication: See above. As with Defendant Christie + Defendant
HUMC.
Tactics employed: See above. As with Defendant Christie + Defendant HUMC.
Location: Christie/Republican political fundraisers + HUMC + AHS + Office of the New
Jersey Attorney General.

**Defendant HUMC + Defendant Garrett**:
Date range: 2006 to 2019.

<u>Conduits of Communication + Bribery to Christie</u>: See above. As with Defendant
Christie + Defendant HUMC.
<u>Mode of Communications</u>: See above. As with Defendant Christie + Defendant HUMC.
<u>Substance of communication</u>: See above. As with Defendant Christie + Defendant
HUMC. Tactics employed: See above. As with Defendant Christie + Defendant HUMC.
<u>Location</u>: Hackensack Medical Center + Christie/Republican political fundraisers

**Defendant HUMC + Defendant Hafner**:
Date range: 2009 to 2019
Conduits of Communication + Bribery to Christie: See above. As with Defendant
Christie + Defendant HUMC.
Mode of Communications: See above. As with Defendant Christie + Defendant HUMC.
Substance of communication: See above. As with Defendant Christie + Defendant
HUMC. Tactics employed: See above. As with Defendant Christie + Defendant HUMC.
Location: Hackensack Medical Center + Office of the New Jersey Attorney General.

**Defendant HUMC + Defendant Stein**:
<u>Date range</u>: 2006 to 2019.
Conduits of Communication + Bribery to Christie: See above. As with Defendant
Christie + Defendant HUMC.
Mode of Communications: See above. As with Defendant Christie + Defendant HUMC.
Substance of communication: See above. As with Defendant Christie + Defendant
HUMC. Tactics employed: See above. As with Defendant Christie + Defendant HUMC.
Location: Hackensack Medical Center + Christie/Republican political fundraisers

**Defendant HUMC + Defendant NJBME**:
Date range: 2006 to 2019.
Conduits of Communication + Bribery to Christie: See above. As with Defendant
Christie + Defendant HUMC.
Mode of Communications: See above. As with Defendant Christie + Defendant HUMC.
Substance of communication: See above. As with Defendant Christie + Defendant
HUMC. Tactics employed: See above. As with Defendant Christie + Defendant HUMC.
Location: Hackensack Medical Center + Office of the New Jersey Attorney General

**Defendant HUMC + Defendant Kanefsky**:
<u>Date range</u>: 2009 to 2019
<u>Conduits of Communication + Bribery to Christie</u>: See above. As with Defendant
Christie + Defendant HUMC.

Mode of Communications: See above. As with Defendant Christie + Defendant HUMC.
Substance of communication: See above. As with Defendant Christie + Defendant HUMC. Tactics employed: See above. As with Defendant Christie + Defendant HUMC.
Location: Hackensack Medical Center + Office of the New Jersey Attorney General

**Defendant AHS + Defendant Christie**:
Date range: 2006 to 2019.
Conduits of Communication + Bribery to Christie: See above. As with Defendant Christie + Defendant HUMC.
Mode of Communications: See above. As with Defendant Christie + Defendant HUMC.
Substance of communication: See above. As with Defendant Christie + Defendant HUMC. Tactics employed: See above. As with Defendant Christie + Defendant HUMC.
Location: Morristown Memorial Hospital + Governor's office in Trenton + Christie/Republican political fundraisers.

**Defendant AHS + Defendant HUMC**:
Date range: 2006 to 2019
Conduits of Communication + Bribery to Christie: See above. As with Defendant Christie + Defendant HUMC.
Mode of Communications: See above. As with Defendant Christie + Defendant HUMC.
Substance of communication: See above. As with Defendant Christie + Defendant HUMC. Tactics employed: See above. As with Defendant Christie + Defendant HUMC.
Location: Morristown Memorial Hospital + Hackensack Medical Center.

**Defendant AHS + Defendant Garrett**:
Date range: 2006 to 2019
Conduits of Communication + Bribery to Christie: See above. As with Defendant Christie + Defendant HUMC.
Mode of Communications: See above. As with Defendant Christie + Defendant HUMC.
Substance of communication: See above. As with Defendant Christie + Defendant HUMC. Tactics employed: See above. As with Defendant Christie + Defendant HUMC.
Location: Morristown Memorial Hospital + Hackensack Medical Center + Christie/Republican political fundraisers

**Defendant AHS + Defendant Hafner**:
Date range: 2009 to 2019.
Conduits of Communication + Bribery to Christie: See above. As with Defendant Christie + Defendant HUMC.

Mode of Communications: See above. As with Defendant Christie + Defendant HUMC.
Substance of communication: See above. As with Defendant Christie + Defendant HUMC. Tactics employed: See above. As with Defendant Christie + Defendant HUMC.
Location: Morristown Memorial Hospital + Office of the New Jersey Attorney General

**Defendant AHS + Defendant Stein**:
Date range: 2006 to 2019
Conduits of Communication + Bribery to Christie: See above. As with Defendant Christie + Defendant HUMC.
Mode of Communications: See above. As with Defendant Christie + Defendant HUMC.
Substance of communication: See above. As with Defendant Christie + Defendant HUMC. Tactics employed: See above. As with Defendant Christie + Defendant HUMC.
Location: Christie/Republican political fundraisers + Morristown Memorial Hospital

**Defendant AHS + Defendant NJBME**:
Date range: 2006 to 2019
Conduits of Communication + Bribery to Christie: See above. As with Defendant Christie + Defendant HUMC.
Mode of Communications: See above. As with Defendant Christie + Defendant HUMC.
Substance of communication: See above. As with Defendant Christie + Defendant HUMC. Tactics employed: See above. As with Defendant Christie + Defendant HUMC.
Location: Morristown Memorial Hospital + Office of the New Jersey Attorney General

**Defendant AHS + Defendant Kanefsky**:
Date range: 2009 to 2019
Conduits of Communication + Bribery to Christie: See above. As with Defendant Christie + Defendant HUMC.
Mode of Communications: See above. As with Defendant Christie + Defendant HUMC.
Substance of communication: See above. As with Defendant Christie + Defendant HUMC. Tactics employed: See above. As with Defendant Christie + Defendant HUMC.
Location: Morristown Memorial Hospital + Office of the New Jersey Attorney General.

**Defendant Garrett + Defendant Christie**:
Date range: 2009 to 2019.
Conduits of Communication + Bribery to Christie: See above. As with Defendant Christie + Defendant HUMC.
Mode of Communications: See above. As with Defendant Christie + Defendant HUMC.
Substance of communication: See above. As with Defendant Christie + Defendant HUMC. Tactics employed: See above. As with Defendant Christie + Defendant HUMC.

Location: Morristown Memorial Hospital + Governor's office in Trenton + Christie/Republican political fundraisers.

**Defendant Garrett + Defendant HUMC**:
Date range: 2006 to 2019
Conduits of Communication + Bribery to Christie: See above. As with Defendant Christie + Defendant HUMC.
Mode of Communications: See above. As with Defendant Christie + Defendant HUMC.
Substance of communication: See above. As with Defendant Christie + Defendant HUMC. Tactics employed: See above. As with Defendant Christie + Defendant HUMC.
Location: Hackensack Medical Center + Christie/Republican political fundraisers

**Defendant Garrett + Defendant AHS**:
Date range: 2006 to 2019
Conduits of Communication + Bribery to Christie: See above. As with Defendant Christie + Defendant HUMC.
Mode of Communications: See above. As with Defendant Christie + Defendant HUMC.
Substance of communication: See above. As with Defendant Christie + Defendant HUMC. Tactics employed: See above. As with Defendant Christie + Defendant HUMC.
Location: Morristown Memorial Hospital + Hackensack Medical Center + Christie/Republican political fundraisers.

**Defendant Garrett + Defendant Hafner**:
See above. As with Defendant Christie + Defendant HUMC.
Location: Hackensack Medical Center + Office of the New Jersey Attorney General

**Defendant Garrett + Defendant Stein**:
See above. As with Defendant Christie + Defendant HUMC.
Location: Hackensack Medical Center + Christie/Republican political fundraisers

**Defendant Garrett + Defendant NJBME**:
See above. As with Defendant Christie + Defendant HUMC.
Location: Hackensack Medical Center + Office of the New Jersey Attorney General

**Defendant Garrett + Defendant Kanefsky**:
See above. As with Defendant Christie + Defendant HUMC.
Location: Hackensack Medical Center + Office of the New Jersey Attorney General

**Defendant Hafner + Defendant Christie**:
See above. As with Defendant Christie + Defendant HUMC.

Location: Governor's office in Trenton + Christie/Republican political fundraisers + Office of the New Jersey Attorney General

**Defendant Hafner + Defendant HUMC**:
See above. As with Defendant Christie + Defendant HUMC.
Location: Hackensack Medical Center + Office of the New Jersey Attorney General

**Defendant Hafner + Defendant AHS**:
See above. As with Defendant Christie + Defendant HUMC.
Location: Morristown Memorial Hospital + Office of the New Jersey Attorney General

**Defendant Hafner + Defendant Garrett**:
See above. As with Defendant Christie + Defendant HUMC.
Location: Hackensack Medical Center + Office of the New Jersey Attorney General

**Defendant Hafner + Defendant Stein**:
See above. As with Defendant Christie + Defendant HUMC.
Location: Office of the New Jersey Attorney General

**Defendant Hafner + Defendant NJBME**:
See above. As with Defendant Christie + Defendant HUMC.
Location: Office of the New Jersey Attorney General

**Defendant Hafner + Defendant Kanefsky**:
See above. As with Defendant Christie + Defendant HUMC.
Location: Office of the New Jersey Attorney General

**Defendant Stein + Defendant Christie**:
See above. As with Defendant Christie + Defendant HUMC.
Location: Governor's office in Trenton + Christie/Republican political fundraisers

**Defendant Stein + Defendant HUMC**:
See above. As with Defendant Christie + Defendant HUMC.
Location: Hackensack Medical Center + Christie/Republican political fundraisers.

**Defendant Stein + Defendant AHS**:
See above. As with Defendant Christie + Defendant HUMC.
Location: Morristown Memorial Hospital + Christie/Republican political fundraisers

**Defendant Stein + Defendant Garrett**:

See above. As with Defendant Christie + Defendant HUMC.
Location: Hackensack Medical Center + Christie/Republican political fundraisers.

**Defendant Stein + Defendant Hafner**:
See above. As with Defendant Christie + Defendant HUMC.
Location: Office of the New Jersey Attorney General

**Defendant Stein + Defendant NJBME**:
See above. As with Defendant Christie + Defendant HUMC.
Location: Christie/Republican political fundraisers + Office of the New Jersey Attorney General

**Defendant Stein + Defendant Kanefsky**:
See above. As with Defendant Christie + Defendant HUMC.
Location: Christie/Republican political fundraisers + Office of the New Jersey Attorney General

**Defendant NJBME + Defendant Christie**:
See above. As with Defendant Christie + Defendant HUMC.
Location: Governor's office in Trenton + Christie/Republican political fundraisers + Office of the New Jersey Attorney General.

**Defendant NJBME + Defendant HUMC**:
See above. As with Defendant Christie + Defendant HUMC.
Location: Hackensack Medical Center + Office of the New Jersey Attorney General.

**Defendant NJBME + Defendant AHS**:
See above. As with Defendant Christie + Defendant HUMC.
Location: Morristown Memorial Hospital + Office of the New Jersey Attorney General.

**Defendant NJBME + Defendant Garrett**:
See above. As with Defendant Christie + Defendant HUMC.
Location: Hackensack Medical Center + Office of the New Jersey Attorney General.

**Defendant NJBME + Defendant Hafner**:
See above. As with Defendant Christie + Defendant HUMC.
Location: Office of the New Jersey Attorney General.

**Defendant NJBME + Defendant Stein**:
See above. As with Defendant Christie + Defendant HUMC.

Location: Office of the New Jersey Attorney General.

**Defendant NJBME + Defendant Kanefsky**:
See above. As with Defendant Christie + Defendant HUMC.
Location: Office of the New Jersey Attorney General.

**Defendant Kanefsky + Defendant Christie**:
See above. As with Defendant Christie + Defendant HUMC.
Location: Governor's office in Trenton + Christie/Republican political fundraisers +
Office of the New Jersey Attorney General

**Defendant Kanefsky + Defendant HUMC**:
See above. As with Defendant Christie + Defendant HUMC.
Location: Hackensack Medical Center + Office of the New Jersey Attorney General

**Defendant Kanefsky + Defendant AHS**:
See above. As with Defendant Christie + Defendant HUMC.
Location: Morristown Memorial Hospital + Office of the New Jersey Attorney General

**Defendant Kanefsky + Defendant Garrett**:
See above. As with Defendant Christie + Defendant HUMC.
Location: Hackensack Medical Center + Office of the New Jersey Attorney General

**Defendant Kanefsky + Defendant Hafner**:
See above. As with Defendant Christie + Defendant HUMC.
Location: Office of the New Jersey Attorney General

**Defendant Kanefsky + Defendant Stein**:
See above. As with Defendant Christie + Defendant HUMC.
Location: Christie/Republican political fundraisers + Office of the New Jersey Attorney
General

**Defendant Kanefsky + Defendant NJBME**:
See above. As with Defendant Christie + Defendant HUMC.
Location: Office of the New Jersey Attorney General

The CAS RICO Association-In-Fact Defendants' predicate acts of racketeering (18
U.S.C. § 1961(1) include, but are not limited to:
(a)      Mail Fraud: The CAS RICO Association-In-Fact Defendants violated 18 U.S.C. §
1341 by sending or receiving, or causing to be sent and /or received, materials via U.S.

mail or commercial interstate carriers for the purpose of executing the unlawful scheme of bribes and kickbacks, to have Kaul's license improperly revoked, his reputation destroyed, and impede the growth of minimally invasive spine surgery in free standing outpatient surgical centers. These ends were pursued by means of false representations and omissions.

(b)      Wire Fraud: The CAS RICO Association-In-Fact Defendants violated 18 U.S.C. § 1343 by transmitting and/or receiving, or by causing to be received, materials by wire for the purpose of executing the unlawful scheme to defraud Kaul of the property rights of his medical license, reputation and minimally invasive spine surgery business, based on false pretenses, misrepresentations that Kaul was not qualified to perform minimally invasive spine surgery, and had committed insurance and bank fraud.

The CAS RICO Association-In-Fact Defendants' use of the mails and wires include, but are not limited to: **(a)** the transmission of letters, emails and other materials with Defendant Hafner, regarding the scheme to eliminate Kaul from the practice of medicine; **(b)** the transmission of letters, emails and other materials indicating that the CAS RICO Association-In-Fact Defendants had advised the medico-legal community not to support Kaul in any litigation; **(c)** written, telephone, or electronic communications regarding the events surrounding the revocation of Kaul's license; **(d)** written, telephone, or electronic communications instructing the medico-legal community not to support Kaul in any litigation; **(e)** written, telephone, or electronic communications regarding discussions between the CAS RICO Association-In-Fact Defendants and state and federal politicians about the scheme to revoke Kaul's license; **(f)** the use of the mails or wires to further schemes to eradicate Kaul's economic standing; **(g)** the use of the mails and wires to communicate the illegal scheme with Defendants Washburn and North Jersey Media Group.

The CAS RICO Association-In-Fact Defendants also communicated by U.S. mail, by interstate facsimile, and by interstate electronic mail with every New Jersey hospital, surgical center, American state licensing board, the Federation of State Medical Boards, the American Board of Anesthesiology, the General Medical Council of the United Kingdom, and other healthcare related third-party entities in furtherance of the scheme, the purpose of which was to harm Kaul's economic and global reputation.

The mail and wire transmissions described herein were made in furtherance of Defendants' scheme and common course of conduct designed to increase the revenues that flowed from the elimination of the competition presented by Kaul and by those minimally invasive spine surgeons he had trained and planned on training.

Many of the precise dates of the fraudulent uses of the mail and interstate wire facilities have been deliberately hidden and cannot be alleged without access to the Defendants' servers and digital records. However, Plaintiff has described the types of, and in some instances, occasions on which the predicate acts of mail and/or wire fraud occurred. They include thousands of communications to perpetuate and maintain the scheme, including the things and documents described above.

The CAS RICO Association-In-Fact Defendants have not undertaken the practices described herein in isolation, but as part of a common scheme and conspiracy. In Violation of 18 U.S.C. § 1962(d), the CAS RICO Association-In-Fact Defendants conspired to violate 18 U.S.C. § 1962(c), as described herein. Various other persons, firms, and corporations, including third-party entities and individuals not named as defendants in this Complaint, have participated as co-conspirators with the CAS RICO Association-In-Fact Defendants in these offenses and have performed acts in furtherance of the conspiracy to increase revenues, increase market share, and or minimize losses for the Defendants and their unnamed co-conspirators throughout the illegal scheme and common course of conduct. The CAS RICO Association-In-Fact Defendants aided and abetted others in violations of the above laws.

To achieve their common goals, the CAS RICO Association-In-Fact Defendants **(i)** fostered an environment in which they encouraged their staff to defame Kaul; **(ii)** filed complaints with state and federal healthcare regulatory authorities; **(iii)** instructed their members to discontinue communications with Kaul and; **(iv)** encouraged the media to publish defamatory articles. The CAS RICO Association-In-Fact Defendants and each member of the conspiracy, with knowledge and intent, agreed to the overall objectives of the conspiracy and participated in the common course of conduct, agreeing to conceal the fraudulent intent of the scheme, and its illegal tactics. The CAS RICO Association-In-Fact Defendants knew, and intended that Plaintiff's patients and business network, would rely on the material misrepresentations and omissions made by them and would cease communicating and engaging in healthcare commerce with Kaul.

As described herein, the CAS RICO Association-In-Fact Defendants engaged in a pattern of related and continuous predicate acts for years. The predicate acts constituted a variety of unlawful activities, each conducted with the common purpose of eliminating Kaul from the practice of medicine, and thus eradicating the competition, and increasing the CAS RICO Association-In-Fact Defendants revenues and executive compensation. The predicate acts also had the same or similar results, participants and methods of commission. The predicate acts were related and not isolated events.

During the CAS RICO Association-In-Fact Defendants' perpetration of their scheme the true purpose of the fraudulent racket was revealed to CAS RICO Association-In-Fact Defendant Garrett. Nevertheless, in furtherance of their scheme, Defendant Garrett continued to disseminate falsehoods, that Kaul had committed insurance fraud, Medicare fraud, bank fraud and was not qualified to perform minimally invasive spine surgery.

By reason of, and as a result of the conduct of the CAS RICO Association-In-Fact Defendants, and in particular, their pattern of racketeering activity, Plaintiff has been injured in his business and/or property in multiple ways, including but not limited to the loss of his medical license, the loss of his reputation, the loss of his livelihood, the loss of monies earned, and the loss of future earnings. The CAS RICO Association-In-Fact Defendants violations of 18 U.S.C. §1962(c) and (d) have directly and proximately caused injuries and damage to Plaintiff who is entitled to bring this action for three times its actual damage, as well as injunctive/equitable relief, costs, and reasonable attorneys' fees pursuant to 18 U.S.C. § 1964(c).

## COUNT FIVE
### VIOLATIONS OF 18 U.S.C. § 1962(C)−−(D)
### THE RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT, 18 U.S.C. § 1961, ET SEQ.
### (By Plaintiff against Defendants Christie + HUMC + Washburn + NJMG)
### The CHN RICO Association-In-Fact-Enterprise

Plaintiff incorporates by reference each preceding paragraph as though fully set forth herein.

Plaintiff brings this Count against Defendants NJMG + Washburn + Christie + HUMC (inclusively, for the purposes of this Count, the "CHN RICO Association-In-Fact Defendants").

At all relevant times the CHN RICO Association-In-Fact Defendants have been "persons" under 18 U.S.C. § 1961(3) because they are capable of holding, and do hold, "a legal or beneficial interest in property."

Section 1962(c) makes it "unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity." 18 U.S.C. § 1962(c). Section 1962(d) makes

it unlawful for "any person to conspire to violate" Section 1962(c), among other provisions. See 18 U.S.C. § 1962(d).

As explained in detail below, the CHN RICO Association-In-Fact Defendants sought, amongst other things, to eliminate Kaul from the practice of medicine, eliminate the competition he presented to parties with whom they engaged in commerce, destroy his reputation in the field of minimally invasive spine surgery and destroy his economic standing. The purpose of their scheme was to divert patients requiring minimally invasive spine surgery away from Kaul's surgical center, and towards the facilities and physicians, with whom they engaged in commerce. As explained in detail below, the CHN RICO Association-In-Fact Defendants' nine-year campaign of misconduct violated sections 1962(c) and (d).

**Description of the CHN RICO Enterprise**

RICO defines an enterprise as "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4). An association-in-fact enterprise requires three structural features: (1) a purpose; (2) relationships among those associated with the enterprise; and (3) longevity sufficient to permit those associates to pursue the enterprise's purpose.

For many years CHN RICO Association-In-Fact Defendants Washburn and NJMG occupied a critical role in deciding what stories they published about state government actions and politicians. The CHN RICO Association-In-Fact Defendant NJMG was a privately-owned company, before it was sold to national media conglomerate, Gannett Media, in July 2016. Its business holdings extended way beyond the reporting of news, and it depended on state government permits and approvals to further these non-news economic ends. Its news cycles also depended on sources within the state administration.

CHN RICO Association-In-Fact Defendants NJMG and Washburn were not informed of the June 13, 2012 medical board hearing in Trenton, as was the Star Ledger, its competition. CHN RICO Association-In-Fact Defendants were subsequently promised access to the administration of Defendant Christie, after having agreed to publish defamatory articles about Kaul, on which agents of Defendant Christie collaborated. These actions aligned the political and commercial interests of the Defendants from the CHC RICO Association-In-Fact Enterprise, the CAD RICO Association-In-Fact Enterprise, the CAS RICO Association-In-Fact Enterprise with the Defendants of the

CHN RICO Association-In-Fact Enterprise, all of whom engaged directly or indirectly in conduct that furthered their commercial/political agendas.

In the past five years, Defendant NJMG experienced a decrease in its annual revenues, and came under extreme financial pressure, which caused an increased reliance on advertising revenue from the CHC RICO Defendants, the CAD RICO Defendants and the CAS RICO Defendants. These Defendants used their financial leverage with the Defendant NJMG, to publish defamatory stories to eliminate the commercial competitive threat presented to them by Kaul's rapidly expanding minimally invasive spine surgery practice.

Discussions occurred between the CHN RICO Association-In-Fact Defendants regarding Kaul, during which the parties discussed the threat to their commercial interests, because Kaul's expanding outpatient minimally invasive spine surgery practice had diverted business away from the CHC, CAD and CAS RICO Association-In-Fact Defendants, whose advertising revenues permitted Defendant NJMG to remain solvent. Defendant NJMG recognized the indirect commercial advantage that would ensue from publicly attacking Kaul and surgical centers generally.

In order to ensure that their corporate profits were not affected by the increasing commercial success of Kaul's minimally invasive spine surgery practice, and the expanding number of minimally invasive spine surgeons being trained by Kaul, Defendant NJMG co-orchestrated a scheme with the other CHN RICO Association-In-Fact Defendants, to have the revocation of Kaul's medical license widely publicized across the internet. As part of the scheme the CHN RICO Association-In-Fact Defendants disseminated false information within the medico-legal community that Kaul had committed insurance fraud, bank fraud and was not qualified to perform minimally invasive spine surgery. This was done in order to discredit Kaul and isolate him from his colleagues and patients.

The scheme to maintain and increase the profits of Defendant NJMG through the destruction of Kaul's reputation and elimination of his practice, benefited the other Defendants, many of whom advertised with Defendant NJMG. The scheme also enriched its corporate executives, its non-media interests, and permitted increased monies to be funneled through the middleman to Defendant Christie.

At all relevant times the CHN RICO Association-In-Fact Defendants operated an ongoing association-in-fact enterprise. This association-in-fact enterprise was formed for the purpose of ensuring that their fraudulent scheme to have Kaul's license revoked was perpetrated to its conclusion. Many of the association-in-fact enterprise meetings

occurred behind closed doors in Morris and Bergen County, a large percentage of which were attended by members of The Office of The New Jersey Attorney General, and most frequently by Defendant Hafner. Defendants conducted a pattern of racketeering activity under § 18 U.S.C. 1961(4).

Alternatively, each of the CHN RICO Association-In-Fact Defendants constitutes a single legal entity "enterprise" within the meaning of 18 U.S.C. § 1961(4), through which the other Defendants conducted their pattern of racketeering activity. The CHN RICO Association-In-Fact Defendants' separate legal statuses facilitated the fraudulent scheme and provided a hoped-for shield from liability for the other Defendants and their co-conspirators. The enterprises, alleged in this and the previous paragraph, are referred to collectively as the "CHN RICO Association-In-Fact Enterprise."

At all relevant times, the CHN RICO Association-In-Fact Enterprise constituted a single "enterprise" or multiple enterprises within the meaning of 18 U.S.C. § 1961(4), as legal entities, as well as individuals and legal entities associated –in-fact for the common purpose of engaging in the CHN RICO Association-In-Fact Defendants profit making scheme, a fraudulent scheme that involved collusion with state agencies and actors, to ensure the revocation of Kaul's license, destruction of his reputation and decimation of his economic standing.

The association-in-fact CHN Enterprise consisted of the following entities and individuals: **(a)** Defendant NJMG; **(b)** Defendant Washburn; **(c)** Defendant HUMC: **(d)** Defendant Christie. While each of the CHN RICO Association-In-Fact Defendants acquired, maintained control of, were associated with, and conducted or participated in the conduct of the CHN RICO Association-In-Fact Enterprise's affairs, at all relevant times, the CHN RICO Association-In-Fact Enterprise: **(a)** had an existence separate and distinct from each CHN RICO Association-In-Fact Defendants; **(b)** was separate and distinct from the pattern of racketeering in which the CHN RICO Association-In-Fact Defendants engaged; and **(c)** was an ongoing and continuing organization consisting of legal entities, including the CHN RICO Association-In-Fact Defendants, along with other individuals and entities, including unknown third parties.

The CHN RICO Association-In-Fact Defendants and their co-conspirators, through their illegal CHN RICO Association-in-Fact Enterprise, engaged in a pattern of racketeering activity, which involved a fraudulent scheme to increase revenue for the CHN RICO Association-In-Fact Enterprise's activities by bribing Defendant Christie to have Kaul's license revoked, and conspiring to publish defamatory stories about Kaul. The purpose of the revocation and defamation was to eliminate the threat that his work presented to the Defendants who advertised with Defendant NJMG.

The CHN RICO Association-In-Fact Defendants were provided with improper access to state agencies (Defendant NJBME + OAL) resources and personnel (Defendant Solomon + Defendant Hafner) that were involved in the revocation of Kaul's license, in return for bribing Defendant Christie with monies disguised as 'campaign donations'. The monies were part of a quid pro quo scheme, not protected under Noerr Pennington, in which there was an explicit understanding that the bribes were payment for the revocation of Kaul's license. Defendant NJMG was given preferential access to the state government information, in return for the publication of slanderous stories about Kaul. In furtherance of the scheme, the CMS RICO Association-In-Fact Defendant NJMG and Defendant HUMC affirmatively misrepresented or concealed from their corporate board members, the existence of bribes, quid pro quo schemes, and the fraudulent nature and purpose of the scheme to revoke Kaul's license. The Defendants understood that if the board members became aware of the scheme, they would have opposed it, realizing the liability it would incur. Specifically, CHN RICO Association-In-Fact Defendant NJMG mischaracterized the nature of Kaul v Christie, when it was sold to Gannett Media in July 2016.

**The CHN RICO Enterprise Sought to Fraudulently Increase Defendants' Profits and Revenues**

Each CHN RICO Association-In-Fact Defendant benefited financially from the CHN RICO Association-In-Fact Enterprise. Defendant NJMG increased its revenues, through the expedited issuance of state permits for its non-media, real estate based commercial interests.

As part of a quid pro quo that existed within the CHN RICO Association-In-Fact Enterprise, Defendant Christie, in return for favorable political publicity from Defendant NJMG, and bribes from Defendant HUMC, instructed his staff to provide personal and professional information about Kaul to the CHN RICO Association-In-Fact Defendants.

At all relevant times, the CHN RICO Association-In-Fact Enterprise: **(a)** had an existence separate and distinct from each CHN RICO Association-In-Fact Defendant; **(b)** was separate and distinct from the pattern of racketeering in which the CHN RICO Association-In-Fact Defendants engaged; and **(c)** was an ongoing and continuing organization consisting of legal entities, including the CHN RICO Association-In-Fact Defendants, along with other individuals and entities, including unknown third parties that operated an association-in-fact enterprise. The CHN RICO Association-In-Fact Enterprise was formed for the purpose of bribing and providing favorable publicity to

Defendant Christie, in order to procure expedited and preferential state permits, and personal/professional information about Kaul.

The CHN RICO Association-In-Fact Defendants comprise a group of "persons" who influence public opinion, while engaging in political and commercial activities, that are contrary to independent news reporting. They and their co-conspirators engaged in a pattern of racketeering activity, which involved a revenue enhancing fraudulent conspiracy, that was part of a wider scheme to have Kaul's license revoked.

The CHN RICO Association-In-Fact Enterprise engaged in, and its activities affected, interstate and foreign commerce because it involved commercial activities across state boundaries, such as the internet marketing of legal services and news reporting, the consequences of which have generated enormous profits.

Within the CHN RICO Association-In-Fact Enterprise, there was a common communication network by which co-conspirators shared information on a regular basis. The CHN RICO Association-In-Fact Enterprise used this common communication network for purposes of promoting false information that Kaul was not qualified to perform minimally invasive spine surgery, had committed insurance fraud, Medicare fraud and bank fraud. The purpose of this propaganda campaign was to isolate Kaul from the medico-legal community and any source of capital.

Each participant in the CHN RICO Association-In-Fact Enterprise had systematic linkages to each other through corporate ties, contractual relationships, financial ties, and a continuing coordination of activities. Through the CHN RICO Association-In-Fact Enterprise, the CHN RICO Association-In-Fact Defendants functioned as a continuing unit with the purpose of furthering the CHN RICO Association-In-Fact Scheme.

The CHN RICO Association-In-Fact Defendants participated in the operation and management of the CHN RICO Association-In-Fact Enterprise by directing its affairs, as described herein. While the CHN RICO Association-In-Fact Defendants participated in, and are members of the enterprise, they have a separate existence from the enterprise, including distinct legal statuses, different offices and roles, bank accounts, officers, directors, employees, individual personhood, reporting requirements, and financial statements.

The CHN RICO Association-In-Fact Defendants exerted substantial control over the CHN RICO Association-In-Fact Enterprise, and participated in the affairs of the enterprise by: **(a)** communicating directly with lawyers, public relation agents and political lobbyists with direct connections to Defendant Christie, and members of both

state and federal governments; **(b)** procuring appointments to regulatory state agencies and the board of Defendant HUMC, which they used to further their economic agendas; **(c)** misrepresenting and/or concealing from the public the true nature of the relationship and agreements between the members of the enterprise and the scheme to bribe Defendant Christie in order to revoke Kaul's medical license; **(d)** otherwise misrepresenting and/or concealing the increased personal profits that inured to their benefit as a consequence of the illegal elimination of Kaul from the practice of medicine; **(e)** ensuring that the other CHN RICO Association-In-Fact Defendants and unnamed co-conspirators complied with and concealed the fraudulent scheme.

Without each CHN RICO Association-In-Fact Defendants' willing participation, the CHN RICO Association-In-Fact Scheme and common course of conduct would not have been successful.

The CHN RICO Association-In-Fact Defendants directed and controlled the ongoing organization necessary to implement the scheme at meetings and through communications of which Plaintiff cannot fully know at present, because such information lies in the Defendants' and others' hands.

## Predicate Acts: Mail and Wire Fraud

To carry out, or attempt to carry out, the scheme to defraud, the CHN RICO Association-In-Fact Defendants, each of whom is a person associated-in-fact with the CHN RICO Association-Fact Enterprise, did knowingly, conduct or participate, directly or indirectly, in the affairs of the CHN RICO Association-In-Fact Enterprise through a pattern of racketeering activity within the meaning of 18 U.S.C. §§ 1961(1), 1961(5) and 1962(c), and employed the use of the mail and wire facilities, in violation of 18 U.S.C. § 1341 (mail fraud) and § 1343 (wire fraud).

Specifically, the CHN RICO Association-In-Fact Defendants have committed, conspired to commit, and/or aided and abetted in the commission of at least two predicate acts of racketeering activity (i.e. violations of 18 U.S.C. §§ 1341 and 1343), within the past ten (10) years.

The multiple acts of racketeering activity which the CHN RICO Association-In-Fact Defendants committed, or aided or abetted in the commission of, were related to each other, posed a threat of continued racketeering activity, and therefore constitute a "pattern of racketeering activity." The racketeering activity was made possible by the CHN RICO Association-In-Fact Defendants' regular use of the facilities, services, distribution channels, and employees of the CHN RICO Association-In-Fact Enterprise.

The CHN RICO Association-In-Fact Defendants participated in the scheme to defraud by using mail, telephone, and the Internet to transmit mailing and wires in interstate or foreign commerce.

The CHN RICO Association-In-Fact Defendants used, directed the use of, and/or caused to be used, thousands of interstate mail and wire communications in service of their scheme through virtually uniform misrepresentations, concealments, and material omissions.

In devising and executing the illegal scheme, the CHN RICO Association-In-Fact Defendants devised and knowingly carried out a material scheme and/or artifice to defraud Kaul of the property rights of his reputation, medical license and healthcare business, by communicating to the public, Kaul's patients and his professional colleagues, that Kaul was not qualified to perform minimally invasive spine surgery and had committed insurance and bank fraud. These were and are, materially false representations. For the purpose of executing the illegal scheme, the CHN RICO Association-In-Fact Defendants committed these racketeering acts, which number in the thousands, intentionally and knowingly with the specific intent to advance the illegal scheme.

**From paragraph 537 to 548 Kaul has pled with particularity, fact specific to each element, of each claim, against each defendant, in a separate and distinct manner:**

**Defendant Christie + Defendant HUMC**:
Date range: 2006 to 2019.
Conduits of Communication + Bribery to Christie: Public relations firm (Mercury Public Relations + Princeton Public Relations + Law Firm (Brach Eichler + Wolf Samson) + Through state government intermediary + Directly + Political campaign fundraisers + Political campaign donations.
Mode of Communications: US mail + E-mail + Voice message + SMS (text) + Face to face.
Substance of communication: Scheme to revoke Kaul's license + Scheme to destroy Kaul's reputation + Scheme to destroy Kaul's economic standing + Scheme to have Kaul ostracized + Scheme to have Kaul leave the United States.
Tactics employed: Use of the US mail and wires to communicate false information to patients, that he was not qualified to perform minimally invasive spine surgery + Use of the US mail and wires to send false information to New Jersey politicians, encouraging them, with the promise of political campaign 'donations' to coerce Defendant NJBME and the New Jersey Attorney General to have Kaul's license revoked + Use of the US

mail and wires to organize and further schemes to bribe Defendant Christie, in order to have him order Defendant NJBME to revoke Kaul's license + Use of law and public relation firms to funnel bribes to Christie as part of quid pro quo schemes to revoke Kaul's license, destroy his reputation and cause him to leave the United States + Use of the US mail and wires to further scheme to have Kaul's license revoked by having Defendant Lomazow use his authority on Defendant NJBME to initiate an investigation against Kaul, in order to have his license revoked + Use of the US mail and wires to organize and further orders from Christie to revoke Kaul's license, in furtherance of quid pro quo schemes of bribery + Use of the US mail and wires to transmit letters, emails and other materials negotiating the horizontal agreements and market share distributions + Use of the US mails and wires to transmit letters, emails and other materials indicating that the CHN RICO Association-In-Fact Defendants had instructed their members not to support Kaul in any litigation + Use of the US mails and wires to transmit written, telephone, or electronic communications regarding the knowingly fraudulent events surrounding the revocation of Kaul's license + Use
of the US mails and wires to transmit written, telephone, or electronic communications regarding discussions between the CHN RICO Association-In-Fact Defendants and state and federal politicians about the illegal scheme to revoke Kaul's license + Use of the US mails and wires to bill and collect the increased revenues that flowed from the illegal elimination of Kaul from the practice of medicine + Use of the US mails and wires to transmit information in furtherance of Christie's scheme to illegally have his attorney general and acting director of the division of consumer affairs have Defendant NJBME revoke Kaul's license + Use of the US mail and wires to transmit the illegal consequences of the obstruction of justice and evidence tampering ('The Solomon Critique' + 'The Solomon Critique 2') to the public, national (state + federal) and international healthcare agencies and regulatory bodies, in furtherance of the defendants scheme to destroy Kaul's reputation globally, his livelihood, his economic standing and prevent him from obtaining a medical license anywhere in the world, or indeed any form of employment
Location: Hackensack Medical Center + Governor's office in Trenton + Christie/Republican political fundraisers + Office of the New Jersey Attorney General

**Defendant Christie + Defendant Washburn**:
Date range: 2009 to 2019
Conduits of Communication + Bribery to Christie: See above. As with Defendant Christie + Defendant HUMC.
Mode of Communications: See above. As with Defendant Christie + Defendant HUMC.
Substance of communication: See above. As with Defendant Christie + Defendant HUMC.
Tactics employed: See above. As with Defendant Christie + Defendant HUMC.

Location: Governor's office in Trenton + Christie/Republican political fundraisers + Office of Defendant NJMG.

**Defendant Christie + Defendant NJMG**:
Date range: 2006 to 2019.
Conduits of Communication + Bribery to Christie: See above. As with Defendant Christie + Defendant HUMC.
Mode of Communications: See above. As with Defendant Christie + Defendant HUMC.
Substance of communication: See above. As with Defendant Christie + Defendant HUMC.
Tactics employed: See above. As with Defendant Christie + Defendant HUMC
Location: Governor's office in Trenton + Christie/Republican political fundraisers + Office of Defendant NJMG.

**Defendant HUMC + Defendant Christie**:
Date range: 2006 to 2019.
Conduits of Communication + Bribery to Christie: See above. As with Defendant Christie + Defendant HUMC.
Mode of Communications: See above. As with Defendant Christie + Defendant HUMC.
Substance of communication: See above. As with Defendant Christie + Defendant HUMC.
Tactics employed: See above. As with Defendant Christie + Defendant HUMC.
Location: Hackensack Medical Center + Governor's office in Trenton + Christie/Republican political fundraisers

**Defendant HUMC + Defendant Washburn**:
Date range: 2006 to 2019.
Mode of Communications: See above. As with Defendant Christie + Defendant HUMC.
Substance of communication: See above. As with Defendant Christie + Defendant HUMC.
Tactics employed: See above. As with Defendant Christie + Defendant HUMC.
Location: Hackensack Medical Center + Christie/Republican political fundraisers.

**Defendant HUMC + Defendant NJMG**:
Date range: 2006 to 2019.
Mode of Communications: See above. As with Defendant Christie + Defendant HUMC.
Substance of communication: See above. As with Defendant Christie + Defendant HUMC.
Tactics employed: See above. As with Defendant Christie + Defendant HUMC

Location: Hackensack Medical Center + Christie/Republican political fundraisers + Office of Defendant NJMG.

**Defendant Washburn + Defendant Christie**:
Date range: 2009 to 2019.
Conduits of Communication + Bribery to Christie: See above. As with Defendant Christie + Defendant HUMC.
Mode of Communications: See above. As with Defendant Christie + Defendant HUMC.
Substance of communication: See above. As with Defendant Christie + Defendant HUMC.
Tactics employed: See above. As with Defendant Christie + Defendant HUMC. Location: Christie/Republican political fundraisers.

**Defendant Washburn + Defendant HUMC**:
Date range: 2006 to 2019.
Mode of Communications: See above. As with Defendant Christie + Defendant HUMC. Substance of communication: See above. As with Defendant Christie + Defendant HUMC. Tactics employed: See above. As with Defendant Christie + Defendant HUMC. Location: Hackensack Medical Center + Christie/Republican political fundraisers.

**Defendant Washburn + Defendant NJMG**:
Date range: 2006 to 2019.
Mode of Communications: See above. As with Defendant Christie + Defendant HUMC.
Substance of communication: See above. As with Defendant Christie + Defendant HUMC.
Tactics employed: See above. As with Defendant Christie + Defendant HUMC.
Location: Christie/Republican political fundraisers + Office of Defendant NJMG.

**Defendant NJMG + Defendant Christie**:
Date range: 2006 to 2019.
Conduits of Communication + Bribery to Christie: See above. As with Defendant Christie + Defendant HUMC.
Mode of Communications: See above. As with Defendant Christie + Defendant HUMC.
Substance of communication: See above. As with Defendant Christie + Defendant HUMC.
Tactics employed: See above. As with Defendant Christie + Defendant HUMC.
Location: Governor's office in Trenton + Christie/Republican political fundraisers + Office of Defendant NJMG.

**Defendant NJMG + Defendant HUMC**:

Date range: 2006 to 2019.
Mode of Communications: See above. As with Defendant Christie + Defendant HUMC.
Substance of communication: See above. As with Defendant Christie + Defendant HUMC.
Tactics employed: See above. As with Defendant Christie + Defendant HUMC.
Location: Hackensack Medical Center + Christie/Republican political fundraisers + Office of Defendant NJMG.

**Defendant NJMG + Defendant Washburn**:
Date range: 2006 to 2019.
Mode of Communications: See above. As with Defendant Christie + Defendant HUMC.
Substance of communication: See above. As with Defendant Christie + Defendant HUMC
Tactics employed: See above. As with Defendant Christie + Defendant HUMC
Location: Christie/Republican political fundraisers + Office of Defendant NJMG.

The CHN RICO Association-In-Fact Defendants' predicate acts of racketeering (18 U.S.C. § 1961(1) include, but are not limited to:

(a)      Mail Fraud: The CHN RICO Association-In-Fact Defendants violated 18 U.S.C. § 1341 by sending or receiving, or causing to be sent and /or received, materials via U.S. mail or commercial interstate carriers for the purpose of executing the unlawful scheme of bribes and kickbacks, to have Kaul's license improperly revoked, his reputation destroyed, and impede the growth of minimally invasive spine surgery in free standing outpatient surgical centers. These ends were pursued by means of false representations and omissions.

(b)      Wire Fraud: The CHN RICO Association-In-Fact Defendants violated 18 U.S.C. § 1343 by transmitting and/or receiving, or by causing to be received, materials by wire for the purpose of executing the unlawful scheme to defraud Kaul of the property rights of his medical license, reputation and minimally invasive spine surgery business, based on false pretenses, misrepresentations that Kaul was not qualified to perform minimally invasive spine surgery, and that he had committed insurance and bank fraud.

The CHN RICO Association-In-Fact Defendants' use of the mails and wires include, but are not limited to: **(a)** the transmission of letters, emails and other materials with Defendant Hafner, regarding the scheme to eliminate Kaul from the practice of medicine; **(b)** the transmission of letters, emails and other materials indicating that the CHN RICO Association-In-Fact Defendants had advised the medico-legal community not to support Kaul in any litigation; **(c)** written, telephone, or electronic communications regarding the events surrounding the revocation of Kaul's license; **(d)** written, telephone, or electronic communications instructing the medico-legal community not to

support Kaul in any litigation; **(e)** written, telephone, or electronic communications regarding discussions between the CHN RICO Association-In-Fact Defendants and state and federal politicians about the scheme to revoke Kaul's license; **(f)** the use of the mails or wires to further schemes to eradicate Kaul's economic standing; **(g)** the use of the mails and wires to communicate the illegal scheme with unnamed third party co-conspirators.

The CHN RICO Association-In-Fact Defendants also communicated by U.S. mail, by interstate facsimile, and by interstate electronic mail with New Jersey hospitals, surgical centers, American state licensing boards, the Federation of State Medical Boards, the American Board of Anesthesiology, the General Medical Council of the United Kingdom, New Jersey politicians, and other healthcare related third-party entities in furtherance of the scheme, the purpose of which was to globally harm Kaul's economic and reputational standing.

The mail and wire transmissions described herein were made in furtherance of Defendants' scheme and common course of conduct designed to increase the revenues that flowed from the elimination of the competition presented by Kaul, and by those minimally invasive spine surgeons he had trained, and planned on training, who competed against the patrons of CHN RICO Association-In-Fact Defendants, NJMG and HUMC.

Many of the precise dates of the fraudulent uses of the mail and interstate wire facilities have been deliberately hidden and cannot be alleged without access to the Defendants' servers and digital records. However, Plaintiff has described the types of, and in some instances, occasions on which the predicate acts of mail and/or wire fraud occurred. They include thousands of communications to perpetuate and maintain the scheme, including the things and documents described above.

The CHN RICO Association-In-Fact Defendants have not undertaken the practices described herein in isolation, but as part of a common scheme and conspiracy. In Violation of 18 U.S.C. § 1962(d), the CHN RICO Association-In-Fact Defendants conspired to violate 18 U.S.C. § 1962(c), as described herein. Various other persons, firms, and corporations, including third-party entities and individuals not named as defendants in this Complaint, have participated as co-conspirators with the CHN RICO Association-In-Fact Defendants in these offenses and have performed acts in furtherance of the conspiracy to increase revenues, increase market share, and or minimize losses for the Defendants and their unnamed co-conspirators, through the illegal scheme and common course of conduct. The CMS RICO Association-In-Fact Defendants aided and abetted others in violation of the above laws.

To achieve their common goals, the CHE RICO Association-In-Fact Defendants **(i)** fostered an environment in which they encouraged their staff to defame Kaul; **(ii)** filed complaints with state and federal healthcare regulatory authorities; **(iii)** encouraged other media outlets to publish defamatory articles and **(iv)** illegally recorded Kaul in violation of state and federal law. The CHN RICO Association-In-Fact Defendants and each member of the conspiracy, with knowledge and intent, agreed to the overall objectives of the conspiracy and participated in the common course of conduct. Indeed, for the conspiracy to succeed, each of the CHN RICO Association-In-Fact Defendants and their co-conspirators had to agree to conceal the fraudulent intent of the scheme, and its illegal tactics. The CHN RICO Association-In-Fact Defendants knew, and intended that Plaintiff's patients and business network, would rely on the material misrepresentations and omissions made by them and would cease communicating and engaging in healthcare commerce with Kaul.

As described herein, the CHN RICO Association-In-Fact Defendants engaged in a pattern of related and continuous predicate acts for years. The predicate acts constituted a variety of unlawful activities, each conducted with the common purpose of eliminating Kaul from the practice of medicine, and thus eradicating the competition, and indirectly increasing CMS RICO Defendants revenues and executive compensation. The predicate acts also had the same or similar results, participants and methods of commission. The predicate acts were related and not isolated events.

During the CHN RICO Association-In-Fact Defendants' perpetration of their scheme the true purpose of the fraudulent racket was revealed to CHN RICO Association-In-Fact Defendant, Washburn. Nevertheless, in furtherance of their scheme, Defendant Washburn continued to disseminate falsehoods that Kaul had committed insurance fraud, Medicare fraud, bank fraud and was not qualified to perform minimally invasive spine surgery.

By reason of, and as a result of the conduct of the CHN RICO Association-In-Fact Defendants, and in particular, their pattern of racketeering activity, Plaintiff has been injured in his business and/or property in multiple ways, including but not limited to the loss of his medical license, the loss of his reputation, the loss of his livelihood, the loss of monies earned, and the loss of future earnings.

The CHN RICO Association-In-Fact Defendants violations of 18 U.S.C. §1962(c) and (d) have directly and proximately caused injuries and damage to Plaintiff who is entitled to bring this action for three times its actual damage, as well as injunctive/equitable relief, costs, and reasonable attorneys' fees pursuant to 18 U.S.C. § 1964(c).

**Antitrust Impact**

Subsequent to the downgrading of the relative value units for endoscopic discectomy in 2011, the commercial potential of Kaul's practice was harmed. The scheme was engineered by a group of neurosurgeons, led by Defendant Gregory Przybylski, the 2011 President of the North American Spine Society. These neurosurgeons, because of their influential positions within their professional societies, had the codes modified on the understanding that the majority of minimally invasive spine surgeons, from interventional pain backgrounds, would be unable to perform open microdiscectomies. The neurosurgeons effectuated the change without publicizing it for comment, thus denying Kaul the opportunity to object. This act was in violation of both NASS and AMA bylaws and regulations.

These changes lowered the reimbursement rate for endoscopic discectomies, which caused a larger percentage of the insurance health fund to be diverted to the Defendant Neurosurgeons and Hospitals, who subsequently raised their fees for the same procedure. The code change, however, did not apply if the endoscopic discectomy was performed in a hospital, as the fee remained unaltered. This benefited the neurosurgeons who had hospital privileges to perform spinal procedures, and it benefitted the hospitals. It also benefited Defendants Allstate and GEICO, whose clients had personal injury policies that most hospitals did not accept. This caused these patients to be deprived of access to minimally invasive spine surgery.
As a consequence, Kaul sustained substantial losses and damage to his business and property, because of the reduced reimbursement associated with outpatient minimally invasive spine surgery.

The Defendant Neurosurgeons, Hospitals, Allstate and GEICO have, through the bribing of politicians, effectuated legislation and regulatory changes that harmed Kaul's minimally invasive spine surgery practice. These included **(i)** a downgrading in the Relative Value Unit associated with the CPT code for endoscopic discectomy **(ii)** the veto of a bill in 2011 by Defendant Christie, that was designed to permit state licensure of one–room surgical centers and **(iii)** the refusal of the insurance carriers to reimburse surgical centers for minimally invasive spine surgery. These acts artificially and arbitrarily reduced the availability of outpatient minimally invasive spine surgery.

The aforementioned acts resulted in an increase of the fees charged by the Defendant Neurosurgeons and Hospitals, and excluded patients with accident related injuries, most of whom have no secondary insurance, from receiving minimally invasive spine

surgery. In 2012 Defendants Allstate and GEICO stopped reimbursement to surgical centers for minimally invasive spine surgery, and reduced physician fees by more than eighty percent (80%). The majority of physicians affected were outpatient minimally invasive spine surgeons, such as Kaul.

The Defendant Neurosurgeons and Hospitals have monopolized the New Jersey minimally invasive spine market. The rise in opiate consumption is related to a reduction in the availability of minimally invasive spine surgery, as patients' options for pain relief became constricted. As a consequence, The Defendant Hospitals, Neurosurgeons, Allstate and GEICO reaped larger profits, at the expense of their clients and the public. These grossly elevated profits caused a four hundred percent (400%) increase in Defendant Allstate's share price but did not result in a reduction in their clients' premiums. In fact, the premiums have continued to increase.

The rise in Defendant Allstate's share price, since the implementation of the aforesaid changes, is the product of nothing but bribery and legal chicanery.

The Defendant Neurosurgeons and Hospitals passed on their inflated prices to private insurance companies, such as United, Aetna and Cigna, who have passed on the increased costs to their customers. Defendants Allstate and GEICO's increased profits were not shared with the New Jersey public, who have continued to incur annual increases in their auto premiums.

The Defendant Neurosurgeons and Hospitals anticompetitive conduct enabled it to indirectly charge consumers and third-party payors, prices in excess of what they would otherwise would have been able to charge, absent their unlawful actions.

The prices were inflated as a direct and foreseeable result of the Defendants' anticompetitive conduct individually and with the hospitals. The inflated prices the End-Payor i.e. the public and the private insurance companies are now forced to pay are traceable to, and the foreseeable result of the reduction in availability of minimally invasive spine services, and the consequent price gouging by the defendant neurosurgeons and hospitals.

The illegal and artificial reduction of the availability of minimally invasive spine surgery, consequent to the Defendants knowing violation of antitrust law, has contributed to the so called **"opiate epidemic"**, as the surgical options for patients with painful spinal injuries became restricted. The restriction forced patients to take opiates, which are now severely restricted, causing a **"pain epidemic",** an epidemic that has resulted in an increase in the trafficking of street grade fentanyl laced heroin as patients seek pain

relief. The increase in fentanyl laced heroin is the direct and proximate cause of increased rates of overdose deaths, for which the Defendants are liable. The Defendants corporate greed/corruption is killing innocent Americans, whom Defendant NJBME professes to **"protect"**. A lie on par with that perpetuated by murderous slave plantation owners that Africans were ⅗ of a human, and more recently that disseminated that Germany's economic woes in the 1930s were due to the Jews. American state medical boards are nothing more than cogs in the genocidal corporate machine, steered by Defendants Allstate/Geico.

## Definition of market

The market in which the so called **"Spine Turf Wars"** erupted in approximately 2000 is the American market for minimally invasive spine surgery, which includes the following procedures:

1. Cervical endoscopic discectomy; 2. Thoracic endoscopic discectomy; 3. Lumbar endoscopic discectomy; 4. Anterior cervical discectomy and fusion; 4. Interbody lumbar fusion; 5. Vertebroplasty; 6. Kyphoplasty; 7. Percutaneous pedicle screw placement; 8. Percutaneous facet screw placement; 9. Interspinous distraction; 10. Interspinous fusion; 11. Facet fusion; 12.Sacroiliac joint fusion; 13. Cervical lateral mass screws; 14. Dorsal column stimulators; 15. Interlaminar decompression.

These clinical services are provided to the public to treat degenerative and traumatic spinal conditions that cause pain and functional disability, and are provided by physicians with training in the following areas of medicine and surgery:

**1.** Interventional pain; **2.** Interventional radiology; **3.** Neurosurgery; **4.** Orthopedics; **5.** Physiatry.

The locations in which the clinical services can be provided are hospitals and outpatient surgical centers, with the latter being associated with a lower cost and incidence of postoperative infection and complications. The defendants alleged antitrust violations, as detailed below, have artificially reduced the availability of minimally invasive spine surgery in outpatient surgical centers, and diverted its provision to hospitals, allowing hospitals to illegally monopolize minimally invasive spine surgery. The monopoly power has permitted hospitals to price gouge, arbitrarily raise their prices and charge patients amounts far in excess of what surgical centers charged, and what the market would have permitted them to charge, but for the defendants alleged antitrust violations.

Similarly, the defendants antitrust violations, as detailed below, have artificially reduced the availability of minimally invasive spine surgery by physician groups in interventional pain, interventional radiology and physiatry, and diverted its provision to neurosurgeons/orthopedic surgeons, allowing them to illegally monopolize minimally invasive spine surgery. The monopoly power has permitted neurosurgeons/orthopedic surgeons to price gouge, arbitrarily raise their prices and charge patients amounts far in excess of what IR/IP/Physiatry physicians charged, and what the market would have permitted them to charge, but for the defendants alleged antitrust violations.

Defendants Allstate and Geico competed with Kaul for the reservoir of capital derived from the public/patients who purchased auto insurance policies, with the understanding that if they required medical care for auto related injuries, these monies would fund such care. These defendants, in conspiracy and collusion with the defendant hospitals and physicians, bribed Defendant Christie and other New Jersey legislators to enact laws that either prohibited the provision of minimally invasive spine surgery in outpatient surgical centers or substantially reduced the reimbursements, through the introduction of fee schedules, which effectively prevented surgical centers from providing minimally invasive spine surgery. The fee schedules did not apply to hospitals and discriminated against surgical centers.

Since 2000 the above physician groups have competed within the American minimally invasive spine surgery market, for patients with degenerative/traumatic spinal conditions. Each group has provided all of the above procedures to the American public and are **"reasonably interchangeable substitutes"** for the relevant clinical condition. As such, they are deemed to belong to the same **"relevant product/service market"**. See U.S. v. E. I. du Pont de Nemours & Co., 351 U.S. 377, 395, 76 S.Ct 994, 1007 (1956). See also Queen City Pizza, Inc. v. Domino's Pizza, Inc. 124 F.3d 430, 436 (3rd Cir. 1997) ("The outer boundaries of a product market are determined by the reasonable interchangeability of use or the cross-elasticity of demand between the product itself and substitutes for it."). The defendants alleged antitrust violations, as detailed below, caused an artificial reduction in the supply of services, an artificial rise in price and a reduction in the outer boundaries of the market, due to a reduction in the level of interchangeable services and cross-elasticity of demand.

The cross elasticity and interchangeability of the clinical services rendered by the IR/IP/Physiatry group provided the public with the same service as that from the NS/OS group, within the American minimally invasive spine surgery market. From 2000 to 2012, an increasing number of patients chose to have minimally invasive spine surgery performed in outpatient surgical centers by the IR/IP/Physiatry group, and more elected not to have their degenerated  spines treated in hospitals by the NS/OS group. The

reasons included reduced cost and superior clinical service. Hospitals and the NS/OS group priced themselves out of the market. Kaul's 0% postoperative infection rate evidenced the superior patient outcomes that were one of the reasons for the clinical and commercial success of his practice. To Kaul's knowledge similar outcomes were achieved across the United States by other physicians within the IR/IP/Physiatry group and within the outpatient surgical center community. The illegal suspension/revocation in 2012/2014 of Kaul's license caused an antitrust like injury to the American minimally invasive spine surgery market, which caused it to contract, one consequence of which has been the exponential rise in opiate consumption and heroin use. Patients with spinal injuries, deprived of access to the contracted and more expensive American minimally invasive spine surgery market, have resorted to increased opiate use.

### The Relevant Geographic Market:

The relevant geographic market in which Kaul competed was the United States. From approximately 2006 onwards Kaul had been referred patients from physicians in almost every other state in the Union, this being partly a consequence of the publicity surrounding his work, and partly a consequence of his superior clinical outcomes. In attracting these patients from other states, Kaul entered into competition with physicians and hospitals in those states that provided minimally invasive spine surgery. The relevant geographic market in this case is the area in which physicians providing minimally invasive spine surgery compete with one another for patients with degenerated spines causing pain and disability. See Tampa Elec. Co. v. Nashville Coal Co., 365 U.S. 320, 327 (U.S. 1961) ("the area of effective competition in the known line of commerce must be charted by careful selection of the market area in which the seller operates, and to which the purchaser can practicably turn for supplies."). Defining the relevant market is a question of fact for the jury, unless a party's proposed markets are so unsupported by the evidence or proper antitrust economics that no reasonable jury could properly find in favor of the party on the issue. See Sportservice, Inc. v. Charles O. Finley, 676 F.2d 1291, 1299 (9th Cir., 1982). Also see:

Defendant Kaufman: **"That motherfucker Richard Kaul is trying to take over the spine business and we are going to put a stop to it."** (**K2-D.E. 2 Page ID 140**).

Third-Party Witness Anthony Yeung, MD: **"There is a doctor in New Jersey, Richard Kaul, who is performing fusions, but they are going to get him."** (**K2-D.E. 53-1 Page ID 1107**).

### COUNT SIX

**For Declaratory and Injunctive Relief Under Section 16 of the Clayton Act for Defendants' Violations of Sections 1 and 2 of the Sherman Act (By Plaintiff Against Defendants Kaufman + Staats + Przybylski + CNS + Heary + Cohen + HUMC + AHS)**

Plaintiff incorporates by reference the preceding allegations.

Defendants knowingly and intentionally engaged in an anticompetitive scheme designed to block Kaul, his surgical center and similarly trained physicians, from incorporating minimally invasive spine surgery into their outpatient practices. This scheme included, amongst other things **(i)** obtaining through fraud a downgrading of the relative value unit associated with outpatient endoscopic discectomy; **(ii)** procuring through bribery the veto of a bill in 2009 by Governor Christie, that would have permitted one operating room surgical centers to become licensed, the licensing of which would have removed the principal reason employed by Defendants Allstate and GEICO to deny payment to outpatient facilities and physicians; **(iii)** the procuring through bribery of the introduction of a fee schedule in 2011 that denied payment for the performance of outpatient minimally invasive spine surgery in free standing surgical centers; **(iv)** encouraging patients to initiate civil litigation and medical board complaints against Kaul and similarly trained physicians; **(v)** obtaining through bribery a moratorium in 2009 that prevented the issuance of licenses for one room outpatient surgical centers, unless they were commercially partnered with a hospital; **(vi)** unlawful agreements between representatives of Defendants ASIPP and CNS, that the market for minimally invasive spine surgery would be divided in such a way, that physicians with similar training as Kaul, would be limited to performing only discectomies, and not fusions and; **(vii)** otherwise engaging in an overarching scheme to unlawfully monopolize, conspire to monopolize, and/or, allocate the market for minimally invasive spine surgery.

Defendants conspired to monopolize, and did wrongfully and intentionally maintain monopoly power, with respect to minimally invasive spine surgery in violation of Section 2 of the Sherman Act. As a result of this unlawful maintenance of monopoly power Plaintiff and his surgical center were excluded from the minimally invasive spine fusion market, as were similarly trained physicians and the New Jersey surgical center community. By their agreements, Defendants intentionally and wrongfully conspired and combined in an unreasonable restraint of trade in violation of Section 1 of the Sherman Act. As a result of this unreasonable restraint on competition, Plaintiff and his surgical center were excluded from the minimally invasive spine surgery market, as were similarly trained physicians and the New Jersey surgical center community.

**From paragraph 573 to 628 Kaul has pled with particularity, fact specific to each**

**element, of each claim, against each defendant, in a separate and distinct manner:**

**Defendant Kaufman + Defendant Staats**:

Date range: 2006 to 2012

Mode of Communications: US mail + E-mail + Voice message + SMS (text) + Face to face.

Substance of communications: Scheme to downgrade the relative value unit associated with outpatient endoscopic discectomy + Scheme to bribe Defendant Christie to veto a bill in 2009 that would have permitted one operating room surgical centers to become licensed, the licensing of which would have removed the principal reason employed by Defendants Allstate and GEICO to deny payment to outpatient facilities and physicians + Scheme to bribe Defendant Christie in order to sign into law in 2011 a fee schedule that denied or reduced payment for the performance of outpatient minimally invasive spine surgery in free standing surgical centers + Scheme to encourage patients to initiate civil litigation and medical board complaints against Kaul and similarly trained physicians + Scheme to obtain through bribing Defendant Christie a moratorium in 2009 that prevented the issuance of licenses for one-room outpatient surgical centers, unless they were commercially partnered with a hospital + Scheme to engage in knowingly unlawful agreements to divide the minimally invasive spine surgery market in such a way, that physicians with similar training as Kaul, would be limited to performing only discectomies, and not fusions + Scheme to engage in an overarching conspiracy to unlawfully monopolize, conspire to monopolize, and/or, artificially allocate the market for minimally invasive spine surgery + Scheme to unlawfully conspire and combine to intentionally and arbitrarily restrict, restrain and or prohibit Kaul's ability to trade in the American minimally invasive spine surgery market + Scheme to restrict, restrain and or exclude Kaul from participating in the American minimally invasive spine surgery market.

Tactics employed: Conspired to, and did bribe Defendant Christie as part of a series of quid pro quo schemes to have Defendant NJBME revoke Kaul's license + Conspired to, and did encourage patients to file lawsuits and complaints with Defendant NJBME against Kaul + Conspired to, and did encourage patients to file complaints with state and federal regulatory authorities + Conspired to, and did participate in sham litigation and provided knowingly false testimony that caused the revocation of Kaul's license + Conspired to, and did participate in sham litigation and provided knowingly false testimony that caused the entry of false judgments against Kaul in civil malpractice cases + Conspired to, and did participate in sham litigation against Kaul's physician employees, falsely testifying that they were not qualified to perform minimally invasive spine surgery and had committed insurance fraud + Conspired to, and did participate in sham litigation against the medical licenses of Kaul's physician employees Location:

Morristown Memorial Hospital + Meetings/Conferences organized by Defendant ASIPP + Christie/Republican political fundraisers.

**Defendant Kaufman + Defendant Przybylski**:
Date range: See above. As with Defendant Kaufman + Defendant Staats.
Mode of Communications: See above. As with Defendant Kaufman + Defendant Staats.
Substance of communications: See above. As with Defendant Kaufman + Defendant Staats.
Tactics employed: See above. As with Defendant Kaufman + Defendant Staats.
Location: Meetings/Conferences organized by Defendant ASIPP/Defendant CNS + Office of the New Jersey Attorney General + Christie/Republican political fundraisers.

**Defendant Kaufman + Defendant CNS**:
Date range: See above. As with Defendant Kaufman + Defendant Staats.
Mode of Communications: See above. As with Defendant Kaufman + Defendant Staats.
Substance of communications: See above. As with Defendant Kaufman + Defendant Staats.
Tactics employed: See above. As with Defendant Kaufman + Defendant Staats.
Location: Meetings/Conferences organized by Defendant ASIPP/Defendant CNS + Morristown Memorial Hospital + Christie/Republican political fundraisers.

**Defendant Kaufman + Defendant Heary**:
Date range: See above. As with Defendant Kaufman + Defendant Staats
Mode of Communications: See above. As with Defendant Kaufman + Defendant Staats
Substance of communications: See above. As with Defendant Kaufman + Defendant Staats
Tactics employed: See above. As with Defendant Kaufman + Defendant Staats
Location: Morristown Memorial Hospital + Meetings/Conferences organized by Defendant ASIPP/Defendant CNS + Christie/Republican political fundraisers.

**Defendant Kaufman + Defendant Cohen**:
Date range: See above. As with Defendant Kaufman + Defendant Staats
Mode of Communications: See above. As with Defendant Kaufman + Defendant Staats
Substance of communications: See above. As with Defendant Kaufman + Defendant Staats
Tactics employed: See above. As with Defendant Kaufman + Defendant Staats
Location: Morristown Memorial Hospital + St. Clare's Hospital, Denville + Meetings/Conferences organized by the New Jersey Spine Society + Christie/Republican political fundraisers.

**Defendant Kaufman + Defendant HUMC**:

Date range: 2009 to 2014

Mode of Communications: See above. As with Defendant Kaufman + Defendant Staats.

Substance of communications: See above. As with Defendant Kaufman + Defendant Staats. Tactics employed: See above. As with Defendant Kaufman + Defendant Staats

Location: Morristown Memorial Hospital + Hackensack Medical Center + Christie/Republican political fundraisers + Office of the New Jersey Attorney General.

**Defendant Kaufman + Defendant AHS**:

Date range: 2006 to 2012

Mode of Communications: See above. As with Defendant Kaufman + Defendant Staats.

Substance of communications: See above. As with Defendant Kaufman + Defendant Staats.

Tactics employed: See above. As with Defendant Kaufman + Defendant Staats.

Location: Morristown Memorial Hospital + Christie/Republican political fundraisers.

**Defendant Staats + Defendant Kaufman**:

Date range: See above. As with Defendant Kaufman + Defendant Staats.

Mode of Communications: See above. As with Defendant Kaufman + Defendant Staats.

Substance of communications: See above. As with Defendant Kaufman + Defendant Staats.

Tactics employed: See above. As with Defendant Kaufman + Defendant Staats.

Location: See above. As with Defendant Kaufman + Defendant Staats.

**Defendant Staats + Defendant Przybylski**:

See above. As with Defendant Kaufman + Defendant Staats.

Location: Meetings/Conferences organized by Defendant ASIPP/Defendant CNS + Christie/Republican political fundraisers.

**Defendant Staats + Defendant CNS**:

See above. As with Defendant Kaufman + Defendant Staats.

Location: Meetings/Conferences organized by Defendant ASIPP/Defendant CNS + Christie/Republican political fundraisers.

**Defendant Staats + Defendant Heary**:

See above. As with Defendant Kaufman + Defendant Staats.

Location: Morristown Memorial Hospital + University Hospital + Meetings/Conferences organized by Defendant ASIPP/Defendant CNS + Christie/Republican political fundraisers.

**Defendant Staats + Defendant Cohen**:
See above. As with Defendant Kaufman + Defendant Staats.
Location: Morristown Memorial Hospital + Christie/Republican political fundraisers.

**Defendant Staats + Defendant HUMC**:
See above. As with Defendant Kaufman + Defendant Staats.
Location: Hackensack Medical Center + Christie/Republican political fundraisers.

**Defendant Staats + Defendant AHS**:
See above. As with Defendant Kaufman + Defendant Staats.
Location: Morristown Memorial Hospital + Christie/Republican political fundraisers.

**Defendant Przybylski + Defendant Kaufman**:
See above. As with Defendant Kaufman + Defendant Staats.
Location: Morristown Memorial Hospital + Christie/Republican political fundraisers + New Jersey Office of Administrative Law + Office of the New Jersey Attorney General.

**Defendant Przybylski + Defendant Staats**:
See above. As with Defendant Kaufman + Defendant Staats.
Location: Christie/Republican political fundraisers + Meetings/Conferences organized by Defendant ASIPP/Defendant CNS

**Defendant Przybylski + Defendant CNS**:
See above. As with Defendant Kaufman + Defendant Staats.
Location: Christie/Republican political fundraisers + Meetings/Conferences organized by Defendant CNS

**Defendant Przybylski + Defendant Heary**:
See above. As with Defendant Kaufman + Defendant Staats.
Location: Christie/Republican political fundraisers + Meetings/Conferences organized by Defendant CNS.

**Defendant Przybylski + Defendant Cohen**:
See above. As with Defendant Kaufman + Defendant Staats.
Location: Morristown Memorial Hospital + Christie/Republican political fundraisers

**Defendant Przybylski + Defendant HUMC**:
See above. As with Defendant Kaufman + Defendant Staats.
Location: Hackensack Medical Center + Christie/Republican political fundraisers.

**Defendant Przybylski + Defendant AHS**:
See above. As with Defendant Kaufman + Defendant Staats.
Location: Morristown Memorial Hospital + Christie/Republican political fundraisers.

**Defendant CNS + Defendant Kaufman**:
See above. As with Defendant Kaufman + Defendant Staats.
Location: Morristown Memorial Hospital + Meetings/Conferences organized by
Defendant ASIPP/Defendant CNS + Christie/Republican political fundraisers.

**Defendant CNS + Defendant Staats**:
See above. As with Defendant Kaufman + Defendant Staats.
Location: Meetings/Conferences organized by Defendant ASIPP/Defendant CNS +
Christie/Republican political fundraisers.

**Defendant CNS + Defendant Przybylski**:
See above. As with Defendant Kaufman + Defendant Staats.
Location: Christie/Republican political fundraisers + Meetings/Conferences organized by
Defendant ASIPP/Defendant CNS.

**Defendant CNS + Defendant Heary**:
See above. As with Defendant Kaufman + Defendant Staats.
Location: Meetings/Conferences organized by Defendant CNS + Christie/Republican
political fundraisers.

**Defendant CNS + Defendant Cohen**:
See above. As with Defendant Kaufman + Defendant Staats.
Location: Christie/Republican political fundraisers + Morristown Memorial Hospital

**Defendant CNS + Defendant HUMC**:
See above. As with Defendant Kaufman + Defendant Staats.
Location: Christie/Republican political fundraisers + Hackensack Medical Center.

**Defendant CNS + Defendant AHS**:
See above. As with Defendant Kaufman + Defendant Staats.
Location: Morristown Memorial Hospital + Meetings/Conferences organized by
Defendant CNS + Christie/Republican political fundraisers.

**Defendant Heary + Defendant Kaufman**:
See above. As with Defendant Kaufman + Defendant Staats.

<u>Location</u>: Morristown Memorial Hospital + Christie/Republican political fundraisers + Meetings/Conferences organized by Defendant ASIPP/Defendant CNS.

**<u>Defendant Heary + Defendant Staats</u>**:
See above. As with Defendant Kaufman + Defendant Staats.
<u>Location</u>: Meetings/Conferences organized by Defendant ASIPP/Defendant CNS + Christie/Republican political fundraisers

**<u>Defendant Heary + Defendant Przybylski</u>**:
See above. As with Defendant Kaufman + Defendant Staats.
<u>Location</u>: Meetings/Conferences organized by Defendant CNS + Christie/Republican political fundraisers

**<u>Defendant Heary + Defendant CNS</u>**:
See above. As with Defendant Kaufman + Defendant Staats.
<u>Location</u>: Morristown Memorial Hospital + Christie/Republican political fundraisers + Meetings/Conferences organized by Defendant CNS

**<u>Defendant Heary + Defendant Cohen</u>**:
See above. As with Defendant Kaufman + Defendant Staats.
<u>Location</u>: Morristown Memorial Hospital + Christie/Republican political fundraisers + Meetings/Conferences organized by the New Jersey Spine Society.

**<u>Defendant Heary + Defendant HUMC</u>** :
See above. As with Defendant Kaufman + Defendant Staats.
<u>Location</u>: Morristown Memorial Hospital + Hackensack Medical Center + Christie/Republican political fundraisers

**<u>Defendant Heary + Defendant AHS</u>**:
See above. As with Defendant Kaufman + Defendant Staats.
<u>Location</u>: Morristown Memorial Hospital + Christie/Republican political fundraisers.

**<u>Defendant Cohen + Defendant Kaufman</u>**:
See above. As with Defendant Kaufman + Defendant Staats.
<u>Location</u>: Morristown Memorial Hospital + Christie/Republican political fundraisers.

**<u>Defendant Cohen + Defendant Staats</u>**:
See above. As with Defendant Kaufman + Defendant Staats.
<u>Location</u>: Morristown Memorial Hospital + Christie/Republican political fundraisers

**Defendant Cohen + Defendant Przybylski**:
See above. As with Defendant Kaufman + Defendant Staats.
Location: Morristown Memorial Hospital + Christie/Republican political fundraisers.

**Defendant Cohen + Defendant CNS**:
See above. As with Defendant Kaufman + Defendant Staats.
Location: Morristown Memorial Hospital + Christie/Republican political fundraisers.

**Defendant Cohen + Defendant Heary**:
See above. As with Defendant Kaufman + Defendant Staats.
Location: Morristown Memorial Hospital + Meetings/Conferences organized by the New Jersey Spine Society + Christie/Republican political fundraisers

**Defendant Cohen + Defendant HUMC**:
See above. As with Defendant Kaufman + Defendant Staats.
*Location*: Morristown Memorial Hospital + Hackensack Medical Center + Christie/Republican political fundraisers.

**Defendant Cohen + Defendant AHS**:
See above. As with Defendant Kaufman + Defendant Staats.
Location: Morristown Memorial Hospital + Christie/Republican political fundraisers.

**Defendant HUMC + Defendant Kaufman**:
See above. As with Defendant Kaufman + Defendant Staats.
Location: Hackensack Medical Center + Christie/Republican political fundraisers.

**Defendant HUMC + Defendant Staats**:
See above. As with Defendant Kaufman + Defendant Staats.
Location: Christie/Republican political fundraisers.

**Defendant HUMC + Defendant Przybylski**:
See above. As with Defendant Kaufman + Defendant Staats.
Location: Hackensack Medical Center + Christie/Republican political fundraisers

**Defendant HUMC + Defendant CNS**:
See above. As with Defendant Kaufman + Defendant Staats.
Location: Hackensack Medical Center + Christie/Republican political fundraisers

**Defendant HUMC + Defendant Heary**:
See above. As with Defendant Kaufman + Defendant Staats.

Location: Hackensack Medical Center + Christie/Republican political fundraisers + Morristown Memorial Hospital

**Defendant HUMC + Defendant Cohen**:
See above. As with Defendant Kaufman + Defendant Staats.
Location: Hackensack Medical Center + Christie/Republican political fundraisers

**Defendant HUMC + Defendant AHS**:
See above. As with Defendant Kaufman + Defendant Staats.
Location: Hackensack Medical Center + Morristown Memorial Hospital + New Jersey Hospital Association meetings + Governor's office in Trenton + Christie/Republican political fundraisers.

**Defendant AHS + Defendant Kaufman**:
See above. As with Defendant Kaufman + Defendant Staats.
Location: Morristown Memorial Hospital + Christie/Republican political fundraisers.

**Defendant AHS + Defendant Staats**:
See above. As with Defendant Kaufman + Defendant Staats.
Location: Morristown Memorial Hospital + Christie/Republican political fundraisers.

**Defendant AHS + Defendant Przybylski**:
See above. As with Defendant Kaufman + Defendant Staats.
Location: Morristown Memorial Hospital + New Jersey Office of Administrative Law + Christie/Republican political fundraisers

**Defendant AHS + Defendant CNS**:
See above. As with Defendant Kaufman + Defendant Staats.
Location: Morristown Memorial Hospital + Christie/Republican political fundraisers.

**Defendant AHS + Defendant Heary**:
See above. As with Defendant Kaufman + Defendant Staats.
Location: Morristown Memorial Hospital + Governor's office in Trenton + Christie/Republican political fundraisers.

**Defendant AHS + Defendant Cohen**:
See above. As with Defendant Kaufman + Defendant Staats.
Location: Morristown Memorial Hospital + Governor's office in Trenton + Christie/Republican political fundraisers.

**Defendant AHS + Defendant HUMC**:
See above. As with Defendant Kaufman + Defendant Staats.
<u>Location</u>: Morristown Memorial Hospital + Hackensack Medical Center +
Christie/Republican political fundraisers.

Plaintiff and his surgical center were injured in their business or property by Defendants' antitrust violations. Their injury consists of being deprived of the ability to incorporate minimally invasive spine surgery into their commercial strategy. Such an injury of **"exclusion"** is of the type antitrust laws were designed to prevent and flows from that which makes Defendants' conduct unlawful, and Plaintiff and his surgical center are the proper entities to bring a case concerning this conduct.

Plaintiff continues to suffer and will continue to suffer in the future from being excluded from the minimally invasive spine surgery market, more than he would have absent the Defendants' anticompetitive conduct.

Defendants' anticompetitive conduct, pursued in the context of bribery, kickbacks, obstruction of justice, fraud, and falsified legal documents, is absolutely not entitled to Noerr-Pennington protection, a shield not for those with criminal intent.

Plaintiff and his surgical center, pursuant to Fed. R. Civ. P. 57 and U.S.C. § 2201(a) hereby seek a declaratory judgment that Defendants' conduct in seeking to prevent competition as described herein violates Sections 1 and 2 of the Sherman Act. Plaintiff and his surgical center further seeks equitable and injunctive relief pursuant to Section 16 of the Clayton Act, 15 U.S.C. §26, and other applicable law, to correct for the anticompetitive market effects caused by the unlawful conduct of Defendants, and other relief so as to assure that similar anticompetitive conduct does not occur in the future.

## COUNT SEVEN
### For Monopolization of the Minimally Invasive Spine Surgery Market, under state law (By Plaintiff Against Defendants Przybylski + Kaufman + Staats + Cohen + Heary + HUMC + AHS + Allstate + Geico).

Plaintiff incorporates by reference the preceding allegations described above.

From at least 2002, neurosurgeons and hospitals held a monopoly on the minimally invasive spine surgery market, and in particular minimally invasive spine fusions. This monopoly was threatened in 2005, when Kaul performed the first minimally invasive outpatient lumbar fusion, which allowed patients to be discharged the same day.

The Defendants willfully and unlawfully acquired and maintained their monopoly power in the minimally invasive spine surgery market by engaging in an anticompetitive scheme to keep Kaul and similarly trained physicians out of the market – not as a result of providing a superior product, business acumen, or historical accident. The Defendants engaged in a quid pro quo scheme with Defendant Christie, in which he received bribes, disguised as 'campaign donations' in return for having the medical board revoke Kaul's medical license. The revocation caused the economic collapse of six medium sized corporations, and the commencement of Chapter 11 proceedings on June 17, 2013.

The Defendants knowingly and intentionally engaged in an anticompetitive scheme to monopolize the minimally invasive spine surgery market. The Defendants accomplished this scheme by, amongst other things, encouraging patients to file lawsuits against Kaul, and filing complaints against Kaul, with state and federal regulatory authorities.

**From paragraph 217 to 264 Kaul has pled with particularity, fact specific to each element, of each claim, against each defendant, in a separate and distinct manner:**

**Defendant Przybylski + Defendant Kaufman**:
Date range: 2006 to 2019.
Mode of communication: E-mail + Voice message + SMS (text) + Face to face.
Substance of communications: Scheme to downgrade the relative value unit associated with outpatient endoscopic discectomy + Scheme to bribe Defendant Christie to veto a bill in 2009 that would have permitted one operating room surgical centers to become licensed, the licensing of which would have removed the principal reason employed by Defendants Allstate and GEICO to deny payment to outpatient facilities and physicians + Scheme to bribe Defendant Christie in order to sign into law in 2011 a fee schedule that denied or reduced payment for the performance of outpatient minimally invasive spine surgery in free standing surgical centers + Scheme to encourage patients to initiate civil litigation and medical board complaints against Kaul and similarly trained physicians + Scheme to obtain through bribing Defendant Christie a moratorium in 2009 that prevented the issuance of licenses for one-room outpatient surgical centers, unless they were commercially partnered with a hospital + Scheme to engage in knowingly unlawful agreements to divide the minimally invasive spine surgery market in such a way, that physicians with similar training as Kaul, would be limited to performing only discectomies, and not fusions + Scheme to engage in an overarching conspiracy to unlawfully monopolize, conspire to monopolize, and/or, artificially allocate the market for minimally invasive spine surgery + Scheme to unlawfully conspire and combine to intentionally and arbitrarily restrict, restrain and or prohibit Kaul's ability to trade in the

American minimally invasive spine surgery market + Scheme to restrict, restrain and or exclude Kaul from participating in the American minimally invasive spine surgery market + Scheme to bribe Defendant Christie to have Defendant NJBME revoke Kaul's license + Scheme to file complaints against Kaul with state and federal (FBI/DEA/US Attorney) regulatory/prosecutorial authorities + Scheme to participate in sham litigation against Kaul, and provide knowingly fraudulent 'expert' testimony that he was not qualified to perform minimally invasive spine surgery, the purpose of which was to have Kaul's license revoked + Scheme to participate in sham litigation against Kaul's physician employees + Scheme to revoke Kaul's license + Scheme to destroy Kaul's reputation + Scheme to destroy Kaul's economic standing + Scheme to have Kaul ostracized + Scheme to have Kaul leave the United States + Scheme to enact Illegal per se agreements to restrict reimbursement for minimally invasive spine surgery to hospitals and or surgical centers owned by hospitals + Scheme to enact Illegal per se agreements between neurosurgeons, orthopedic surgeons and hospitals to deny privileges for minimally invasive spine surgery to Kaul and similarly trained physicians.

<u>Tactics employed</u>: Illegal per se agreements to restrict reimbursement for minimally invasive spine surgery to hospitals and or surgical centers owned by hospitals + Illegal per se agreements between neurosurgeons, orthopedic surgeons and hospitals to deny privileges for minimally invasive spine surgery to physicians similarly trained as Kaul + Conspired to and did commit Perjury, Evidential Falsification, Evidential Fabrication, Evidential Omission during the administrative board proceedings (April 9, 2013 to December 13, 2013) that resulted in the revocation of Kaul's license + Conspired to did commit subornation of perjury in administrative board proceedings (April 9, 2013 to December 13, 2013) that resulted in the revocation of Kaul's license + Conspired to and did obstruct justice by encouraging Kaul's patients to commit perjury, with the promise that the revocation of his license would permit them to file malpractice claims, and that the revocation would increase the monies they received from Kaul's insurance carrier + Knowingly and willfully engaged in unlawful agreements to divide the minimally invasive spine surgery market in such a way, that physicians with similar training as Kaul, would be limited to performing only discectomies, and not fusions + Knowingly and willfully engaged in an illegal overarching conspiracy to unlawfully monopolize, conspire to monopolize, and/or, artificially allocate the market for minimally invasive spine surgery + Knowingly and willfully engaged to unlawfully conspire and combine to intentionally and arbitrarily restrict, restrain and or prohibit Kaul's ability to trade in the American minimally invasive spine surgery market + Knowingly and willfully engaged to unlawfully restrict, restrain and or exclude Kaul from participating in the American minimally invasive spine surgery market.

<u>Location</u>: Morristown Memorial Hospital + Surgicare Associates Surgical Center + Christie/Republican political fundraisers + Office of the New Jersey Attorney General + Meetings/Conferences organized by the New Jersey Spine Society +

Meetings/Conferences organized by Defendant ASIPP + Meetings/Conferences organized by Defendant CNS + NASS headquarters in Chicago + NASS national meetings + CNS headquarters in Chicago.

**Defendant Przybylski + Defendant Staats**:
See above. As with Defendant Przybylski + Kaufman.
<u>Location</u>: Christie/Republican political fundraisers +  Meetings/Conferences organized by Defendant ASIPP + Meetings/Conferences organized by Defendant CNS.

**Defendant Przybylski + Defendant Cohen**:
See above. As with Defendant Przybylski + Kaufman.
<u>Location</u>: Christie/Republican political fundraisers + NASS national meetings.

**Defendant Przybylski + Defendant Heary**:
See above. As with Defendant Przybylski + Kaufman.
<u>Location</u>: Morristown Memorial Hospital + Christie/Republican political fundraisers + Meetings/Conferences organized by Defendant CNS.

**Defendant Przybylski + Defendant HUMC**:
See above. As with Defendant Przybylski + Kaufman.
<u>Location</u>: Christie/Republican political fundraisers + Office of the New Jersey Attorney General.

**Defendant Przybylski + Defendant AHS**:
See above. As with Defendant Przybylski + Kaufman.
<u>Location</u>: Morristown Memorial Hospital + Christie/Republican political fundraisers + Office of the New Jersey Attorney General.

**Defendant Przybylski + Defendant Allstate**:
<u>Date range</u>: 2010 to 2019.
<u>Mode of communication</u>: E-mail + Voice message + SMS (text) + Face to face.
<u>Substance of communications</u>: Scheme to downgrade the relative value unit associated with outpatient endoscopic discectomy + Scheme to bribe Defendant Christie to veto a bill in 2009 that would have permitted one operating room surgical centers to become licensed, the licensing of which would have removed the principal reason employed by Defendants Allstate and GEICO to deny payment to outpatient facilities and physicians + Scheme to bribe Defendant Christie in order to sign into law in 2011 a fee schedule that denied or reduced payment for the performance of outpatient minimally invasive spine surgery in free standing surgical centers + Scheme to encourage patients to initiate civil litigation and medical board complaints against Kaul and similarly trained

physicians + Scheme to obtain through bribing Defendant Christie a moratorium in 2009 that prevented the issuance of licenses for one-room outpatient surgical centers, unless they were commercially partnered with a hospital + Scheme to engage in knowingly unlawful agreements to divide the minimally invasive spine surgery market in such a way, that physicians with similar training as Kaul, would be limited to performing only discectomies, and not fusions + Scheme to unlawfully conspire and combine to intentionally and arbitrarily restrict, restrain and or prohibit Kaul's ability to trade in the American minimally invasive spine surgery market + Scheme to bribe Defendant Christie to have Defendant NJBME revoke Kaul's license + Scheme to file complaints against Kaul with state and federal regulatory authorities + Scheme to participate in sham litigation against Kaul's physician employees + Scheme to revoke Kaul's license + Scheme to destroy Kaul's reputation + Scheme to destroy Kaul's economic standing + Scheme to have Kaul ostracized + Scheme to have Kaul leave the United States + Scheme to enact Illegal per se agreements to restrict reimbursement for minimally invasive spine surgery to hospitals and or surgical centers owned by hospitals + Scheme to enact Illegal per se agreements between neurosurgeons, orthopedic surgeons and hospitals to deny privileges for minimally invasive spine surgery to Kaul and similarly trained physicians + Scheme to testify that every aspect of the care Kaul delivered to his patients "grossly deviated" from the standard of care + Scheme to have Defendant Solomon buttress Defendant Przybylski's knowingly false testimony that every aspect of the care Kaul delivered to his patients "grossly deviated" from the standard of care + Scheme to have Defendant Hafner pervert the course of justice by buttressing Defendant Przybylski's knowingly false testimony that every aspect of the care Kaul delivered to his patients "grossly deviated" from the standard of care.

Tactics employed: Conspired to and did bribe Defendant Przybylski as part of a quid pro quo scheme that involved funneling money through Defendant NJBME and the New Jersey Office of the Attorney General disguised as 'professional fees' + Conspired to, and did encourage patients to file lawsuits and complaints with Defendant NJBME against Kaul + Conspired to, and did encourage patients to file complaints with state and federal regulatory authorities + Conspired to, and did participate in sham litigation and provided knowingly false testimony that caused the revocation of Kaul's license + Conspired to, and did provide knowingly fraudulent testimony under oath that the care Kaul delivered to his patients "grossly deviated" from the standard of care, because Kaul did not possess alternative privileges or hospital privileges + Conspired to, and did provide knowingly fraudulent testimony under oath that the care Kaul delivered to his patients "grossly deviated" from the standard of care, because Kaul's training did not involve a neurosurgical residency + Use of the US mail and wires to send false information to personal injury lawyers that Kaul was not qualified to perform minimally invasive spine surgery and had committed insurance fraud.

179

Location: New Jersey Office of Administrative Law + Office of the New Jersey Attorney General + Allstate corporate offices in Northbrook, Illinois.

**Defendant Przybylski + Defendant Geico**:
See above. As with Defendant Przybylski + Defendant Allstate.
Location: New Jersey Office of Administrative Law + Office of the New Jersey Attorney General + Geico corporate offices in Chevy Chase, Maryland.

**Defendant Kaufman + Defendant Staats**:
See above. As with Defendant Przybylski + Kaufman.
Location: Morristown Memorial Hospital +  Office of the New Jersey Attorney General + Christie/Republican political fundraisers + Meetings/Conferences organized by Defendant ASIPP.

**Defendant Kaufman + Defendant Cohen**:
See above. As with Defendant Przybylski + Kaufman.
Location: Morristown Memorial Hospital + St. Clare's Hospital, Denville + Christie/Republican political fundraisers + Office of the New Jersey Attorney General + Meetings/Conferences organized by the New Jersey Spine Society + Meetings/Conferences organized by Defendant ASIPP.

**Defendant Kaufman + Defendant Heary**:
See above. As with Defendant Przybylski + Kaufman.
Location: Morristown Memorial Hospital + Christie/Republican political fundraisers + Meetings/Conferences organized by the New Jersey Spine Society + NASS headquarters in Chicago + NASS national meetings + Meetings/Conferences organized by Defendant ASIPP  + Meetings/Conferences organized by Defendant CNS.

**Defendant Kaufman + Defendant HUMC**:
See above. As with Defendant Przybylski + Defendant HUMC.
Location: Morristown Memorial Hospital + Hackensack Medical Center + Christie/Republican political fundraisers + Office of the New Jersey Attorney General + Meetings/Conferences organized by Defendant ASIPP.

**Defendant Kaufman + Defendant AHS**:
See above. As with Defendant Przybylski + Defendant HUMC.
Location: Morristown Memorial Hospital + Christie/Republican political fundraisers + Office of the New Jersey Attorney General.

**Defendant Kaufman + Defendant Allstate**:

See above. As with Defendant Przybylski + Defendant Allstate.
Location: New Jersey Office of Administrative Law + Office of the New Jersey Attorney General + Allstate corporate offices in Northbrook, Illinois + Morristown Memorial Hospital.

**Defendant Kaufman + Defendant Geico**:
See above. As with Defendant Przybylski + Defendant Allstate.
Location: New Jersey Office of Administrative Law + Office of the New Jersey Attorney General + Geico corporate offices in Chevy Chase, Maryland + Morristown Memorial Hospital + Christie/Republican political fundraisers.

**Defendant Staats + Defendant Cohen**:
See above. As with Defendant Przybylski + Kaufman.
Location: Morristown Memorial Hospital + Christie/Republican political fundraisers + Meetings/Conferences organized by Defendant ASIPP + Meetings/Conferences organized by the New Jersey Spine Society + NASS national meetings.

**Defendant Staats + Defendant Heary**:
See above. As with Defendant Przybylski + Defendant Staats.
Location: Christie/Republican political fundraisers +  Meetings/Conferences organized by Defendant ASIPP + Meetings/Conferences organized by Defendant CNS + NASS national meetings.

**Defendant Staats + Defendant HUMC**:
See above. As with Defendant Przybylski + Defendant HUMC.
Location: Christie/Republican political fundraisers + Office of the New Jersey Attorney General + Meetings/Conferences organized by Defendant ASIPP + Meetings/Conferences organized by Defendant CNS + Meetings/Conferences organized by the New Jersey Spine Society + Meetings/Conferences organized by the New Jersey Spine Society.

**Defendant Staats + Defendant AHS**:
See above. As with Defendant Przybylski + Defendant AHS.
Location: Morristown Memorial Hospital + Christie/Republican political fundraisers + Office of the New Jersey Attorney General.

**Defendant Staats + Defendant Allstate**:
See above. As with Defendant Przybylski + Defendant Allstate.
Location: New Jersey Office of Administrative Law + Office of the New Jersey Attorney General + Allstate corporate offices in Northbrook, Illinois.

**Defendant Staats + Defendant Geico**:
See above. As with Defendant Przybylski + Defendant Geico.
Location: New Jersey Office of Administrative Law + Office of the New Jersey Attorney General + Geico corporate offices in Chevy Chase, Maryland.

**Defendant Cohen + Defendant Heary**:
See above. As with Defendant Przybylski + Defendant Cohen.
Location: Christie/Republican political fundraisers + NASS national meetings + Meetings/Conferences organized by the New Jersey Spine Society.

**Defendant Cohen + Defendant HUMC**:
See above. As with Defendant Przybylski + Defendant HUMC.
Location: Morristown Memorial Hospital + Hackensack Medical Center + Christie/Republican political fundraisers.

**Defendant Cohen + Defendant AHS**:
See above. As with Defendant Przybylski + Defendant AHS.
Location: Morristown Memorial Hospital + Christie/Republican political fundraisers + Office of the New Jersey Attorney General

**Defendant Cohen + Defendant Allstate**:
See above. As with Defendant Przybylski + Defendant Allstate.
Location: Morristown Memorial Hospital + Christie/Republican political fundraisers.

**Defendant Cohen + Defendant Geico**:
See above. As with Defendant Przybylski + Defendant Geico.
Location: Morristown Memorial Hospital + Christie/Republican political fundraisers + Office of the New Jersey Attorney General + Geico corporate offices in Chevy Chase, Maryland.

**Defendant Heary + Defendant HUMC**:
See above. As with Defendant Przybylski + Defendant HUMC.
Location: Morristown Memorial Hospital + Hackensack Medical Center + Christie/Republican political fundraisers + Office of the New Jersey Attorney General.

**Defendant Heary + Defendant AHS**:
See above. As with Defendant Przybylski + Defendant AHS.
Location: Morristown Memorial Hospital +  Christie/Republican political fundraisers + Office of the New Jersey Attorney General.

**Defendant Heary + Defendant Allstate**:
See above. As with Defendant Przybylski + Defendant Allstate.
Location: Morristown Memorial Hospital + Christie/Republican political fundraisers + New Jersey Office of Administrative Law + Allstate corporate offices in Northbrook, Illinois.

**Defendant Heary + Defendant Geico**:
See above. As with Defendant Przybylski + Defendant Geico.
Location: Morristown Memorial Hospital + Christie/Republican political fundraisers + Office of the New Jersey Attorney General + Geico corporate offices in Chevy Chase, Maryland.

**Defendant HUMC + Defendant AHS**:
See above. As with Defendant Przybylski + Defendant AHS
Location: Morristown Memorial Hospital + Hackensack Medical Center + Governor's office in Trenton + Christie/Republican political fundraisers.

**Defendant HUMC + Defendant Allstate**:
See above. As with Defendant Przybylski + Defendant Allstate.
Location: Governor's office in Trenton + Christie/Republican political fundraisers + Office of the New Jersey Attorney General + Allstate corporate offices in Northbrook, Illinois.

**Defendant HUMC + Defendant Geico**:
See above. As with Defendant Przybylski + Defendant Geico.
Location: Hackensack Medical Center + Office of the New Jersey Attorney General + Geico corporate offices in Chevy Chase, Maryland + Governor's office in Trenton + Christie/Republican political fundraisers.

**Defendant AHS + Defendant Allstate**:
See above. As with Defendant Przybylski + Defendant Allstate.
Location: Morristown Memorial Hospital +  Governor's office in Trenton + Christie/Republican political fundraisers + New Jersey Office of Administrative Law + Allstate corporate offices in Northbrook, Illinois.

**Defendant AHS + Defendant Geico**:
See above. As with Defendant Przybylski + Defendant Geico.

Location: Morristown Memorial Hospital + Governor's office in Trenton + Christie/Republican political fundraisers + Office of the New Jersey Attorney General + Geico corporate offices in Chevy Chase, Maryland.

**Defendant Allstate + Defendant Geico**:
See above. As with Defendant Przybylski + Defendant Geico.
Location: Governor's office in Trenton + Christie/Republican political fundraisers + New Jersey Office of Administrative Law + Office of the New Jersey Attorney General + Allstate corporate offices in Northbrook, Illinois + Geico corporate offices in Chevy Chase, Maryland.

The goal, purpose and effect of the Defendants' scheme was to prevent the Plaintiff and similarly trained physicians from increasing the availability of outpatient minimally invasive spine surgery, and from increasing the number of physicians able to provide the service. The Defendants illegal scheme allowed them to continue to charge supra-competitive prices for minimally invasive spine surgery, reaping substantial unlawful monopoly profits, while reducing the availability of the service to patients, particularly those in lower socio-economic brackets, whose injuries were caused by auto accidents. This latter group rarely had secondary insurance and was thus unable to procure minimally invasive spine care, which caused them to use opiates for pain control. Kaul, because he owned his surgical center, provided free care to those patients with no insurance. The Defendant hospitals and neurosurgeons did not.

The Neurosurgeon Defendants knowingly and intentionally participated in sham litigation against Kaul, that included encouraging patients to file lawsuits and complaints with Defendant NJBME, and then providing fraudulent 'expert' testimony for the patients and Defendant NJBME. The Defendants repeatedly and fraudulently asserted that Kaul was not qualified to perform minimally invasive spine surgery. The Defendants repeatedly and fraudulently asserted that Kaul had deviated from the standard of care because he did not possess hospital or alternative privileges. The Defendants repeatedly and fraudulently asserted that Kaul had deviated from the standard of care because his training did not involve a neurosurgical residency. These claims were false and designed to protect and further the monopoly held by the neurosurgeons and hospitals on minimally invasive spine surgery. The Defendants participated in these sham lawsuits for the purposes of using a governmental process as an anticompetitive weapon, to keep Kaul and similarly trained physicians out of the minimally invasive spine surgery market.

The Defendants knowingly and intentionally engaged in sham litigation that resulted in the revocation of Kaul's medical license. Defendant Przybylski provided knowingly false

testimony that Kaul had deviated from a supposed standard of care for minimally invasive spine surgery, but then admitted under cross-examination that no such standard existed. The Defendants perpetrated these falsehoods in multiple courts and in the public domain, for almost eight (8) years, for the purpose of protecting their monopoly on minimally invasive spine surgery. The knowingly false testimony provided by Defendants Kaufman and Przybylski during the proceedings in the New Jersey Office of Administrative Law, fabricated a basis for Defendant Solomon to revoke Kaul's license. The revocation caused the collapse of six medium sized corporations, the loss of jobs, the loss of tax revenue, the loss of healthcare to hundreds of patients with no insurance, which forced a number of these patients to seek pain relief through street grade heroin. The Defendants co-opted Kaul's patients into their scheme to protect their 'turf', with the promise that the patients' malpractice suits would be strengthened if Kaul's license was revoked.

The goal, purpose and effect of the Defendant's scheme was to prevent Kaul, his surgical center and those of similarly trained physicians from continuing to provide outpatient minimally invasive spine surgery. This restricted the availability of the service to the Defendant Hospitals and Neurosurgeons, which permitted them to artificially raise their prices, in the absence of competition. The Defendants knew that Kaul had, in 2009, obtained one of the last surgical center licenses issued by the state, and had plans to develop a thirty-six thousand (36,000) square foot, four (4) operating room, multi-disciplinary surgical center, that was to provide the template for a national, and then global expansion program in minimally invasive spine surgery.

The goal, purpose and effect of the Defendants schemes were to maintain and extend their monopoly power in minimally invasive spine surgery. The Defendants illegal schemes allowed them to continue charging supra-competitive prices for minimally invasive spine surgery This caused harm to the public by reducing the availability of the service and permitted the Defendants to reap substantial unlawful monopoly profits.

The Defendants knowingly and intentionally engaged in sham litigation against Kaul's physician employees. The Defendants fraudulently asserted that Kaul's employees were not qualified to assist Kaul perform minimally invasive spine surgery, and that they had engaged in insurance fraud. Defendants GEICO and Allstate filed frivolous claims in federal and state courts. The complaint filed by GEICO on April 27, 2013 was dismissed with prejudice on December 8, 2014, with no evidence submitted to support the claims. Defendant Allstate filed an almost identical action on February 15, 2015 in the New Jersey Superior Court. The purpose of the sham litigation was to manufacture an excuse to not pay Kaul for the minimally invasive spine surgery services he had provided to the Defendants' clients. The Neurosurgeon Defendants participated in these

sham lawsuits for the purposes of using a governmental process as an anticompetitive weapon to exclude Kaul's employees and similarly trained physicians from the minimally invasive spine surgery market.

The Defendants also knowingly and intentionally engaged in sham litigation against Kaul's employees' medical licenses, initiating medical board investigations that were intended to ostracize Kaul from his professional colleagues, the purpose of which was to force Kaul to leave the country, and forego the opportunity to seek legal redress. The Defendants abused governmental processes to extend their monopoly.

As a result of Defendants' illegal conduct, Plaintiff and his physician employees were excluded from the minimally invasive spine surgery market and were compelled to incur substantial legal fees in the defense of the sham board investigations. But for the Defendants' illegal conduct, the competitors would have continued to expand their scope of practice, increase the availability of minimally invasive spine surgery services, reduce the price of the service, and mitigate the severity of the opiate epidemic, as more patients would have had access to non-opiate modalities of spine care.

Had Kaul and similarly trained physicians been allowed to continue expanding their scope of practice in minimally invasive spine surgery, and lawfully compete with the Defendants then the public would not have been denied the benefits of competition.

By engaging in the foregoing conduct, the Defendants have violated the following state antitrust laws:

**a.** Defendants, because of their immense political influence within the state chapters and national hierarchy of CNS, ASIPP, NASS and AMA, have intentionally and wrongfully maintained monopoly power in the relevant market in violation of Arizona Rev. Stat. § 44-1401, et seq., with respect to the availability of minimally invasive spine surgery in Arizona, and in the knowledge that Kaul had plans to expand nationally.
**b.** Defendants, because of their immense political influence within the state chapters and national hierarchy of CNS, ASIPP, NASS and AMA, have intentionally and wrongfully maintained monopoly power in the relevant market in violation of Cal. Bus. Code §§ 16700, et seq., and Code §§ 17200, et seq., with respect to the availability of minimally invasive spine surgery in California, and in the knowledge that Kaul had plans to expand nationally.
**c.** Defendants, because of their immense political influence within the state chapters and national hierarchy of CNS, ASIPP, NASS and AMA, have intentionally and wrongfully maintained monopoly power in the relevant market in violation of D.C. Code Ann. §§ 28-45031, et seq., with respect to the availability of minimally invasive spine

surgery in the District of Columbia, and in the knowledge that Kaul had plans to expand nationally.

**d.** Defendants, because of their immense political influence within the state chapters and national hierarchy of CNS, ASIPP, NASS and AMA, have intentionally and wrongfully maintained monopoly power in the relevant market in violation of Fla. Stat. §§ 501. Part II et seq., with respect to the availability of minimally invasive spine surgery in Florida, and in the knowledge that Kaul had plans to expand nationally. This conduct constitutes a predicate act under the Florida Deceptive Practices Act.

**e.** Defendants, because of their immense political influence within the state chapters and national hierarchy of CNS, ASIPP, NASS and AMA, have intentionally and wrongfully maintained monopoly power in the relevant market in violation of Kan. Stat Ann. §§ 50-101 et seq., with respect to the availability of minimally invasive spine surgery in Kansas, and in the knowledge that Kaul had plans to expand nationally.

**f.** Defendants, because of their immense political influence within the state chapters and national hierarchy of CNS, ASIPP, NASS and AMA, have intentionally and wrongfully maintained monopoly power in the relevant market in violation of Me. Rev. Stat. Ann. 10, § 1101, et seq., with respect to the availability of minimally invasive spine surgery in Maine, and in the knowledge that Kaul had plans to expand nationally.

**g.** Defendants, because of their immense political influence within the state chapters and national hierarchy of CNS, ASIPP, NASS and AMA, have intentionally and wrongfully maintained monopoly power in the relevant market in violation of Mich. Comp. Laws Ann. §§ 445.771, et seq., with respect to the availability of minimally invasive spine surgery in Michigan, and in the knowledge that Kaul had plans to expand nationally.

**h.** Defendants, because of their immense political influence within the state chapters and national hierarchy of CNS, ASIPP, NASS and AMA, have intentionally and wrongfully maintained monopoly power in the relevant market in violation of Minn. Stat. §§ 325D.52, et seq., with respect to the availability of minimally invasive spine surgery in Minnesota, and in the knowledge that Kaul had plans to expand nationally.

**i.** Defendants, because of their immense political influence within the state chapters and national hierarchy of CNS, ASIPP, NASS and AMA, have intentionally and wrongfully maintained monopoly power in the relevant market in violation of Miss. Code Ann. §§ 59-801, et seq., with respect to the availability of minimally invasive spine surgery in Mississippi, and in the knowledge that Kaul had plans to expand nationally.

**j.** Defendants, because of their immense political influence within the state chapters and national hierarchy of CNS, ASIPP, NASS and AMA, have intentionally and wrongfully maintained monopoly power in the relevant market in violation of Neb. Code Ann. §§598A, et seq., with respect to the availability of minimally invasive spine surgery in Nebraska, and in the knowledge that Kaul had plans to expand nationally.

**k.** Defendants, because of their immense political influence within the state chapters and national hierarchy of CNS, ASIPP, NASS and AMA, have intentionally and wrongfully maintained monopoly power in the relevant market in violation of Nev. Ret. Stat. Ann. § 598A, et seq., with respect to the availability of minimally invasive spine surgery in Nevada, and in the knowledge that Kaul had plans to expand nationally.

**l.** Defendants, because of their immense political influence within the state chapters and national hierarchy of CNS, ASIPP, NASS and AMA, have intentionally and wrongfully maintained monopoly power in the relevant market in violation of N.M. Stat. Ann. §§ 57-1-1, et seq., with respect to the availability of minimally invasive spine surgery in New Mexico, and in the knowledge that Kaul had plans to expand nationally.

**m.** Defendants, because of their immense political influence within the state chapters and national hierarchy of CNS, ASIPP, NASS and AMA, have intentionally and wrongfully maintained monopoly power in the relevant market in violation of New York General Business Law § 340, et seq., with respect to the availability of minimally invasive spine surgery in New York, and in the knowledge that Kaul had plans to expand nationally.

n. Defendants, because of their immense political influence within the state chapters and national hierarchy of CNS, ASIPP, NASS and AMA, have intentionally and wrongfully maintained monopoly power in the relevant market in violation of N.C. Gen. Stat. §§ 75-1, et seq., with respect to the availability of minimally invasive spine surgery in North Carolina, and in the knowledge that Kaul had plans to expand nationally.

o. Defendants, because of their immense political influence within the state chapters and national hierarchy of CNS, ASIPP, NASS and AMA, have intentionally and wrongfully maintained monopoly power in the relevant market in violation of N.D. Cent. Code § 51-08.1-01, et seq., with respect to the availability of minimally invasive spine surgery in North Dakota, and in the knowledge that Kaul had plans to expand nationally.

p. Defendants, because of their immense political influence within the state chapters and national hierarchy of CNS, ASIPP, NASS and AMA, have intentionally and wrongfully maintained monopoly power in the relevant market in violation of Or. Rev. Stat. §§ 646.705, et seq., with respect to the availability of minimally invasive spine surgery in Oregon, and in the knowledge that Kaul had plans to expand nationally.

q. Defendants, because of their immense political influence within the state chapters and national hierarchy of CNS, ASIPP, NASS and AMA, have intentionally and wrongfully maintained monopoly power in the relevant market in violation of S.D. Codified Laws Ann. § 37-1, et seq., with respect to the availability of minimally invasive spine surgery in South Dakota, and in the knowledge that Kaul had plans to expand nationally.

r. Defendants, because of their immense political influence within the state chapters and national hierarchy of CNS, ASIPP, NASS and AMA, have intentionally and wrongfully maintained monopoly power in the relevant market in violation of Tenn. Code Ann. §§

47-25-101, et seq., with respect to the availability of minimally invasive spine surgery in Tennessee, and in the knowledge that Kaul had plans to expand nationally.

s. Defendants, because of their immense political influence within the state chapters and national hierarchy of CNS, ASIPP, NASS and AMA, have intentionally and wrongfully maintained monopoly power in the relevant market in violation of Utah Code Ann. §§ 76-10-911, et seq., with respect to the availability of minimally invasive spine surgery in Utah, and in the knowledge that Kaul had plans to expand nationally.

t. Defendants, because of their immense political influence within the state chapters and national hierarchy of CNS, ASIPP, NASS and AMA, have intentionally and wrongfully maintained monopoly power in the relevant market in violation of Vt. Stat. Ann. 9, § 2453, et seq., with respect to the availability of minimally invasive spine surgery in Vermont, and in the knowledge that Kaul had plans to expand nationally.

u. Defendants, because of their immense political influence within the state chapters and national hierarchy of CNS, ASIPP, NASS and AMA, have intentionally and wrongfully maintained monopoly power in the relevant market in violation of W.Va. Code §§ 47-18-1, et seq., with respect to the availability of minimally invasive spine surgery in West Virginia, and in the knowledge that Kaul had plans to expand nationally.

v. Defendants, because of their immense political influence within the state chapters and national hierarchy of CNS, ASIPP, NASS and AMA, have intentionally and wrongfully maintained monopoly power in the relevant market in violation of Wis Stat. § 133.01, et seq., with respect to the availability of minimally invasive spine surgery in Wisconsin, and in the knowledge that Kaul had plans to expand nationally.

Plaintiff has been injured in his business and property by reason of Defendants' antitrust violations alleged in this Claim. The injuries consist of: **(1)** the revocation of Kaul's New Jersey medical license and the loss to his patients of their ability to receive minimally invasive spine care and, **(2)** exclusion of Kaul from the minimally invasive spine surgery market which has permitted the Defendants to raise their prices, and **(3)** the loss into bankruptcy of Kaul's healthcare corporations, to which were attached $45 million in accounts receivable, a surgical center license and real estate, and **(4)** the loss of Kaul's professional reputation developed over thirty (30) years. These injuries are of the type the antitrust laws of the above States and the District of Columbia were designed to prevent, and flow from that which makes Defendants' conduct unlawful. Plaintiff seeks damages and treble damages as permitted by law for their injuries by Defendants' violation of the aforementioned statutes.

**COUNT EIGHT**
**For Conspiracy to Monopolize under State Law**
**(By Plaintiff Against Defendants Przybylski + Kaufman + Staats + Lomazow + Cohen + Heary + HUMC + AHS)**

Plaintiff incorporates by reference the preceding allegations.

As described above, from at least 1980 to March 2005, the Defendants possessed monopoly power in the market for traditional inpatient 'open' spine surgery. This changed in March 2005 when Kaul performed the first minimally invasive outpatient spinal fusion. Defendants willfully and unlawfully engaged in a continuing conspiracy from at least 2008 to 2016 to ensure that their monopoly extended to the outpatient minimally invasive spine surgery market. To achieve this goal, they engaged in an anticompetitive scheme intended to exclude Kaul and similarly trained physicians from commercially incorporating minimally invasive spine surgery into their practices – not as a result of providing a superior product, business acumen, or historical accident. Defendants knowingly and intentionally conspired to monopolize the minimally invasive spine surgery market. Defendants accomplished this scheme by, inter alia, **(i)** obtaining through fraud a downgrading of the relative value unit associated with outpatient endoscopic discectomy, **(ii)** procuring through bribery the veto of a bill that would have permitted one operating room surgical centers to become licensed, the licensing of which would have removed the principal reason employed by the Defendant Insurance Carriers to deny payment to physicians and one operating room outpatient facilities, **(iii)** procuring through bribery the introduction of a fee schedule in 2011 that denied payment for the performance of outpatient minimally invasive spine surgery, **(iv)** encouraging patients to initiate civil litigation and medical board complaints against Kaul and similarly trained physicians**, (v)** obtaining through bribery a moratorium in 2009 that prevented the issuance of licenses for free standing outpatient surgical centers, unless they were commercially partnered with a hospital, **(vi)** Defendant Neurosurgeons unlawfully agreeing with representatives of Defendant ASIPP that the market for minimally invasive spine surgery would only be divided in a way, that physicians such as Kaul would be limited to performing only discectomies and not fusions, and **(vii)** otherwise engaging in an overarching scheme to unlawfully monopolize, conspire to monopolize, and allocate the market for minimally invasive spine surgery.

**From paragraph 688 to 715 Kaul has pled with particularity, fact specific to each element, of each claim, against each defendant, in a separate and distinct manner:**

**Defendant Przybylski + Defendant Kaufman**:
Date range: 2006 to 2019
Mode of communication: US Mail + E-mail + Voice message + SMS (text) + Face to face.

<u>Substance of communications</u>: Scheme to downgrade the relative value unit associated with outpatient endoscopic discectomy + Scheme to bribe Defendant Christie to veto a bill in 2009 that would have permitted one operating room surgical centers to become licensed, the licensing of which would have removed the principal reason employed by Defendants Allstate and GEICO to deny payment to outpatient facilities and physicians + Scheme to bribe Defendant Christie in order to sign into law in 2011 a fee schedule that denied or reduced payment for the performance of outpatient minimally invasive spine surgery in free standing surgical centers + Scheme to encourage patients to initiate civil litigation and medical board complaints against Kaul and similarly trained physicians + Scheme to obtain through bribing Defendant Christie a moratorium in 2009 that prevented the issuance of licenses for one-room outpatient surgical centers, unless they were commercially partnered with a hospital + Scheme to engage in knowingly unlawful agreements to divide the minimally invasive spine surgery market in such a way, that physicians with similar training as Kaul, would be limited to performing only discectomies, and not fusions + Scheme to engage in an overarching conspiracy to unlawfully monopolize, conspire to monopolize, and/or, artificially allocate the market for minimally invasive spine surgery + Scheme to participate in sham litigation against Kaul, and provide knowingly fraudulent 'expert' testimony that he was not qualified to perform minimally invasive spine surgery, the purpose of which was to have Kaul's license revoked + Scheme to participate in sham litigation against Kaul's physician employees + Scheme to enact Illegal per se agreements to restrict reimbursement for minimally invasive spine surgery to hospitals and or surgical centers owned by hospitals + Scheme to enact Illegal per se agreements between neurosurgeons, orthopedic surgeons and hospitals to deny privileges for minimally invasive spine surgery to Kaul and similarly trained physicians.

<u>Tactics employed</u>: Conspired to, and did participate in sham litigation and provided knowingly false testimony that caused the revocation of Kaul's license + Conspired to, and did provide knowingly fraudulent testimony under oath that the care Kaul delivered to his patients "grossly deviated" from the standard of care, because Kaul did not possess alternative privileges or hospital privileges + Conspired to, and did provide knowingly fraudulent testimony under oath that the care Kaul delivered to his patients "grossly deviated" from the standard of care, because Kaul's training did not involve a neurosurgical residency + Conspired to, and did participate in sham litigation and provided knowingly false testimony that caused the entry of false judgments against Kaul in civil malpractice cases + Conspired to, and did participate in sham litigation against Kaul's physician employees, falsely testifying that they were not qualified to perform minimally invasive spine surgery and had committed insurance fraud + Conspired to, and did participate in sham litigation against the medical licenses of Kaul's physician employees + Conspired to and did participate in sham litigation

purposed to professionally ostracize Kaul, cause him to leave the United States and prevent him from publicly exposing the defendants' crimes.

Location: Morristown Memorial Hospital + Christie/Republican political fundraisers + Office of the New Jersey Attorney General + Meetings/Conferences organized by the New Jersey Spine Society + NASS headquarters in Chicago + CNS headquarters in Chicago.

**Defendant Przybylski + Defendant Staats**:

See above. As with Defendant Przybylski + Kaufman.

Location: Meetings/Conferences organized by Defendant ASIPP/Defendant CNS + Christie/Republican political fundraisers

**Defendant Przybylski + Defendant Lomazow**:

See above. As with Defendant Przybylski + Kaufman.

Location: Office of the New Jersey Attorney General +  Christie/Republican political fundraisers

**Defendant Przybylski + Defendant Cohen**:

See above. As with Defendant Przybylski + Kaufman.

Location: Morristown Memorial Hospital + Surgicare Associates Surgical Center, Englewood, NJ + Christie/Republican political fundraisers + Meetings/Conferences organized by the New Jersey Spine Society + NASS headquarters in Chicago + NASS national meetings.

**Defendant Przybylski + Defendant Heary**:

See above. As with Defendant Przybylski + Kaufman.

Location: Morristown Memorial Hospital + Christie/Republican political fundraisers + Meetings/Conferences organized by the New Jersey Spine Society + NASS headquarters in Chicago + NASS national meetings.

**Defendant Przybylski + Defendant HUMC**:

See above. As with Defendant Przybylski + Kaufman.

Location: Hackensack Medical Center + Christie/Republican political fundraisers + Office of the New Jersey Attorney General.

**Defendant Przybylski + Defendant AHS**:

See above. As with Defendant Przybylski + Kaufman.

Location: Morristown Memorial Hospital + Christie/Republican political fundraisers + Office of the New Jersey Attorney General

**Defendant Kaufman + Defendant Staats**:
See above. As with Defendant Przybylski + Kaufman.
<u>Location</u>: Morristown Memorial Hospital + Christie/Republican political fundraisers +
Office of the New Jersey Attorney General + Meetings/Conferences organized by
Defendant ASIPP

**Defendant Kaufman + Defendant Lomazow**:
See above. As with Defendant Przybylski + Kaufman.
<u>Location</u>: Morristown Memorial Hospital + Christie/Republican political fundraisers +
Office of the New Jersey Attorney General.

**Defendant Kaufman + Defendant Cohen**:
See above. As with Defendant Przybylski + Kaufman.
<u>Location</u>: Morristown Memorial Hospital + Surgicare Associates Surgical Center +
Christie/Republican political fundraisers + Office of the New Jersey Attorney General.

**Defendant Kaufman + Defendant Heary**:
See above. As with Defendant Przybylski + Kaufman.
<u>Location</u>: Morristown Memorial Hospital + Hackensack Medical Center +
Christie/Republican political fundraisers + Meetings/Conferences organized by the New
Jersey Spine Society

**Defendant Kaufman + Defendant HUMC**:
See above. As with Defendant Przybylski + Kaufman.
<u>Location</u>: Morristown Memorial Hospital + Hackensack Medical Center +
Christie/Republican political fundraisers + Office of the New Jersey Attorney General.

**Defendant Kaufman + Defendant AHS**:
See above. As with Defendant Przybylski + Kaufman.
Location: Morristown Memorial Hospital + Christie/Republican political fundraisers.

**Defendant Staats + Defendant Lomazow**:
<u>See above. As with Defendant Przybylski + Kaufman.</u>
<u>Location</u>: Christie/Republican political fundraisers + Office of the New Jersey Attorney
General.

**Defendant Staats + Defendant Cohen**:
See above. As with Defendant Przybylski + Kaufman.
<u>Location</u>: Morristown Memorial Hospital + Christie/Republican political fundraisers.

193

**<u>Defendant Staats + Defendant Heary</u>**:
See above. As with Defendant Przybylski + Kaufman.
<u>Location</u>: Morristown Memorial Hospital + Hackensack Medical Center +
Christie/Republican political fundraisers + Office of the New Jersey Attorney General +
NASS national meetings.

**Defendant Staats + Defendant HUMC**:
See above. As with Defendant Przybylski + Kaufman.
<u>Location</u>: Hackensack Medical Center + Christie/Republican political fundraisers.

**<u>Defendant Staats + Defendant AHS</u>**:
<u>Date range: See above. As with Defendant Przybylski + Kaufman.</u>
<u>Location</u>: Morristown Memorial Hospital + Christie/Republican political fundraisers +
Office of the New Jersey Attorney General

**<u>Defendant Lomazow + Defendant Cohen</u>**:
See above. As with Defendant Przybylski + Kaufman.
<u>Location</u>: Morristown Memorial Hospital + Christie/Republican political fundraisers +
Office of the New Jersey Attorney General.

**<u>Defendant Lomazow + Defendant Heary</u>**:
See above. As with Defendant Przybylski + Kaufman.
<u>Location</u>: Morristown Memorial Hospital + Hackensack Medical Center +
Christie/Republican political fundraisers + Office of the New Jersey Attorney General.

**<u>Defendant Lomazow + Defendant HUMC</u>**:
See above. As with Defendant Przybylski + Kaufman.
<u>Location</u>: Hackensack Medical Center + Christie/Republican political fundraisers +
Office of the New Jersey Attorney General.

**<u>Defendant Lomazow + Defendant AHS</u>**:
See above. As with Defendant Przybylski + Kaufman.
<u>Location</u>: Morristown Memorial Hospital + Office of the New Jersey Attorney General.

**<u>Defendant Cohen + Defendant Heary</u>**:
See above. As with Defendant Przybylski + Kaufman.
<u>Location</u>: Morristown Memorial Hospital + Surgicare Associates Surgical Center +
Christie/Republican political fundraisers + Meetings/Conferences organized by the New
Jersey Spine Society.

**Defendant Cohen + Defendant HUMC**:
See above. As with Defendant Przybylski + Kaufman.
Location: Morristown Memorial Hospital + Hackensack Medical Center +
Christie/Republican political fundraisers.

**Defendant Cohen + Defendant AHS**:
See above. As with Defendant Przybylski + Kaufman.
Location: Morristown Memorial Hospital + Christie/Republican political fundraisers.

**Defendant Heary + Defendant HUMC**:
See above. As with Defendant Przybylski + Kaufman.
Location: Morristown Memorial Hospital + University Hospital + Hackensack Medical
Center + Christie/Republican political fundraisers.

**Defendant Heary + Defendant AHS**:
See above. As with Defendant Przybylski + Kaufman.
Location: Morristown Memorial Hospital + Hackensack Medical Center +
Christie/Republican political fundraisers.

**Defendant HUMC + Defendant AHS**:
See above. As with Defendant Przybylski + Kaufman.
Location: Hackensack Medical Center + Morristown Memorial Hospital + New Jersey
Hospital Association meetings + Christie/Republican political fundraisers.

The goal, purpose and effect of the Defendants' scheme was to maintain and extend
monopoly power with respect to the minimally invasive spine surgery market.
Defendants' illegal scheme allowed them to artificially raise their prices due simply to
the suppressed competition, and not due to increased costs. This allowed the
Defendants to reap substantial unlawful monopoly profits.

The agreements between the Defendants are overt acts between separate economic
entities-actual and potential competitors-and are illegal per se under state antitrust laws.
The agreements made between the Defendant Neurosurgeons, Hospitals, Allstate and
GEICO were that payment for minimally invasive spine surgery, would be made only for
cases performed in hospitals or their attached surgical centers, and not to
independently owned surgical centers. The Defendant Neurosurgeons' agreement with
the Defendant Hospitals was that they would not credential minimally invasive spine
surgeons, such as Kaul, for minimally invasive spine surgery. The effect of these

agreements was to arbitrarily exclude Kaul and his surgical center from participating commercially in the provision of minimally invasive spine surgery to patients with insurance policies issued by the Defendants Allstate and GEICO. Thus, Defendants Allstate and GEICO, Neurosurgeons and Hospitals profited, but Kaul's independent surgical center and minimally invasive spine practice incurred losses.

Alternatively, this Complaint alleges that the agreements and conspiracy to monopolize are a violation of state antitrust law under a **"quick look"** or **"rule of reason"** analysis. The Neurosurgeon Defendants knowingly and intentionally participated in sham litigation against Kaul that included encouraging patients to file lawsuits and complaints with the medical board, and then providing fraudulent 'expert' testimony for the patients and the medical board. The Defendants repeatedly and fraudulently asserted that Kaul was not qualified to perform minimally invasive spine surgery. The Defendants repeatedly and fraudulently asserted that Kaul had deviated from the standard of care because he did not possess hospital or alternative privileges. The Defendants repeatedly and fraudulently asserted that Kaul had deviated from the standard of care because his training did not involve a neurosurgical residency. These claims were false and designed to protect and further the monopoly held by the neurosurgeons and hospitals on minimally invasive spine surgery.

The Defendants participated in these sham lawsuits for the purposes of using a governmental process as an anticompetitive weapon, to keep Kaul and similarly trained physicians out of the minimally invasive spine surgery market.

In furtherance of the scheme to monopolize the minimally invasive spine surgery market, Defendant Przybylski, Kaufman and Solomon committed two hundred and seventy-eight (278) separate instances of Perjury, Evidential Omission, Misrepresentation and or Mischaracterization in THE MATTER OF THE SUSPENSION OR REVOCATION OF THE LICENSE OF RICHARD A. KAUL, M.D. TO PRACTICE MEDICINE AND SURGERY IN NEW JERSEY (April 9, 2013 to June 28, 2013).

The Defendants perpetrated these falsehoods in a coordinated campaign that lasted eight (8) years. These claims were false and designed to protect and further the monopoly held by Defendant Neurosurgeons and Hospitals on minimally invasive spine surgery. The Defendants participated in these sham lawsuits for the purposes of using a governmental process as an anticompetitive weapon, to keep Kaul and similarly trained physicians out of the minimally invasive spine surgery market. The Defendants co-opted Kaul's patients into their scheme to protect their 'turf', with the promise that their malpractice suits would be strengthened if Kaul's license were revoked.

The goal, purpose and effect of the Defendants' scheme was to maintain and extend monopoly power with respect to the minimally invasive spine surgery market, and to prevent Kaul, his surgical center and those of similarly trained physicians from continuing to provide outpatient minimally invasive spine surgery. This restricted availability and suppressed competition, entirely consequent to their illegal scheme, allowed the Defendants to artificially raise their prices, and reap substantial unlawful monopoly profits.

The goal, purpose and effect of the Defendant's fraudulent scheme was to maintain and extend its monopoly power in minimally invasive spine surgery. The scheme allowed them to continue charging supra-competitive prices for minimally invasive spine surgery, while causing harm to the public by reducing the availability of the service and reaping substantial unlawful monopoly profits.

The Defendants also knowingly and intentionally engaged in sham litigation against Kaul's employees' medical licenses, initiating medical board investigations that were intended to ostracize Kaul from his professional colleagues, the purpose of which was to force Kaul to leave the country, and forego the opportunity to seek legal redress. The Defendants abused governmental processes to extend their monopoly.

As a result of Defendants' illegal conduct, Plaintiff and his physician employees were excluded from the minimally invasive spine surgery market and were compelled to incur substantial legal fees in the defense of the sham board investigations. But for the Defendants' illegal conduct, the competitors would have continued to expand their scope of practice, increase the availability of minimally invasive spine surgery services, reduce the price of the service, and mitigate the severity of the opiate epidemic, as more patients would have had access to non-opiate modalities of spine care. The public was denied the benefits of competition.

The Defendants anticompetitive scheme succeeded in monopolizing the minimally invasive spine surgery market, the consequences of which have been a reduction in the availability of services, an artificial elevation of price, reduced competition and a reduction in the rate of innovation. The last five years have witnessed a decrease in the development of new spinal techniques, with the majority of innovations originating outside the United States. These are the exact problems for which the antitrust laws were designed, and which the Defendants' violations have made evident. The reduced availability of service has contributed to the opiate epidemic.

By engaging in the foregoing conduct, the Defendants have violated the following state antitrust laws:

a. Defendants, because of their immense political influence within the state chapters and national hierarchy of CNS, ASIPP, NASS and AMA, have intentionally and wrongfully maintained monopoly power in the relevant market in violation of Arizona Rev. Stat. §§ 44-1401, et seq., with respect to the availability of minimally invasive spine surgery in Arizona, and in the knowledge that Kaul had plans to expand nationally.

b. Defendants, because of their immense political influence within the state chapters and national hierarchy of CNS, ASIPP, NASS and AMA, have intentionally and wrongfully maintained monopoly power in the relevant market in violation of Cal. Bus. Code §§ 16700, et seq., and Code §§ 17200, et seq., with respect to the availability of minimally invasive spine surgery in California, and in the knowledge that Kaul had plans to expand nationally.

c. Defendants, because of their immense political influence within the state chapters and national hierarchy of CNS, ASIPP, NASS and AMA, have intentionally and wrongfully maintained monopoly power in the relevant market in violation of D.C. Code Ann. §§ 28-45031, et seq., with respect to the availability of minimally invasive spine surgery in the District of Columbia, and in the knowledge that Kaul had plans to expand nationally.

d. Defendants, because of their immense political influence within the state chapters and national hierarchy of CNS, ASIPP, NASS and AMA, have intentionally and wrongfully maintained monopoly power in the relevant market in violation of Fla. Stat. §§ 501. Part II et seq., with respect to the availability of minimally invasive spine surgery in Florida, and in the knowledge that Kaul had plans to expand nationally. This conduct constitutes a predicate act under the Florida Deceptive Practices Act.

e. Defendants, because of their immense political influence within the state chapters and national hierarchy of CNS, ASIPP, NASS and AMA, have intentionally and wrongfully maintained monopoly power in the relevant market in violation of Kan. Stat Ann. §§ 50-101 et seq., with respect to the availability of minimally invasive spine surgery in Kansas, and in the knowledge that Kaul had plans to expand nationally.

f. Defendants, because of their immense political influence within the state chapters and national hierarchy of CNS, ASIPP, NASS and AMA, have intentionally and wrongfully maintained monopoly power in the relevant market in violation of Me. Rev. Stat. Ann. 10, § 1101, et seq., with respect to the availability of minimally invasive spine surgery in Maine, and in the knowledge that Kaul had plans to expand nationally.

g. Defendants, because of their immense political influence within the state chapters and national hierarchy of CNS, ASIPP, NASS and AMA, have intentionally and wrongfully maintained monopoly power in the relevant market in violation of Mich. Comp. Laws Ann. §§ 445.771, et seq., with respect to the availability of minimally invasive spine surgery in Michigan, and in the knowledge that Kaul had plans to expand nationally.

h. Defendants, because of their immense political influence within the state chapters and national hierarchy of CNS, ASIPP, NASS and AMA, have intentionally and wrongfully maintained monopoly power in the relevant market in violation of Minn. Stat. §§ 325D.52, et seq., with respect to the availability of minimally invasive spine surgery in Minnesota, and in the knowledge that Kaul had plans to expand nationally.

i. Defendants, because of their immense political influence within the state chapters and national hierarchy of CNS, ASIPP, NASS and AMA, have intentionally and wrongfully maintained monopoly power in the relevant market in violation of Miss. Code Ann. §§ 59-801, et seq., with respect to the availability of minimally invasive spine surgery in Mississippi, and in the knowledge that Kaul had plans to expand nationally.

j. Defendants, because of their immense political influence within the state chapters and national hierarchy of CNS, ASIPP, NASS and AMA, have intentionally and wrongfully maintained monopoly power in the relevant market in violation of Neb. Code Ann. §§ 598A, et seq., with respect to the availability of minimally invasive spine surgery in Nebraska, and in the knowledge that Kaul had plans to expand nationally.

k. Defendants, because of their immense political influence within the state chapters and national hierarchy of CNS, ASIPP, NASS and AMA, have intentionally and wrongfully maintained monopoly power in the relevant market in violation of Nev. Ret. Stat. Ann. § 598A, et seq., with respect to the availability of minimally invasive spine surgery in Nevada, and in the knowledge that Kaul had plans to expand nationally.

l. Defendants, because of their immense political influence within the state chapters and national hierarchy of CNS, ASIPP, NASS and AMA, have intentionally and wrongfully maintained monopoly power in the relevant market in violation of N.M. Stat. Ann. §§57-1-1, et seq., with respect to the availability of minimally invasive spine surgery in New Mexico, and in the knowledge that Kaul had plans to expand nationally.

m. Defendants, because of their immense political influence within the state chapters and national hierarchy of CNS, ASIPP, NASS and AMA, have intentionally and wrongfully maintained monopoly power in the relevant market in violation of New York General Business Law § 340, et seq., with respect to the availability of minimally invasive spine surgery in New York, and in the knowledge that Kaul had plans to expand nationally.

n. Defendants, because of their immense political influence within the state chapters and national hierarchy of CNS, ASIPP, NASS and AMA, have intentionally and wrongfully maintained monopoly power in the relevant market in violation of N.C. Gen. Stat. §§ 75-1, et seq., with respect to the availability of minimally invasive spine surgery in North Carolina, and in the knowledge that Kaul had plans to expand nationally.

o. Defendants, because of their immense political influence within the state chapters and national hierarchy of CNS, ASIPP, NASS and AMA, have intentionally and wrongfully maintained monopoly power in the relevant market in violation of N.D. Cent.

Code § 51-08.1-01, et seq., with respect to the availability of minimally invasive spine surgery in North Dakota, and in the knowledge that Kaul had plans to expand nationally.

p. Defendants, because of their immense political influence within the state chapters and national hierarchy of CNS, ASIPP, NASS and AMA, have intentionally and wrongfully maintained monopoly power in the relevant market in violation of Or. Rev. Stat. §§ 646.705, et seq., with respect to the availability of minimally invasive spine surgery in Oregon, and in the knowledge that Kaul had plans to expand nationally.

q. Defendants, because of their immense political influence within the state chapters and national hierarchy of CNS, ASIPP, NASS and AMA, have intentionally and wrongfully maintained monopoly power in the relevant market in violation of S.D. Codified Laws Ann. § 37-1, et seq., with respect to the availability of minimally invasive spine surgery in South Dakota, and in the knowledge that Kaul had plans to expand nationally.

r. Defendants, because of their immense political influence within the state chapters and national hierarchy of CNS, ASIPP, NASS and AMA, have intentionally and wrongfully maintained monopoly power in the relevant market in violation of Tenn. Code Ann. §§ 47-25-101, et seq., with respect to the availability of minimally invasive spine surgery in Tennessee, and in the knowledge that Kaul had plans to expand nationally.

s. Defendants, because of their immense political influence within the state chapters and national hierarchy of CNS, ASIPP, NASS and AMA, have intentionally and wrongfully maintained monopoly power in the relevant market in violation of Utah Code Ann. §§ 76-10-911, et seq., with respect to the availability of minimally invasive spine surgery in Utah, and in the knowledge that Kaul had plans to expand nationally.

t. Defendants, because of their immense political influence within the state chapters and national hierarchy of CNS, ASIPP, NASS and AMA, have intentionally and wrongfully maintained monopoly power in the relevant market in violation of Vt. Stat. Ann. 9, § 2453, et seq., with respect to the availability of minimally invasive spine surgery in Vermont, and in the knowledge that Kaul had plans to expand nationally.

u. Defendants, because of their immense political influence within the state chapters and national hierarchy of CNS, ASIPP, NASS and AMA, have intentionally and wrongfully maintained monopoly power in the relevant market in violation of W.Va. Code §§ 47-18-1, et seq., with respect to the availability of minimally invasive spine surgery in West Virginia, and in the knowledge that Kaul had plans to expand nationally.

v. Defendants, because of their immense political influence within the state chapters and national hierarchy of CNS, ASIPP, NASS and AMA, have intentionally and wrongfully maintained monopoly power in the relevant market in violation of Wis Stat. § 133.01, et seq., with respect to the availability of minimally invasive spine surgery in Wisconsin, and in the knowledge that Kaul had plans to expand nationally.

Plaintiff has been injured in his business and property by reason of Defendants' antitrust violations alleged in this Claim. The injuries consist of: **(1)** the revocation of Kaul's New Jersey medical license and the loss to his patients of their ability to receive minimally invasive spine care and, **(2)** exclusion of Kaul from the minimally invasive spine surgery market which has permitted the Defendants to raise their prices, and **(3)** the loss into bankruptcy of Kaul's healthcare corporations, to which were attached $45 million in accounts receivable, a surgical center license, real estate, and **(4)** loss of Kaul's professional reputation developed over thirty years. These injuries are of the type the antitrust laws of the above States and the District of Columbia were designed to prevent, and flow from that which makes Defendants' conduct unlawful.

Plaintiff seeks damages and treble damages as permitted by law for their injuries by Defendants' violation of the aforementioned statutes.

## COUNT NINE
### For Conspiracy and Combination in Restraint of Trade Under State Law (By Plaintiff Against Defendants Przybylski + Kaufman + Solomon (in his official + personal capacity) + Staats + Cohen + Heary + HUMC + AHS + Allstate + Geico).

Plaintiff incorporates by reference the preceding allegations.

Defendants willfully and unlawfully engaged in a continuing illegal contract, combination, and conspiracy to restrain trade in the minimally invasive spine surgery market, by engaging in an anticompetitive scheme to exclude Kaul and similarly trained physicians from the market, and to allocate the market between horizontal competitors.

Defendants Przybylski, Kaufman and Solomon committed and conspired to commit two hundred and seventy-eight (278) separate instances of perjury, misrepresentation, evidential omission and gross mischaracterization IN THE MATTER OF THE SUSPENSION OR REVOCATION THE LICENSE OF RICHARD A. KAUL TO PRACTICE MEDICINE AND SURGERY IN NEW JERSEY (April 9, 2013 to June 28, 2013), in the knowledge that Defendant Solomon's fraudulent Final Opinion (issued December 13, 2013) would cause the revocation of Kaul's license, and eliminate him from the practice of medicine. The Defendants knew this would cause an increase in their business.

The agreements between the Defendants are horizontal market allocation and price fixing agreements between actual or potential competitors and are illegal per se under state antitrust laws. The Defendant Neurosurgeons and Interventional Pain Physicians agreed that the latter would limit their practice to minimally invasive

endoscopic discectomies. The Defendant Insurance Carriers conspired with Defendants Przybylski, Staats, and Kaufman, in their capacities as presidents and senior members of CNS, NASS and ASIPP, to limit payment for minimally invasive spine surgery to hospitals, or to surgical centers owned by hospitals. The aforementioned Defendants engage in healthcare business with hospitals, and through their controlling positions on the credentialing committees, were able to effectuate the illegal horizontal market allocation agreement.

**From paragraph 734 to 777 Kaul has pled with particularity, fact specific to each element, of each claim, against each defendant, in a separate and distinct manner:**

<u>Defendant Przybylski + Defendant Kaufman</u>:
<u>Date range</u>: 2006 to 2019.
<u>Mode of communication</u>: E-mail + Voice message + SMS (text) + Face to face.
<u>Substance of communications</u>: Scheme to downgrade the relative value unit associated with outpatient endoscopic discectomy + Scheme to bribe Defendant Christie to veto a bill in 2009 that would have permitted one operating room surgical centers to become licensed, the licensing of which would have removed the principal reason employed by Defendants Allstate and GEICO to deny payment to outpatient facilities and physicians + Scheme to bribe Defendant Christie in order to sign into law in 2011 a fee schedule that denied or reduced payment for the performance of outpatient minimally invasive spine surgery in free standing surgical centers + Scheme to encourage patients to initiate civil litigation and medical board complaints against Kaul and similarly trained physicians + Scheme to obtain through bribing Defendant Christie a moratorium in 2009 that prevented the issuance of licenses for one-room outpatient surgical centers, unless they were commercially partnered with a hospital + Scheme to engage in knowingly unlawful agreements to divide the minimally invasive spine surgery market in such a way, that physicians with similar training as Kaul, would be limited to performing only discectomies, and not fusions + Scheme to engage in an overarching conspiracy to unlawfully monopolize, conspire to monopolize, and/or, artificially allocate the market for minimally invasive spine surgery + Scheme to unlawfully conspire and combine to intentionally and arbitrarily restrict, restrain and or prohibit Kaul's ability to trade in the American minimally invasive spine surgery market + Scheme to restrict, restrain and or exclude Kaul from participating in the American minimally invasive spine surgery market + Scheme to bribe Defendant Christie to have Defendant NJBME revoke Kaul's license + Scheme to file complaints against Kaul with state and federal regulatory authorities + Scheme to participate in sham litigation against Kaul, and provide knowingly fraudulent 'expert' testimony that he was not qualified to perform minimally invasive spine surgery, the purpose of which was to have Kaul's license revoked + Scheme to participate in

sham litigation against Kaul's physician employees + Scheme to revoke Kaul's license + Scheme to destroy Kaul's reputation + Scheme to destroy Kaul's economic standing + Scheme to have Kaul ostracized + Scheme to have Kaul leave the United States + Scheme to enact Illegal per se agreements to restrict reimbursement for minimally invasive spine surgery to hospitals and or surgical centers owned by hospitals + Scheme to enact Illegal per se agreements between neurosurgeons, orthopedic surgeons and hospitals to deny privileges for minimally invasive spine surgery to Kaul and similarly trained physicians.

Tactics employed: Illegal per se agreements to restrict reimbursement for minimally invasive spine surgery to hospitals and or surgical centers owned by hospitals + Illegal per se agreements between neurosurgeons, orthopedic surgeons and hospitals to deny privileges for minimally invasive spine surgery to physicians similarly trained as Kaul + Conspired to and did commit Perjury, Evidential Falsification, Evidential Fabrication, Evidential Omission during the administrative board proceedings (April 9, 2013 to December 13, 2013) that resulted in the revocation of Kaul's license + Conspired to did commit subornation of perjury in administrative board proceedings (April 9, 2013 to December 13, 2013) that resulted in the revocation of Kaul's license + Conspired to and did obstruct justice by encouraging Kaul's patients to commit perjury, with the promise that the revocation of his license would permit them to file malpractice claims, and that the revocation would increase the monies they received from Kaul's insurance carrier + Knowingly and willfully engaged in unlawful agreements to divide the minimally invasive spine surgery market in such a way, that physicians with similar training as Kaul, would be limited to performing only discectomies, and not fusions + Knowingly and willfully engaged in an illegal overarching conspiracy to unlawfully monopolize, conspire to monopolize, and/or, artificially allocate the market for minimally invasive spine surgery + Knowingly and willfully engaged to unlawfully conspire and combine to intentionally and arbitrarily restrict, restrain and or prohibit Kaul's ability to trade in the American minimally invasive spine surgery market + Knowingly and willfully engaged to unlawfully restrict, restrain and or exclude Kaul from participating in the American minimally invasive spine surgery market.

Location: Morristown Memorial Hospital + Surgicare Associates Surgical Center + Christie/Republican political fundraisers + Office of the New Jersey Attorney General + Meetings/Conferences organized by the New Jersey Spine Society + Meetings/Conferences organized by Defendant ASIPP + Meetings/Conferences organized by Defendant CNS + NASS headquarters in Chicago + NASS national meetings + CNS headquarters in Chicago.

**Defendant Przybylski + Defendant Solomon**:
Date range: 2011 to 2019.

<u>Mode of communication</u>: E-mail + Voice message + SMS (text) + Face to face.

<u>Substance of communication</u>: Scheme to testify that every aspect of the care Kaul delivered to his patients "grossly deviated" from the standard of care + Scheme to have Defendant Solomon buttress Defendant Przybylski's knowingly false testimony that every aspect of the care Kaul delivered to his patients "grossly deviated" from the standard of care + Scheme to bribe Defendant Christie to have Defendant NJBME revoke Kaul's license + Scheme to file complaints against Kaul with state and federal regulatory authorities + Scheme to participate in sham litigation against Kaul, and provide knowingly fraudulent 'expert' testimony that he was not qualified to perform minimally invasive spine surgery, the purpose of which was to have Kaul's license revoked + Scheme to participate in sham litigation against Kaul's physician employees + Scheme to revoke Kaul's license + Scheme to destroy Kaul's reputation + Scheme to destroy Kaul's economic standing + Scheme to have Kaul ostracized + Scheme to have Kaul leave the United States.

<u>Tactics employed</u>: Conspired to and did provide false knowingly that every aspect of the care Kaul delivered to his patients "grossly deviated" from the standard of care + Conspired to and did have Defendant Solomon buttress Defendant Przybylski's knowingly false testimony that every aspect of the care Kaul delivered to his patients "grossly deviated" from the standard of care + Conspired to, and did provide knowingly fraudulent testimony under oath that the care Kaul delivered to his patients "grossly deviated" from the standard of care, because Kaul did not possess alternative privileges or hospital privileges + Conspired to, and did provide knowingly fraudulent testimony under oath that the care Kaul delivered to his patients "grossly deviated" from the standard of care, because Kaul's training did not involve a neurosurgical residency + Use of the US mail and wires to organize and further schemes to bribe Defendant Christie, in order to have him order Defendant NJBME to revoke Kaul's license + Use of the US mail and wires to further scheme to have Kaul's license revoked by having Defendant Lomazow use his authority on Defendant NJBME to initiate an investigation against Kaul, in order to have his license revoked.

<u>Location</u>: Office of the New Jersey Attorney General + New Jersey Office of Administrative Law.

**<u>Defendant Przybylski + Defendant Staats</u>**:
See above. As with Defendant Przybylski + Kaufman.
<u>Location</u>: Christie/Republican political fundraisers +  Meetings/Conferences organized by Defendant ASIPP + Meetings/Conferences organized by Defendant CNS.

**<u>Defendant Przybylski + Defendant Cohen</u>**:
See above. As with Defendant Przybylski + Kaufman.
<u>Location</u>: Christie/Republican political fundraisers + NASS national meetings.

**Defendant Przybylski + Defendant Heary**:
See above. As with Defendant Przybylski + Kaufman.
Location: Morristown Memorial Hospital + Christie/Republican political fundraisers +
Meetings/Conferences organized by Defendant CNS.

**Defendant Przybylski + Defendant HUMC**:
See above. As with Defendant Przybylski + Kaufman.
Location: Christie/Republican political fundraisers + Office of the New Jersey Attorney
General.

**Defendant Przybylski + Defendant AHS**:
See above. As with Defendant Przybylski + Kaufman.
Location: Morristown Memorial Hospital + Christie/Republican political fundraisers +
Office of the New Jersey Attorney General.

**Defendant Przybylski + Defendant Allstate**:
Date range: 2010 to 2019.
Mode of communication: Email + Voice message + SMS (text) + Face to face.
Substance of communications: Scheme to downgrade the relative value unit associated
with outpatient endoscopic discectomy + Scheme to bribe Defendant Christie to veto a
bill in 2009 that would have permitted one operating room surgical centers to become
licensed, the licensing of which would have removed the principal reason employed by
Defendants Allstate and GEICO to deny payment to outpatient facilities and physicians
+ Scheme to bribe Defendant Christie in order to sign into law in 2011 a fee schedule
that denied or reduced payment for the performance of outpatient minimally invasive
spine surgery in free standing surgical centers + Scheme to encourage patients to
initiate civil litigation and medical board complaints against Kaul and similarly trained
physicians + Scheme to obtain through bribing Defendant Christie a moratorium in 2009
that prevented the issuance of licenses for one-room outpatient surgical centers, unless
they were commercially partnered with a hospital + Scheme to engage in knowingly
unlawful agreements to divide the minimally invasive spine surgery market in such a
way, that physicians with similar training as Kaul, would be limited to performing only
discectomies, and not fusions + Scheme to unlawfully conspire and combine to
intentionally and arbitrarily restrict, restrain and or prohibit Kaul's ability to trade in the
American minimally invasive spine surgery market + Scheme to bribe Defendant
Christie to have Defendant NJBME revoke Kaul's license + Scheme to file complaints
against Kaul with state and federal regulatory authorities + Scheme to participate in
sham litigation against Kaul's physician employees + Scheme to revoke Kaul's license +
Scheme to destroy Kaul's reputation + Scheme to destroy Kaul's economic standing +

Scheme to have Kaul ostracized + Scheme to have Kaul leave the United States + Scheme to enact Illegal per se agreements to restrict reimbursement for minimally invasive spine surgery to hospitals and or surgical centers owned by hospitals + Scheme to enact Illegal per se agreements between neurosurgeons, orthopedic surgeons and hospitals to deny privileges for minimally invasive spine surgery to Kaul and similarly trained physicians + Scheme to testify that every aspect of the care Kaul delivered to his patients "grossly deviated" from the standard of care + Scheme to have Defendant Solomon buttress Defendant Przybylski's knowingly false testimony that every aspect of the care Kaul delivered to his patients "grossly deviated" from the standard of care + Scheme to have Defendant Hafner pervert the course of justice by buttressing Defendant Przybylski's knowingly false testimony that every aspect of the care Kaul delivered to his patients "grossly deviated" from the standard of care.

Tactics employed: Conspired to and did bribe Defendant Przybylski as part of a quid pro quo scheme that involved funneling money through Defendant NJBME and the New Jersey Office of the Attorney General disguised as 'professional fees' + Conspired to, and did encourage patients to file lawsuits and complaints with Defendant NJBME against Kaul + Conspired to, and did encourage patients to file complaints with state and federal regulatory authorities + Conspired to, and did participate in sham litigation and provided knowingly false testimony that caused the revocation of Kaul's license + Conspired to, and did provide knowingly fraudulent testimony under oath that the care Kaul delivered to his patients "grossly deviated" from the standard of care, because Kaul did not possess alternative privileges or hospital privileges + Conspired to, and did provide knowingly fraudulent testimony under oath that the care Kaul delivered to his patients "grossly deviated" from the standard of care, because Kaul's training did not involve a neurosurgical residency + Use of the US mail and wires to send false information to personal injury lawyers that Kaul was not qualified to perform minimally invasive spine surgery and had committed insurance fraud.

Location: New Jersey Office of Administrative Law + Office of the New Jersey Attorney General + Allstate corporate offices in Northbrook, Illinois.


**Defendant Przybylski + Defendant Geico**:
See above. As with Defendant Przybylski + Defendant Allstate.
Location: New Jersey Office of Administrative Law + Office of the New Jersey Attorney General + Geico corporate offices in Chevy Chase, Maryland.


**Defendant Kaufman + Defendant Solomon**:
See above. As with Defendant Przybylski + Defendant Solomon.
Location: Office of the New Jersey Attorney General + New Jersey Office of Administrative Law

**Defendant Kaufman + Defendant Staats**:
See above. As with Defendant Przybylski + Kaufman.
Location: Morristown Memorial Hospital +  Office of the New Jersey Attorney General +
Christie/Republican political fundraisers + Meetings/Conferences organized by
Defendant ASIPP

**Defendant Kaufman + Defendant Cohen**:
See above. As with Defendant Przybylski + Kaufman.
Location: Morristown Memorial Hospital + St. Clare's Hospital, Denville +
Christie/Republican political fundraisers + Office of the New Jersey Attorney General +
Meetings/Conferences organized by the New Jersey Spine Society +
Meetings/Conferences organized by Defendant ASIPP.


**Defendant Kaufman + Defendant Heary**:
See above. As with Defendant Przybylski + Kaufman.
Location: Morristown Memorial Hospital + Christie/Republican political fundraisers +
Meetings/Conferences organized by the New Jersey Spine Society + NASS
headquarters in Chicago + NASS national meetings + Meetings/Conferences organized
by Defendant ASIPP  + Meetings/Conferences organized by Defendant CNS.

**Defendant Kaufman + Defendant HUMC**:
See above. As with Defendant Przybylski + Defendant HUMC.
Location: Morristown Memorial Hospital + Hackensack Medical Center +
Christie/Republican political fundraisers + Office of the New Jersey Attorney General +
Meetings/Conferences organized by Defendant ASIPP.

**Defendant Kaufman + Defendant AHS**:
See above. As with Defendant Przybylski + Defendant HUMC.
Location: Morristown Memorial Hospital + Christie/Republican political fundraisers +
Office of the New Jersey Attorney General.

**Defendant Kaufman + Defendant Allstate**:
See above. As with Defendant Przybylski + Defendant Allstate.
Location: New Jersey Office of Administrative Law + Office of the New Jersey Attorney
General + Allstate corporate offices in Northbrook, Illinois + Morristown Memorial
Hospital.

**Defendant Kaufman + Defendant Geico**:

See above. As with Defendant Przybylski + Defendant Allstate.
Location: New Jersey Office of Administrative Law + Office of the New Jersey Attorney General + Geico corporate offices in Chevy Chase, Maryland + Morristown Memorial Hospital + Christie/Republican political fundraisers.

**Defendant Solomon + Defendant Staats**:
See above. As with Defendant Przybylski + Defendant Solomon.
Location: Office of the New Jersey Attorney General + New Jersey Office of Administrative Law.

**Defendant Solomon + Defendant Cohen**:
See above. As with Defendant Przybylski + Defendant Solomon.
Location: Office of the New Jersey Attorney General + New Jersey Office of Administrative Law.


**Defendant Solomon + Defendant Heary**:
See above. As with Defendant Przybylski + Defendant Solomon.
Location: Office of the New Jersey Attorney General + New Jersey Office of Administrative Law.

**Defendant Solomon + Defendant HUMC**:
See above. As with Defendant Przybylski + Defendant Solomon.
Location: Hackensack Medical Center + Christie/Republican political fundraisers + New Jersey Office of Administrative Law +Office of the New Jersey Attorney General.

**Defendant Solomon + Defendant AHS**:
See above. As with Defendant Przybylski + Defendant Solomon.
Location: Morristown Memorial Hospital + Christie/Republican political fundraisers New Jersey Office of Administrative Law + Office of the New Jersey Attorney General.

**Defendant Solomon + Defendant Allstate**:
See above. As with Defendant Przybylski + Defendant Solomon.
Location: Morristown Memorial Hospital + Christie/Republican political fundraisers + New Jersey Office of Administrative Law + Office of the New Jersey Attorney General.

**Defendant Solomon + Defendant Geico**:
See above. As with Defendant Przybylski + Defendant Geico.

<u>Location</u>: New Jersey Office of Administrative Law + Office of the New Jersey Attorney General + Geico corporate offices in Chevy Chase, Maryland + Christie/Republican political fundraisers.

**Defendant Staats + Defendant Cohen**:
See above. As with Defendant Przybylski + Kaufman.
<u>Location</u>: Morristown Memorial Hospital + Christie/Republican political fundraisers + Meetings/Conferences organized by Defendant ASIPP + Meetings/Conferences organized by the New Jersey Spine Society + NASS national meetings.

**Defendant Staats + Defendant Heary**:
See above. As with Defendant Przybylski + Defendant Staats.
<u>Location</u>: Christie/Republican political fundraisers +  Meetings/Conferences organized by Defendant ASIPP + Meetings/Conferences organized by Defendant CNS + NASS national meetings.

**Defendant Staats + Defendant HUMC**:
See above. As with Defendant Przybylski + Defendant HUMC.
<u>Location</u>: Christie/Republican political fundraisers + Office of the New Jersey Attorney General + Meetings/Conferences organized by Defendant ASIPP + Meetings/Conferences organized by Defendant CNS + Meetings/Conferences organized by the New Jersey Spine Society + Meetings/Conferences organized by the New Jersey Spine Society.

**Defendant Staats + Defendant AHS**:
See above. As with Defendant Przybylski + Defendant AHS.
<u>Location</u>: Morristown Memorial Hospital + Christie/Republican political fundraisers + Office of the New Jersey Attorney General.

**Defendant Staats + Defendant Allstate**:
See above. As with Defendant Przybylski + Defendant Allstate.
<u>Location</u>: New Jersey Office of Administrative Law + Office of the New Jersey Attorney General + Allstate corporate offices in Northbrook, Illinois.

**Defendant Staats + Defendant Geico**:
See above. As with Defendant Przybylski + Defendant Geico.
<u>Location</u>: New Jersey Office of Administrative Law + Office of the New Jersey Attorney General + Geico corporate offices in Chevy Chase, Maryland.

**Defendant Cohen + Defendant Heary**:

See above. As with Defendant Przybylski + Defendant Cohen.
Location: Christie/Republican political fundraisers + NASS national meetings +
Meetings/Conferences organized by the New Jersey Spine Society.

**Defendant Cohen + Defendant HUMC**:
See above. As with Defendant Przybylski + Defendant HUMC.
Location: Morristown Memorial Hospital + Hackensack Medical Center +
Christie/Republican political fundraisers.

**Defendant Cohen + Defendant AHS**:
See above. As with Defendant Przybylski + Defendant AHS.
Location: Morristown Memorial Hospital + Christie/Republican political fundraisers +
Office of the New Jersey Attorney General.

**Defendant Cohen + Defendant Allstate**:
See above. As with Defendant Przybylski + Defendant Allstate.
Location: Morristown Memorial Hospital + Christie/Republican political fundraisers.

**Defendant Cohen + Defendant Geico**:
See above. As with Defendant Przybylski + Defendant Geico.
Location: Morristown Memorial Hospital + Christie/Republican political fundraisers +
Office of the New Jersey Attorney General + Geico corporate offices in Chevy Chase,
Maryland.

**Defendant Heary + Defendant HUMC**:
See above. As with Defendant Przybylski + Defendant HUMC.
Location: Morristown Memorial Hospital + Hackensack Medical Center +
Christie/Republican political fundraisers + Office of the New Jersey Attorney General.

**Defendant Heary + Defendant AHS**:
See above. As with Defendant Przybylski + Defendant AHS.
Location: Morristown Memorial Hospital +  Christie/Republican political fundraisers +
Office of the New Jersey Attorney General.

**Defendant Heary + Defendant Allstate**:
See above. As with Defendant Przybylski + Defendant Allstate.
Location: Morristown Memorial Hospital + Christie/Republican political fundraisers +
New Jersey Office of Administrative Law + Allstate corporate offices in Northbrook,
Illinois.

**Defendant Heary + Defendant Geico**:
See above. As with Defendant Przybylski + Defendant Geico.
Location: Morristown Memorial Hospital + Christie/Republican political fundraisers +
Office of the New Jersey Attorney General + Geico corporate offices in Chevy Chase,
Maryland.

**Defendant HUMC + Defendant AHS**:
See above. As with Defendant Przybylski + Defendant AHS
Location: Morristown Memorial Hospital + Hackensack Medical Center + Governor's
office in Trenton + Christie/Republican political fundraisers.

**Defendant HUMC + Defendant Allstate**:
See above. As with Defendant Przybylski + Defendant Allstate.
Location: Governor's office in Trenton + Christie/Republican political fundraisers +
Office of the New Jersey Attorney General + Allstate corporate offices in Northbrook,
Illinois

**Defendant HUMC + Defendant Geico**:
See above. As with Defendant Przybylski + Defendant Geico.
Location: Hackensack Medical Center + Office of the New Jersey Attorney General +
Geico corporate offices in Chevy Chase, Maryland + Governor's office in Trenton +
Christie/Republican political fundraisers.

**Defendant AHS + Defendant Allstate**:
See above. As with Defendant Przybylski + Defendant Allstate.
Location: Morristown Memorial Hospital +  Governor's office in Trenton +
Christie/Republican political fundraisers + New Jersey Office of Administrative Law +
Allstate corporate offices in Northbrook, Illinois.

**Defendant AHS + Defendant Geico**:
See above. As with Defendant Przybylski + Defendant Geico.
Location: Morristown Memorial Hospital + Governor's office in Trenton +
Christie/Republican political fundraisers + Office of the New Jersey Attorney General +
Geico corporate offices in Chevy Chase, Maryland.

**Defendant Allstate + Defendant Geico**:
See above. As with Defendant Przybylski + Defendant Geico.
Location: Governor's office in Trenton + Christie/Republican political fundraisers + New
Jersey Office of Administrative Law + Office of the New Jersey Attorney General +

Allstate corporate offices in Northbrook, Illinois + Geico corporate offices in Chevy Chase, Maryland.

Alternatively, this Complaint alleges that these agreements are an unreasonable restraint of trade, in violation of state antitrust law, under a **"quick look"** or **"rule of reason"** analysis. The consequence of these improper agreements was the exclusion from the minimally invasive spine fusion market of Kaul and his surgical center, with regards to treating patients who possessed insurance issued by the Defendant Insurance Carriers.

The Neurosurgical Defendants knowingly and intentionally participated in sham litigation against Kaul that included encouraging patients to file lawsuits and complaints with Defendant NJBME, and then providing fraudulent 'expert' testimony for the patients and Defendant NJBME. The Defendants repeatedly and fraudulently asserted that Kaul was not qualified to perform minimally invasive spine surgery. The Defendants repeatedly and fraudulently asserted that Kaul had deviated from the standard of care because he did not possess hospital or alternative privileges. The Defendants repeatedly and fraudulently asserted that Kaul had deviated from the standard of care because his training did not involve a neurosurgical residency. These claims were false and designed to protect and further the monopoly held by the neurosurgeons and hospitals on minimally invasive spine surgery. The Defendants participated in these sham lawsuits for the purposes of using a governmental process as an anticompetitive weapon, to keep Kaul and similarly trained physicians out of the minimally invasive spine surgery market.

Defendant Solomon played a pivotal role in the perpetration of the Defendants' illegal schemes to have Kaul's license revoked. Defendant Solomon committed and conspired to commit Obstruction of Justice and Evidence Tampering. Defendant Solomon aided and abetted Perjury and other acts of Official Malfeasance. Defendant Solomon turned his bench, and the New Jersey Office of Administrative Law, into racketeering enterprises that restricted Kaul's trade and has illegally deprived him of his livelihood.

The goal, purpose and effect of the Defendant's scheme was to prevent Kaul, his surgical center and those of similarly trained physicians from continuing to provide outpatient minimally invasive spine surgery, and thus restrict the availability of the service to the Defendant Hospitals and Neurosurgeons. This permitted the Defendants to artificially raise their prices, in the absence of competition.

The goal, purpose and effect of the Defendant's fraudulent scheme was to maintain and extend its monopoly power in minimally invasive spine surgery. The Defendants'

scheme allowed them to continue charging supra-competitive prices for minimally invasive spine surgery, while causing harm to the public by reducing the availability of the service and reaping substantial unlawful monopoly profits.

The Defendants knowingly and intentionally engaged in sham litigation against Kaul's physician employees, and repeatedly and fraudulently asserted that Kaul's employees were not qualified to assist Kaul perform minimally invasive spine surgery, and that Kaul had engaged in insurance fraud.

The Defendants also knowingly and intentionally engaged in sham litigation against Kaul's physician employees, initiating medical board investigations that sought to ostracize Kaul from his professional colleagues, and to force Kaul to leave the country and relinquish the opportunity to seek legal redress. The Defendants abused governmental processes to extend their monopoly.

As a result of Defendants' illegal conduct, Plaintiff and his physician employees were excluded from the minimally invasive spine surgery market and were compelled to incur substantial legal fees in the defense of the sham board investigations. Had it not been for the Defendants' illegal conduct, Kaul and his employees would have continued to expand their scope of practice, increase the availability of minimally invasive spine surgery services, reduce the price of the service, and mitigate the severity of the opiate epidemic, as more patients would have had access to non-opiate modalities of spine care. The Defendants' nine-year campaign of greed motivated misconduct has contributed to the opiate epidemic in New Jersey.

Had Kaul and similarly trained physicians been allowed to continue expanding their scope of practice in minimally invasive spine surgery, and lawfully compete with the Defendants, then the public would not have been denied the benefits of competition.

By engaging in the foregoing conduct, the Defendants have violated the following state antitrust laws:
(a) Defendants, because of their immense political influence within the state chapters and national hierarchy of CNS, ASIPP, NASS and AMA, have intentionally and wrongfully maintained monopoly power in the relevant market in violation of Arizona Rev. Stat. §§ 44-1401, et seq., with respect to the availability of minimally invasive spine surgery in Arizona, and in the knowledge that Kaul had plans to expand nationally.
(b) Defendants, because of their immense political influence within the state chapters and national hierarchy of CNS, ASIPP, NASS and AMA, have intentionally and wrongfully maintained monopoly power in the relevant market in violation of N.J. Stat. §

56:9-10, et seq., with respect to the availability of minimally invasive spine surgery in New Jersey.

(c) Defendants, because of their immense political influence within the state chapters and national hierarchy of CNS, ASIPP, NASS and AMA, have intentionally and wrongfully maintained monopoly power in the relevant market in violation of Cal. Bus. Code §§ 16700, et seq., and Code §§ 17200, et seq., with respect to the availability of minimally invasive spine surgery in California, and in the knowledge that Kaul had plans to expand nationally.

(d) Defendants, because of their immense political influence within the state chapters and national hierarchy of CNS, ASIPP, NASS and AMA, have intentionally and wrongfully maintained monopoly power in the relevant market in violation of D.C. Code Ann. §§ 28-45031, et seq., with respect to the availability of minimally invasive spine surgery in the District of Columbia, and in the knowledge that Kaul had plans to expand nationally.

(e) Defendants, because of their immense political influence within the state chapters and national hierarchy of CNS, ASIPP, NASS and AMA, have intentionally and wrongfully maintained monopoly power in the relevant market in violation of Fla. Stat. §§ 501. Part II et seq., with respect to the availability of minimally invasive spine surgery in Florida, and in the knowledge that Kaul had plans to expand nationally. This conduct constitutes a predicate act under the Florida Deceptive Practices Act.

(f) Defendants, because of their immense political influence within the state chapters and national hierarchy of CNS, ASIPP, NASS and AMA, have intentionally and wrongfully maintained monopoly power in the relevant market in violation of Kan. Stat Ann. §§ 50-101 et seq., with respect to the availability of minimally invasive spine surgery in Kansas, and in the knowledge that Kaul had plans to expand nationally.

(g) Defendants, because of their immense political influence within the state chapters and national hierarchy of CNS, ASIPP, NASS and AMA, have intentionally and wrongfully maintained monopoly power in the relevant market in violation of Me. Rev. Stat. Ann. 10, § 1101, et seq., with respect to the availability of minimally invasive spine surgery in Maine, and in the knowledge that Kaul had plans to expand nationally.

(h) Defendants, because of their immense political influence within the state chapters and national hierarchy of CNS, ASIPP, NASS and AMA, have intentionally and wrongfully maintained monopoly power in the relevant market in violation of Mich. Comp. Laws Ann. §§ 445.771, et seq., with respect to the availability of minimally invasive spine surgery in Michigan, and in the knowledge that Kaul had plans to expand nationally.

(i) Defendants, because of their immense political influence within the state chapters and national hierarchy of CNS, ASIPP, NASS and AMA, have intentionally and wrongfully maintained monopoly power in the relevant market in violation of Minn. Stat.

§§ 325D.52, et seq., with respect to the availability of minimally invasive spine surgery in Minnesota, and in the knowledge that Kaul plans to expand nationally.

(j) Defendants, because of their immense political influence within the state chapters and national hierarchy of CNS, ASIPP, NASS and AMA, have intentionally and wrongfully maintained monopoly power in the relevant market in violation of Miss. Code Ann. §§ 59-801, et seq., with respect to the availability of minimally invasive spine surgery in Mississippi, and in the knowledge that Kaul had plans to expand nationally.

(k) Defendants, because of their immense political influence within the state chapters and national hierarchy of CNS, ASIPP, NASS and AMA, have intentionally and wrongfully maintained monopoly power in the relevant market in violation of Neb. Code Ann. §§ 598A, et seq., with respect to the availability of minimally invasive spine surgery in Nebraska, and in the knowledge that Kaul had plans to expand nationally.

(l) Defendants, because of their immense political influence within the state chapters and national hierarchy of CNS, ASIPP, NASS and AMA, have intentionally and wrongfully maintained monopoly power in the relevant market in violation of Nev. Ret. Stat. Ann. § 598A, et seq., with respect to the availability of minimally invasive spine surgery in Nevada, and in the knowledge that Kaul had plans to expand nationally.

(m) Defendants, because of their immense political influence within the state chapters and national hierarchy of CNS, ASIPP, NASS and AMA, have intentionally and wrongfully maintained monopoly power in the relevant market in violation of N.M. Stat. Ann. §§57-1-1, et seq., with respect to the availability of minimally invasive spine surgery in New Mexico, and in the knowledge that Kaul had plans to expand nationally.

(n) Defendants, because of their immense political influence within the state chapters and national hierarchy of CNS, ASIPP, NASS and AMA, have intentionally and wrongfully maintained monopoly power in the relevant market in violation of New York General Business Law § 340, et seq., with respect to the availability of minimally invasive spine surgery in New York, and in the knowledge that Kaul had plans to expand nationally.

(o) Defendants, because of their immense political influence within the state chapters and national hierarchy of CNS, ASIPP, NASS and AMA, have intentionally and wrongfully maintained monopoly power in the relevant market in violation of N.C. Gen. Stat. §§ 75-1, et seq., with respect to the availability of minimally invasive spine surgery in North Carolina, and in the knowledge that Kaul had plans to expand nationally.

(p) Defendants, because of their immense political influence within the state chapters and national hierarchy of CNS, ASIPP, NASS and AMA, have intentionally and wrongfully maintained monopoly power in the relevant market in violation of N.D. Cent. Code § 51-08.1-01, et seq., with respect to the availability of minimally invasive spine surgery in North Dakota, and in the knowledge that Kaul had plans to expand nationally.

(q) Defendants, because of their immense political influence within the state chapters and national hierarchy of CNS, ASIPP, NASS and AMA, have intentionally and

wrongfully maintained monopoly power in the relevant market in violation of Or. Rev. Stat. §§ 646.705, et seq., with respect to the availability of minimally invasive spine surgery in Oregon, and in the knowledge that Kaul had plans to expand nationally.

(r) Defendants, because of their immense political influence within the state chapters and national hierarchy of CNS, ASIPP, NASS and AMA, have intentionally and wrongfully maintained monopoly power in the relevant market in violation of S.D. Codified Laws Ann. § 37-1, et seq., with respect to the availability of minimally invasive spine surgery in South Dakota, and in the knowledge that Kaul had plans to expand nationally.

(s) Defendants, because of their immense political influence within the state chapters and national hierarchy of CNS, ASIPP, NASS and AMA, have intentionally and wrongfully maintained monopoly power in the relevant market in violation of Tenn. Code Ann. §§ 47-25-101, et seq., with respect to the availability of minimally invasive spine surgery in Tennessee, and in the knowledge that Kaul had plans to expand nationally.

(t) Defendants, because of their immense political influence within the state chapters and national hierarchy of CNS, ASIPP, NASS and AMA, have intentionally and wrongfully maintained monopoly power in the relevant market in violation of Utah Code Ann. §§ 76-10-911, et seq., with respect to the availability of minimally invasive spine surgery in Utah, and in the knowledge that Kaul had plans to expand nationally.

(u) Defendants, because of their immense political influence within the state chapters and national hierarchy of CNS, ASIPP, NASS and AMA, have intentionally and wrongfully maintained monopoly power in the relevant market in violation of Vt. Stat. Ann. 9, § 2453, et seq., with respect to the availability of minimally invasive spine surgery in Vermont, and in the knowledge that Kaul had plans to expand nationally.

(v) Defendants, because of their immense political influence within the state chapters and national hierarchy of CNS, ASIPP, NASS and AMA, have intentionally and wrongfully maintained monopoly power in the relevant market in violation of W.Va. Code §§ 47-18-1, et seq., with respect to the availability of minimally invasive spine surgery in West Virginia, and in the knowledge that Kaul had plans to expand nationally.

(w) Defendants, because of their immense political influence within the state chapters and national hierarchy of CNS, ASIPP, NASS and AMA, have intentionally and wrongfully maintained monopoly power in the relevant market in violation of Wis Stat. § 133.01, et seq., with respect to the availability of minimally invasive spine surgery in Wisconsin, and in the knowledge that Kaul had plans to expand nationally.

Plaintiff has been injured in his business and property by reason of Defendants' antitrust violations alleged in this Claim. The injuries consist of: **(1)** the revocation of Kaul's New Jersey medical license and the loss to his patients of their ability to receive minimally invasive spine care and, **(2)** exclusion of Kaul from the minimally invasive spine surgery market which has permitted the Defendants to raise their prices, and **(3)** the loss into

bankruptcy of Kaul's healthcare corporations, to which were attached $45 million in accounts receivable, a surgical center license, real estate, and **(4)** the loss of Kaul's professional reputation developed over thirty years. These injuries are of the type the antitrust laws of the above States and the District of Columbia were designed to prevent, and flow from that which makes Defendants' conduct unlawful.

Plaintiff seeks damages and treble damages as permitted by law for their injuries by Defendants' violation of the aforementioned statutes.

## COUNT TEN
**For Unfair and Deceptive Trade Practices Under State Law (By Plaintiff Against Defendants ASIPP + Kaufman + Staats + Przybylski + CNS + Heary + Cohen + HUMC + AHS**

Plaintiff incorporates by reference the preceding allegations.

Defendants engaged in unfair competition or unfair, unconscionable, deceptive or fraudulent acts or practices in violation of the state consumer protection statutes listed below.

As a direct and proximate result of the Defendants' anticompetitive, deceptive, unfair, unconscionable and fraudulent conduct, Kaul was prevented from nationally developing his outpatient minimally invasive spine surgery business because the market has been monopolized by neurosurgeons and hospitals. Kaul, a recognized innovator in the field, commenced training other minimally invasive spine surgeons in approximately 2007, and had plans to develop a fellowship and standards that would have increased the number of minimally invasive surgeons in the national market. The Defendants' racketeering and illegal anticompetitive conduct derailed Kaul's plans for global economic and educational expansion. The Defendants' illegal suppression of competition has restricted the public's access to minimally invasive spine surgery, has caused a reduction in innovation, an elevation in price and contributed to the opiate epidemic.

The revocation of Kaul's license was disseminated nationally to every state medical board and was widely publicized on the Internet with stories that commenced in April 2012 and persisted until October 2015. These events have caused permanent damage to Kaul's reputation and caused the regulatory bodies and public in all of the states, to be deceived by the Defendants' fraudulent and anticompetitive scheme against Kaul.

From paragraph 794 to 829 Kaul has pled with particularity, fact specific to each element, of each claim, against each defendant, in a separate and distinct manner:

**Defendant ASIPP + Defendant Kaufman**:

Date range: 2006 to 2019.

Mode of communication: Email + Voice message + SMS (text) + Face to face.

Substance of communications: Scheme to downgrade the relative value unit associated with outpatient endoscopic discectomy + Scheme to bribe Defendant Christie to veto a bill in 2009 that would have permitted one operating room surgical centers to become licensed, the licensing of which would have removed the principal reason employed by Defendants Allstate and GEICO to deny payment to outpatient facilities and physicians + Scheme to bribe Defendant Christie in order to sign into law in 2011 a fee schedule that denied or reduced payment for the performance of outpatient minimally invasive spine surgery in free standing surgical centers + Scheme to encourage patients to initiate civil litigation and medical board complaints against Kaul and similarly trained physicians + Scheme to obtain through bribing Defendant Christie a moratorium in 2009 that prevented the issuance of licenses for one-room outpatient surgical centers, unless they were commercially partnered with a hospital + Scheme to engage in knowingly unlawful agreements to divide the minimally invasive spine surgery market in such a way, that physicians with similar training as Kaul, would be limited to performing only discectomies, and not fusions + Scheme to engage in an overarching conspiracy to unlawfully monopolize, conspire to monopolize, and/or, artificially allocate the market for minimally invasive spine surgery + Scheme to unlawfully conspire and combine to intentionally and arbitrarily restrict, restrain and or prohibit Kaul's ability to trade in the American minimally invasive spine surgery market + Scheme to restrict, restrain and or exclude Kaul from participating in the American minimally invasive spine surgery market + Scheme to bribe Defendant Christie to have Defendant NJBME revoke Kaul's license + Scheme to file complaints against Kaul with state and federal regulatory authorities + Scheme to participate in sham litigation against Kaul, and provide knowingly fraudulent 'expert' testimony that he was not qualified to perform minimally invasive spine surgery, the purpose of which was to have Kaul's license revoked + Scheme to participate in sham litigation against Kaul's physician employees + Scheme to revoke Kaul's license + Scheme to destroy Kaul's reputation + Scheme to destroy Kaul's economic standing + Scheme to have Kaul ostracized + Scheme to have Kaul leave the United States + Scheme to enact Illegal per se agreements to restrict reimbursement for minimally invasive spine surgery to hospitals and or surgical centers owned by hospitals + Scheme to enact Illegal per se agreements between neurosurgeons, orthopedic surgeons and hospitals to deny privileges for minimally invasive spine surgery to Kaul and similarly trained physicians.

Tactics employed: Illegal per se agreements to restrict reimbursement for minimally invasive spine surgery to hospitals and or surgical centers owned by hospitals + Illegal per se agreements between neurosurgeons, orthopedic surgeons and hospitals to deny privileges for minimally invasive spine surgery to physicians similarly trained as Kaul + Conspired to and did commit Perjury, Evidential Falsification, Evidential Fabrication, Evidential Omission during the administrative board proceedings (April 9, 2013 to December 13, 2013) that resulted in the revocation of Kaul's license + Conspired to did commit subornation of perjury in administrative board proceedings (April 9, 2013 to December 13, 2013) that resulted in the revocation of Kaul's license + Conspired to and did obstruct justice by encouraging Kaul's patients to commit perjury, with the promise that the revocation of his license would permit them to file malpractice claims, and that the revocation would increase the monies they received from Kaul's insurance carrier + Knowingly and willfully engaged in unlawful agreements to divide the minimally invasive spine surgery market in such a way, that physicians with similar training as Kaul, would be limited to performing only discectomies, and not fusions + Knowingly and willfully engaged in an illegal overarching conspiracy to unlawfully monopolize, conspire to monopolize, and/or, artificially allocate the market for minimally invasive spine surgery + Knowingly and willfully engaged to unlawfully conspire and combine to intentionally and arbitrarily restrict, restrain and or prohibit Kaul's ability to trade in the American minimally invasive spine surgery market + Knowingly and willfully engaged to unlawfully restrict, restrain and or exclude Kaul from participating in the American minimally invasive spine surgery market + Conspired to, and did participate in sham litigation and provided knowingly false testimony that caused the entry of false judgments against Kaul in civil malpractice cases + Conspired to, and did participate in sham litigation against Kaul's physician employees, falsely testifying that they were not qualified to perform minimally invasive spine surgery and had committed insurance fraud + Conspired to, and did participate in sham litigation against the medical licenses of Kaul's physician employees + Conspired to and did participate in sham litigation purposed to professionally ostracize Kaul, cause him to leave the United States and prevent him from publicly exposing the defendants' crimes + Use of US mail and wires to file false complaints against him with Defendant NJBME + Use of US mail and wires to send patients letters encouraging them to file frivolous lawsuits against Kaul + Use of the US mail and wires to communicate false information to patients, that he was not qualified to perform minimally invasive spine surgery + Use of the US mail and wires to send false information to personal injury lawyers that Kaul was not qualified to perform minimally invasive spine surgery and had committed insurance fraud + Use of the US mail and wires to send false information to New Jersey politicians, encouraging them, with the promise of political campaign 'donations' to coerce Defendant NJBME and the New Jersey Attorney General to have Kaul's license revoked + Use of the US mail and wires to further scheme to have Kaul's license revoked by having Defendant Lomazow

use his authority on Defendant NJBME to initiate an investigation against Kaul, in order to have his license revoked + Use of the US mails and wires to transmit written, telephone, or electronic communications regarding the knowingly fraudulent events surrounding the revocation of Kaul's license + Use of the US mails and wires to globally transmit the knowingly illegal revocation of Kaul's license to national and international healthcare related agencies (Federation of State Medical Boards + American Board of Anesthesiology + General Medical Council of the UK) and regulatory bodies, in furtherance of the illegal scheme to destroy Kaul's global reputation and livelihood, with the intention of causing his death + Use of the US mails and wires to transmit false information that Kaul has committed insurance fraud, was not qualified to perform minimally invasive spine surgery, had committed bank fraud and was going to be criminally indicted for Medicare fraud + Use of the US mail and wires to transmit the illegal consequences of the obstruction of justice and evidence tampering to the public, national (state + federal) and international healthcare agencies and regulatory bodies, in furtherance of the defendants scheme to destroy Kaul's reputation globally, his livelihood, his economic standing and prevent him from obtaining a medical license anywhere in the world, or indeed any form of employment.

Location: Morristown Memorial Hospital + Christie/Republican political fundraisers + Office of the New Jersey Attorney General + Meetings/Conferences organized by Defendant ASIPP.

**Defendant ASIPP + Defendant Przybylski**:
See above. As with Defendant ASIPP + Defendant Kaufman.
Location: Christie/Republican political fundraisers + Office of the New Jersey Attorney General.

**Defendant ASIPP + Defendant CNS**:
See above. As with Defendant ASIPP + Defendant Kaufman.
Location: Christie/Republican political fundraisers + Office of the New Jersey Attorney General.

**Defendant ASIPP + Defendant Heary**:
See above. As with Defendant ASIPP + Defendant Kaufman.
Location: Morristown Memorial Hospital + Christie/Republican political fundraisers + Office of the New Jersey Attorney General + Meetings/Conferences organized by Defendant ASIPP + Meetings/Conferences organized by Defendant CNS + Meetings/Conferences organized by the New Jersey Spine Society.

**Defendant ASIPP + Defendant Cohen**:
See above. As with Defendant ASIPP + Defendant Kaufman.

Location: Morristown Memorial Hospital + Christie/Republican political fundraisers + Office of the New Jersey Attorney General + Meetings/Conferences organized by the New Jersey Spine Society.

**Defendant ASIPP + Defendant HUMC**:
See above. As with Defendant ASIPP + Defendant Kaufman.
Location: Hackensack Medical Center +  Christie/Republican political fundraisers + Meetings/Conferences organized by Defendant ASIPP + New Jersey Hospital Association meetings.

**Defendant ASIPP + Defendant AHS**:
See above. As with Defendant ASIPP and Defendant Kaufman.
Location: Morristown Memorial Hospital + Christie/Republican political fundraisers + Meetings/Conferences organized by Defendant ASIPP + New Jersey Hospital Association meetings.

**Defendant ASIPP + Defendant Staats**:
See above. As with Defendant ASIPP and Defendant Kaufman.
Location: Christie/Republican political fundraisers + Meetings/Conferences organized by Defendant ASIPP

**Defendant Kaufman + Defendant Przybylsk**i:
Date range: 2006 to 2019.
Mode of communication: Email + Voice message + SMS (text) + Face to face.
Substance of communications: Scheme to downgrade the relative value unit associated with outpatient endoscopic discectomy + Scheme to bribe Defendant Christie to veto a bill in 2009 that would have permitted one operating room surgical centers to become licensed, the licensing of which would have removed the principal reason employed by Defendants Allstate and GEICO to deny payment to outpatient facilities and physicians + Scheme to bribe Defendant Christie in order to sign into law in 2011 a fee schedule that denied or reduced payment for the performance of outpatient minimally invasive spine surgery in free standing surgical centers + Scheme to encourage patients to initiate civil litigation and medical board complaints against Kaul and similarly trained physicians + Scheme to obtain through bribing Defendant Christie a moratorium in 2009 that prevented the issuance of licenses for one-room outpatient surgical centers, unless they were commercially partnered with a hospital + Scheme to engage in knowingly unlawful agreements to divide the minimally invasive spine surgery market in such a way, that physicians with similar training as Kaul, would be limited to performing only discectomies, and not fusions + Scheme to engage in an overarching conspiracy to

unlawfully monopolize, conspire to monopolize, and/or, artificially allocate the market for minimally invasive spine surgery + Scheme to unlawfully conspire and combine to intentionally and arbitrarily restrict, restrain and or prohibit Kaul's ability to trade in the American minimally invasive spine surgery market + Scheme to restrict, restrain and or exclude Kaul from participating in the American minimally invasive spine surgery market + Scheme to bribe Defendant Christie to have Defendant NJBME revoke Kaul's license + Scheme to file complaints against Kaul with state and federal regulatory authorities + Scheme to participate in sham litigation against Kaul, and provide knowingly fraudulent 'expert' testimony that he was not qualified to perform minimally invasive spine surgery, the purpose of which was to have Kaul's license revoked + Scheme to participate in sham litigation against Kaul's physician employees + Scheme to revoke Kaul's license + Scheme to destroy Kaul's reputation + Scheme to destroy Kaul's economic standing + Scheme to have Kaul ostracized + Scheme to have Kaul leave the United States + Scheme to enact Illegal per se agreements to restrict reimbursement for minimally invasive spine surgery to hospitals and or surgical centers owned by hospitals + Scheme to enact Illegal per se agreements between neurosurgeons, orthopedic surgeons and hospitals to deny privileges for minimally invasive spine surgery to Kaul and similarly trained physicians.

Tactics employed: Illegal per se agreements to restrict reimbursement for minimally invasive spine surgery to hospitals and or surgical centers owned by hospitals + Illegal per se agreements between neurosurgeons, orthopedic surgeons and hospitals to deny privileges for minimally invasive spine surgery to physicians similarly trained as Kaul + Conspired to and did commit Perjury, Evidential Falsification, Evidential Fabrication, Evidential Omission during the administrative board proceedings (April 9, 2013 to December 13, 2013) that resulted in the revocation of Kaul's license + Conspired to did commit subornation of perjury in administrative board proceedings (April 9, 2013 to December 13, 2013) that resulted in the revocation of Kaul's license + Conspired to and did obstruct justice by encouraging Kaul's patients to commit perjury, with the promise that the revocation of his license would permit them to file malpractice claims, and that the revocation would increase the monies they received from Kaul's insurance carrier + Knowingly and willfully engaged in unlawful agreements to divide the minimally invasive spine surgery market in such a way, that physicians with similar training as Kaul, would be limited to performing only discectomies, and not fusions + Knowingly and willfully engaged in an illegal overarching conspiracy to unlawfully monopolize, conspire to monopolize, and/or, artificially allocate the market for minimally invasive spine surgery + Knowingly and willfully engaged to unlawfully conspire and combine to intentionally and arbitrarily restrict, restrain and or prohibit Kaul's ability to trade in the American minimally invasive spine surgery market + Knowingly and willfully engaged to unlawfully restrict, restrain and or exclude Kaul from participating in the American minimally invasive spine surgery market.

Location: Morristown Memorial Hospital + Surgicare Associates Surgical Center + Christie/Republican political fundraisers + Office of the New Jersey Attorney General + Meetings/Conferences organized by the New Jersey Spine Society + Meetings/Conferences organized by Defendant ASIPP + Meetings/Conferences organized by Defendant CNS + NASS headquarters in Chicago + NASS national meetings + CNS headquarters in Chicago.

**Defendant Kaufman + Defendant CNS**:
See above. As with Defendant ASIPP and Defendant Kaufman.
Location: Morristown Memorial Hospital + Christie/Republican political fundraisers + Meetings/Conferences organized by Defendant ASIPP + Meetings/Conferences organized by Defendant CNS

**Defendant Kaufman + Defendant Heary**:
See above. As with Defendant Kaufman + Defendant Przybylski.
Location: Morristown Memorial Hospital + Christie/Republican political fundraisers + Meetings/Conferences organized by the New Jersey Spine Society + NASS headquarters in Chicago + NASS national meetings + Meetings/Conferences organized by Defendant ASIPP  + Meetings/Conferences organized by Defendant CNS.

**Defendant Kaufman + Defendant Cohen**:
See above. As with Defendant Kaufman + Defendant Przybylski.
Location: Morristown Memorial Hospital + Christie/Republican political fundraisers + Meetings/Conferences organized by the New Jersey Spine Society + NASS headquarters in Chicago + NASS national meetings + Meetings/Conferences organized by Defendant ASIPP  + Meetings/Conferences organized by Defendant CNS.

**Defendant Kaufman + Defendant HUMC**:
See above. As with Defendant ASIPP + Defendant HUMC.
Location: Hackensack Medical Center + Christie/Republican political fundraisers + Office of the New Jersey Attorney General + Meetings/Conferences organized by Defendant ASIPP.

**Defendant Kaufman + Defendant AHS**:
See above. As with Defendant ASIPP + Defendant HUMC.
Location: AHS + Christie/Republican political fundraisers + Office of the New Jersey Attorney General + Meetings/Conferences organized by Defendant ASIPP.

**Defendant Kaufman + Defendant Staats**:
See above. As with Defendant ASIPP + Defendant Kaufman.

Location: AHS + Christie/Republican political fundraisers + Office of the New Jersey
Attorney General + Meetings/Conferences organized by Defendant ASIPP.

**Defendant Przybylski + Defendant CNS**:
See above. As with Defendant Kaufman + Defendant CNS.
Location: Christie/Republican political fundraisers + Meetings/Conferences
Meetings/Conferences organized by Defendant CNS

**Defendant Przybylski + Defendant Heary**:
See above. As with Defendant Kaufman + Defendant Przybylski.
Location: Morristown Memorial Hospital + Surgicare Associates Surgical Center +
Christie/Republican political fundraisers + Meetings/Conferences organized by the New
Jersey Spine Society + Meetings/Conferences organized by Defendant CNS + NASS
headquarters in Chicago + NASS national meetings + CNS headquarters in Chicago

**Defendant Przybylski + Defendant Cohen**:
See above. As with Defendant Przybylski + Defendant Kaufman.
Location: Morristown Memorial Hospital + Surgicare Associates Surgical Center +
Christie/Republican political fundraisers + Meetings/Conferences organized by the New
Jersey Spine Society + Meetings/Conferences organized by Defendant CNS + NASS
headquarters in Chicago + NASS national meetings + CNS headquarters in Chicago.

**Defendant Przybylski + Defendant HUMC**:
See above. As with Defendant Kaufman + Defendant HUMC.
Location: Christie/Republican political fundraisers + Office of the New Jersey Attorney
General + Hackensack Medical Center + Meetings/Conferences organized by
Defendant CNS.

**Defendant Przybylski + Defendant AHS**:
See above. As with Defendant Kaufman + Defendant AHS.
Location: Morristown Memorial Hospital + Governor's office in Trenton +
Christie/Republican political fundraisers + Office of the New Jersey Attorney General.

**Defendant Przybylski + Defendant Staats**:
See above. As with Defendant Kaufman + Defendant Staats.
Location: Christie/Republican political fundraisers + Meetings/Conferences organized by
Defendant ASIPP + Meetings/Conferences organized by Defendant CNS + NASS
national meetings.

**Defendant CNS + Defendant Heary**:

See above. As with Defendant Kaufman + Defendant CNS.
Location: Morristown Memorial Hospital + Christie/Republican political fundraisers + Meetings/Conferences organized by Defendant CNS.

**Defendant CNS + Defendant Cohen**:
See above. As with Defendant ASIPP + Defendant Cohen.
Location: Morristown Memorial Hospital + Christie/Republican political fundraisers + Office of the New Jersey Attorney General + Meetings/Conferences organized by the New Jersey Spine Society.

**Defendant CNS + Defendant HUMC**:
See above. As with Defendant ASIPP + Defendant Kaufman.
Location: Christie/Republican political fundraisers + Meetings/Conferences organized by Defendant ASIPP + Hackensack Medical Center.

**Defendant CNS + Defendant AHS**:
See above. As with Defendant Przybylski + Defendant AHS.
Location: Morristown Memorial Hospital + Governor's office in Trenton + Christie/Republican political fundraisers + Office of the New Jersey Attorney General.

**Defendant CNS + Defendant Staats**:
See above. As with Defendant ASIPP + Defendant Kaufman.
Location: Christie/Republican political fundraisers + Office of the New Jersey Attorney General Meetings/Conferences organized by Defendant ASIPP + Meetings/Conferences organized by Defendant CNS.

**Defendant Heary + Defendant Cohen**:
See above. As with Defendant Kaufman + Defendant Przybylski.
Location: Morristown Memorial Hospital + Ridgedale Surgical Center + Christie/Republican political fundraisers + Office of the New Jersey Attorney General + Meetings/Conferences organized by the New Jersey Spine Society + Meetings/Conferences organized by Defendant CNS + NASS headquarters in Chicago + NASS national meetings + CNS headquarters in Chicago.

**Defendant Heary + Defendant HUMC**:
See above. As with Defendant Przybylski + Defendant HUMC.
Location: Morristown Memorial Hospital + Hackensack Medical Center + Governor's office in Trenton + Christie/Republican political fundraisers + Office of the New Jersey Attorney General
**Defendant Heary + Defendant AHS**:

See above. As with Defendant Kaufman + Defendant AHS.
Location: AHS + Christie/Republican political fundraisers + Governor's office in Trenton + Office of the New Jersey Attorney General.

**Defendant Heary + Defendant Staats**:
See above. As with Defendant Kaufman + Defendant Staats.
Location: AHS + Christie/Republican political fundraisers + Office of the New Jersey Attorney General + Meetings/Conferences organized by Defendant ASIPP + Meetings/Conferences organized by Defendant CNS + NASS national meetings.

**Defendant Cohen + Defendant HUMC**:
See above. As with Defendant ASIPP + Defendant HUMC.
Location: Morristown Memorial Hospital + Hackensack Medical Center + Governor's office in Trenton + Christie/Republican political fundraisers + Office of the New Jersey Attorney General.

**Defendant Cohen + Defendant AHS**:
See above. As with Defendant ASIPP + Defendant AHS.
Location: Morristown Memorial Hospital + Governor's office in Trenton + Christie/Republican political fundraisers + Office of the New Jersey Attorney General.

**Defendant Cohen + Defendant Staats**:
See above. As with Defendant ASIPP + Defendant Kaufman.
Location: Morristown Memorial Hospital + Christie/Republican political fundraisers + Office of the New Jersey Attorney General + Meetings/Conferences organized by the New Jersey Spine Society + NASS national meetings.

**Defendant HUMC + Defendant AHS**:
See above. As with Defendant ASIPP + Defendant Kaufman.
Location: Hackensack Medical Center + Morristown Memorial Hospital + Governor's office in Trenton + Christie/Republican political fundraisers + Office of the New Jersey Attorney General + Meetings of the New Jersey Hospital Association.

**Defendant HUMC + Defendant Staats**:
See above. As with Defendant ASIPP + Defendant Kaufman.
Location: Hackensack Medical Center + Governor's office in Trenton + Christie/Republican political fundraisers + Office of the New Jersey Attorney General.

**Defendant AHS + Defendant Staats**:
See above. As with Defendant ASIPP + Defendant Kaufman.

<u>Location</u>: Morristown Memorial Hospital + Governor's office in Trenton + Christie/Republican political fundraisers.

By engaging in the foregoing conduct, Defendants have violated the following state Unfair and Deceptive Trade Practices and Consumer Fraud laws:

(a) Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Ariz. Rev. Stat. § 44-1522, et seq., with respect to the availability of minimally invasive spine surgery in Arizona, and in the knowledge that Kaul had plans to expand nationally.

(b) Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Ark. Code § 4-88-101, et seq., with respect to the availability of minimally invasive spine surgery in Arkansas, and in the knowledge that Kaul had plans to expand nationally.

(c) Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Cal. Bus. & Prof. Code § 17200, et seq., with respect to the availability of minimally invasive spine surgery in Arizona, and in the knowledge that Kaul had plans to expand nationally.

(d) Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Colo. Rev. Stat. § 6-1-105, et seq., with respect to the availability of minimally invasive spine surgery in Colorado, and in the knowledge that Kaul had plans to expand nationally.

(e) Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Conn. Gen. Stat. § 42-110h, et seq., with respect to the availability of minimally invasive spine surgery in Connecticut, and in the knowledge that Kaul had plans to expand nationally.

(f) Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Fla. Stat. § 501.201, et seq., with respect to the availability of minimally invasive spine surgery in Florida, and in the knowledge that Kaul had plans to expand nationally.

(g) Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Idaho Code § 48-601, et seq., with respect to the availability of minimally invasive spine surgery in Idaho, and in the knowledge that Kaul had plans to expand nationally.

(h) Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of 815 ILCS § 505/1, et seq., with respect to the availability of minimally invasive spine surgery in Illinois, and in the knowledge that Kaul had plans to expand nationally.

(i) Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Kan. Stat. § 50-623, et seq., with respect to the availability of

minimally invasive spine surgery in Kansas, and in the knowledge that Kaul had plans to expand nationally.

(j) Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of 5 Me. Rev. Stat. § 207, et seq., with respect to the availability of minimally invasive spine surgery in Maine, and in the knowledge that Kaul had plans to expand nationally.

(k) Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Md. Com. Law Code § 13-101, et seq., with respect to the availability of minimally invasive spine surgery in Maryland, and in the knowledge that Kaul had plans to expand nationally.

(l) Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Mass. Gen. L. Ch. 93A, § et seq., with respect to the availability of minimally invasive spine surgery in Massachusetts, and in the knowledge that Kaul had plans to expand nationally.

(m) Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Mich. Stat. § 445.901, et seq., with respect to the availability of minimally invasive spine surgery in Michigan, and in the knowledge that Kaul had plans to expand nationally.

(n) Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Minn. Stat. § 8.31, et seq., with respect to the availability of minimally invasive spine surgery in Minnesota, and in the knowledge that Kaul had plans to expand nationally.

(o) Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Vernon's Missouri Stat. § 407.010 , et seq., with respect to the availability of minimally invasive spine surgery in Missouri, and in the knowledge that Kaul had plans to expand nationally.

(p) Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Neb. Rev. Stat. § 598.0903, et seq., with respect to the availability of minimally invasive spine surgery in Nebraska, and in the knowledge that Kaul had plans to expand nationally.

(q) Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Nev. Rev. Stat. § 598.0903, et seq, with respect to the availability of minimally invasive spine surgery in Nevada, and in the knowledge that Kaul had plans to expand nationally.

(r) Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of N.H. Rev. Stat § 358-A: 1, et seq., with respect to the availability of minimally invasive spine surgery in New Hampshire, and in the knowledge that Kaul had plans to expand nationally.

(s) Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of N.M. Stat § 57-12-1, et seq., with respect to the availability of

minimally invasive spine surgery in New Mexico, and in the knowledge that Kaul had plans to expand nationally.

(t) Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of N.Y. Gen. Bus. Law § 349, et seq., with respect to the availability of minimally invasive spine surgery in New York, and in the knowledge that Kaul had plans to expand nationally.

(u) Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of N.C. Gen. Stat. § 75-1.1, et seq., with respect to the availability of minimally invasive spine surgery in North Carolina, and in the knowledge that Kaul had plans to expand nationally.

(v) Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Okla. Stat. 15 § 751, et seq., with respect to the availability of minimally invasive spine surgery in Oklahoma, and in the knowledge that Kaul had plans to expand nationally.

(w) Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of R.I. Gen. Laws § 6-13.1-1, et seq., with respect to the availability of minimally invasive spine surgery in Rhode Island, and in the knowledge that Kaul had plans to expand nationally.

(x) Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of S.D. Code Laws § 37-24-1, et seq., with respect to the availability of minimally invasive spine surgery in South Dakota, and in the knowledge that Kaul had plans to expand nationally.

(y) Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Tenn. Code § 47-18-101, et seq., with respect to the availability of minimally invasive spine surgery in Tennessee, and in the knowledge that Kaul had plans to expand nationally.

(z) Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Utah Code § 13-11-1, et seq., with respect to the availability of minimally invasive spine surgery in Utah, and in the knowledge that Kaul had plans to expand nationally.

(aa) Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Va. Code § 59.1-196, et seq., with respect to the availability of minimally invasive spine surgery in Virginia, and in the knowledge that Kaul had plans to expand nationally.

(bb) Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Wash. Rev. Code § 19.86.010, et seq., with respect to the availability of minimally invasive spine surgery in Washington, and in the knowledge that Kaul had plans to expand nationally.

(cc) Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of West Virginia Code § 46A-6-101, et seq., with respect to the

availability of minimally invasive spine surgery in West Virginia, and in the knowledge that Kaul had plans to expand nationally.

Plaintiff has been injured in his business and property by reason of Defendants' antitrust violations alleged in this Claim. The injuries consist of: **(1)** the revocation of Kaul's New Jersey medical license and the loss to his patients of their ability to receive minimally invasive spine care and, **(2)** exclusion of Kaul and similarly trained physicians from the minimally invasive spine surgery market, which has reduced competition and permitted the Defendants to raise their prices, and **(3)** the loss into bankruptcy of Kaul's healthcare corporations, to which were attached $45 million in accounts receivable, a surgical center license, real estate, and **(4)** loss of Kaul's professional reputation developed over thirty years. These injuries are of the type the antitrust laws of the above States and the District of Columbia were designed to prevent, and flow from that which makes Defendants' conduct unlawful.

Plaintiff seeks damages and treble damages as permitted by law for their injuries by Defendants' violation of the aforementioned statutes.

## COUNT ELEVEN
### Unjust Enrichment
### (By Plaintiff Against ASIPP + Kaufman + Przybylski + CNS + Heary + Cohen + HUMC + AHS + Stolz + Dilorio)

Plaintiff incorporates by reference the preceding allegations.

Defendants have benefited from the monopoly profits on the increased revenues that have flowed from the illegal elimination of the competition presented by Kaul and similarly trained physicians.

Defendants' financial benefits resulting from their unlawful and inequitable conduct are traceable to the price gouging, increased patient referrals and the charging of artificially elevated prices, consequent to the elimination of the competition presented by Kaul and similarly trained physicians. The misconduct of the Defendants has conferred upon them an economic benefit attributable to monopoly profits that has been to the economic detriment of Kaul and similarly trained physicians. It would be futile for Kaul to seek a remedy from any party with whom they had privity of contract. Defendants have paid no legal consideration to anyone for any benefits received indirectly from Kaul. Defendants did, however, engage in the bribing of public officials in order to further their illegal anticompetitive scheme.

**From paragraph 836 to 880 Kaul has pled with particularity, fact specific to each element, of each claim, against each defendant, in a separate and distinct manner:**

**Defendant ASIPP + Defendant Kaufman**:

Date range: 2006 to 2019.

Mode of communication: Email + Voice message + SMS (text) + Face to face.

Substance of communications: Scheme to downgrade the relative value unit associated with outpatient endoscopic discectomy + Scheme to bribe Defendant Christie to veto a bill in 2009 that would have permitted one operating room surgical centers to become licensed, the licensing of which would have removed the principal reason employed by Defendants Allstate and GEICO to deny payment to outpatient facilities and physicians + Scheme to bribe Defendant Christie in order to sign into law in 2011 a fee schedule that denied or reduced payment for the performance of outpatient minimally invasive spine surgery in free standing surgical centers + Scheme to encourage patients to initiate civil litigation and medical board complaints against Kaul and similarly trained physicians + Scheme to obtain through bribing Defendant Christie a moratorium in 2009 that prevented the issuance of licenses for one-room outpatient surgical centers, unless they were commercially partnered with a hospital + Scheme to engage in knowingly unlawful agreements to divide the minimally invasive spine surgery market in such a way, that physicians with similar training as Kaul, would be limited to performing only discectomies, and not fusions + Scheme to engage in an overarching conspiracy to unlawfully monopolize, conspire to monopolize, and/or, artificially allocate the market for minimally invasive spine surgery + Scheme to unlawfully conspire and combine to intentionally and arbitrarily restrict, restrain and or prohibit Kaul's ability to trade in the American minimally invasive spine surgery market + Scheme to restrict, restrain and or exclude Kaul from participating in the American minimally invasive spine surgery market + Scheme to bribe Defendant Christie to have Defendant NJBME revoke Kaul's license + Scheme to file complaints against Kaul with state and federal regulatory authorities + Scheme to participate in sham litigation against Kaul, and provide knowingly fraudulent 'expert' testimony that he was not qualified to perform minimally invasive spine surgery, the purpose of which was to have Kaul's license revoked + Scheme to participate in sham litigation against Kaul's physician employees + Scheme to revoke Kaul's license + Scheme to destroy Kaul's reputation + Scheme to destroy Kaul's economic standing + Scheme to have Kaul ostracized + Scheme to have Kaul leave the United States + Scheme to enact Illegal per se agreements to restrict reimbursement for minimally invasive spine surgery to hospitals and or surgical centers owned by hospitals + Scheme to enact Illegal per se agreements between neurosurgeons, orthopedic surgeons and hospitals to deny privileges for minimally invasive spine surgery to Kaul and similarly trained physicians.

231

Tactics employed: Conspired to, and did bribe Defendant Christie as part of a series of quid pro quo schemes to have Defendant NJBME revoke Kaul's license + Illegal per se agreements to restrict reimbursement for minimally invasive spine surgery to hospitals and or surgical centers owned by hospitals + Illegal per se agreements between neurosurgeons, orthopedic surgeons and hospitals to deny privileges for minimally invasive spine surgery to physicians similarly trained as Kaul + Conspired to and did commit Perjury, Evidential Falsification, Evidential Fabrication, Evidential Omission during the administrative board proceedings (April 9, 2013 to December 13, 2013) that resulted in the revocation of Kaul's license + Conspired to and did commit subornation of perjury in administrative board proceedings (April 9, 2013 to December 13, 2013) that resulted in the revocation of Kaul's license + Conspired to and did obstruct justice by encouraging Kaul's patients to commit perjury, with the promise that the revocation of his license would permit them to file malpractice claims, and that the revocation would increase the monies they received from Kaul's insurance carrier + Knowingly and willfully engaged in unlawful agreements to divide the minimally invasive spine surgery market in such a way, that physicians with similar training as Kaul, would be limited to performing only discectomies, and not fusions + Knowingly and willfully engaged in an illegal overarching conspiracy to unlawfully monopolize, conspire to monopolize, and/or, artificially allocate the market for minimally invasive spine surgery + Knowingly and willfully engaged to unlawfully conspire and combine to intentionally and arbitrarily restrict, restrain and or prohibit Kaul's ability to trade in the American minimally invasive spine surgery market + Knowingly and willfully engaged to unlawfully restrict, restrain and or exclude Kaul from participating in the American minimally invasive spine surgery market + Conspired to, and did participate in sham litigation and provided knowingly false testimony that caused the entry of false judgments against Kaul in civil malpractice cases + Conspired to, and did participate in sham litigation against Kaul's physician employees, falsely testifying that they were not qualified to perform minimally invasive spine surgery and had committed insurance fraud + Conspired to, and did participate in sham litigation against the medical licenses of Kaul's physician employees + Conspired to and did participate in sham litigation purposed to professionally ostracize Kaul, cause him to leave the United States and prevent him from publicly exposing the defendants' crimes + Use of US mail and wires to file false complaints against him with Defendant NJBME + Use of US mail and wires to send patients letters encouraging them to file frivolous lawsuits against Kaul + Use of the US mail and wires to communicate false information to patients, that he was not qualified to perform minimally invasive spine surgery + Use of the US mail and wires to send false information to personal injury lawyers that Kaul was not qualified to perform minimally invasive spine surgery and had committed insurance fraud + Use of the US mail and wires to send false information to New Jersey politicians, encouraging them, with the promise of political campaign 'donations' to coerce Defendant NJBME and the New Jersey Attorney General to have

Kaul's license revoked + Use of the US mail and wires to further scheme to have Kaul's license revoked by having Defendant Lomazow use his authority on Defendant NJBME to initiate an investigation against Kaul, in order to have his license revoked + Use of the US mails and wires to transmit written, telephone, or electronic communications regarding the knowingly fraudulent events surrounding the revocation of Kaul's license + Use of the US mails and wires to globally transmit the knowingly illegal revocation of Kaul's license to national and international healthcare related agencies (Federation of State Medical Boards + American Board of Anesthesiology + General Medical Council of the UK) and regulatory bodies, in furtherance of the illegal scheme to destroy Kaul's global reputation and livelihood, with the intention of causing his death + Use of the US mails and wires to transmit false information that Kaul has committed insurance fraud, was not qualified to perform minimally invasive spine surgery, had committed bank fraud and was going to be criminally indicted for Medicare fraud + Use of the US mail and wires to transmit the illegal consequences of the obstruction of justice and evidence tampering to the public, national (state + federal) and international healthcare agencies and regulatory bodies, in furtherance of the defendants scheme to destroy Kaul's reputation globally, his livelihood, his economic standing and prevent him from obtaining a medical license anywhere in the world, or indeed any form of employment.
Location: Morristown Memorial Hospital + Christie/Republican political fundraisers + Office of the New Jersey Attorney General + Meetings/Conferences organized by Defendant ASIPP.

**Defendant ASIPP + Defendant Przybylsk**i:
See above. As with Defendant ASIPP + Defendant Kaufman.
Location: Christie/Republican political fundraisers + Office of the New Jersey Attorney General.

**Defendant ASIPP + Defendant CNS**:
See above. As with Defendant ASIPP + Defendant Kaufman.
Location: Christie/Republican political fundraisers + Office of the New Jersey Attorney General.

**Defendant ASIPP + Defendant Heary**:
See above. As with Defendant ASIPP + Defendant Kaufman.
Location: Morristown Memorial Hospital + Christie/Republican political fundraisers + Office of the New Jersey Attorney General + Meetings/Conferences organized by Defendant ASIPP + Meetings/Conferences organized by Defendant CNS + Meetings/Conferences organized by the New Jersey Spine Society.

**Defendant ASIPP + Defendant Cohen**:

See above. As with Defendant ASIPP + Defendant Kaufman.
Location: Morristown Memorial Hospital + Christie/Republican political fundraisers + Office of the New Jersey Attorney General + Meetings/Conferences organized by the New Jersey Spine Society.

**Defendant ASIPP + Defendant HUMC**:
See above. As with Defendant ASIPP + Defendant Kaufman.
Location: Hackensack Medical Center +  Christie/Republican political fundraisers + Meetings/Conferences organized by Defendant ASIPP + New Jersey Hospital Association meetings.

**Defendant ASIPP + Defendant AHS**:
See above. As with Defendant ASIPP and Defendant Kaufman.
Location: Morristown Memorial Hospital + Christie/Republican political fundraisers + Meetings/Conferences organized by Defendant ASIPP + New Jersey Hospital Association meetings.

**Defendant ASIPP + Defendant Stolz**:
Date range: 2014 to 2019.
Mode of communications: Email + Voice message + SMS (text) + Face to face.
Substance of communications: Scheme to downgrade the relative value unit associated with outpatient endoscopic discectomy + Scheme to bribe Defendant Christie to veto a bill in 2009 that would have permitted one operating room surgical centers to become licensed, the licensing of which would have removed the principal reason employed by Defendants Allstate and GEICO to deny payment to outpatient facilities and physicians + Scheme to bribe Defendant Christie in order to sign into law in 2011 a fee schedule that denied or reduced payment for the performance of outpatient minimally invasive spine surgery in free standing surgical centers + Scheme to encourage patients to initiate civil litigation and medical board complaints against Kaul and similarly trained physicians + Scheme to obtain through bribing Defendant Christie a moratorium in 2009 that prevented the issuance of licenses for one-room outpatient surgical centers, unless they were commercially partnered with a hospital + Scheme to engage in knowingly unlawful agreements to divide the minimally invasive spine surgery market in such a way, that physicians with similar training as Kaul, would be limited to performing only discectomies, and not fusions + Scheme to engage in an overarching conspiracy to unlawfully monopolize, conspire to monopolize, and/or, artificially allocate the market for minimally invasive spine surgery + Scheme to unlawfully conspire and combine to intentionally and arbitrarily restrict, restrain and or prohibit Kaul's ability to trade in the American minimally invasive spine surgery market + Scheme to restrict, restrain and or exclude Kaul from participating in the American minimally invasive spine surgery market

+ Scheme to bribe Defendant Christie to have Defendant NJBME revoke Kaul's license + Scheme to file complaints against Kaul with state and federal regulatory authorities + Scheme to participate in sham litigation against Kaul, and provide knowingly fraudulent 'expert' testimony that he was not qualified to perform minimally invasive spine surgery, the purpose of which was to have Kaul's license revoked + Scheme to participate in sham litigation against Kaul's physician employees + Scheme to revoke Kaul's license + Scheme to destroy Kaul's reputation + Scheme to destroy Kaul's economic standing + Scheme to have Kaul ostracized + Scheme to have Kaul leave the United States + Scheme to enact Illegal per se agreements to restrict reimbursement for minimally invasive spine surgery to hospitals and or surgical centers owned by hospitals + Scheme to enact Illegal per se agreements between neurosurgeons, orthopedic surgeons and hospitals to deny privileges for minimally invasive spine surgery to Kaul and similarly trained physicians + Scheme to use the bankruptcy proceedings to defraud Kaul of his assets, his real estate holdings and $ 45 million owed to him by insurance companies, including defendants Allstate + Geico + Scheme to conceal from Kaul the defendants' pattern of racketeering in the United States Bankruptcy Court for the District of New Jersey.

Tactics employed: Conspired to, and did bribe Defendant Christie as part of a series of quid pro quo schemes to have Defendant NJBME revoke Kaul's license + Use of the US mail and wires to communicate false information to patients, that he was not qualified to perform minimally invasive spine surgery + Use of the US mail and wires to send false information to personal injury lawyers that Kaul was not qualified to perform minimally invasive spine surgery and had committed insurance fraud + Use of the US mails and wires to transmit written, telephone, or electronic communications regarding the knowingly fraudulent events surrounding the revocation of Kaul's license + Use of the US mails and wires to globally transmit the knowingly illegal revocation of Kaul's license to national and international healthcare related agencies (Federation of State Medical Boards + American Board of Anesthesiology + General Medical Council of the UK) and regulatory bodies, in furtherance of the illegal scheme to destroy Kaul's global reputation and livelihood, with the intention of causing his death + Use of the US mails and wires to transmit false information that Kaul has committed insurance fraud, was not qualified to perform minimally invasive spine surgery, had committed bank fraud and was going to be criminally indicted for Medicare fraud + Use of the US mail and wires to transmit the illegal consequences of the obstruction of justice and evidence tampering to the public, national (state + federal) and international healthcare agencies and regulatory bodies, in furtherance of the defendants scheme to destroy Kaul's reputation globally, his livelihood, his economic standing and prevent him from obtaining a medical license anywhere in the world, or indeed any form of employment + Conspired to and did convert the United States Bankruptcy Court for the District of New Jersey, into a racketeering enterprise, in which were committed the predicate acts of bribery, mail

fraud and wire fraud + Conspired to and did knowingly and willfully commit within the United States Bankruptcy Court for the District of New Jersey the felonies/offenses of: **(i)** Fraud on the Court; **(ii)** Breach of Fiduciary Duty; **(iii)** Willful Negligence; **(iv)** Estate Embezzlement; **(v)** Money Laundering; **(vi)** Kickbacks; **(vi)** Honest Services Fraud.
Location: Christie/Republican political fundraisers + United States Bankruptcy Court for the District of New Jersey + Law offices of Wasserman + Jurista + Stolz, Basking Ridge, NJ + Law offices of Pringle + Quinn + Anzano, Belmar, NJ + Law offices of Rivkin Radler, Hackensack, NJ + Law offices of Shapiro Croland, Hackensack, NJ + Office of the New Jersey Attorney General.


**Defendant ASIPP + Defendant Dilorio**:
See above. As with Defendant ASIPP + Defendant Stolz.
Location: Christie/Republican political fundraisers + United States Bankruptcy Court for the District of New Jersey + Law offices of Wasserman + Jurista + Stolz, Basking Ridge, NJ + Law offices of Pringle + Quinn + Anzano, Belmar, NJ + Law offices of Rivkin Radler, Hackensack, NJ + Law offices of Shapiro Croland, Hackensack, NJ + Office of the New Jersey Attorney General.


**Defendant Kaufman + Defendant Przybylski**:
Date range: 2006 to 2019.
Mode of communication: Email + Voice message + SMS (text) + Face to face.
Substance of communications: Scheme to downgrade the relative value unit associated with outpatient endoscopic discectomy + Scheme to bribe Defendant Christie to veto a bill in 2009 that would have permitted one operating room surgical centers to become licensed, the licensing of which would have removed the principal reason employed by Defendants Allstate and GEICO to deny payment to outpatient facilities and physicians + Scheme to bribe Defendant Christie in order to sign into law in 2011 a fee schedule that denied or reduced payment for the performance of outpatient minimally invasive spine surgery in free standing surgical centers + Scheme to encourage patients to initiate civil litigation and medical board complaints against Kaul and similarly trained physicians + Scheme to obtain through bribing Defendant Christie a moratorium in 2009 that prevented the issuance of licenses for one-room outpatient surgical centers, unless they were commercially partnered with a hospital + Scheme to engage in knowingly unlawful agreements to divide the minimally invasive spine surgery market in such a way, that physicians with similar training as Kaul, would be limited to performing only discectomies, and not fusions + Scheme to engage in an overarching conspiracy to unlawfully monopolize, conspire to monopolize, and/or, artificially allocate the market for minimally invasive spine surgery + Scheme to unlawfully conspire and combine to intentionally and arbitrarily restrict, restrain and or prohibit Kaul's ability to trade in the American minimally invasive spine surgery market + Scheme to restrict, restrain and or

exclude Kaul from participating in the American minimally invasive spine surgery market + Scheme to bribe Defendant Christie to have Defendant NJBME revoke Kaul's license + Scheme to file complaints against Kaul with state and federal regulatory authorities + Scheme to participate in sham litigation against Kaul, and provide knowingly fraudulent 'expert' testimony that he was not qualified to perform minimally invasive spine surgery, the purpose of which was to have Kaul's license revoked + Scheme to participate in sham litigation against Kaul's physician employees + Scheme to revoke Kaul's license + Scheme to destroy Kaul's reputation + Scheme to destroy Kaul's economic standing + Scheme to have Kaul ostracized + Scheme to have Kaul leave the United States + Scheme to enact Illegal per se agreements to restrict reimbursement for minimally invasive spine surgery to hospitals and or surgical centers owned by hospitals + Scheme to enact Illegal per se agreements between neurosurgeons, orthopedic surgeons and hospitals to deny privileges for minimally invasive spine surgery to Kaul and similarly trained physicians.

Tactics employed: Conspired to, and did bribe Defendant Christie as part of a series of quid pro quo schemes to have Defendant NJBME revoke Kaul's license + Illegal per se agreements to restrict reimbursement for minimally invasive spine surgery to hospitals and or surgical centers owned by hospitals + Illegal per se agreements between neurosurgeons, orthopedic surgeons and hospitals to deny privileges for minimally invasive spine surgery to physicians similarly trained as Kaul + Conspired to and did commit Perjury, Evidential Falsification, Evidential Fabrication, Evidential Omission during the administrative board proceedings (April 9, 2013 to December 13, 2013) that resulted in the revocation of Kaul's license + Conspired to did commit subornation of perjury in administrative board proceedings (April 9, 2013 to December 13, 2013) that resulted in the revocation of Kaul's license + Conspired to and did obstruct justice by encouraging Kaul's patients to commit perjury, with the promise that the revocation of his license would permit them to file malpractice claims, and that the revocation would increase the monies they received from Kaul's insurance carrier + Knowingly and willfully engaged in unlawful agreements to divide the minimally invasive spine surgery market in such a way, that physicians with similar training as Kaul, would be limited to performing only discectomies, and not fusions + Knowingly and willfully engaged in an illegal overarching conspiracy to unlawfully monopolize, conspire to monopolize, and/or, artificially allocate the market for minimally invasive spine surgery + Knowingly and willfully engaged to unlawfully conspire and combine to intentionally and arbitrarily restrict, restrain and or prohibit Kaul's ability to trade in the American minimally invasive spine surgery market + Knowingly and willfully engaged to unlawfully restrict, restrain and or exclude Kaul from participating in the American minimally invasive spine surgery market.

Location: Morristown Memorial Hospital + Surgicare Associates Surgical Center +

Christie/Republican political fundraisers + Office of the New Jersey Attorney General + Meetings/Conferences organized by the New Jersey Spine Society + Meetings/Conferences organized by Defendant ASIPP + Meetings/Conferences organized by Defendant CNS + NASS headquarters in Chicago + NASS national meetings + CNS headquarters in Chicago.

**Defendant Kaufman + Defendant CNS**:

Date range: 2006 to 2019.

Mode of communication: Email + Voice message + SMS (text) + Face to face. Substance of communications: Scheme to downgrade the relative value unit associated with outpatient endoscopic discectomy + Scheme to bribe Defendant Christie to veto a bill in 2009 that would have permitted one operating room surgical centers to become licensed, the licensing of which would have removed the principal reason employed by Defendants Allstate and GEICO to deny payment to outpatient facilities and physicians + Scheme to bribe Defendant Christie in order to sign into law in 2011 a fee schedule that denied or reduced payment for the performance of outpatient minimally invasive spine surgery in free standing surgical centers + Scheme to encourage patients to initiate civil litigation and medical board complaints against Kaul and similarly trained physicians + Scheme to obtain through bribing Defendant Christie a moratorium in 2009 that prevented the issuance of licenses for one-room outpatient surgical centers, unless they were commercially partnered with a hospital + Scheme to engage in knowingly unlawful agreements to divide the minimally invasive spine surgery market in such a way, that physicians with similar training as Kaul, would be limited to performing only discectomies, and not fusions + Scheme to engage in an overarching conspiracy to unlawfully monopolize, conspire to monopolize, and/or, artificially allocate the market for minimally invasive spine surgery + Scheme to unlawfully conspire and combine to intentionally and arbitrarily restrict, restrain and or prohibit Kaul's ability to trade in the American minimally invasive spine surgery market + Scheme to restrict, restrain and or exclude Kaul from participating in the American minimally invasive spine surgery market + Scheme to bribe Defendant Christie to have Defendant NJBME revoke Kaul's license + Scheme to file complaints against Kaul with state and federal regulatory authorities + Scheme to participate in sham litigation against Kaul, and provide knowingly fraudulent 'expert' testimony that he was not qualified to perform minimally invasive spine surgery, the purpose of which was to have Kaul's license revoked + Scheme to participate in sham litigation against Kaul's physician employees + Scheme to revoke Kaul's license + Scheme to destroy Kaul's reputation + Scheme to destroy Kaul's economic standing + Scheme to have Kaul ostracized + Scheme to have Kaul leave the United States + Scheme to enact Illegal per se agreements to restrict reimbursement for minimally invasive spine surgery to hospitals and or surgical centers owned by hospitals + Scheme to enact Illegal per se agreements between neurosurgeons, orthopedic

surgeons and hospitals to deny privileges for minimally invasive spine surgery to Kaul and similarly trained physicians.

Tactics employed: Conspired to, and did bribe Defendant Christie as part of a series of quid pro quo schemes to have Defendant NJBME revoke Kaul's license + Illegal per se agreements to restrict reimbursement for minimally invasive spine surgery to hospitals and or surgical centers owned by hospitals + Illegal per se agreements between neurosurgeons, orthopedic surgeons and hospitals to deny privileges for minimally invasive spine surgery to physicians similarly trained as Kaul + Conspired to and did commit Perjury, Evidential Falsification, Evidential Fabrication, Evidential Omission during the administrative board proceedings (April 9, 2013 to December 13, 2013) that resulted in the revocation of Kaul's license + Conspired to did commit subornation of perjury in administrative board proceedings (April 9, 2013 to December 13, 2013) that resulted in the revocation of Kaul's license + Conspired to and did obstruct justice by encouraging Kaul's patients to commit perjury, with the promise that the revocation of his license would permit them to file malpractice claims, and that the revocation would increase the monies they received from Kaul's insurance carrier + Knowingly and willfully engaged in unlawful agreements to divide the minimally invasive spine surgery market in such a way, that physicians with similar training as Kaul, would be limited to performing only discectomies, and not fusions + Knowingly and willfully engaged in an illegal overarching conspiracy to unlawfully monopolize, conspire to monopolize, and/or, artificially allocate the market for minimally invasive spine surgery + Knowingly and willfully engaged to unlawfully conspire and combine to intentionally and arbitrarily restrict, restrain and or prohibit Kaul's ability to trade in the American minimally invasive spine surgery market + Knowingly and willfully engaged to unlawfully restrict, restrain and or exclude Kaul from participating in the American minimally invasive spine surgery market + Conspired to, and did participate in sham litigation and provided knowingly false testimony that caused the entry of false judgments against Kaul in civil malpractice cases + Conspired to, and did participate in sham litigation against Kaul's physician employees, falsely testifying that they were not qualified to perform minimally invasive spine surgery and had committed insurance fraud + Conspired to, and did participate in sham litigation against the medical licenses of Kaul's physician employees + Conspired to and did participate in sham litigation purposed to professionally ostracize Kaul, cause him to leave the United States and prevent him from publicly exposing the defendants' crimes + Use of US mail and wires to file false complaints against him with Defendant NJBME + Use of US mail and wires to send patients letters encouraging them to file frivolous lawsuits against Kaul + Use of the US mail and wires to communicate false information to patients, that he was not qualified to perform minimally invasive spine surgery + Use of the US mail and wires to send false information to personal injury lawyers that Kaul was not qualified to perform minimally invasive spine surgery and had

committed insurance fraud + Use of the US mail and wires to send false information to New Jersey politicians, encouraging them, with the promise of political campaign 'donations' to coerce Defendant NJBME and the New Jersey Attorney General to have Kaul's license revoked + Use of the US mail and wires to further scheme to have Kaul's license revoked by having Defendant Lomazow use his authority on Defendant NJBME to initiate an investigation against Kaul, in order to have his license revoked + Use of the US mails and wires to transmit written, telephone, or electronic communications regarding the knowingly fraudulent events surrounding the revocation of Kaul's license + Use of the US mails and wires to globally transmit the knowingly illegal revocation of Kaul's license to national and international healthcare related agencies (Federation of State Medical Boards + American Board of Anesthesiology + General Medical Council of the UK) and regulatory bodies, in furtherance of the illegal scheme to destroy Kaul's global reputation and livelihood, with the intention of causing his death + Use of the US mails and wires to transmit false information that Kaul has committed insurance fraud, was not qualified to perform minimally invasive spine surgery, had committed bank fraud and was going to be criminally indicted for Medicare fraud + Use of the US mail and wires to transmit the illegal consequences of the obstruction of justice and evidence tampering to the public, national (state + federal) and international healthcare agencies and regulatory bodies, in furtherance of the defendants scheme to destroy Kaul's reputation globally, his livelihood, his economic standing and prevent him from obtaining a medical license anywhere in the world, or indeed any form of employment.

Location: Morristown Memorial Hospital + Christie/Republican political fundraisers + Office of the New Jersey Attorney General + Meetings/Conferences organized by Defendant ASIPP.

**Defendant Kaufman + Defendant Heary**:
See above. As with Defendant Kaufman + Defendant Przybylski.
Location: Morristown Memorial Hospital + Surgicare Associates Surgical Center + Christie/Republican political fundraisers + Office of the New Jersey Attorney General + Meetings/Conferences organized by the New Jersey Spine Society + Meetings/Conferences organized by Defendant ASIPP + Meetings/Conferences organized by Defendant CNS + NASS headquarters in Chicago + NASS national meetings + CNS headquarters in Chicago.

**Defendant Kaufman + Defendant Cohen**:
See above. As with Defendant Kaufman + Defendant Przybylski.
Location: Morristown Memorial Hospital + Surgicare Associates Surgical Center + Christie/Republican political fundraisers + Office of the New Jersey Attorney General + Meetings/Conferences organized by the New Jersey Spine Society +

Meetings/Conferences organized by Defendant ASIPP + Meetings/Conferences organized by Defendant CNS + NASS headquarters in Chicago + NASS national meetings + CNS headquarters in Chicago.

**Defendant Kaufman + Defendant HUMC**:
See above. As with Defendant Kaufman + Defendant Przybylski.
Location: Hackensack Medical Center + Christie/Republican political fundraisers + Office of the New Jersey Attorney General + Meetings/Conferences organized by Defendant ASIPP.

**Defendant Kaufman + Defendant AHS**:
See above. As with Defendant Kaufman + Defendant Przybylski.
Location: Morristown Memorial Hospital + Christie/Republican political fundraisers + Office of the New Jersey Attorney General + Meetings/Conferences organized by Defendant ASIPP.

**Defendant Kaufman + Defendant Stolz**:
See above. As with Defendant ASIPP + Defendant Stolz.
Location: Christie/Republican political fundraisers + United States Bankruptcy Court for the District of New Jersey + Law offices of Wasserman + Jurista + Stolz, Basking Ridge, NJ + Law offices of Pringle + Quinn + Anzano, Belmar, NJ + Law offices of Rivkin Radler, Hackensack, NJ + Law offices of Shapiro Croland, Hackensack, NJ + Office of the New Jersey Attorney General.

**Defendant Kaufman + Defendant Dilorio**:
See above. As with Defendant ASIPP + Defendant Stolz.
Location: Christie/Republican political fundraisers + United States Bankruptcy Court for the District of New Jersey + Law offices of Wasserman + Jurista + Stolz, Basking Ridge, NJ + Law offices of Pringle + Quinn + Anzano, Belmar, NJ + Law offices of Rivkin Radler, Hackensack, NJ + Law offices of Shapiro Croland, Hackensack, NJ + Office of the New Jersey Attorney General.

**Defendant Przybylski + Defendant CNS**:
See above. As with Defendant Kaufman + Defendant CNS.
Location: Morristown Memorial Hospital + Christie/Republican political fundraisers + Office of the New Jersey Attorney General + Meetings/Conferences organized by Defendant CNS.

**Defendant Przybylski + Defendant Heary**:
See above. As with Defendant Kaufman + Defendant Przybylski.
Location: Morristown Memorial Hospital + Surgicare Associates Surgical Center +

Christie/Republican political fundraisers + Office of the New Jersey Attorney General + Meetings/Conferences organized by the New Jersey Spine Society + Meetings/Conferences organized by Defendant CNS + NASS headquarters in Chicago + NASS national meetings + CNS headquarters in Chicago.

**Defendant Przybylski + Defendant Cohen**:
See above. As with Defendant Kaufman + Defendant Przybylski.
<u>Location</u>: Morristown Memorial Hospital + Surgicare Associates Surgical Center + Christie/Republican political fundraisers + Office of the New Jersey Attorney General + Meetings/Conferences organized by the New Jersey Spine Society + NASS headquarters in Chicago + NASS national meetings + CNS headquarters in Chicago.

**Defendant Przybylski + Defendant HUMC**:
See above. As with Defendant Kaufman + Defendant Przybylski.
<u>Location</u>: Hackensack Medical Center + Christie/Republican political fundraisers + Office of the New Jersey Attorney General + Meetings/Conferences organized by Defendant ASIPP.

**Defendant Przybylski + Defendant AHS**:
See above. As with Defendant Kaufman + Defendant Przybylski.
<u>Location</u>: AHS + Christie/Republican political fundraisers + Office of the New Jersey Attorney General + Meetings/Conferences organized by Defendant ASIPP.

**Defendant Przybylski + Defendant Stolz**:
See above. As with Defendant ASIPP + Defendant Stolz.
<u>Location</u>: Christie/Republican political fundraisers + United States Bankruptcy Court for the District of New Jersey + Law offices of Wasserman + Jurista + Stolz, Basking Ridge, NJ + Law offices of Pringle + Quinn + Anzano, Belmar, NJ + Law offices of Rivkin Radler, Hackensack, NJ + Law offices of Shapiro Croland, Hackensack, NJ + Office of the New Jersey Attorney General + Meetings/Conferences organized by Defendant CNS.

**Defendant Przybylski + Defendant Dilorio**:
See above. As with Defendant ASIPP + Defendant Stolz.
<u>Location</u>: Christie/Republican political fundraisers + United States Bankruptcy Court for the District of New Jersey + Law offices of Wasserman + Jurista + Stolz, Basking Ridge, NJ + Law offices of Pringle + Quinn + Anzano, Belmar, NJ + Law offices of Rivkin Radler, Hackensack, NJ + Law offices of Shapiro Croland, Hackensack, NJ + Office of the New Jersey Attorney General + Meetings/Conferences organized by Defendant CNS.

**Defendant CNS + Defendant Heary**:

See above. As with Defendant Kaufman + Defendant CNS.

Location: Morristown Memorial Hospital + Christie/Republican political fundraisers + Office of the New Jersey Attorney General + Meetings/Conferences organized by Defendant CNS.

**Defendant CNS + Defendant Cohen**:

See above. As with Defendant Kaufman + Defendant CNS.

Location: Morristown Memorial Hospital + Christie/Republican political fundraisers + Office of the New Jersey Attorney General + Meetings/Conferences organized by Defendant CNS.

**Defendant CNS + Defendant HUMC**:

See above. As with Defendant Kaufman + Defendant CNS.

Location: Hackensack Medical Center + Christie/Republican political fundraisers + Office of the New Jersey Attorney General + Meetings/Conferences organized by Defendant CNS.

**Defendant CNS + Defendant AHS**:

See above. As with Defendant Kaufman + Defendant CNS.

Location: Morristown Memorial Hospital + Christie/Republican political fundraisers + Office of the New Jersey Attorney General + Meetings/Conferences organized by Defendant CNS.

**Defendant CNS + Defendant Stolz**:

See above. As with Defendant ASIPP + Defendant Stolz.

Location: Christie/Republican political fundraisers + United States Bankruptcy Court for the District of New Jersey + Law offices of Wasserman + Jurista + Stolz, Basking Ridge, NJ + Law offices of Pringle + Quinn + Anzano, Belmar, NJ + Law offices of Rivkin Radler, Hackensack, NJ + Law offices of Shapiro Croland, Hackensack, NJ + Office of the New Jersey Attorney General + Meetings/Conferences organized by Defendant CNS.

**Defendant CNS + Defendant DiIorio**:

See above. As with Defendant ASIPP + Defendant Stolz.

Location: Christie/Republican political fundraisers + United States Bankruptcy Court for the District of New Jersey + Law offices of Wasserman + Jurista + Stolz, Basking Ridge, NJ + Law offices of Pringle + Quinn + Anzano, Belmar, NJ + Law offices of Rivkin Radler, Hackensack, NJ + Law offices of Shapiro Croland, Hackensack, NJ + Office of

the New Jersey Attorney General + Meetings/Conferences organized by Defendant CNS.

**Defendant Heary + Defendant Cohen**:
See above. As with Defendant Kaufman + Defendant Przybylski.
<u>Location</u>: Morristown Memorial Hospital + Surgicare Associates Surgical Center + Christie/Republican political fundraisers + Office of the New Jersey Attorney General + Meetings/Conferences organized by the New Jersey Spine Society + Meetings/Conferences organized by Defendant CNS + NASS headquarters in Chicago + NASS national meetings + CNS headquarters in Chicago.

**Defendant Heary + Defendant HUMC**:
See above. As with Defendant Kaufman + Defendant Przybylski.
<u>Location</u>: Hackensack Medical Center + Surgicare Associates Surgical Center + Christie/Republican political fundraisers + Office of the New Jersey Attorney General + Meetings/Conferences organized by the New Jersey Spine Society + Meetings/Conferences organized by Defendant CNS + NASS headquarters in Chicago + NASS national meetings + CNS headquarters in Chicago.

**Defendant Heary + Defendant AHS**:
See above. As with Defendant Kaufman + Defendant Przybylski.
<u>Location</u>: Morristown Medical Center + Christie/Republican political fundraisers + Office of the New Jersey Attorney General + Meetings/Conferences organized by the New Jersey Spine Society.

**Defendant Heary + Defendant Stolz**:
See above. As with Defendant ASIPP + Defendant Stolz.
<u>Location</u>: Morristown Memorial Hospital + Christie/Republican political fundraisers + United States Bankruptcy Court for the District of New Jersey + Law offices of Wasserman + Jurista + Stolz, Basking Ridge, NJ + Law offices of Pringle + Quinn + Anzano, Belmar, NJ + Law offices of Rivkin Radler, Hackensack, NJ + Law offices of Shapiro Croland, Hackensack, NJ + Office of the New Jersey Attorney General.

**Defendant Heary + Defendant Dilorio**:
See above. As with Defendant ASIPP + Defendant Stolz.
<u>Location</u>: Morristown Memorial Hospital + Christie/Republican political fundraisers + United States Bankruptcy Court for the District of New Jersey + Law offices of Wasserman + Jurista + Stolz, Basking Ridge, NJ + Law offices of Pringle + Quinn +

Anzano, Belmar, NJ + Law offices of Rivkin Radler, Hackensack, NJ + Law offices of Shapiro Croland, Hackensack, NJ + Office of the New Jersey Attorney General.

**Defendant Cohen + Defendant HUMC**:
See above. As with Defendant Kaufman + Defendant Przybylski.
Location: Hackensack Medical Center + Surgicare Associates Surgical Center + Christie/Republican political fundraisers + Office of the New Jersey Attorney General + Meetings/Conferences organized by the New Jersey Spine Society + Meetings/Conferences organized by Defendant CNS + NASS headquarters in Chicago + NASS national meetings + CNS headquarters in Chicago.

**Defendant Cohen + Defendant AHS**:
See above. As with Defendant Kaufman + Defendant Przybylski.
Location: Hackensack Medical Center + Surgicare Associates Surgical Center + Christie/Republican political fundraisers + Office of the New Jersey Attorney General + Meetings/Conferences organized by the New Jersey Spine Society + Meetings/Conferences organized by Defendant CNS + NASS headquarters in Chicago + NASS national meetings + CNS headquarters in Chicago.

**Defendant Cohen + Defendant Stolz**:
See above. As with Defendant ASIPP + Defendant Stolz.
Location: Morristown Memorial Hospital + Christie/Republican political fundraisers + United States Bankruptcy Court for the District of New Jersey + Law offices of Wasserman + Jurista + Stolz, Basking Ridge, NJ + Law offices of Pringle + Quinn + Anzano, Belmar, NJ + Law offices of Rivkin Radler, Hackensack, NJ + Law offices of Shapiro Croland, Hackensack, NJ + Office of the New Jersey Attorney General.

**Defendant Cohen + Defendant Dilorio**:
See above. As with Defendant ASIPP + Defendant Stolz.
Location: Morristown Memorial Hospital + Christie/Republican political fundraisers + United States Bankruptcy Court for the District of New Jersey + Law offices of Wasserman + Jurista + Stolz, Basking Ridge, NJ + Law offices of Pringle + Quinn + Anzano, Belmar, NJ + Law offices of Rivkin Radler, Hackensack, NJ + Law offices of Shapiro Croland, Hackensack, NJ + Office of the New Jersey Attorney General.

**Defendant HUMC + Defendant AHS**:
See above. As with Defendant Kaufman + Defendant Przybylski.
Location: Hackensack Medical Center + Morristown Memorial Medical Center + Christie/Republican political fundraisers + Office of the New Jersey Attorney General + New Jersey Hospital Association meetings.

**Defendant HUMC + Defendant Stolz**:

See above. As with Defendant ASIPP + Defendant Stolz.

Location: Hackensack Medical Center + Christie/Republican political fundraisers + United States Bankruptcy Court for the District of New Jersey + Law offices of Wasserman + Jurista + Stolz, Basking Ridge, NJ + Law offices of Pringle + Quinn + Anzano, Belmar, NJ + Law offices of Rivkin Radler, Hackensack, NJ + Law offices of Shapiro Croland, Hackensack, NJ + Office of the New Jersey Attorney General.

**Defendant HUMC + Defendant Dilorio**:

See above. As with Defendant ASIPP + Defendant Stolz.

Location: Hackensack Medical Center + Christie/Republican political fundraisers + United States Bankruptcy Court for the District of New Jersey + Law offices of Wasserman + Jurista + Stolz, Basking Ridge, NJ + Law offices of Pringle + Quinn + Anzano, Belmar, NJ + Law offices of Rivkin Radler, Hackensack, NJ + Law offices of Shapiro Croland, Hackensack, NJ + Office of the New Jersey Attorney General.

**Defendant AHS + Defendant Stolz**:

See above. As with Defendant ASIPP + Defendant Stolz.

Location: Morristown Memorial Hospital + Christie/Republican political fundraisers + United States Bankruptcy Court for the District of New Jersey + Law offices of Wasserman + Jurista + Stolz, Basking Ridge, NJ + Law offices of Pringle + Quinn + Anzano, Belmar, NJ + Law offices of Rivkin Radler, Hackensack, NJ + Law offices of Shapiro Croland, Hackensack, NJ + Office of the New Jersey Attorney General.

**Defendant AHS + Defendant Dilorio**:

See above. As with Defendant ASIPP + Defendant Stolz.

Location: Morristown Memorial Hospital + Christie/Republican political fundraisers + United States Bankruptcy Court for the District of New Jersey + Law offices of Wasserman + Jurista + Stolz, Basking Ridge, NJ + Law offices of Pringle + Quinn + Anzano, Belmar, NJ + Law offices of Rivkin Radler, Hackensack, NJ + Law offices of Shapiro Croland, Hackensack, NJ + Office of the New Jersey Attorney General.

**Defendant Stolz + Defendant Dilorio**:

See above. As with Defendant ASIPP + Defendant Stolz.

Location: Christie/Republican political fundraisers + United States Bankruptcy Court for the District of New Jersey + Law offices of Wasserman + Jurista + Stolz, Basking Ridge, NJ + Law offices of Pringle + Quinn + Anzano, Belmar, NJ + Law offices of Rivkin Radler, Hackensack, NJ + Law offices of Shapiro Croland, Hackensack, NJ + Office of the New Jersey Attorney General.

The financial benefits derived by Defendants rightfully belongs to Kaul, because the monies were a consequence of the increased revenues that flowed from the provision of minimally invasive spine surgery to patients, who either belonged to Kaul's practice, or who would, in all likelihood have sought treatment from the Plaintiff with the continued expansion of his practice and reputation.

It would be inequitable under the laws of all states and jurisdictions within the United States for the Defendants to be permitted to retain any of the monies that derived from their unfair and unconscionable methods, acts and trade practices, as are alleged in this Complaint. Defendants should be compelled to disgorge in a common fund for the benefit of Kaul all unlawful or inequitable proceeds received by them.

Defendants Stolz defrauded Kaul and the Bankruptcy Court, by willfully failing to collect Kaul's monies from Defendants Allstate and GEICO. Defendant DiOrio defrauded Kaul by providing knowingly false advice to Kaul that caused him to relinquish the title to the real estate at 111 Wanaque Avenue, Pompton Lakes, NJ. Defendant DiOrio defrauded Kaul because he had been promised legal work from Defendant GEICO, and in fact has provided that legal work since approximately late 2014.

Defendants Stolz and Diorio procured monies through fraud and deceit at the expense of Kaul, his corporations and the majority of its creditors.

A constructive trust should be imposed upon all unlawful or inequitable sums received by Defendants traceable to Plaintiff.

## COUNT TWELVE
### Deprivation of Right Under Color of Law
**(By Plaintiff Against Defendants Christie (in his ex-official capacity) + Kaufman (in his official capacity) + Przybylski (in his official capacity) + Solomon (in his official capacity) + Hafner (in her official capacity) + Allstate + Geico + NJBME**

Plaintiff hereby repeats and incorporates by reference each and every one of the foregoing paragraphs as though fully set forth.
The Defendants deprived Kaul of his right to due process by:
**(a)** Forging, altering and tampering with court transcripts and Defendant Solomon's Final Opinion, issued on December 13, 2013.
**(b)** Defendants Solomon, Przybylski and Kaufman collectively committed two hundred and seventy-eight (278) separate instances of perjury, misrepresentation, evidential

omission and gross mischaracterization in the administrative law proceeding (April 9 – June 28, 2013).

**(c)** Failure of Defendant NJBME to have an independent analysis and comparison of the state authored transcripts, the independent transcripts, the court audio recordings, and Defendant Solomon's Final Opinion.

**(d)** Failure of Defendant NJBME to respond to Plaintiff's written pleas for an investigation of the Tampered Evidence.

**(e)** Failure of NJBME to acknowledge the impartiality of the medical board, in adjudicating Kaul's complaint of Evidence Tampering, in violation of Kaul's Fourteenth Amendment right to an impartial tribunal. The Defendants acted with malicious and reckless disregard for Kaul's due process rights. Defendant NJBME did this in the knowledge that Kaul had, on June 7, 2012, requested that the Mercer County Court appoint a special prosecutor and ad hoc medical board. The latter request was submitted as a consequence of AG Chiesa's prejudicial comments to the media on May 9, 2012, and the illegal suspension of Kaul's CDS prescribing license on May 22, 2012 by AG Chiesa's subordinate, and acting director of the Division of Consumer Affairs, Eric Kanefsky, Esq.

**(f)** Failure of Defendant NJBME to exclude Defendant Hafner from any involvement in Kaul's application for license reinstatement in 2014, on the basis that Kaul had filed an ethics complaint against Hafner, in September 2013.

**(g)** Failure of NJBME to suspend the legal proceedings, until DAG Hafner, had recused herself from the matter. Hafner's personal animus towards Kaul, and her personal relationship with Defendant Kaufman, violated Kaul's right to an impartial tribunal. This violation was magnified by the unconstitutional configuration of the mechanism of physician regulation.

The Defendants committed and conspired to commit perjury. The Defendants knew that Kaul was qualified, credentialed and licensed to perform minimally invasive spine surgery. The Defendants abused their positions of public authority to mislead the public into believing their lies, and thus violated Kaul's right to substantive due process.

The Defendants committed and conspired to commit a knowingly dishonest interpretation of the alternative privileges regulation. The Defendants knew the regulation was not required for the performance of minimally invasive spine surgery. In fact, during the OAL proceedings, when Defendant Hafner was unable to articulate an argument in support of her contention, Defendant Solomon interjected with his own interpretation, albeit flawed.  The Defendants committed and conspired to commit a knowingly dishonest interpretation of the rights afforded to Kaul by his plenary medical license that permitted him to practice both medicine and SURGERY.

The Defendants committed and conspired to commit a concealment of the truth of the clinical effectiveness of Kaul's minimally invasive spine surgery practice, by refusing with ill intent, Kaul's suggestion to have his practice independently analyzed and monitored.

**From paragraph 892 to 919 Kaul has pled with particularity, fact specific to each element, of each claim, against each defendant, in a separate and distinct manner:**

<u>Defendant Christie + Defendant Kaufman</u>:
<u>Date range</u>: 2009 to 2019.
<u>Conduits of Communication + Bribery to Christie</u>: Public relations firm (Mercury Public Relations + Princeton Public Relations + Law Firm (Brach Eichler + Wolf Samson) + Through state government intermediary + Directly + Political campaign fundraisers + Political campaign donations.
<u>Mode of communications</u>: US mail + Email + Voice message + SMS (text) + Face to face. Substance of communications: Scheme to testify that every aspect of the care Kaul delivered to his patients "grossly deviated" from the standard of care + Scheme to have Defendant Solomon buttress Defendant Przybylski's knowingly false testimony that every aspect of the care Kaul delivered to his patients "grossly deviated" from the standard of care + Scheme to have Defendant Hafner pervert the course of justice by buttressing Defendant Przybylski's knowingly false testimony that every aspect of the care Kaul delivered to his patients "grossly deviated" from the standard of care + Scheme to use the bankruptcy proceedings to defraud Kaul of his assets, his real estate holdings and $ 45 million owed to him by insurance companies, including defendants Allstate + Geico + Scheme to conceal from Kaul the defendants' pattern of racketeering in the United States Bankruptcy Court for the District of New Jersey + Scheme to engage in evidence tampering and perjury in the administrative board proceedings, that caused the revocation of Kaul's license, as evidenced in 'The Solomon Critique' (**K1-D.E. 225 Page ID 4940**) and 'The Solomon Critique 2' (**K1-D.E. 299 Page ID 7202**) + Scheme to violate Kaul's right to due process, his right to an impartial tribunal and his civil rights, through the commission of knowingly false testimony that Kaul had allegedly **"grossly deviated"** from the standard of care for reasons pertaining to qualifications, credentials, alternative privileges and hospital privileges. Defendants Solomon, Hafner, Przybylski and Kaufman knew that under the law the standard of care is not determined by any of these reasons, but simply by the manner in which the care is delivered, but yet in this knowledge they abused the power of public office for personal and political gain, at the expense of the public + Scheme to abuse the power of public office and quasi-judicial proceedings to perpetrate a massive fraud on the public, by willfully misrepresenting that Kaul was not qualified, credentialed or licensed to perform

minimally invasive spine surgery. The defendants knew that Kaul possessed a license to practice medicine and surgery, had been credentialed by at least six state licensed surgical centers to perform minimally invasive spine surgery, did not require alternative or hospital privileges to perform minimally invasive spine surgery, had commenced his training in minimally invasive spine surgery in 2002, three years before Defendant Przybylski, a market competitor and 'expert' for Defendant NJBME + Scheme to propagate to the public, a knowingly false interpretation of the alternative privilege regulation, in the knowledge that they were abusing the power of public office for personal and political gain. The defendants knew that Kaul did not require alternative privileges to perform minimally invasive spine surgery in his outpatient surgical center + Scheme to suppress evidence of the superior clinical outcomes of Kaul's minimally invasive spine surgery practice, by refusing to have Kaul's practice independently analyzed and monitored + Scheme to engage in obstruction of justice by ignoring Kaul's written requests for an independent investigation of Kaul's claims of evidence tampering + Scheme to participate in a knowingly illegal system of physician regulation, that violated Kaul's civil rights, his constitutionally protected right to due process and his right to an impartial tribunal, by willfully conducting proceedings through and by Defendant NJBME, the New Jersey Office of Administrative Law and the Office of the New Jersey Attorney General. These governmental agencies are all subservient to the executive branch of state government. This is an illegal configuration that violates the separation of powers principle of the United States Constitution, a principle that protects citizens due process rights when life, liberty and property are at stake + Scheme to abuse the authority of the office of the Governor of the State of New Jersey for the purposes of accepting bribes, as part of a series quid pro quo schemes purposed to have Defendant NJBME revoke Kaul's license + Scheme to violate Kaul's right to due process by failing to exclude Defendant Hafner from any further involvement in Kaul's case and or his application in 2014 for reinstatement of his medical license. This was a knowing and willful violation based on the fact that Kaul had filed an ethics complaint against Hafner in September 2013 + Scheme to deprive Kaul of his civil rights and right to due process by permitting Defendant Hafner, an individual involved in a personal relationship with Defendant Kaufman, who, like Defendant Kaufman, had demonstrated a vitriolic personal animus towards Kaul.

<u>Tactics employed</u>: Conspired to and did provide false knowingly that every aspect of the care Kaul delivered to his patients **"grossly deviated"** from the standard of care + Conspired to and did have Defendant Solomon buttress Defendant Przybylski's knowingly false testimony that every aspect of the care Kaul delivered to his patients **"grossly deviated"** from the standard of care + Conspired to and did engage in evidence tampering and perjury in the administrative board proceedings, that caused the revocation of Kaul's license, as evidenced in 'The Solomon Critique' (**K1-D.E. 225 Page ID 4940**) and 'The Solomon Critique 2' (**K1-D.E. 299 Page ID 7202**) + Conspired

to and did violate Kaul's right to due process, his right to an impartial tribunal and his civil rights, through the commission of knowingly false testimony that Kaul had allegedly "grossly deviated" from the standard of care for reasons pertaining to qualifications, credentials, alternative privileges and hospital privileges. Defendants Solomon, Hafner, Przybylski and Kaufman knew that under the law the standard of care is not determined by any of these reasons, but simply by the manner in which the care is delivered, but yet in this knowledge they abused the power of public office for personal and political gain, at the expense of the public + Conspired to and did violate abuse the power of public office and quasi-judicial proceedings to perpetrate a massive fraud on the public, by willfully misrepresenting that Kaul was not qualified, credentialed or licensed to perform minimally invasive spine surgery. The defendants knew that Kaul possessed a license to practice medicine and surgery, had been credentialed by at least six state licensed surgical centers to perform minimally invasive spine surgery, did not require alternative or hospital privileges to perform minimally invasive spine surgery, had commenced his training in minimally invasive spine surgery in 2002, three years before Defendant Przybylski, a market competitor and 'expert' for Defendant NJBME + Conspired to and did violate propagate to the public, a knowingly false interpretation of the alternative privilege regulation, in the knowledge that they were abusing the power of public office for personal and political gain. The defendants knew that Kaul did not require alternative privileges to perform minimally invasive spine surgery in his outpatient surgical center + Conspired to and did suppress evidence of the superior clinical outcomes of Kaul's minimally invasive spine surgery practice, by refusing to have Kaul's practice independently analyzed and monitored + Conspired to and did engage in obstruction of justice by ignoring Kaul's written requests for an independent investigation of Kaul's claims of evidence tampering + Conspired to and did participate in a knowingly illegal system of physician regulation, that violated Kaul's civil rights, his constitutionally protected right to due process and his right to an impartial tribunal, by willfully conducting proceedings through and by Defendant NJBME, the New Jersey Office of Administrative Law and the Office of the New Jersey Attorney General. These governmental agencies are all subservient to the executive branch of state government. This is an illegal configuration that violates the separation of powers principle of the United States Constitution, a principle that protects citizens due process rights when life, liberty and property are at stake + Conspired to and did abuse the authority of the office of the Governor of the State of New Jersey for the purposes of accepting bribes, as part of a series quid pro quo schemes purposed to have Defendant NJBME revoke Kaul's license + Conspired to and did violate Kaul's right to due process by failing to exclude Defendant Hafner from any further involvement in Kaul's case and or his application in 2014 for reinstatement of his medical license. This was a knowing and willful violation based on the fact that Kaul had filed an ethics complaint against Hafner

in September 2013 + Conspired to and did deprive Kaul of his civil rights and right to due process by permitting Defendant Hafner, an individual involved in a personal relationship with Defendant Kaufman, who, like Defendant Kaufman, had demonstrated a vitriolic personal animus towards Kaul.

Location: Governor's office in Trenton + Christie/Republican political fundraisers + Morristown Memorial Hospital + Office of the New Jersey Attorney General.

**Defendant Christie + Defendant Przybylski**:

See above. As with Defendant Christie + Defendant Kaufman.

Location: Governor's office in Trenton + Christie/Republican political fundraisers + Office of the New Jersey Attorney General.

**Defendant Christie + Defendant Solomon**:

See above. As with Defendant Christie + Defendant Kaufman.

Location: Governor's office in Trenton + Christie/Republican political fundraisers + Office of the New Jersey Attorney General + New Jersey Office of Administrative Law.

**Defendant Christie + Defendant Hafner**:

See above. As with Defendant Christie + Defendant Kaufman.

Location: Governor's office in Trenton + Christie/Republican political fundraisers + Office of the New Jersey Attorney General.

**Defendant Christie + Defendant Allstate**:

See above. As with Defendant Christie + Defendant Kaufman.

Location: Governor's office in Trenton + Christie/Republican political fundraisers + Office of the New Jersey Attorney General + Allstate corporate offices in Northbrook, Illinois.

**Defendant Christie + Defendant GEICO**:

See above. As with Defendant Christie + Defendant Kaufman.

Location: Governor's office in Trenton + Christie/Republican political fundraisers + Office of the New Jersey Attorney General + Geico corporate offices in Chevy Chase, Maryland.

**Defendant Christie + Defendant NJBME**:

See above. As with Defendant Christie + Defendant Kaufman.

Location: Governor's office in Trenton + Christie/Republican political fundraisers + Office of the New Jersey Attorney General.

**Defendant Kaufman + Defendant Przybylski**:

See above. As with Defendant Christie + Defendant Kaufman.
Location: Morristown Memorial Hospital + Office of the New Jersey Attorney General +
Meetings/Conferences organized by Defendant ASIPP + Meetings/Conferences
organized by Defendant CNS + Meetings/Conferences organized by the New Jersey
Spine Society + NASS headquarters in Chicago + NASS national meetings +CNS
headquarters in Chicago.

**Defendant Kaufman + Defendant Solomon**:
See above. As with Defendant Christie + Defendant Kaufman.
Location: Office of the New Jersey Attorney General + New Jersey Office of
Administrative Law.

**Defendant Kaufman + Defendant Hafner**:
See above. As with Defendant Christie + Defendant Kaufman.
Location: Governor's office in Trenton + Christie/Republican political fundraisers +
Morristown Memorial Hospital + Office of the New Jersey Attorney General.

**Defendant Kaufman + Defendant Allstate**:
See above. As with Defendant Christie + Defendant Kaufman.
Location: Governor's office in Trenton + Christie/Republican political fundraisers +
Morristown Memorial Hospital + Office of the New Jersey Attorney General + Allstate
corporate offices in Northbrook, Illinois.

**Defendant Kaufman + Defendant Geico**:
See above. As with Defendant Christie + Defendant Kaufman.
Location: Governor's office in Trenton + Christie/Republican political fundraisers +
Morristown Memorial Hospital + Office of the New Jersey Attorney General + Geico
corporate offices in Chevy Chase, Maryland.

**Defendant Kaufman + Defendant NJBME**:
See above. As with Defendant Christie + Defendant Kaufman.
Location: Governor's office in Trenton + Christie/Republican political fundraisers +
Morristown Memorial Hospital + Office of the New Jersey Attorney General.

**Defendant Przybylski + Defendant Solomon**:
See above. As with Defendant Christie + Defendant Kaufman.
Location: Governor's office in Trenton + Christie/Republican political fundraisers +
Office of the New Jersey Attorney General + New Jersey Office of Administrative Law.

**Defendant Przybylski + Defendant Hafner**:

See above. As with Defendant Christie + Defendant Kaufman.

Location: Governor's office in Trenton + Christie/Republican political fundraisers + Office of the New Jersey Attorney General + New Jersey Office of Administrative Law.

**Defendant Przybylski + Defendant Allstate**:

See above. As with Defendant Christie + Defendant Kaufman.

Location: Governor's office in Trenton + Christie/Republican political fundraisers + Office of the New Jersey Attorney General + New Jersey Office of Administrative Law + Allstate corporate offices in Northbrook, Illinois.

**Defendant Przybylski + Defendant Geico**:

See above. As with Defendant Christie + Defendant Kaufman.

Location: Governor's office in Trenton + Christie/Republican political fundraisers + Office of the New Jersey Attorney General + Geico corporate offices in Chevy Chase, Maryland.

**Defendant Przybylski + Defendant NJBME**:

See above. As with Defendant Christie + Defendant Kaufman.

Location: Governor's office in Trenton + Christie/Republican political fundraisers + Office of the New Jersey Attorney General + New Jersey Office of Administrative Law.

**Defendant Solomon + Defendant Hafner**:

See above. As with Defendant Christie + Defendant Kaufman.

Location: Governor's office in Trenton + Christie/Republican political fundraisers + Office of the New Jersey Attorney General + New Jersey Office of Administrative Law.

**Defendant Solomon + Defendant Allstate**:

See above. As with Defendant Christie + Defendant Kaufman.

Location: Governor's office in Trenton + Christie/Republican political fundraisers + Office of the New Jersey Attorney General + Allstate corporate offices in Northbrook, Illinois + New Jersey Office of Administrative Law.

**Defendant Solomon + Defendant Geico**:

See above. As with Defendant Christie + Defendant Kaufman.

Location: Governor's office in Trenton + Christie/Republican political fundraisers + Office of the New Jersey Attorney General + New Jersey Office of Administrative Law + Geico corporate offices in Chevy Chase, Maryland.

**Defendant Solomon + Defendant NJBME**:

See above. As with Defendant Christie + Defendant Kaufman.

<u>Location</u>: Governor's office in Trenton + Christie/Republican political fundraisers + Office of the New Jersey Attorney General + New Jersey Office of Administrative Law.

**Defendant Hafner + Defendant Allstate**:
See above. As with Defendant Christie + Defendant Kaufman.
<u>Location</u>: Governor's office in Trenton + Christie/Republican political fundraisers + Office of the New Jersey Attorney General + New Jersey Office of Administrative Law.

**Defendant Hafner + Defendant Geico**:
See above. As with Defendant Christie + Defendant Kaufman.
<u>Location</u>: Governor's office in Trenton + Christie/Republican political fundraisers + Office of the New Jersey Attorney General + Geico corporate offices in Chevy Chase, Maryland.

**Defendant Hafner + Defendant NJBME**:
See above. As with Defendant Christie + Defendant Kaufman.
<u>Location</u>: Governor's office in Trenton + Christie/Republican political fundraisers + Office of the New Jersey Attorney General + New Jersey Office of Administrative Law.

**Defendant Allstate + Defendant Geico**:
See above. As with Defendant Christie + Defendant Kaufman.
<u>Location</u>: Governor's office in Trenton + Christie/Republican political fundraisers + Office of the New Jersey Attorney General + Allstate corporate offices in Northbrook, Illinois + Geico corporate offices in Chevy Chase, Maryland.

**Defendant Allstate + Defendant NJBME**:
See above. As with Defendant Christie + Defendant Kaufman.
<u>Location</u>: Governor's office in Trenton + Christie/Republican political fundraisers + Office of the New Jersey Attorney General +  Allstate corporate offices in Northbrook, Illinois + New Jersey Office of Administrative Law.

**Defendant Geico + Defendant NJBME**:
See above. As with Defendant Christie + Defendant Kaufman.
<u>Location</u>: Governor's office in Trenton + Christie/Republican political fundraisers + Office of the New Jersey Attorney General + Geico corporate offices in Chevy Chase, Maryland + Geico corporate offices in Chevy Chase, Maryland.

Defendants Allstate and GEICO are **"persons"** under 42 U.S.C. § 1983. Defendants Allstate and GEICO established and fund the Office of the Insurance Fraud Prosecutor. Defendants Allstate and GEICO fund the Office of the Attorney General and share a

common server with the Office of the Attorney General. Defendants Allstate and GEICO draft healthcare legislation for the state, a function that is governmental in nature.

In 2009, the Seventh Circuit summarized the US Supreme Court's criteria, to determine whether the actions of private parties constituted governmental functions. The tests were (1) the symbiotic relationship test (Burton v Wilmington Parking South., 365 U.S. 715, 81 S.Ct. 856, 6 L.Ed2d 45 (1961), (2) the state command and encouragement test (Moose Lodge No. 107, 407 U.S. at 176-77, 92 S.Ct (1965), (3) the joint participation doctrine (Lugar v Edmonton Oil Co., 1982), (4) the public function test (Jackson v Metro Edison Co., 419 U.S. 345, 353 95 S.Ct 449, 42 L.Ed2d 477 (1974).

The State Actor Tests that confirm that Defendants Allstate and GEICO possess 1983 **"person"** status are the **(i)** symbiotic test, **(ii)** joint participation doctrine, **(iii)** state command and encouragement test, **(iv)** public function test, **(v)** pervasive entwinement.

State action is found when a private corporation or actor provides a **"public function"** i.e. the drafting of healthcare legislation, as in Marsh v Alabama, 326 U.S. 501 (1946). See  also Terry v Adams 345 U.S. 461 (1953); Evans v Newton, 382 U.S. 296 (1966) (**"That is to say, when private individuals or groups are endowed by the State with powers or function governmental in nature, they become agencies or instrumentalities of the State and subject to Constitutional limitations."**). State action is found when the private corporation is heavily regulated by the state i.e. the Department of Banking and Insurance, thereby giving the state control of the corporations' acts.

Defendants Allstate and GEICO are alleged to conduct criminal investigations outsourced from the Office of the Insurance Fraud Prosecutor. These investigations are disguised as civil matters, in order to deceive parties into believing that they do not need to take the usual legal precautions, associated with criminal investigations.

Kaul alleges, upon information and belief, that lawyers for Defendants Allstate and GEICO assisted, in the drafting of Defendant Solomon's Final Opinion, that was issued on December 13, 2013.
The Defendants abused their official public and State Actor positions to advance their private commercial interests, at the expense of Kaul's Constitutional right to due process. Defendants Przybylski, Kaufman and Solomon collectively committed two hundred and seventy-eight (278) separate instances of perjury, misrepresentation, evidential omission and mischaracterization in the MATTER OF THE SUSPENSION OR REVOCATION OF THE LICENSE OF RICHARD A. KAUL, M.D. TO PRACTICE MEDICINE AND SURGERY IN NEW JERSEY (April 9, 2013 to June 28, 2013).

Defendants Allstate and GEICO are alleged to have conspired with Defendant Solomon to issue a fraudulent opinion, that contains two hundred and seventy-eight (278) separate acts of perjury and evidential omissions, misrepresentations and gross mischaracterizations.

Defendants Przybylski, Kaufman, Hafner and Solomon abused the power of their public function for personal gain. Defendants Przybylski and Kaufman in the knowledge that they were local business competitors of Kaul, knew that their testimony was conflicted, but they failed to recuse themselves from the provision of 'expert' testimony. In fact, Defendant Przybylski, devoted four (4) days to providing false testimony against Kaul, that was founded on a standard he knew did not exist. This was a fact he admitted on cross-examination.

### COUNT THIRTEEN
### Commercial Disparagement
### (By Plaintiff Against Defendants ASIPP + Kaufman + Przybylski + Allstate + GEICO + Heary + Cohen + HUMC + AHS).

Plaintiff hereby repeats and incorporates by reference each and every one of the foregoing paragraphs as though fully set forth.

Commencing in 2005 the Defendants knowingly and with malice made false statements to patients, physicians, medical device suppliers and lawyers that Kaul was not qualified to perform minimally invasive spine surgery.

The false statements were intended to cause financial damage to Kaul and his business and did in fact cause immense harm to Kaul's reputation and business.

The Defendants knew that Kaul was qualified to perform minimally invasive spine surgery but acted with reckless disregard of its truth.

The Defendant encouraged patients to file lawsuits against Kaul, and criticized Kaul's work, the purpose of which was to attack Kaul's reputation and economic standing, and to have Kaul's medical license revoked.

From paragraph 934 to 969 Kaul has pled with particularity, fact specific to each element, of each claim, against each defendant, in a separate and distinct manner:

**Defendant ASIPP + Defendant Kaufman**:

<u>Date range</u>: 2006 to 2019

<u>Mode of communications</u>: Email + Voice message + SMS (text) + Face to face.

<u>Substance of communications</u>: Scheme to encourage patients to initiate civil litigation and medical board complaints against Kaul and similarly trained physicians + Scheme to participate in sham litigation against Kaul, and provide knowingly fraudulent 'expert' testimony that he was not qualified to perform minimally invasive spine surgery, the purpose of which was to have Kaul's license revoked + Scheme to participate in sham litigation against Kaul's physician employees + Scheme to revoke Kaul's license + Scheme to destroy Kaul's reputation + Scheme to destroy Kaul's economic standing + Scheme to have Kaul ostracized + Scheme to have Kaul leave the United States + Scheme to testify that every aspect of the care Kaul delivered to his patients "grossly deviated" from the standard of care + Scheme to have Defendant Solomon buttress Defendant Przybylski's knowingly false testimony that every aspect of the care Kaul delivered to his patients "grossly deviated" from the standard of care + Scheme to have Defendant Hafner pervert the course of justice by buttressing Defendant Przybylski's knowingly false testimony that every aspect of the care Kaul delivered to his patients "grossly deviated" from the standard of care + Scheme to use the bankruptcy proceedings to defraud Kaul of his assets, his real estate holdings and $ 45 million owed to him by insurance companies, including defendants Allstate + Geico + Scheme to violate Kaul's right to due process, his right to an impartial tribunal and his civil rights, through the commission of knowingly false testimony that Kaul had allegedly "grossly deviated" from the standard of care for reasons pertaining to qualifications, credentials, alternative privileges and hospital privileges. Defendants Solomon, Hafner, Przybylski and Kaufman knew that under the law the standard of care is not determined by any of these reasons, but simply by the manner in which the care is delivered, but yet in this knowledge they abused the power of public office for personal and political gain, at the expense of the public + Scheme to abuse the power of public office and quasi-judicial proceedings to perpetrate a massive fraud on the public, by willfully misrepresenting that Kaul was not qualified, credentialed or licensed to perform minimally invasive spine surgery. The defendants knew that Kaul possessed a license to practice medicine and surgery, had been credentialed by at least six state licensed surgical centers to perform minimally invasive spine surgery, did not require alternative or hospital privileges to perform minimally invasive spine surgery, had commenced his training in minimally invasive spine surgery in 2002, three years before Defendant Przybylski, a market competitor and 'expert' for Defendant NJBME + Scheme to propagate to the public, a knowingly false interpretation of the alternative privilege regulation, in the knowledge that they were abusing the power of public office for personal and political gain. The defendants knew that Kaul did not require alternative privileges to perform minimally invasive spine surgery in his outpatient surgical center + Scheme to suppress evidence

of the superior clinical outcomes of Kaul's minimally invasive spine surgery practice, by refusing to have Kaul's practice independently analyzed and monitored.

Tactics employed: Conspired to, and did encourage patients to file lawsuits and complaints with Defendant NJBME against Kaul + Conspired to, and did participate in sham litigation and provided knowingly false testimony that caused the revocation of Kaul's license + Conspired to, and did provide knowingly fraudulent testimony under oath that the care Kaul delivered to his patients "grossly deviated" from the standard of care, because Kaul did not possess alternative privileges or hospital privileges + Conspired to, and did provide knowingly fraudulent testimony under oath that the care Kaul delivered to his patients "grossly deviated" from the standard of care, because Kaul's training did not involve a neurosurgical residency + Conspired to, and did participate in sham litigation and provided knowingly false testimony that caused the entry of false judgments against Kaul in civil malpractice cases + Use of the US mail and wires to communicate false information to patients, that he was not qualified to perform minimally invasive spine surgery + Use of the US mail and wires to send false information to personal injury lawyers that Kaul was not qualified to perform minimally invasive spine surgery and had committed insurance fraud + Use of the US mails and wires to transmit written, telephone, or electronic communications regarding the knowingly fraudulent events surrounding the revocation of Kaul's license + Use of the US mails and wires to globally transmit the knowingly illegal revocation of Kaul's license to national and international healthcare related agencies (Federation of State Medical Boards + American Board of Anesthesiology + General Medical Council of the UK) and regulatory bodies, in furtherance of the illegal scheme to destroy Kaul's global reputation and livelihood, with the intention of causing his death + Use of the US mails and wires to transmit false information that Kaul has committed insurance fraud, was not qualified to perform minimally invasive spine surgery, had committed bank fraud and was going to be criminally indicted for Medicare fraud **(the Defendants co-opted the NJ field office of the FBI into conducting a criminal investigation, purposed to indict, convict, incarcerate and then deport Kaul - the FBI devoted over a year to interviewing many individuals associated with Kaul and many not professionally/personally associated with Kaul, but persons who simply lived or worked in proximity to his surgical center in Pompton Lakes)** + Use of the US mail and wires to transmit the illegal consequences of the obstruction of justice and evidence tampering to the public, national (state + federal) and international healthcare agencies and regulatory bodies, in furtherance of the defendants scheme to destroy Kaul's reputation globally, his livelihood, his economic standing and prevent him from obtaining a medical license anywhere in the world, or indeed any form of employment + Conspired to and did provide false knowingly that every aspect of the care Kaul delivered to his patients "grossly deviated" from the standard of care + Conspired to and did have Defendant Solomon buttress Defendant Przybylski's knowingly false testimony

that every aspect of the care Kaul delivered to his patients "grossly deviated" from the standard of care + Conspired to and did violate abuse the power of public office and quasi-judicial proceedings to perpetrate a massive fraud on the public, by willfully misrepresenting that Kaul was not qualified, credentialed or licensed to perform minimally invasive spine surgery. The defendants knew that Kaul possessed a license to practice medicine and surgery, had been credentialed by at least six state licensed surgical centers to perform minimally invasive spine surgery, did not require alternative or hospital privileges to perform minimally invasive spine surgery, had commenced his training in minimally invasive spine surgery in 2002, three years before Defendant Przybylski, a market competitor and 'expert' for Defendant NJBME.
Location: Morristown Memorial Hospital + Christie/Republican political fundraisers + Meetings/Conferences organized by Defendant ASIPP.

**Defendant ASIPP + Defendant Przybylski**:
See above. As with Defendant ASIPP + Defendant Kaufman.
Location: Christie/Republican political fundraisers + Meetings/Conferences organized by Defendant ASIPP + Meetings/Conferences organized by Defendant CNS + NASS headquarters in Chicago + NASS national meetings + CNS headquarters in Chicago.

**Defendant ASIPP + Defendant Allstate**:
See above. As with Defendant ASIPP + Defendant Kaufman.
Location: Christie/Republican political fundraisers + Office of the New Jersey Attorney General + New Jersey Office of Administrative Law.

**Defendant ASIPP + Defendant GEICO**:
See above. As with Defendant ASIPP + Defendant Kaufman.
Location: Christie/Republican political fundraisers + Office of the New Jersey Attorney General + New Jersey Office of Administrative Law.

**Defendant ASIPP + Defendant Heary**:
See above. As with Defendant ASIPP + Defendant Kaufman.
Location: Christie/Republican political fundraisers + Morristown Memorial Hospital + Meetings/Conferences organized by Defendant ASIPP + Meetings/Conferences organized by Defendant CNS + Meetings/Conferences organized by the New Jersey Spine Society.

**Defendant ASIPP + Defendant Cohen**:
See above. As with Defendant ASIPP + Defendant Kaufman.
Location: Governor's office in Trenton + Christie/Republican political fundraisers + Office of the New Jersey Attorney General + Morristown Memorial Hospital.

**Defendant ASIPP + Defendant HUMC**:
See above. As with Defendant ASIPP + Defendant Kaufman.
<u>Location</u>: Christie/Republican political fundraisers + Office of the New Jersey Attorney General + New Jersey Office of Administrative Law + Hackensack Medical Center.

**Defendant ASIPP + Defendant AHS**:
See above. As with Defendant ASIPP + Defendant Kaufman.
<u>Location</u>: Christie/Republican political fundraisers + Office of the New Jersey Attorney General + Morristown Memorial Hospital + Meetings/Conferences organized by Defendant ASIPP.

**Defendant Kaufman + Defendant Przybylsk**i:
See above. As with Defendant ASIPP + Defendant Kaufman.
<u>Location</u>: Christie/Republican political fundraisers + Office of the New Jersey Attorney General + Morristown Memorial Hospital + New Jersey Office of Administrative Law + Office of the New Jersey Attorney General + Meetings/Conferences organized by Defendant ASIPP + Meetings/Conferences organized by Defendant CNS + Meetings/Conferences organized by the + New Jersey Spine Society + NASS headquarters in Chicago + NASS national meetings + CNS headquarters in Chicago.

**Defendant Kaufman + Defendant Allstate**:
See above. As with Defendant ASIPP + Defendant Kaufman.
<u>Location</u>: Christie/Republican political fundraisers + Office of the New Jersey Attorney General + Morristown Memorial Hospital + Allstate corporate offices in Northbrook, Illinois.

**Defendant Kaufman + Defendant GEICO**:
See above. As with Defendant ASIPP + Defendant Kaufman.
<u>Location</u>: Christie/Republican political fundraisers + Office of the New Jersey Attorney General + Morristown Memorial Hospital + Geico corporate offices in Chevy Chase, Maryland.

**Defendant Kaufman + Defendant Heary**:
See above. As with Defendant ASIPP + Defendant Kaufman.
<u>Location</u>: Christie/Republican political fundraisers + Office of the New Jersey Attorney General + Morristown Memorial Hospital + Meetings/Conferences organized by the New Jersey Spine Society.

**Defendant Kaufman + Defendant Cohen**:
See above. As with Defendant ASIPP + Defendant Kaufman.
Location: Christie/Republican political fundraisers + Office of the New Jersey Attorney General + Morristown Memorial Hospital + Meetings/Conferences organized by the New Jersey Spine Society.

**Defendant Kaufman + Defendant HUMC**:
See above. As with Defendant ASIPP + Defendant Kaufman.
Location: Christie/Republican political fundraisers + Office of the New Jersey Attorney General + Hackensack Medical Center + Morristown Memorial Hospital + New Jersey Office of Administrative Law.

**Defendant Kaufman + Defendant AHS**:
See above. As with Defendant ASIPP + Defendant Kaufman.
Location: Christie/Republican political fundraisers + Office of the New Jersey Attorney General + Morristown Memorial Hospital + New Jersey Office of Administrative Law.

**Defendant Przybylski + Defendant Allstate**:
See above. As with Defendant ASIPP + Defendant Kaufman.
Location: Christie/Republican political fundraisers + Office of the New Jersey Attorney General + Allstate corporate offices in Northbrook, Illinois.

**Defendant Przybylski + Defendant GEICO**:
See above. As with Defendant ASIPP + Defendant Kaufman.
Location: Christie/Republican political fundraisers + Office of the New Jersey Attorney General + Geico corporate offices in Chevy Chase, Maryland.

**Defendant Przybylski + Defendant Heary**:
See above. As with Defendant ASIPP + Defendant Kaufman.
Location: Christie/Republican political fundraisers + Office of the New Jersey Attorney General + Morristown Memorial Hospital + Meetings/Conferences organized by Defendant CNS + Meetings/Conferences organized by Defendant CNS.

**Defendant Przybylski + Defendant Cohen**:
See above. As with Defendant ASIPP + Defendant Kaufman.
Location: Christie/Republican political fundraisers + Office of the New Jersey Attorney General + Morristown Memorial Hospital + Meetings/Conferences organized by Defendant CNS + NASS headquarters in Chicago + CNS headquarters in Chicago.

**Defendant Przybylski + Defendant HUMC**:

See above. As with Defendant ASIPP + Defendant Kaufman.

<u>Location</u>: Christie/Republican political fundraisers + Office of the New Jersey Attorney General + Hackensack Medical Center + Meetings/Conferences organized by Defendant CNS + NASS headquarters in Chicago + CNS headquarters in Chicago.

**<u>Defendant Przybylski + Defendant AHS</u>**:

See above. As with Defendant ASIPP + Defendant Kaufman.

<u>Location</u>: Christie/Republican political fundraisers + Office of the New Jersey Attorney General + Morristown Memorial Hospital + Meetings/Conferences organized by Defendant CNS + NASS headquarters in Chicago + CNS headquarters in Chicago.

**<u>Defendant Allstate + Defendant GEICO</u>**:

See above. As with Defendant ASIPP + Defendant Kaufman.

<u>Location</u>: Christie/Republican political fundraisers + Office of the New Jersey Attorney General + Allstate corporate offices in Northbrook, Illinois + Geico corporate offices in Chevy Chase, Maryland.

**<u>Defendant Allstate + Defendant Heary</u>**:

See above. As with Defendant ASIPP + Defendant Kaufman.

<u>Location</u>: Christie/Republican political fundraisers + Office of the New Jersey Attorney General + Morristown Memorial Hospital + Allstate corporate offices in Northbrook, Illinois.

**<u>Defendant Allstate + Defendant Cohen</u>**:

See above. As with Defendant ASIPP + Defendant Kaufman.

<u>Location</u>: Christie/Republican political fundraisers + Office of the New Jersey Attorney General + Morristown Memorial Hospital + Allstate corporate offices in Northbrook, Illinois.

**<u>Defendant Allstate + Defendant HUMC</u>**:

See above. As with Defendant ASIPP + Defendant Kaufman.

Location: Christie/Republican political fundraisers + Office of the New Jersey Attorney General + Hackensack Medical Center + Allstate corporate offices in Northbrook, Illinois.

**<u>Defendant Allstate + Defendant AHS</u>**:

See above. As with Defendant ASIPP + Defendant Kaufman.

<u>Location</u>: Christie/Republican political fundraisers + Office of the New Jersey Attorney General + Morristown Memorial Hospital + Allstate corporate offices in Northbrook, Illinois.

**<u>Defendant GEICO + Defendant Heary</u>**:

See above. As with Defendant ASIPP + Defendant Kaufman.

<u>Location</u>: Christie/Republican political fundraisers + Office of the New Jersey Attorney General + Morristown Memorial Hospital + Geico corporate offices in Chevy Chase, Maryland.

**<u>Defendant GEICO + Defendant Cohen</u>**:

See above. As with Defendant ASIPP + Defendant Kaufman.

<u>Location</u>: Christie/Republican political fundraisers + Office of the New Jersey Attorney General + Morristown Memorial Hospital + Geico corporate offices in Chevy Chase, Maryland.

**<u>Defendant GEICO + Defendant HUMC</u>**:

See above. As with Defendant ASIPP + Defendant Kaufman.

<u>Location</u>: Christie/Republican political fundraisers + Office of the New Jersey Attorney General + Morristown Memorial Hospital + Geico corporate offices in Chevy Chase, Maryland.

**<u>Defendant GEICO + Defendant AHS</u>**:

See above. As with Defendant ASIPP + Defendant Kaufman.

<u>Location</u>: Christie/Republican political fundraisers + Office of the New Jersey Attorney General + Morristown Memorial Hospital + Geico corporate offices in Chevy Chase, Maryland.

**<u>Defendant Heary + Defendant Cohen</u>**:

See above. As with Defendant ASIPP + Defendant Kaufman.

<u>Location</u>: Christie/Republican political fundraisers + Office of the New Jersey Attorney General + Morristown Memorial Hospital.

**<u>Defendant Heary + Defendant HUMC</u>**:

See above. As with Defendant ASIPP + Defendant Kaufman.

<u>Location</u>: Christie/Republican political fundraisers + Office of the New Jersey Attorney General + Hackensack Medical Center.

**<u>Defendant Heary + Defendant AHS</u>**:

See above. As with Defendant ASIPP + Defendant Kaufman.

<u>Location</u>: Christie/Republican political fundraisers + Office of the New Jersey Attorney General + Morristown Memorial Hospital.

**Defendant Cohen + Defendant HUMC**:
See above. As with Defendant ASIPP + Defendant Kaufman.
<u>Location</u>: Christie/Republican political fundraisers + Office of the New Jersey Attorney General + Hackensack Medical Center.

**Defendant Cohen + Defendant AHS**:
See above. As with Defendant ASIPP + Defendant Kaufman.
<u>Location</u>: Christie/Republican political fundraisers + Office of the New Jersey Attorney General + Morristown Memorial Hospital.

**Defendant HUMC + Defendant AHS**:
See above. As with Defendant ASIPP + Defendant Kaufman.
<u>Location</u>: Christie/Republican political fundraisers + Office of the New Jersey Attorney General + Hackensack Medical Center + Morristown Memorial Hospital.

The Defendants' wrongful acts caused immense and permanent harm to Kaul's economic standing and reputation.

**COUNT FOURTEEN**
**Intentional Interference With Prospective Economic Advantage**
**(By Plaintiff Against Defendants ASIPP + Kaufman + Staats + Przybylski + CNS + Allstate + GEICO + Heary + Cohen + HUMC + AHS).**

Plaintiff hereby repeats and incorporates by reference each and every one of the foregoing paragraphs as though fully set forth herein.

In 2005, upon information and belief, members of the New Jersey neurosurgical community, filed a complaint against Kaul with the medical board.

On or about April 2008, Defendant Heary encouraged patient FK to file a lawsuit and a complaint with Defendant NJBME against Kaul.

In 2007, Defendant Cohen filed a complaint against Kaul with Defendant NJBME.

From 2008 to 2012 the Defendants encouraged spine device representatives to cease supplying Kaul with the devices necessary to perform minimally invasive spine surgery.

From 2005 to 2012 the Defendants encouraged physicians not to refer patients to Kaul and slandered Kaul's reputation by stating that he was not qualified to perform minimally invasive spine surgery.

Upon information and belief, it is alleged that the Defendant Neurosurgeons, met with New Jersey politicians on multiple occasions, and engaged in discussions in which they sought the politicians' assistance to revoke Kaul's license.

Upon information and belief, it is alleged that on or about 2011 the Defendants conspired with members of the medical board to revoke Kaul's license.

From paragraph 979 to 1033 Kaul has pled with particularity, fact specific to each element, of each claim, against each defendant, in a separate and distinct manner:


**Defendant ASIPP + Defendant Kaufman**:

Date range: 2006 to 2019.

Mode of communications: Email + Voice message + SMS (text) + Face to face.

Substance of communications: Scheme to encourage patients to initiate civil litigation and medical board complaints against Kaul and similarly trained physicians + Scheme to bribe Defendant Christie to have Defendant NJBME revoke Kaul's license + Scheme to file complaints against Kaul with state and federal regulatory authorities + Scheme to participate in sham litigation against Kaul, and provide knowingly fraudulent 'expert' testimony that he was not qualified to perform minimally invasive spine surgery, the purpose of which was to have Kaul's license revoked + Scheme to participate in sham litigation against Kaul's physician employees + Scheme to revoke Kaul's license + Scheme to destroy Kaul's reputation + Scheme to destroy Kaul's economic standing + Scheme to have Kaul ostracized + Scheme to have Kaul leave the United States + Scheme to testify that every aspect of the care Kaul delivered to his patients "grossly deviated" from the standard of care + Scheme to have Defendant Solomon buttress Defendant Przybylski's knowingly false testimony that every aspect of the care Kaul delivered to his patients "grossly deviated" from the standard of care + Scheme to have Defendant Hafner pervert the course of justice by buttressing Defendant Przybylski's knowingly false testimony that every aspect of the care Kaul delivered to his patients "grossly deviated" from the standard of care + Scheme to use the bankruptcy proceedings to defraud Kaul of his assets, his real estate holdings and $ 45 million owed to him by insurance companies, including defendants Allstate + Geico + Scheme to conceal from Kaul the defendants' pattern of racketeering in the United States Bankruptcy Court for the District of New Jersey + Scheme to engage in evidence tampering and perjury in the administrative board proceedings, that caused the revocation of Kaul's license, as evidenced in 'The Solomon Critique' (**K1-D.E. 225 Page ID 4940**) and 'The Solomon Critique 2' (**K1-D.E. 299 Page ID 7202**) + Scheme to violate Kaul's right to due process, his right to an impartial tribunal and his civil rights,

through the commission of knowingly false testimony that Kaul had allegedly "grossly deviated" from the standard of care for reasons pertaining to qualifications, credentials, alternative privileges and hospital privileges. Defendants Solomon, Hafner, Przybylski and Kaufman knew that under the law the standard of care is not determined by any of these reasons, but simply by the manner in which the care is delivered, but yet in this knowledge they abused the power of public office for personal and political gain, at the expense of the public + Scheme to abuse the power of public office and quasi-judicial proceedings to perpetrate a massive fraud on the public, by willfully misrepresenting that Kaul was not qualified, credentialed or licensed to perform minimally invasive spine surgery. The defendants knew that Kaul possessed a license to practice medicine and surgery, had been credentialed by at least six state licensed surgical centers to perform minimally invasive spine surgery, did not require alternative or hospital privileges to perform minimally invasive spine surgery, had commenced his training in minimally invasive spine surgery in 2002, three years before Defendant Przybylski, a market competitor and 'expert' for Defendant NJBME + Scheme to propagate to the public, a knowingly false interpretation of the alternative privilege regulation, in the knowledge that they were abusing the power of public office for personal and political gain. The defendants knew that Kaul did not require alternative privileges to perform minimally invasive spine surgery in his outpatient surgical center + Scheme to suppress evidence of the superior clinical outcomes of Kaul's minimally invasive spine surgery practice, by refusing to have Kaul's practice independently analyzed and monitored + Scheme to engage in obstruction of justice by ignoring Kaul's written requests for an independent investigation of Kaul's claims of evidence tampering + Scheme to participate in a knowingly illegal system of physician regulation, that violated Kaul's civil rights, his constitutionally protected right to due process and his right to an impartial tribunal, by willfully conducting proceedings through and by Defendant NJBME, the New Jersey Office of Administrative Law and the Office of the New Jersey Attorney General. These governmental agencies are all subservient to the executive branch of state government. This is an illegal configuration that violates the separation of powers principle of the United States Constitution, a principle that protects citizens due process rights when life, liberty and property are at stake + Scheme to abuse the authority of the office of the Governor of the State of New Jersey for the purposes of accepting bribes, as part of a series quid pro quo schemes purposed to have Defendant NJBME revoke Kaul's license + Scheme to violate Kaul's right to due process by failing to exclude Defendant Hafner from any further involvement in Kaul's case and or his application in 2014 for reinstatement of his medical license. This was a knowing and willful violation based on the fact that Kaul had filed an ethics complaint against Hafner in September 2013 + Scheme to deprive Kaul of his civil rights and right to due process by permitting Defendant Hafner, an individual involved in a personal relationship with Defendant Kaufman, who, like Defendant Kaufman, had demonstrated an inexplicable personal

animus towards Kaul.

Tactics employed: Conspired to, and did bribe Defendant Christie as part of a series of quid pro quo schemes to have Defendant NJBME revoke Kaul's license + Conspired to and did bribe Defendant Przybylski as part of a quid pro quo scheme that involved funneling money through Defendant NJBME and the New Jersey Office of the Attorney General disguised as 'professional fees' + Conspired to, and did encourage patients to file lawsuits and complaints with Defendant NJBME against Kaul + Conspired to, and did encourage patients to file complaints with state and federal regulatory authorities + Conspired to, and did participate in sham litigation and provided knowingly false testimony that caused the revocation of Kaul's license + Conspired to, and did provide knowingly fraudulent testimony under oath that the care Kaul delivered to his patients "grossly deviated" from the standard of care, because Kaul did not possess alternative privileges or hospital privileges + Conspired to, and did provide knowingly fraudulent testimony under oath that the care Kaul delivered to his patients "grossly deviated" from the standard of care, because Kaul's training did not involve a neurosurgical residency + Conspired to, and did participate in sham litigation and provided knowingly false testimony that caused the entry of false judgments against Kaul in civil malpractice cases + Conspired to, and did participate in sham litigation against Kaul's physician employees, falsely testifying that they were not qualified to perform minimally invasive spine surgery and had committed insurance fraud + Conspired to, and did participate in sham litigation against the medical licenses of Kaul's physician employees + Conspired to and did participate in sham litigation purposed to professionally ostracize Kaul, cause him to leave the United States and prevent him from publicly exposing the defendants' crimes + Use of US mail and wires to file false complaints against him with Defendant NJBME + Use of US mail and wires to send patients letters encouraging them to file frivolous lawsuits against Kaul + Use of the US mail and wires to communicate false information to patients, that he was not qualified to perform minimally invasive spine surgery + Use of the US mail and wires to send false information to personal injury lawyers that Kaul was not qualified to perform minimally invasive spine surgery and had committed insurance fraud + Use of the US mail and wires to send false information to New Jersey politicians, encouraging them, with the promise of political campaign 'donations' to coerce Defendant NJBME and the New Jersey Attorney General to have Kaul's license revoked + Use of the US mail and wires to organize and further schemes to bribe Defendant Christie, in order to have him order Defendant NJBME to revoke Kaul's license + Use of law and public relation firms to funnel bribes to Christie as part of quid pro quo schemes to revoke Kaul's license, destroy his reputation and cause him to leave the United States + Use of the US mail and wires to further scheme to have Kaul's license revoked by having Defendant Lomazow use his authority on Defendant NJBME to initiate an investigation against Kaul, in order to have his license revoked + Use of the US mail and wires to organize and further orders from Christie to revoke

Kaul's license, in furtherance of quid pro quo schemes of bribery + Use of the US mail and wires to transmit letters, emails and other materials negotiating the horizontal agreements and market share distributions + Use of the US mails and wires to transmit letters, emails and other materials indicating that the CHC RICO Association-In-Fact Defendants had instructed their members not to support Kaul in any litigation + Use of the US mails and wires to transmit written, telephone, or electronic communications regarding the knowingly fraudulent events surrounding the revocation of Kaul's license + Use of the US mails and wires to transmit written, telephone, or electronic communications regarding discussions between the CHC RICO Association-In-Fact Defendants and state and federal politicians about the illegal scheme to revoke Kaul's license + Use of the US mails and wires to bill and collect the increased revenues that flowed from the illegal elimination of Kaul from the practice of medicine + Use of the US mails and wires to globally transmit the knowingly illegal revocation of Kaul's license to national and international healthcare related agencies (Federation of State Medical Boards + American Board of Anesthesiology + General Medical Council of the UK) and regulatory bodies, in furtherance of the illegal scheme to destroy Kaul's global reputation and livelihood, with the intention of causing his death + Use of the US mails and wires to transmit information in furtherance of Christie's scheme to illegally have his attorney general and acting director of the division of consumer affairs have Defendant NJBME revoke Kaul's license + Use of the US mails and wires to transmit information in furtherance of their scheme of converting the United States Bankruptcy Court into a racketeering enterprise + Use of the US mails and wires to transmit false information that Kaul has committed insurance fraud, was not qualified to perform minimally invasive spine surgery, had committed bank fraud and was going to be criminally indicted for Medicare fraud + Obstruction of justice and evidence tampering ('The Solomon Critique' + 'The Solomon Critique 2') + Use of the US mail and wires to transmit the illegal consequences of the obstruction of justice and evidence tampering to the public, national (state + federal) and international healthcare agencies and regulatory bodies, in furtherance of the defendants scheme to destroy Kaul's reputation globally, his livelihood, his economic standing and prevent him from obtaining a medical license anywhere in the world, or indeed any form of employment + Illegal per se agreements to restrict reimbursement for minimally invasive spine surgery to hospitals and or surgical centers owned by hospitals + Illegal per se agreements between neurosurgeons, orthopedic surgeons and hospitals to deny privileges for minimally invasive spine surgery to physicians similarly trained as Kaul + Conspired to and did commit Perjury, Evidential Falsification, Evidential Fabrication, Evidential Omission during the administrative board proceedings (April 9, 2013 to December 13, 2013) that resulted in the revocation of Kaul's license + Conspired to did commit subornation of perjury in administrative board proceedings (April 9, 2013 to December 13, 2013) that resulted in the revocation of Kaul's license + Conspired to and did obstruct justice by

encouraging Kaul's patients to commit perjury, with the promise that the revocation of his license would permit them to file malpractice claims, and that the revocation would increase the monies they received from Kaul's insurance carrier + Knowingly and willfully engaged in unlawful agreements to divide the minimally invasive spine surgery market in such a way, that physicians with similar training as Kaul, would be limited to performing only discectomies, and not fusions + Knowingly and willfully engaged in an illegal overarching conspiracy to unlawfully monopolize, conspire to monopolize, and/or, artificially allocate the market for minimally invasive spine surgery + Knowingly and willfully engaged to unlawfully conspire and combine to intentionally and arbitrarily restrict, restrain and or prohibit Kaul's ability to trade in the American minimally invasive spine surgery market + Knowingly and willfully engaged to unlawfully restrict, restrain and or exclude Kaul from participating in the American minimally invasive spine surgery market + Conspired to and did provide false knowingly that every aspect of the care Kaul delivered to his patients "grossly deviated" from the standard of care + Conspired to and did have Defendant Solomon buttress Defendant Przybylski's knowingly false testimony that every aspect of the care Kaul delivered to his patients "grossly deviated" from the standard of care + Conspired to and did use the bankruptcy proceedings to defraud Kaul of his assets, his real estate holdings and $ 45 million owed to him by insurance companies, including defendants Allstate + Geico + Conspired to and did convert the United States Bankruptcy Court for the District of New Jersey, into a racketeering enterprise, in which were committed the predicate acts of bribery, mail fraud and wire fraud + Conspired to and did knowingly and willfully commit within the United States Bankruptcy Court for the District of New Jersey the felonies/offenses of: **(i)** Fraud on the Court; **(ii)** Breach of Fiduciary Duty; **(iii)** Willful Negligence; **(iv)** Estate Embezzlement; **(v)** Money Laundering; **(vi)** Kickbacks; **(vi)** Honest Services Fraud. Conspired to and did engage in evidence tampering and perjury in the administrative board proceedings, that caused the revocation of Kaul's license, as evidenced in 'The Solomon Critique' (**K1-D.E. 225**) and 'The Solomon Critique 2' (**K1-D.E. 299**). Conspired to and did violate Kaul's right to due process, his right to an impartial tribunal and his civil rights, through the commission of knowingly false testimony that Kaul had allegedly "grossly deviated" from the standard of care for reasons pertaining to qualifications, credentials, alternative privileges and hospital privileges. Defendants Solomon, Hafner, Przybylski and Kaufman knew that under the law the standard of care is not determined by any of these reasons, but simply by the manner in which the care is delivered, but yet in this knowledge they abused the power of public office for personal and political gain, at the expense of the public + Conspired to and did violate abuse the power of public office and quasi-judicial proceedings to perpetrate a massive fraud on the public, by willfully misrepresenting that Kaul was not qualified, credentialed or licensed to perform minimally invasive spine surgery. The defendants knew that Kaul possessed a license to practice medicine and surgery, had been credentialed by at least

six state licensed surgical centers to perform minimally invasive spine surgery, did not require alternative or hospital privileges to perform minimally invasive spine surgery, had commenced his training in minimally invasive spine surgery in 2002, three years before Defendant Przybylski, a market competitor and 'expert' for Defendant NJBME + Conspired to and did violate propagate to the public, a knowingly false interpretation of the alternative privilege regulation, in the knowledge that they were abusing the power of public office for personal and political gain. The defendants knew that Kaul did not require alternative privileges to perform minimally invasive spine surgery in his outpatient surgical center + Conspired to and did suppress evidence of the superior clinical outcomes of Kaul's minimally invasive spine surgery practice, by refusing to have Kaul's practice independently analyzed and monitored + Conspired to and did engage in obstruction of justice by ignoring Kaul's written requests for an independent investigation of Kaul's claims of evidence tampering + Conspired to and did participate in a knowingly illegal system of physician regulation, that violated Kaul's civil rights, his constitutionally protected right to due process and his right to an impartial tribunal, by willfully conducting proceedings through and by Defendant NJBME, the New Jersey Office of Administrative Law and the Office of the New Jersey Attorney General. These governmental agencies are all subservient to the executive branch of state government. This is an illegal configuration that violates the separation of powers principle of the United States Constitution, a principle that protects citizens due process rights when life, liberty and property are at stake + Conspired to and did abuse the authority of the office of the Governor of the State of New Jersey for the purposes of accepting bribes, as part of a series quid pro quo schemes purposed to have Defendant NJBME revoke Kaul's license + Conspired to and did violate Kaul's right to due process by failing to exclude Defendant Hafner from any further involvement in Kaul's case and or his application in 2014 for reinstatement of his medical license. This was a knowing and willful violation based on the fact that Kaul had filed an ethics complaint against Hafner in September 2013 + Conspired to and did deprive Kaul of his civil rights and right to due process by permitting Defendant Hafner, an individual involved in a personal relationship with Defendant Kaufman, who, like Defendant Kaufman, had demonstrated a vitriolic personal animus towards Kaul.

Location: Morristown Memorial Hospital + Governor's office in Trenton + Christie/Republican political fundraisers + New Jersey Office of Administrative Law + Office of the New Jersey Attorney General + Meetings/Conferences organized by Defendant ASIPP.

**Defendant ASIPP + Defendant Staats**:
See above. As with Defendant ASIPP + Kaufman.

Location: Governor's office in Trenton + Christie/Republican political fundraisers + Office of the New Jersey Attorney General + Meetings/Conferences organized by Defendant ASIPP

**Defendant ASIPP + Defendant Przybylski**:
See above. As with Defendant ASIPP + Kaufman.
Location: Governor's office in Trenton + Christie/Republican political fundraisers + Office of the New Jersey Attorney General + Meetings/Conferences organized by Defendant ASIPP + Meetings/Conferences organized by Defendant CNS + Meetings/Conferences organized by the New Jersey Spine Society + NASS headquarters in Chicago + NASS national meetings + CNS headquarters in Chicago.

**Defendant ASIPP + Defendant CNS**:
See above. As with Defendant ASIPP + Kaufman.
Location: Governor's office in Trenton + Christie/Republican political fundraisers + Office of the New Jersey Attorney General + Meetings/Conferences organized by Defendant ASIPP + Meetings/Conferences organized by Defendant CNS + Meetings/Conferences organized by the New Jersey Spine Society + NASS headquarters in Chicago + NASS national meetings + CNS headquarters in Chicago.

**Defendant ASIPP + Defendant Allstate**:
See above. As with Defendant ASIPP + Kaufman.
Location: Governor's office in Trenton + Christie/Republican political fundraisers + Office of the New Jersey Attorney General + Meetings/Conferences organized by Defendant ASIPP + Allstate corporate offices in Northbrook, Illinois.

**Defendant ASIPP + Defendant GEICO**:
See above. As with Defendant ASIPP + Kaufman.
Location: Governor's office in Trenton + Christie/Republican political fundraisers + Office of the New Jersey Attorney General + Meetings/Conferences organized by Defendant ASIPP + Geico corporate offices in Chevy Chase, Maryland.

**Defendant ASIPP + Defendant Heary**:
See above. As with Defendant ASIPP + Kaufman.
Location: Governor's office in Trenton + Christie/Republican political fundraisers + Office of the New Jersey Attorney General + Morristown Memorial Hospital + Meetings/Conferences organized by Defendant CNS + Meetings/Conferences organized by the New Jersey Spine Society.

**Defendant ASIPP + Defendant Cohen**:

See above. As with Defendant ASIPP + Kaufman.
<u>Location</u>: Governor's office in Trenton + Christie/Republican political fundraisers + Office of the New Jersey Attorney General + Morristown Memorial Hospital + Meetings/Conferences organized by Defendant CNS + Meetings/Conferences organized by the New Jersey Spine Society.

**Defendant ASIPP + Defendant HUMC**:
See above. As with Defendant ASIPP + Kaufman.
<u>Location</u>: Governor's office in Trenton + Christie/Republican political fundraisers + Office of the New Jersey Attorney General + Hackensack Medical Center + Meetings/Conferences organized by Defendant ASIPP.

**Defendant ASIPP + Defendant AHS**:
See above. As with Defendant ASIPP + Kaufman.
<u>Location</u>: Governor's office in Trenton + Christie/Republican political fundraisers + Office of the New Jersey Attorney General + Morristown Memorial Hospital + Meetings/Conferences organized by Defendant ASIPP.

**Defendant Kaufman + Defendant Staats**:
See above. As with Defendant ASIPP + Kaufman.
<u>Location</u>: Governor's office in Trenton + Christie/Republican political fundraisers + Office of the New Jersey Attorney General + Morristown Memorial Hospital + Meetings/Conferences organized by Defendant ASIPP.

**Defendant Kaufman + Defendant Przybylski**:
See above. As with Defendant ASIPP + Kaufman.
<u>Location</u>: Governor's office in Trenton + Christie/Republican political fundraisers + Office of the New Jersey Attorney General + Morristown Memorial Hospital + Meetings/Conferences organized by Defendant CNS + Meetings/Conferences organized by the New Jersey Spine Society + Meetings/Conferences organized by Defendant ASIPP.

**Defendant Kaufman + Defendant CNS**:
See above. As with Defendant ASIPP + Kaufman.
<u>Location</u>: Governor's office in Trenton + Christie/Republican political fundraisers + Office of the New Jersey Attorney General + Morristown Memorial Hospital + Meetings/Conferences organized by Defendant CNS.

**Defendant Kaufman + Defendant Allstate**:
See above. As with Defendant ASIPP + Kaufman.

<u>Location</u>: Governor's office in Trenton + Christie/Republican political fundraisers + Office of the New Jersey Attorney General + Morristown Memorial Hospital + Allstate corporate offices in Northbrook, Illinois.

**<u>Defendant Kaufman + Defendant GEICO</u>**:
See above. As with Defendant ASIPP + Kaufman.
<u>Location</u>: Governor's office in Trenton + Christie/Republican political fundraisers + Office of the New Jersey Attorney General + Morristown Memorial Hospital + Geico corporate offices in Chevy Chase, Maryland.

**<u>Defendant Kaufman + Defendant Heary</u>**:
See above. As with Defendant ASIPP + Kaufman.
<u>Location</u>: Governor's office in Trenton + Christie/Republican political fundraisers + Office of the New Jersey Attorney General + Morristown Memorial Hospital + Meetings/Conferences organized by Defendant CNS + Meetings/Conferences organized by the New Jersey Spine Society + Meetings/Conferences organized by Defendant ASIPP.

**<u>Defendant Kaufman + Defendant Cohen</u>**:
See above. As with Defendant ASIPP + Kaufman.
<u>Location</u>: Governor's office in Trenton + Christie/Republican political fundraisers + Office of the New Jersey Attorney General + Morristown Memorial Hospital + Meetings/Conferences organized by the New Jersey Spine Society + NASS national meetings.

**<u>Defendant Kaufman + Defendant HUMC</u>**:
See above. As with Defendant ASIPP + Kaufman.
<u>Location</u>: Governor's office in Trenton + Christie/Republican political fundraisers + Office of the New Jersey Attorney General + Hackensack Medical Center + Meetings/Conferences organized by Defendant ASIPP.

**<u>Defendant Kaufman + Defendant AHS</u>**:
See above. As with Defendant ASIPP + Kaufman.
<u>Location</u>: Governor's office in Trenton + Christie/Republican political fundraisers + Office of the New Jersey Attorney General + Morristown Memorial Hospital + Meetings/Conferences organized by Defendant ASIPP.

**<u>Defendant Staats + Defendant Przybylski</u>**:
See above. As with Defendant ASIPP + Kaufman.

Location: Governor's office in Trenton + Christie/Republican political fundraisers + Office of the New Jersey Attorney General + Meetings/Conferences organized by Defendant CNS + Meetings/Conferences organized by the New Jersey Spine Society + Meetings/Conferences organized by Defendant ASIPP.

**Defendant Staats + Defendant CNS**:
See above. As with Defendant ASIPP + Kaufman.
Location: Governor's office in Trenton + Christie/Republican political fundraisers + Office of the New Jersey Attorney General + Meetings/Conferences organized by Defendant CNS + Meetings/Conferences organized by Defendant ASIPP.

**Defendant Staats + Defendant Allstate**:
See above. As with Defendant ASIPP + Kaufman.
Location: Governor's office in Trenton + Christie/Republican political fundraisers + Office of the New Jersey Attorney General + Allstate corporate offices in Northbrook, Illinois + Meetings/Conferences organized by Defendant ASIPP.

**Defendant Staats + Defendant GEICO**:
See above. As with Defendant ASIPP + Kaufman.
Location: Governor's office in Trenton + Christie/Republican political fundraisers + Office of the New Jersey Attorney General + Geico corporate offices in Chevy Chase, Maryland + Meetings/Conferences organized by Defendant ASIPP.

**Defendant Staats + Defendant Heary**:
See above. As with Defendant ASIPP + Kaufman.
Location: Governor's office in Trenton + Christie/Republican political fundraisers + Office of the New Jersey Attorney General + Morristown Memorial Hospital + Meetings/Conferences organized by Defendant CNS + Meetings/Conferences organized by the New Jersey Spine Society + Meetings/Conferences organized by Defendant ASIPP.

**Defendant Staats + Defendant Cohen**:
See above. As with Defendant ASIPP + Kaufman.
Location: Governor's office in Trenton + Christie/Republican political fundraisers + Office of the New Jersey Attorney General + Morristown Memorial Hospital + Meetings/Conferences organized by Defendant ASIPP + Meetings/Conferences organized by the New Jersey Spine Society.

**Defendant Staats + Defendant HUMC**:
See above. As with Defendant ASIPP + Kaufman.

<u>Location</u>: Governor's office in Trenton + Christie/Republican political fundraisers +
Office of the New Jersey Attorney General + Hackensack Medical Center +
Meetings/Conferences organized by Defendant ASIPP.

**Defendant Staats + Defendant AHS**:
See above. As with Defendant ASIPP + Kaufman.
<u>Location</u>: Governor's office in Trenton + Christie/Republican political fundraisers +
Office of the New Jersey Attorney General + Morristown Memorial Hospital +
Meetings/Conferences organized by Defendant CNS + Meetings/Conferences
organized by the New Jersey Spine Society.

**Defendant Przybylski + Defendant CNS**:
See above. As with Defendant ASIPP + Kaufman.
<u>Location</u>: Governor's office in Trenton + Christie/Republican political fundraisers +
Office of the New Jersey Attorney General + Meetings/Conferences organized by
Defendant CNS.

**Defendant Przybylski + Defendant Allstate**:
See above. As with Defendant ASIPP + Kaufman.
<u>Location</u>: Governor's office in Trenton + Christie/Republican political fundraisers +
Office of the New Jersey Attorney General + Allstate corporate offices in Northbrook,
Illinois + Meetings/Conferences organized by Defendant CNS + Meetings/Conferences
organized by the New Jersey Spine Society + NASS headquarters in Chicago + NASS
national meetings + CNS headquarters in Chicago.

**Defendant Przybylski + Defendant GEICO**:
See above. As with Defendant ASIPP + Kaufman.
<u>Location</u>: Governor's office in Trenton + Christie/Republican political fundraisers +
Office of the New Jersey Attorney General + Geico corporate offices in Chevy Chase,
Maryland.

**Defendant Przybylski + Defendant Heary**:
See above. As with Defendant ASIPP + Kaufman.
<u>Location</u>: Governor's office in Trenton + Christie/Republican political fundraisers +
Office of the New Jersey Attorney General + Morristown Memorial Hospital +
Meetings/Conferences organized by Defendant CNS + Meetings/Conferences
organized by the New Jersey Spine Society + NASS headquarters in Chicago + NASS
national meetings + CNS headquarters in Chicago.

**Defendant Przybylski + Defendant Cohen**:

See above. As with Defendant ASIPP + Kaufman.

Location: Governor's office in Trenton + Christie/Republican political fundraisers + Office of the New Jersey Attorney General + Morristown Memorial Hospital + Meetings/Conferences organized by Defendant CNS + Meetings/Conferences organized by the New Jersey Spine Society + NASS headquarters in Chicago + NASS national meetings + CNS headquarters in Chicago.

**Defendant Przybylski + Defendant HUMC**:

See above. As with Defendant ASIPP + Kaufman.

Location: Governor's office in Trenton + Christie/Republican political fundraisers + Office of the New Jersey Attorney General + Hackensack Medical Center + Meetings/Conferences organized by Defendant CNS + Meetings/Conferences organized by the New Jersey Spine Society + NASS headquarters in Chicago + NASS national meetings + CNS headquarters in Chicago.

**Defendant Przybylski + Defendant AHS**:

See above. As with Defendant ASIPP + Kaufman.

Location: Governor's office in Trenton + Christie/Republican political fundraisers + Office of the New Jersey Attorney General + Morristown Memorial Hospital + Meetings/Conferences organized by Defendant CNS + Meetings/Conferences organized by the New Jersey Spine Society + NASS headquarters in Chicago + NASS national meetings + CNS headquarters in Chicago.

**Defendant CNS + Defendant Allstate**:

See above. As with Defendant ASIPP + Kaufman.

Location: Governor's office in Trenton + Christie/Republican political fundraisers + Office of the New Jersey Attorney General + Allstate corporate offices in Northbrook, Illinois + Meetings/Conferences organized by Defendant CNS + CNS headquarters in Chicago.

**Defendant CNS + Defendant GEICO**:

See above. As with Defendant ASIPP + Kaufman.

Location: Governor's office in Trenton + Christie/Republican political fundraisers + Office of the New Jersey Attorney General + Geico corporate offices in Chevy Chase, Maryland + Meetings/Conferences organized by Defendant CNS + CNS headquarters in Chicago.

**Defendant CNS + Defendant Heary**:

See above. As with Defendant ASIPP + Kaufman.

Location: Governor's office in Trenton + Christie/Republican political fundraisers + Office of the New Jersey Attorney General + Morristown Memorial Hospital + Meetings/Conferences organized by Defendant CNS + Meetings/Conferences organized by the New Jersey Spine Society.

**Defendant CNS + Defendant Cohen**:
See above. As with Defendant ASIPP + Kaufman.
Location: Governor's office in Trenton + Christie/Republican political fundraisers + Office of the New Jersey Attorney General + Morristown Memorial Hospital + Meetings/Conferences organized by Defendant CNS.

**Defendant CNS + Defendant HUMC**:
See above. As with Defendant ASIPP + Kaufman.
Location: Governor's office in Trenton + Christie/Republican political fundraisers + Office of the New Jersey Attorney General + Hackensack Medical Center + Meetings/Conferences organized by Defendant CNS.

**Defendant CNS + Defendant AHS**:
See above. As with Defendant ASIPP + Kaufman.
Location: Governor's office in Trenton + Christie/Republican political fundraisers + Office of the New Jersey Attorney General + Morristown Memorial Hospital + Meetings/Conferences organized by Defendant CNS.

**Defendant Allstate + Defendant GEICO**:
See above. As with Defendant ASIPP + Kaufman.
Location: Governor's office in Trenton + Christie/Republican political fundraisers + Office of the New Jersey Attorney General + Allstate corporate offices in Northbrook, Illinois + Geico corporate offices in Chevy Chase, Maryland.

**Defendant Allstate + Defendant Heary**:
See above. As with Defendant ASIPP + Kaufman.
Location: Governor's office in Trenton + Christie/Republican political fundraisers + Office of the New Jersey Attorney General + Morristown Memorial Hospital + Allstate corporate offices in Northbrook, Illinois.

**Defendant Allstate + Defendant Cohen**:
See above. As with Defendant ASIPP + Kaufman.
Location: Governor's office in Trenton + Christie/Republican political fundraisers + Office of the New Jersey Attorney General + Morristown Memorial Hospital + Allstate corporate offices in Northbrook, Illinois.

**Defendant Allstate + Defendant HUMC**:

See above. As with Defendant ASIPP + Kaufman.

Location: Governor's office in Trenton + Christie/Republican political fundraisers + Office of the New Jersey Attorney General + Hackensack Medical Center + Allstate corporate offices in Northbrook, Illinois.

**Defendant Allstate + Defendant AHS**:

See above. As with Defendant ASIPP + Kaufman.

Location: Governor's office in Trenton + Christie/Republican political fundraisers + Office of the New Jersey Attorney General + Morristown Memorial Hospital + Allstate corporate offices in Northbrook, Illinois.

**Defendant GEICO + Defendant Heary**:

See above. As with Defendant ASIPP + Kaufman.

Location: Governor's office in Trenton + Christie/Republican political fundraisers + Office of the New Jersey Attorney General + Morristown Memorial Hospital + Meetings/Conferences organized by Defendant CNS + Meetings/Conferences organized by the New Jersey Spine Society + Geico corporate offices in Chevy Chase, Maryland.

**Defendant GEICO + Defendant Cohen**:

See above. As with Defendant ASIPP + Kaufman.

Location: Governor's office in Trenton + Christie/Republican political fundraisers + Office of the New Jersey Attorney General + Morristown Memorial Hospital + Geico corporate offices in Chevy Chase, Maryland.

**Defendant GEICO + Defendant HUMC**:

See above. As with Defendant ASIPP + Kaufman.

Location: Governor's office in Trenton + Christie/Republican political fundraisers + Office of the New Jersey Attorney General + Geico corporate offices in Chevy Chase, Maryland + Hackensack Medical Center .

**Defendant GEICO + Defendant AHS**:

See above. As with Defendant ASIPP + Kaufman.

Location: Governor's office in Trenton + Christie/Republican political fundraisers + Office of the New Jersey Attorney General + Morristown Memorial Hospital + Geico corporate offices in Chevy Chase, Maryland.

**Defendant Heary + Defendant Cohen**:

See above. As with Defendant ASIPP + Kaufman.
Location: Governor's office in Trenton + Christie/Republican political fundraisers +
Office of the New Jersey Attorney General + Morristown Memorial Hospital +
Meetings/Conferences organized by Defendant CNS + Meetings/Conferences
organized by the New Jersey Spine Society.

**Defendant Heary + Defendant HUMC**:
See above. As with Defendant ASIPP + Kaufman.
Location: Governor's office in Trenton + Christie/Republican political fundraisers +
Office of the New Jersey Attorney General + Hackensack Medical Center +
Meetings/Conferences organized by Defendant CNS + Meetings/Conferences
organized by the New Jersey Spine Society.

**Defendant Heary + Defendant AHS**:
See above. As with Defendant ASIPP + Kaufman.
Location: Governor's office in Trenton + Christie/Republican political fundraisers +
Office of the New Jersey Attorney General + Morristown Memorial Hospital +
Meetings/Conferences organized by Defendant CNS + Meetings/Conferences
organized by the New Jersey Spine Society.

**Defendant Cohen + Defendant HUMC**:
See above. As with Defendant ASIPP + Kaufman.
Location: Governor's office in Trenton + Christie/Republican political fundraisers +
Office of the New Jersey Attorney General + Morristown Memorial Hospital +
Hackensack Medical Center.

**Defendant Cohen + Defendant AHS**:
See above. As with Defendant ASIPP + Kaufman.
Location: Governor's office in Trenton + Christie/Republican political fundraisers +
Office of the New Jersey Attorney General + Morristown Memorial Hospital.

**Defendant HUMC + Defendant AHS**:
See above. As with Defendant ASIPP + Kaufman.
Location: Governor's office in Trenton + Christie/Republican political fundraisers +
Office of the New Jersey Attorney General + Morristown Memorial Hospital +
Hackensack Medical Center.

The Defendant's aforesaid actions constituted knowing, intentional and voluntary
interference with Kaul's minimally invasive spine surgery practice.

The Defendant's aforesaid actions constituted negligent interference with Kaul's minimally invasive spine surgery practice and caused the revocation of Kaul's license in 2014.

The Defendant actions constituted unjustified and wrongful interference with  Kaul's minimally invasive spine surgery, and a reasonable expectation of economic advantage as aforesaid. The Defendants wrongful interference did not rest upon a legitimate interest or have a legitimate purpose.

As a result of the Defendants' actions, the Defendants are liable for the damages caused by their interference with Kaul's minimally invasive spine surgery practice.

Kaul had a reasonable expectation of economic advantage or benefit flowing from the revenues of his minimally invasive spine surgery practice.

The Defendants knew or should have known of the expectancy of the aforesaid economic advantage of Kaul's minimally invasive spine surgery practice.

In the absence of the Defendant's wrongful acts as aforesaid, it is reasonably probable that Kaul would have realized its aforesaid economic advantage or benefit with respect to his ongoing minimally invasive spine surgery practice.

As a result of the Defendant's aforesaid wrongful acts, Kaul has suffered immense and permanent damage to his reputation and economic standing.


## COUNT FIFTEEN
### Violation of Kaul's due process rights pursuant to the Excessive Fines Clause of the Eight Amendment and due process Clause of the Fourteenth Amendment (Against Defendant NJBME)

On March 12, 2014, Defendant NJBME entered an illegal order that unlawfully revoked Kaul's license to practice medicine and surgery in New Jersey, and fined Kaul over $475,000. On February 28, 2019, the United States Supreme Court in Timbs v. Indiana,586 U.S. 139 S.Ct. 682; 203 L.Ed. 2d 11 held that the State of Indiana, in confiscating a car worth no more than $42,000 from an individual convicted of drug dealing, had violated his constitutional rights.

In May 2015 Defendant NJBME used its excessive/illegal fine of $475,000 to obstruct Kaul's application for reinstatement of his medical license, denying him the right to even present his case for reinstatement, until he had paid the illegal fine.

In early 2019, Kaul submitted another application to Defendant NJBME in order to obtain his license in New Jersey. The application, with a money order for $325.00 was delivered to the offices of Defendant NJBME by Fedex in mid-March. In late May, Kaul was informed by an employee of Defendant NJBME, that his application had not been processed because it had to be submitted online through a website administered by Defendant NJBME. Kaul attempted on several occasions to initiate the process, but after having submitted his name, the website prevented him from filing his application. Kaul contacted the employee (**"Maisha"**) at Defendant NJBME and explained that his online application had been blocked. Kaul was routed through to another employee, who communicated to Kaul that he would have to talk with an individual by the name of **"Jacqueline Johnson"** in order to ascertain what steps were required of him to submit his application.

From late May to the present, Kaul has attempted to contact Jacqueline Johnson on at least eight separate occasions, and on each occasion, after having provided his name to the individual answering the phone, was transferred through to the voicemail of **"Jacqueline Johnson"**, and on each occasion Kaul left a message with his contact information, and request that he be contacted. On the last occasion, in mid July, Kaul spoke with an individual named **"Anne"**, who was supposedly instructed by **"Jacqueline Johnson"** to write Kaul's information on a slip of paper, that Kaul was informed would be handed to **"Jacqueline Johnson"**.

Defendant NJBME never returned Kaul's Fedex submitted application or money order, has not received any phone calls from "**Jacqueline Johnson"**, and the obstruction by Defendant NJBME, of Kaul's efforts to have returned the property of his illegally revoked license, constitute a **"new racketeering injury"**, the nature of which is identical to the due process violations identified in <u>Timbs v. Indiana</u>, and as with the denial of Kaul's application for licensure in Pennsylvania, establishes a legal basis for a new or amended complaint.

### <u>COUNT SIXTEEN</u>
### Aid in the Commission of Tort (Against all Defendants)

Kaul repeats and realleges the allegations set forth in the preceding paragraphs and incorporates the same as if set forth fully herein.

The Defendants pursued a common plan or design to commit a series of torts upon Kaul, through their active participation, encouragement, or ratification of the harm done to Kaul, which inured to Defendants' collective benefit.

The Defendants are jointly and severally liable to Kaul for his damages  suffered as a consequence of all of the aforementioned torts, claims and counts.

# <u>Demand for Judgment</u>

**WHEREFORE**, Plaintiff seeks judgment against the Defendants jointly and severally, as follows:

1. Compensatory + Consequential + Punitive Damages from all Defendants in their individual capacities in the amount demanded at: **<u>K1-D.E. 1-2 Page ID 196</u>**.

2. Declaring that the mechanism of physician regulation in New Jersey as described herein, is unconstitutional and violated Kaul's right to due process.

3. Declaring that the revocation of Kaul's medical license was procured through illegal means and was an illegal act.

4. Declaring that the continued revocation of Kaul's medical license is illegal and is a consequence of fraudulent legal proceedings and an unconstitutional mechanism of physician regulation.

5. Declaring that the May 22, 2012 suspension of Kaul's CDS Registration was procured illegally.

6. Ordering the immediate reinstatement of Kaul's plenary license to practice medicine and surgery in New Jersey.

7. Ordering the immediate reinstatement of Kaul's CDS Registration + an unrestricted plenary license to practice Medicine + Surgery.

8. Declaring that the conduct alleged herein is in violation of Sections 1 and 2 of the Sherman Act, of the other statutes set forth above, and of the common law of unjust enrichment under the laws of all states and jurisdictions within the United States.

9. Enjoining Defendants from continuing the illegal activities alleged herein and declaring unconstitutional the IFPA.

10. Granting Plaintiff equitable relief in the nature of disgorgement, restitution and the creation of a constructive trust to remedy Defendants' unjust enrichment.

11. Awarding Kaul treble, multiple, punitive and/or other damages in the calculation demonstrated at: **<u>K1-D.E. 1-2 Page ID 196</u>**.

12. Awarding Kaul costs of suit, including reasonable attorneys' fees as provided by law.

13. Granting such other relief as is necessary to correct for the anticompetitive effects caused by the unlawful conduct of Defendants, and as the Court deems just.

14. Expunging the prior revocation of Kaul's medical license from the public record + A Public Apology directed to Kaul's Children + Patients.

15. Declaring that the **"New Jersey Insurance Fraud Prevention Act"** -§ 17:33A-1 is in violation of the New Jersey Constitution as amended in 1947 which provides that "the right of trial by jury shall remain inviolate."

16. Declaring that the **"New Jersey Insurance Fraud Prevention Act"** - § 17:33A-1 is in violation of the United States Constitution.

## Demand for Jury

Plaintiff demands a trial by jury on all issues so triable

## Demand for Insurance

Demand is hereby made for all insurance policies, which may cover the damages alleged in this Complaint.

## Demand that Defendants be referred to the Criminal Division of the United States Department of Justice

The Defendants acts, as detailed above, constitute crimes against humanity, crimes that they have been committing with impunity for several decades, and crimes that have destroyed the lives of millions of American physicians/patients and resulted in the wrongful deaths/incarcerations of many of these innocent individuals.

I respectfully request that the Court refer the matter to the Criminal Division of the US DOJ, with a request that a special prosecutor be appointed to oversee the investigation.

I respectfully request that the Court refer the matter to the Criminal Division of the US DOJ, with a request that a special prosecutor be appointed to oversee the investigation. On February 15, 2021, it was reported that President Biden appointed as the head an individual who had been a partner at a law firm to which President Biden's son provides consulting services. It is of note that the US DOJ is conducting a criminal investigation into the President's son related to the peddling of Chinese influence in Washington D.C.

The US DOJ has the resources to bring these criminals to justice, and send a message to the world that America is still that **"shining city on the hill"**, where Ladies Justice and Liberty still live, with open arms for all, regardless of race, culture or creed. A place where crony-capitalism lives no more.

I certify that the above statements are true and accurate to the best of my knowledge, and that if it is proved that I willfully and knowingly misrepresented the facts, then I will be subject to punishment.

Respectfully submitted on this day of February 20, 2021

By: _____

Richard Arjun Kaul, MD

Propria Persona
440 c Somerset Drive
Pearl River, NY 10965
862 881 9703
drrichardkaul@gmail.com