UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

RICHARD ARJUN KAUL                  :
     Plaintiff,                             :                    C.A. No. 1:21-cv-10326-ADB
                                                 :
v.                                              :
                                                 :                    June 30, 2021
BOSTON PARTNERS, Inc., et al          :
     Defendants                            :

### DEFENDANTS MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS OR TRANSFER

## TABLE OF CONTENTS

I.     **INTRODUCTION** ........................................................................................ 5

II.    **BACKGROUND** ........................................................................................ 6

III.   **ALLEGATIONS** ........................................................................................ 8

IV.   **ARGUMENT** .......................................................................................... 15

    A. **Standard of Review** ........................................................................... 15

    B. **This Court Lacks Personal Jurisdiction Over the Defendants.** .................... 18

    C. ***Res Judicata* and Collateral Estoppel Preclude the Plaintiff from this Successive Litigation.** ........................................................................................... 23

    D. **Plaintiff's Claims Are Barred by the Eleventh Amendment to the United States Constitution** ...................................................................................... 33

    E. **This Court Lacks Subject Matter Jurisdiction Because the Plaintiff's Claims Are the Functional Equivalent of Appeals of State Court.** .............................. 40

    F. **Plaintiff's Complaint is Duplicative Litigation that Should Be Transferred Under the First-to-File Rule.** ....................................................................... 44

    G. **New Jersey is the Proper Venue for this Litigation.** ................................. 46

    H. **Transfer to New Jersey is Appropriate in the Interest of Justice pursuant to 28 U.S.C. § 1404(a).** ................................................................................. 48

V.    **CONCLUSION** ...................................................................................... 50

Cases

*A123 Sys. v. Hydro-Quebec*, 657 F. Supp. 2d 276 (D. Mass. 2009)................................................ 44

*Adams v. Watson*, 10 F.3d 915 (1st Cir. 1993) ........................................................................ 20

*Akbar-El v. Ohio Dep't of Corr.*, 124 F.3d 196 (6th Cir. 1997) ..................................................... 36

*Allen v. McCurry*, 449 U.S. 90 (1980)................................................................................. 24

*Alston v. Town of Brookline Massachusetts*, 308 F.Supp.3d 509 (D. Mass. 2018) ..................... 41

*Andrew Robinson Int'l, Inc. v. Hartford Fire Ins. Co.*, 547 F.3d 48 (1st Cir. 2008) ................. 23

*Astro-Med, Inc. v. Nihon Kohden America, Inc.*, 591 F.3d 1 (1st Cir. 2009)............................ 48

*Banks v. ACS Educ.*, 638 Fed. Appx. 587 (9th Cir. 2016) ............................................................ 36

*Bd. of Trustees of Univ. of Ala. v. Garrett*, 531 U.S. 356 (2001) ............................................ 35

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ............................................................. 16, 17

*Bettencourt v. Board of Registration in Med.*, 904 F.2d 772 (1st Cir. 1990) ............................. 33

*Black v. N. Panola Sch. Dist.*, 461 F.3d 584 (5th Cir. 2006)........................................................ 36

*Blass v. Weigel*, 85 F. Supp. 775 (D.N.J. 1949)........................................................................ 37

*Blazer Corp. v. N.J.  Sports & Exposition Auth.*, 199 N.J. Super. 107 (App. Div. 1985) ........... 25

*Boit v. Gar-Tec Products, Inc.*, 967 F.2d 671 (1st Cir. 1992) ................................................ 17, 18

*Butz v. Economou*, 438 U.S. 478 (1977).................................................................................. 33

*Chen v. United States Sports Academy, Inc.*, 956 F. 3d 45 (1st Cir. 2020) ................................. 16

*Cleavinger v. Saxner*, 474 U.S. 193 (1985) ........................................................................... 34

*Cok v. Cosentino*, 876 F.2d 1 (1st Cir. 1989) .......................................................................... 34

*Cordis Corp. v. Cardiac Pacemakers*, 599 F.2d 1085 (1st Cir. 1979) ....................................... 15

*Cory v. White*, 457 U.S. 85 (1982)....................................................................................... 35

*Costa v. FCA US LLC*, 2021 WL 2338963 (D. Mass. Jun. 8, 2021)............................................. 18

*Ctr. For Prof'l Advancement v. Mazzie*, 347 F. Supp. 2d 150 (D.N.J. 2004) ........................... 31

*Deniz v. Municipality of Guaynabo*, 285 F.3d 142 (1st Cir. 2002)............................................. 16

*District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983) ................................. 40

*DiTrollio v. Antiles*, 142 N.J. 253 (1995) ............................................................................ 26

*Edelman v. Jordan*, 415 U.S. 651 (1974) ......................................................................... 33, 34

*Educadores Puertorriquenos en Accion v. Hernandez*, 367 F.3d 61 (1st Cir. 2004) ................. 34

*EMC Corp. v. Parallel Iron, LLC*, 914 F. Supp. 2d 125 (D. Mass. 2012)................................... 44

*Ex parte Ayers*, 123 U.S. 443 (1887)................................................................................... 33

*Ex parte Young*, 209 U.S. 123 (1908) .................................................................................. 39

*Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280 (2005) ..................................... 40

*Ford Motor Co. v. Department of Treasury*, 323 U.S. 459 (1945)............................................. 34

*Ford Motor Co. v. Montana Eighth Judicial Dist. Court*, 141 S. Ct. 1017 (2021) ..................... 19

*Freeman v. Town of Hudson*, 714 F.3d 29 (1st Cir. 2013) ........................................................ 23

*Fresenius Med. Care Cardiovascular Resources Inc. v. Puerto Rico*, 322 F.3d 56 (1st Cir. 2003)
................................................................................................................................... 36

*Gonzalez v. United States*, 284 F.3d 281 (1st Cir. 2002)........................................................ 16

*Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915 (2011)................................... 19

*Green v. Mansour*, 474 U.S. 64 (1985)................................................................................. 35

*Group-A Autosports, Inc. v. Billman*, 2014 WL 3500468 (D. Mass. 2014) ............................... 49

*Harris v. N.Y. State Dep't of Health*, 202 F. Supp. 2d 143 (S.D.N.Y. 2002) ............................. 43

*Henning v. Wachovia Mortg., FSB*, 969 F. Supp. 2d 135 (D. Mass. 2013)................................. 18

*Hill v. Town of Conway*, 193 F.3d 33 (1st Cir. 1999)................................................................. 41

*Hochendoner v. Genzyme Corp.*, 823 F.3d 724 (1st Cir. 2016) ..................................................... 15

*Hogg's v. New Jersey*, 352 Fed. App'x 625 (3d Cir. 2009) ......................................................... 25

*In re Colonial Mortg. Bankers Corp.*, 324 F.3d 12 (1st Cir. 2003)................................................ 23

*In re License Issued to Zahl*, 186 N.J. 341 (2006)...................................................................... 37

*Int'l Shoe Co. v. Washington*, 326 U.S. 310 (1945) .................................................................... 18

*Iragorri v. United Tech. Corp.*, 274 F.3d 65 (2d Cir. 2001)......................................................... 48

*Johnson v. Ill. Commerce Comm'n*, 176 Fed. Appx. 662 (7th Cir. 2006) ...................................... 36

*Kadonsky v. New Jersey*, 188 Fed. Appx. 81 (3d Cir. 2006) ........................................................ 36

*Keeton v. Hustler Magazine, Inc.*,  465 U.S. 770 (1984) .............................................................. 21

*Kent Motor Cars, Inc. v. Reynolds & Reynolds, Co.*, 207 N.J. 428 (2011).............................. 32

*Kremer v. Chemical Construction Corp.*, 456 U.S. 461 (1982) ................................................... 24

*Lance v. Dennis*, 546 U.S. 459 (2006) ...................................................................................... 40

*Lawlor v. Nat'l Screen Sers. Corp.*, 349 U.S. 322 (1955)........................................................... 24

*Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992) ................................................................. 15

*Massachusetts Sch. of Law v. ABA*, 142 F.3d 26 (1st Cir. 1998)................................................. 22

*Maymo-Melendez v. Alvarez-Ramirez*, 364 F.3d 27 (1st Cir. 2004)............................................ 41

*McKenna v. Curtin*, 869 F.3d 44 (1st Cir. 2017) ....................................................................... 41

*McNeil v. Legis. Apportionment Comm'n of State*, 177 N.J. 364 (2003) ..................................... 25

*Merlonghi v. United States*, 620 F.3d 50 (1st Cir. 2010)............................................................. 15

*Metcalf & Eddy, Inc. v. P.R. Aqueduct and Sewer Auth.*, 991 F.2d 935 (1st Cir. 1993) .............. 35

*Mori v. Hartz Mountain Dev. Corp.*, 193 N.J. Super. 47 (App. Div. 1983)............................... 30

*Muniz-Rivera v. United States*, 326 F.3d 8 (1st Cir. 2003)......................................................... 16

*Omni Capital Int'l Ltd. v. Rudolf Wolff & Co.*, 484 U.S. 97 (1987) ............................................. 22

*Optos, Inc. v. Topcon Medical Systems, Inc.*, 777 F.Supp.2d 217 (D. Mass. 2011)..................... 48

*Padmanabhan v. Hulka*, No. 18-1301, 2019 U.S. App. LEXIS 39449 (1st Cir. July 10, 2019).. 34

*Parklane Hosiery Co., Inc. v. Shore*, 439 U.S. 322 (1979) .......................................................... 25

*Parsons Steel, Inc. v. First Alabama Bank*, 474 U.S. 518 (1986) ............................................... 24

*Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89 (1984) ............................................. 39

*Phillips Exeter Academy v. Howard Phillips Fund*, 196 F.3d 284 (1st Cir. 1999)....................... 22

*Printing Mart-Morristown, Inc. v. Rosenthal*, 650 F. Supp. 1444 (D.N.J. 1987)................... 24, 30

*Pritzker v. Yari*, 42 F.3d 53 (1st Cir.1994) ............................................................................... 18

*Provanzano v. Parker View Farm, Inc.*, 796 F.Supp.2d 247 (D. Mass. 2011)...................... 18, 21

*Puerto Rico Aqueduct & Sewer Authority v. Metcalf & Eddy, Inc.*, 506 U.S. 139 (1993) ........... 35

*Puerto Rico Ports Authority v. FMC*, 382 U.S. App. D.C. 139 (2008) ........................................ 37

*Redondo Constr. Corp. v. Puerto Rico Highway & Transp. Authority*, 357 F.3d 124 (1st. Cir.
  2004)................................................................................................................................... 36

*Ricketti v. Barry*, 775 F.3d 611 (3d Cir. 2015)......................................................................... 31

*Rodrigues v. Fort Lee Bd. of Educ.*, 458 F. App'x 124 (3d Cir. 2011) ......................................... 38

*Rodríguez-Reyes v. Molina-Rodríguez*, 711 F.3d 49 (1st Cir. 2013)............................................. 17

*Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923)..................................................................... 40

*SCVNGR, Inc. v. Punchh, Inc.*, 478 Mass. 324 (2017) ....................................................... 17, 19

*SEC v. Tambone*, 597 F.3d 436 (1st. Cir. 2010) ...................................................... 17

*Seminole Tribe of Fla. v. Florida*, 517 U.S. 44 (1996) ............................................ 33

*Silva v. Commonwealth of Massachusetts*, 351 Fed.Appx. 450 (1st Cir. 2009) ........................... 40

*Smith v. McIver*, 22 U.S. 532 (1824) ...................................................... 44

*Stowe v. Bologna*, 415 Mass. 20 (1993) ...................................................... 33

*Tancrel v. Mayor & Council of Bloomfield Twp.*, 583 F. Supp. 1548 (D.N.J. 1984) .................. 24

*Tenn. v. Lane*, 541 U.S. 509 (2004) ...................................................... 35

*Torres v. S.S. Rosario*, 125 F.Supp. 496 (S.D.N.Y. 1954) ...................................................... 49

*Torromeo v. Fremont*, 438 F.3d 113 (1st Cir. 2006) ...................................................... 24

*Tringale v. Commonwealth & Ssa*, Civil Action No. 15-cv-11613-IT, 2016 U.S. Dist. LEXIS 200659 (D. Mass. Jan. 19, 2016) ...................................................... 36

*United States v. Swiss Am. Bank, Ltd.*, 274 F.3d 610 (1st Cir. 2001) .................................. 16, 17

*Walden v. Fiore*, 571 U.S. 277 (2014) ...................................................... 21

*Watterson v. Page*, 987 F.2d 1 (1st Cir. 1993) ...................................................... 17

*Young v. Wells Fargo Bank, N.A.*, 717 F.3d 224 (1st Cir. 2013) ...................................................... 18

*Zahl v. N.J. Dep't of Law & Pub. Safety*, Civ. Action No. 06-3749, 2008 U.S. Dist. LEXIS 24022 (D.N.J. Mar. 26, 2008) ...................................................... 38

## Statutes

18 U.S.C. § 1965(a) ...................................................... 48

28 U.S.C. § 1257 ...................................................... 40

28 U.S.C. § 1367 ...................................................... 24

28 U.S.C. § 1391(b) ...................................................... 46

28 U.S.C. § 1404(a) ...................................................... 48

M.G. L. c. 223A, § 3 ...................................................... 19

N.J. Stat. Ann. § 45:1-2.1 ...................................................... 37

N.J. Stat. Ann. § 45:9-1 et seq. ...................................................... 37

N.J. Stat. Ann. § 45:9-19.11 ...................................................... 34, 37, 38

N.J. Stat. Ann. § 45:9-2 ...................................................... 38

N.J. Stat. Ann. § 52:14B-21.1 ...................................................... 37

N.J. Stat. Ann. § 52:14B-26 ...................................................... 36

N.J. Stat. Ann. § 52:31B-3 ...................................................... 37

N.J. Stat. Ann. § 52:9S-1 ...................................................... 36

## Rules

Fed. R. Civ P. Rule 4 ...................................................... 22

Fed. R. Civ. P. Rule 12(b) ...................................................... 15

Fed. R. Civ. P. Rule 12(b)(1) ...................................................... 16

Fed. R. Civ. P. Rule 12(b)(2) ...................................................... 16, 18

Fed. R. Civ. P. Rule 12(b)(6) ...................................................... 17, 23

Fed. R. Civ. P. Rule 12(d) ...................................................... 17

N.J. Ct. R. 2:2-3(2) ...................................................... 32

N.J. Ct. R. 4:30A ...................................................... 24

4

Constitutional Provisions

U.S. Const. Amend. XI ................................................................................................................ 32

Now comes defendants Christopher J. Christie, Esq.; Jay Howard Solomon, Esq.; The

New Jersey Board of Medical Examiners; Steven Lomazow, M.D.; Andrew Kaufman, M.D.;

Gregory Przybylski, M.D.; Doreen Hafner, Esq.; and Eric Kanefsky, Esq., (hereinafter the

"Defendants") by and through counsel, and submits this memorandum of law in support of their

motion to dismiss pursuant to Fed. R. Civ P. Rule 12(b)(1), 12(b)(2), 12(b)(6), or in the

alternative to transfer the case to the U.S. District Court, District of New Jersey.

## I.    INTRODUCTION

Plaintiff Richard Arjun Kaul, a resident of Pearl River, New York, brings this pro se

action alleging that various defendants conspired to deprive him of his license to practice

medicine in the State of New Jersey. [ECF Doc. 1]. The complaint is 286 pages long, is

comprised of hundreds of unnumbered paragraphs, and includes cross-references to various

pleadings he has filed in multiple jurisdictions where he has made nearly identical allegations

against the same or similarly situated defendants. The plaintiff has provided four hundred eighty-

four (484) pages of exhibits with the Complaint. [ECF Doc. 4 and 4-1]. The Complaint names 28

individuals and entities as defendants, including public agencies and officials of New Jersey.

Boston Partners and State Street Corporation are the only entities alleged to be Massachusetts

residents. [Doc. 1 p. 21]. The complaint is indecipherable absent knowledge of Dr. Kaul's

background and long line of cases brought by Dr. Kaul, in multiple jurisdictions that are all

based on a theory of conspiracy to prevent him from practicing medicine. The majority of cases

brought by Dr. Kaul have been dismissed or transferred to the District Court of New Jersey. *See*

*e.g. Kaul v. Christie, et al*, No. 1:16-cv-01346 (S.D.N.Y. filed Feb. 2, 2016); *Kaul v. Federation*

*of State Medical Boards, et al*. No. 1:19-cv-03050 (D.D.C. filed Oct. 01, 2019); *Kaul v. Murphy, et al*, No. 3:21-cv-00439 (D. Conn. filed Mar. 30, 2021).

The only alleged connection to Massachusetts is the claim that the acts purportedly committed by the defendants in New Jersey have denied Dr. Kaul the ability to obtain a license to practice medicine within the Commonwealth of Massachusetts. [Doc. 1 p. 27, 69, 228]. As more fully raised below, this complaint should be dismissed for lack of subject matter jurisdiction under Fed. R. Civ. P. Rule 12(b)(1), personal jurisdiction under Fed. R. Civ. P. Rule 12(b)(2); and failure to State a claim to which relief can be granted under Fed. R. Civ. P. Rule 12(b)(6). In addition, the plaintiff fails to assert and cannot establish that this Court is the proper venue under 28 U.S.C. § 1391(b). Even if the venue were proper here, this Court should exercise its discretion under 28 U.S.C. § 1404(a), and transfer the claims to New Jersey "[f]or the convenience of the parties and witnesses, in the interest of justice."

## II.   BACKGROUND

In the plaintiff's complaint, he references the myriad of litigations related to the revocation of his license to practice medicine in New Jersey. [Doc. 1 p. 7]. In *Kaul v. Christie, et al.*, No. 2:16-cv-02364 (D.N.J. filed Jun. 8, 2016), the court wrote a sixty-six page opinion in which it dismissed with prejudice all federal claims raised by Dr. Kaul from a nearly identical fact pattern and refused to exercise supplemental jurisdiction on all state-law based claims without prejudice for lack of subject matter jurisdiction. A copy of the N.J. District Court's opinion is attached hereto as <u>Exhibit 1</u>. Pursuant to Fed. R. Civ. P. Rule 12(d), the court generally may not consider matters outside the pleadings in a motion under Rule 12(b)(6) without converting the motion to one for summary judgment. There are exceptions to this principle. The court may consider "documents the authenticity of which are not disputed by the

parties; for official public records; for documents central to plaintiffs' claim; or for documents sufficiently referred to in the complaint." *Watterson v. Page*, 987 F.2d 1, 3 (1st Cir. 1993). The court recordings from Dr. Kaul's previous and ongoing litigation fall within said exception, and provide the following background necessary to understand Dr. Kaul's revocation and unsupported allegations of a conspiracy.

Prior to practicing medicine in New Jersey, Dr, Kaul was licensed to practice medicine in the United Kingdom as an anesthesiologist. In March 1999, a patient of Dr. Kaul's died due to his malpractice of medicine. Exhibit 1 p. 16. In 2001, Dr. Kaul was convicted in the U.K. for gross negligence and manslaughter of the patient who died. *Id.* In Dr. Kaul's application to practice medicine in New Jersey, he "made a number of false or misleading statements about those criminal proceedings, the related disciplinary proceedings, and later, the conviction…" *Id.* When Dr. Kaul's past came to light, the New Jersey Board of Medical Examiners was lenient and suspended Dr. Kaul's license to practice medicine for two years. *Id.* The Board also warned Dr. Kaul that it will not be lenient for any "future transgressions." *Id.*

In 2012, the New Jersey Attorney general's office began investigating Dr. Kaul, an anesthesiologist, for performing spinal surgeries without the "accepted standard of surgical training, education, and experience to perform surgical procedures" and the "flagrant disregard of his own lack of training and experience…place[d] the public in clear and imminent danger." Exhibit 1 p. 10 (quoting Amend. Complaint, *In the Matter of the Suspension or Revocation of the Licnese of Richard A. Kaul M.D.* (June 13, 2012)). The investigation was referred to the New Jersey Office of Administrative Law and a twenty-three day contested hearing was held regarding Dr. Kaul's license to practice medicine. Exhibit 1. P. 11. On December 13, 2013, Judge Solomon issued a finding of fact and recommended the revocation of Dr. Kaul's license to

practice; and on March 12, 2014, the New Jersey Board of Medical Examiners accepted Judge Solomon's findings. Exhibit 1 p. 15. A copy of final decision and order is attached hereto as Exhibit 2. The Board then conducted a penalty hearing, at which Dr. Kaul refused to appear. Exhibit 2 pp. 21-22. The prosecution played a video from his website that showed Dr. Kaul denouncing the proceedings and making "broad allegations of altered court transcripts, interference with legal evidence and political influence." The allegations from the video are similar to the allegations of conspiracy that he now presents. *Id.*

Dr. Kaul's license was thus suspended and the Board imposed a fine of $475,422.32. Exhibit 1 pp. 15-17. The New Jersey District Court cited the findings of Judge Solomon in its decision to highlight that Dr. Kaul's suspension was based on the devastating harm he caused his patients and danger he would pose if allowed to practice medicine. Exhibit 1 p. 12 – 17.

### III.   ALLEGATIONS

According to the allegations within the complaint, plaintiff Dr. Richard Kaul is a trained anesthesiologist who began performing minimally invasive spine surgeries. [Doc. 1 p. 36-37, 61]. His work in the field of spinal surgery allegedly caused other medical doctors to become professionally jealous. [Doc. 1 at 37]. The jealous doctors conspired to encourage patients to file lawsuits and complaints to the New Jersey Board of Medical Examiners ("NJBME") against Dr. Kaul, pressure spinal device representatives from providing medical devices to Dr. Kaul, and issue reports to insurance companies that caused the denial of reimbursement requests for medical procedures performed by Dr. Kaul. [Doc. 1 p. 37].

The collection of unidentified jealous doctors allegedly bribed the then Governor of New Jersey, Christopher Christie, to orchestrate the revocation of Dr. Kaul's license to practice medicine within New Jersey. [Doc. 1 p. 37]. Dr. Kaul's privileges to practice law in New Jersey

were reviewed in a 23-day hearing that ran from April 9, 2013 through June 28, 2013. [Doc. 1 p. 38]. The plaintiff references the hearing and cites it as: *In the matter of the suspension or revocation of the license of Richard A. Kaul, M.D. to practice medicine and surgery in New Jersey, OAL* Docket No. BDS 08959-2012N. [Doc. 1 p. 38].

Administrative Law Judge J. Howard Solomon presided over the twenty-eight days of hearings and issued a recommended decision on the matter. [Doc. 1 p. 38-39]. Dr. Przbylski and Kaufman testified at the hearing. According to the plaintiff, Attorney Solomon, Dr. Przbylski, and Kaufman "committed two hundred and seventy-eight (278) separate instances of perjury and evidential omission, misrepresentation and gross mischaracterization" at the hearing. [Doc. 1 p. 37-39]. The final decision from the NJBME was to revoke Dr. Kaul's license to practice medicine.

Dr. Kaul did not appeal the decision and order to revoke his license. Instead, he filed a complaint in the U.S. District Court for the Southern District of New York on February 2, 2016. The complaint was transferred *sua sponte* to the District of New Jersey. A copy of the complaint is attached hereto as Exhibit 3. Within the complaint filed in the S.D.N.Y., the plaintiff presents nearly identical allegations as made in this complaint against a plethora of defendants, most of whom are named in this case. Specifically, the plaintiff alleges a broad conspiracy by doctors and politicians to "destroy Dr. Kaul's reputation and global business interests as a consequence of the financial threat his successful practice presented to their own interests." Exhibit 3 p. 14.

In this action, the plaintiff avers that the defendants' involvement in the scheme to "eliminate Kaul from the practice of medicine" was part of multiple racketeering conspiracies between various groups of defendants. [Doc. 1 p. 65, 70, 91-92, 127, 147-148]. The goal of the racketeering enterprises was to avoid reimbursing the plaintiff for medical services rendered,

eliminate Kaul as competition, increase share price, increase political power, increase revenue through the provision of professional services in furtherance of the scheme, monopolize the market so as to allow price gouging and increase advertisement revenue by permitting the publication of stories that discredited Dr. Kaul. [Doc. 1 p. 65, 72, 92, 128, 149]. As a result of the defendants' alleged actions and the plaintiff's loss of license to practice, the plaintiff claims he has suffered financial loss, damage to his reputation, and loss of his professional career. [Doc. 1 at 16, 25, 39, 65, 69, 98, 128, 176, 217, and 265].

Plaintiff further claims that due to the conspiracy and racketeering enterprises, which caused the revocation of his license to practice medicine in New Jersey, Dr, Kaul has been unable to obtain licenses in multiple other jurisdictions, including Massachusetts. [Doc. 1 p. 69, 72, 186-189]. The plaintiff attaches an unanswered letter he wrote to George Zachos, JD, Executive Director of the Massachusetts Board of Registration in Medicine. In the letter, Dr. Kaul asks Mr. Zachos if the Board would grant him a license to practice medicine in Massachusetts if he applied. [Doc. 1.1 p. 161-163]. Within the letter Dr. Kaul states:

> If your response is anything other than I would be granted a license, it will constitute a "new racketeering injury", and will provide a legal basis for the submission in the United States District Court of a RICO claim. It will also constitute further evidence in K5 of the damages caused to my estate by the Defendants. Please note that if I receive no response by September 22, 2020, then this too will constitute a "new racketeering injury."

[Doc 4. Exhibit 17].

Has made no allegation that he applied for a license to practice medicine in Massachusetts or that he was denied the privilege to practice within the Commonwealth.

The plaintiff makes the following relevant allegations regarding the identity of the Defendants:

Christopher J. Christie, Esq. is the former governor of New Jersey. [Doc. 1 p. 20].

Jay Howard Solomon, Esq, was the New Jersey Administrative Law Judge who oversaw the hearing to revoke the plaintiff's license to practice medicine. [Doc. 1 p. 20, 24].

New Jersey Board of Medical Examiners ("NJBME") is a state agency that regulates the practice of medicine.  [Doc. 1 p. 20]; N.J.S.A. § 45:1-2.1.

Steven Lomazow, M.D., is a neurologist and a senior member of NJBME from 2008 to 2014. [Doc. 1 p. 20].

Gregory Przybylski, M.D., testified against Dr. Kaul at the administrative hearing to revoke his license to practice medicine. [Doc. 1 p. 22].

Andrew Gregory Kaufman, M.D., testified against Dr. Kaul at the administrative hearing to revoke his license to practice medicine. [Doc. 1 p. 23].

Doreen Hafner is a Deputy Attorney General in the Office of the New Jersey Attorney General who filed and prosecuted the administrative case against Dr. Kaul. [Doc. 1 p. 24, 26].

Eric Kanefsky, Esq., was the acting director of the New Jersey Division of consumer affairs. It is alleged Kanefsky suspended Kaul's Controlled Dangerous Substances (CDS) certificate pending the outcome of the hearing on his authorization to continue to hold a license to practice medicine in New Jersey. [Doc. 1 p. 21].

There are no allegations, however, that the defendants conducted any relevant act in Massachusetts. The plaintiff explicitly states that every alleged action by the defendants in furtherance of the racketeering conspiracies and in violation of state laws occurred in either the District of Columbia; New Jersey; Chevy Chase, MD; or Northbrook, IL. [Doc. 1 p. 16-17, 59, 77-86, 102-106, 108-118, 120-121, 123, 135-143, 155-158, 167-175, 177-178, 180-184, 192-195, 203-211, 220-221, 223-227, 233-234, 236-237, 240-245, 252-255, 260-265, 271-280]. The sole claim of conduct and activity occurring in Massachusetts is the bald conclusory statement that activity "occurred in this district." The plaintiff makes the identical assertion that events occurred in "this district" in complaints filed in Connecticut (ECF Doc. 1 ¶13 in *Kaul v. Murphy*

*et al.*, No. 3:21-cv-00439 (D. Conn. filed Mar. 30, 2021)), the District of Columbia (ECF Doc. 1 p. 11 ¶4 in *Kaul v. Federation of State Medical Boards, et al.*, No. 1:19-cv-03050 (D.D.C. filed Oct. 1, 2019), and Texas (ECF Doc. 1 p. 3 in *Kaul v. Federation of State Medical Boards, et al.*, No. 4:21-cv-00057 (N.D. Tex. filed Jan. 1, 2021). In the memorandum and opinion issued by the District Court for the District of Columbia, the court noted that Dr. Kaul went further in his response in opposition to a motion to sever and remand the case to New Jersey. A copy of the memorandum and order is attached hereto as <u>Exhibit 4</u>. In his opposition, Dr. Kaul alleged "the District of Columbia 'was the main location in which the alleged schemes of racketeering were planned, and from which and through which they were executed, using the US mail and wires.'" Exhibit 4 p. 17 (quoting Dr. Kaul's Severability Opp. at 11, 13). The court found that Dr. Kaul's allegations of actions or activities occurring outside of New Jersey to be "demonstrably false." Exhibit 4 p. 18.

In this Complaint, the plaintiff presents the following counts:

Count One:     RICO violations against defendants Allstate, Boston Partners, and State Street Partners.

Count Two:     RICO violations against Chris Christie, Dr. Andrew Kaufman, Dr. Gregory Przybylski, and Attorney Doreen Hafner,

Count Three:   RICO violation against defendants Governor Christopher Christie, GEICO, Allstate, TD Bank N.A., Attorney Daniel Stolz, Attorney John Dilorio, Richard Crist, Judge J. Howard Solomon, and Attorney Doreen Hafner.

Count Four:    RICO violations against Governor Christopher Christie, Hackensack University Medical Center, Atlantic Health System, Robert Garrett, Attorney Doreen Hafner, North Jersey Board of Medical Examiners, and Attorney Eric Kanefsky.

Count Five:    RICO violations against Governor Cristopher Christie, Hackensack University Medical Center, Lindy Washburn, and the New Jersey Media Group, Inc.

Count Six:     Seeks declaratory and injunctive relief under section 16 of the Clayton Act for alleged violations of section 1 and 2 of the Sherman Act against defendants Dr. Andrew Kaufman, Dr. Peter Staats, Dr. Gregory Przybylski, Congress of

Neurological Surgeons, Dr. Robert Heary, Dr. Mark Cohen, Hackensack University Medical Center, and the Atlantic Health System.

Count Seven:   No allegations made. Error in numbering.

Count Eight:   Conspiracy to monopolize under state law against defendants Dr. Gregory Przybylski, Dr. Andrew Kaufman, Dr. Peter Staats, Dr. Steven Lomazow, Dr. Mark Cohen, Dr. Robert Heary, Hackensack University Medical Center, and the Atlantic Health System.

Count Nine:   Conspiracy and combination in restraint of trade under state law against defendants Dr. Gregory Przybylski, Dr. Andrew Kaufman, Judge J. Howard Solomon, Dr. Peter Staats, Dr. Mark Cohen, Dr. Robert Heary, Hackensack University Medical Center, Atlantic Health System, Allstate Insurance Company, and GEICO.

Count Ten:   Unfair and deceptive trade practices under state law against defendants American Society of Interventional Pain Physicians, Dr. Andrew Kaufman, Dr. Peter Staats, Dr. Gregory Przybylski, Congress of Neurological Surgeons, Dr. Mark Cohen, Dr. Robert Heary, Hackensack University Medical Center, and the Atlantic Health System.

Count Eleven:   Unjust enrichment against defendants American Society of Interventional Pain Physicians, Dr. Andrew Kaufman, Dr. Gregory Przybylski, Congress of Neurological Surgeons, Dr. Mark Cohen, Dr. Robert Heary, Hackensack University Medical Center, Atlantic Health System, Attorney Daniel Stolz, and Attorney John Dilorio.

Count Twelve: Deprivation of rights under color of law against defendants Governor Christopher Christie, Dr. Andrew Kaufman, Dr. Gregory Przybylski, Judge J. Howard Solomon, Attorney Doreen Hafner, Allstate Insurance Company, GEICO, and the New Jersey Board of Medical Examiners.

Count Thirteen: Commercial disparagement against defendants American Society of Interventional Pain Physicians, Dr. Andrew Kaufman, Dr. Gregory Przybylski, Allstate Insurance Company, GEICO, Dr. Mark Cohen, Dr. Robert Heary, Hackensack University Medical Center, and the Atlantic Health System.

Count Fourteen: Intentional interference with prospective economic advantages against defendants American Society of Interventional Pain Physicians, Dr. Andrew Kaufman, Dr. Peter Staats, Dr. Gregory Przybylski, Congress of Neurological Surgeons, Allstate Insurance Company, GEICO, Dr. Mark Cohen, Dr. Robert Heary, Hackensack University Medical Center, and the Atlantic Health System.

Count Fifteen: Violations of plaintiff's due process rights pursuant to the excessive fines clause of the Eighth Amendment and due process clause of the fourteenth amendment against defendant New Jersey Board of Medical Examiners.

Count Sixteen: Aid in the commission of tort against all defendants.

Dr. Kaul filed multiple lawsuits in Connecticut, District of Columbia, New Jersey, New York, and Texas. *See e.g. Kaul v. Christie, et al*, No. 1:16-cv-01346 (S.D.N.Y. filed Feb. 2, 2016); *Kaul v. Federation of State Medical Boards, et al*. No. 1:19-cv-03050 (D.D.C. filed Oct. 01, 2019); *Kaul v. Murphy, et al*, No. 3:21-cv-00439 (D. Conn. filed Mar. 30, 2021); *Kaul v. Schumer*, et al, No. 1:19-cv-03046 (S.D.N.Y. filed Apr. 4, 2019); *Kaul v. Murphy*, *et al*., 2:21-cv-09788 (D.N.J. filed Apr. 26, 2021); *Kaul v. Federation of State Medical Boards, et al*., No. 4:21-cv-00057 (N.D. Tex. filed Jan. 11, 2021). This complaint mirrors the litigation filed in other jurisdictions. Each complaint arises from Dr. Kaul's loss of his medical license and alleges various defendants conspired against him in violation of the federal Racketeer Influenced and Corrupt Organizations Act and various state laws. For instance, in the 2016 case, Dr. Kaul amended his complaint on June 8, 2016. A copy of the amended complaint is attached hereto as Exhibit 5. Within the amended complaint, Dr. Kaul alleged: Count 1 – Violations of the RICO Act; Count Two – violations of the Sherman and Clayton Act; Count Seven – Defamation; Count Eleven – Intentional interference with prospective economic advantage; and Count Twelve – Aid in the commission of a tort. On June 30, 2017, the court dismissed the claims based on federal law in the amended complaint with prejudice. It declined subject matter jurisdiction on the claims based on state law. See Exhibit 1.

Prior to the NJBME decision and opinion, Dr. Kaul had filed complaints in the New Jersey State Court. The New Jersey Attorney General had been investigating Dr. Kaul since April 2012. A few days before the filing of the disciplinary action, on June 7, 2012, Dr. Kaul

attempted to enjoin the State and various state agencies from suspending his controlled dangerous substance registration. A copy of the Complaint is attached hereto as <u>Exhibit 6</u>. The 2012 complaint was dismissed by the trial court. Dr, Kaul appealed the trial court's decision and the appeal was dismissed by the Appellate Division in July 2012. A copy of the dismissal is attached hereto as <u>Exhibit 7</u>.

Approximately two weeks before the first disciplinary hearing against Dr. Kaul in March 2013, the plaintiff filed a complaint in the Superior Court of New Jersey against several doctors alleging they engaged in a conspiratorial campaign against him. *Kaul v. Heary, et al.*, Dkt. No. BER-L-2256-13 (filed March 22, 2013). A copy of the 2013 Complaint is attached hereto as <u>Exhibit 8</u>. The Superior Court dismissed his complaint with prejudice on March 7, 2014. A copy of the dismissal is attached hereto as <u>Exhibit 9</u>. Judicial notice of each court filing is requested. Of note, nowhere in any prior case has the plaintiff alleged any portion of the abstract conspiracy occurred in Massachusetts.

As a demand for judgment in this case, the plaintiff seeks financial award, declaratory judgments, restitution, treble damages, punitive damages, legal fees, and reinstatement of his New Jersey license to practice medicine. [Doc. 1 p. 284-285].

## IV.    ARGUMENT

### A.    Standard of Review

On a motion to dismiss under the defenses listed in Fed. R. Civ. P. Rule 12(b), it is the plaintiff's burden to establish by a preponderance of the evidence that the court has jurisdiction, it is brought in a permissible forum, and that a claim has been stated to which relief can be granted. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992); *Hochendoner v. Genzyme Corp.*, 823 F.3d 724, 734 (1st Cir. 2016); *Cordis Corp. v. Cardiac Pacemakers*, 599 F.2d 1085,

1086 (1st Cir. 1979). When a court considers a Rule 12(b) motion, "it must credit the plaintiff's well-pled factual allegations and draw all reasonable inferences in the plaintiff's favor." *Merlonghi v. United States*, 620 F.3d 50, 54 (1st Cir. 2010)(citation omitted). The plaintiff, however, cannot rely upon conclusory allegations to sustain his burden but must offer evidence of specific facts sufficient to establish the court's jurisdiction. *Chen v. United States Sports Academy, Inc.*, 956 F. 3d 45, 54 (1st Cir. 2020).. A court must then determine if the pleadings contain sufficient factual allegations "to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). When a court is presented with motions challenging the court's jurisdiction and the plaintiff's failure to state a claim, "it ordinarily ought to decide the former before broaching the latter," because "if the court lacks subject matter jurisdiction, assessment of the merits becomes a matter of purely academic interest." *Deniz v. Municipality of Guaynabo*, 285 F.3d 142, 149-50 (1st Cir. 2002).

The granting of a motion to dismiss under Fed. R. Civ. P. Rule 12(b)(1) "is appropriate only when the facts alleged in the complaint, taken as true, do not justify the exercise of subject matter jurisdiction." *Twombly*, 550 U.S. at 555. *Muniz-Rivera v. United States*, 326 F.3d 8, 11 (1st Cir. 2003). "While the court generally may not consider materials outside the pleadings on a Rule 12(b)(6) motion, it may consider such materials on a Rule 12(b)(1) motion." *Gonzalez v. United States*, 284 F.3d 281, 288 (1st Cir. 2002). The inclusion of evidence outside the four corners of the pleadings in a Rule 12(b)(1) motion does not convert it to a motion for summary judgment. *Id.*

The court may consider a Fed. R. Civ. P. Rule 12(b)(2) motion without holding an evidentiary hearing and apply a "prima facie standard." *United States v. Swiss Am. Bank, Ltd.*,

274 F.3d 610, 618 (1st Cir. 2001). To make a prima facie showing of jurisdiction, a plaintiff cannot rest on the pleadings but must "proffer[] evidence that, if credited, is enough to support findings of all facts essential to personal jurisdiction." *Boit v. Gar-Tec Products, Inc*., 967 F.2d 671, 675 (1st Cir. 1992). The proffered evidence must show that the court has jurisdiction over a defendant under both the Massachusetts long-arm statute and the Due Process Clause of the U.S. Constitution. *United States v. Swiss Am. Bank, Ltd*., 274 F.3d at 618. In Massachusetts, its long-arm statute "is not coextensive with what due process allows." *SCVNGR, Inc. v. Punchh, Inc*., 478 Mass. 324, 325 (2017). Therefore, it is recommended that a court begins its analysis with the long-arm statute. *Id.*

To withstand a motion to dismiss under Fed. R. Civ. P. Rule 12(b)(6), a complaint must allege a claim for relief that is "plausible on its face." *Twombly*, 550 U.S. at 570. A two-step procedure is used to assess the plausibility of a claim. First, the court must filter the allegations in the complaint and separate allegations of fact from the conclusory legal allegations. Second, the court must consider whether the remaining factual allegations give rise to a plausible claim to relief. *Rodríguez-Reyes v. Molina-Rodríguez*, 711 F.3d 49, 53 (1st Cir. 2013)(citation omitted). If the factual allegations in the complaint are too meager, vague, or conclusory to remove the possibility of relief from the realm of mere conjecture, the complaint should be dismissed. *SEC v. Tambone*, 597 F.3d 436, 442 (1st. Cir. 2010)(citing *Twombly*, 550 U.S. at 555 (2007)).

Pursuant to Fed. R. Civ. P. Rule 12(d), the court generally may not consider matters outside the pleadings in a motion under Rule 12(b)(6) without converting the motion to one for summary judgment. There are exceptions to this principle. The court may consider "documents the authenticity of which are not disputed by the parties; for official public records; for documents central to plaintiffs' claim; or for documents sufficiently referred to in the complaint."

*Watterson v. Page*, 987 F.2d 1, 3 (1st Cir. 1993). In considering documents outside of the

pleadings, the court may credit the terms of the documents and reject a plaintiff's inconsistent

conclusory characterization of the instruments. *Young v. Wells Fargo Bank, N.A.*, 717 F.3d 224,

232-33 (1st Cir. 2013); *Henning v. Wachovia Mortg., FSB*, 969 F. Supp. 2d 135, 147 (D. Mass.

2013) (citing *Clorox Co. P.R. v. Proctor & Gamble Commercial Co.*, 228 F.3d 24, 32 (1st Cir.

2000)).

**B.**     <u>**This Court Lacks Personal Jurisdiction Over the Defendants.**</u>

Plaintiffs' Complaint against the Defendants must be dismissed for lack of personal

jurisdiction under Fed. R. Civ. P. Rule 12(b)(2). Plaintiff bears the burden of establishing the

court's jurisdiction over the defendants. *Costa v. FCA US LLC*, 2021 WL 2338963 *4 (D. Mass.

Jun. 8, 2021)(Burroughs, J.). To survive a motion to dismiss for lack of personal jurisdiction, a

plaintiff must make a prima facie showing of the "facts essential to personal jurisdiction." *Boit v.

Gar-Tec Products, Inc.*, 967 F.2d at 675. In doing so, "plaintiffs may not rely on unsupported

allegations in their pleadings to make a prima facie showing of personal jurisdiction." *Id.* The

plaintiff must affirmatively demonstrate that " jurisdiction is 1) statutorily authorized and 2)

consistent with the Due Process Clause of the United States Constitution." *Provanzano v. Parker

View Farm, Inc.*, 796 F.Supp.2d 247, 252 (D. Mass. 2011)(citing *Astro-Med, Inc. v. Nihon

Kohden Am., Inc.*, 591 F.3d 1, 9 (1st Cir. 2009)). Constitutional Due Process requires that the

defendants have "minimum contacts" with the forum state such that the "maintenance of the suit

does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v.

Washington*, 326 U.S. 310, 316 (1945).

Courts may exercise either general or specific personal jurisdiction. General jurisdiction

permits a court to assert jurisdiction over an out-of-state defendant based on a forum connection

unrelated to the underlying suit. In contrast, specific jurisdiction exists when there is an affiliation between the underlying controversy and the defendants' contacts with the forum state. *Pritzker v. Yari*, 42 F.3d 53, 60 (1st Cir.1994). General jurisdiction requires a defendant to engage in "continuous and systematic activity" within the forum state. *Id.* For the Defendants named here, "the paradigm forum for the exercise of general jurisdiction is the individual's domicile." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 924 (2011). As recently reinforced by the U.S. Supreme Court, the plaintiff "must show that the defendant deliberately 'reached out beyond' its home—by, for example, 'exploi[ting] a market' in the forum State or entering a contractual relationship centered there." *Ford Motor Co. v. Montana Eighth Judicial Dist. Court*, 141 S. Ct. 1017, 1025 (2021) (quoting *Walden v. Fiore*, 571 U. S. 277, 285 (2014)). "The proper focus of the 'minimum contacts' inquiry in intentional-tort cases is 'the relationship among the defendant, the forum, and the litigation.'" *Walden v. Fiore*, 571 U.S. at 291 (2014)(quoting *Calder v. Jones*, 465 U.S. 783, 788 (1984)). Absent said relationship, defendants will be without fair warning and knowledge that their inappreciable actions may subject them to a foreign jurisdiction; and States with minor interest in a controversy will too easily "encroach on States more affected by the controversy." *Ford Motor Co.*, 141 S. Ct. at 1025.

To determine whether the court may exercise personal jurisdiction over a non-resident defendant, the plaintiff must show that jurisdiction is statutorily authorized under the applicable log arm statute and is in accord with the constitutional demands of due process. *World-Wide Volkswagen Corp*., 444 U.S. at 290. The Supreme Judicial Court of Massachusetts has interpreted the State's long-arm statute as does not extend jurisdiction as far as due process would allow. *SCVNGR Inc.*, 478 Mass. at 328. To "avoid unnecessary constitutional decisions,"

a court in Massachusetts should consider the long-arm statute first. *Id.* at 330. The Massachusetts

long-arm statute lists eight circumstances on which an out-of-state defendant may be subjected to

personal jurisdiction of a court within the Commonwealth. M.G. L. c. 223A, § 3:

> (a) transacting any business in this commonwealth;
> (b) contracting to supply services or things in this commonwealth;
> (c) causing tortious injury by an act or omission in this commonwealth;
> (d) causing tortious injury in this commonwealth by an act or omission outside this commonwealth if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in this commonwealth;
> (e) having an interest in, using or possessing real property in this commonwealth;
> (f) contracting to insure any person, property or risk located within this commonwealth at the time of contracting;
> (g) maintaining a domicile in this commonwealth while a party to a personal or marital relationship out of which arises a claim for divorce, alimony, property settlement, parentage of a child, child support or child custody; or the commission of any act giving rise to such a claim; or
> (h) having been subject to the exercise of personal jurisdiction of a court of the commonwealth which has resulted in an order of alimony, custody, child support or property settlement, notwithstanding the subsequent departure of one of the original parties from the commonwealth, if the action involves modification of such order or orders and the moving party resides in the commonwealth, or if the action involves enforcement of such order notwithstanding the domicile of the moving party.

M.G. L. c. 223A, § 3(a) – (h).

None of the circumstances have any applicability to this litigation.

In this case, the plaintiff has not asserted any connection between the allegations

contained in the complaint and any conduct by the Defendants that took place in Massachusetts.

Nor can the plaintiff allege such facts. As admitted in the Complaint, each of the Defendants

resides and works in New Jersey. The complaint alleges the Defendants' actions in New Jersey

caused him to be denied a license to practice medicine in Massachusetts. The alleged denial of a

license to practice is speculative. As made clear by the plaintiff's complaint, his claim of a denial

to practice medicine in Massachusetts is based solely on an unanswered letter to the Executive

Director of the Massachusetts Board of Registration in Medicine. The plaintiff has not alleged that he applied for a license within the Commonwealth and has nor that he was denied a license to practice medicine in Massachusetts. *See Adams v. Watson*, 10 F.3d 915 (1st Cir. 1993)(an injury in fact, versus one that is hypothetical, is one of the three elements of "irreducible constitutional minimum of standing").

Moreover, the alleged denial of a license to practice medicine involves actions of the applicant, Dr. Kaul, and of the Massachusetts licensing authority. This court's focus in determining whether it has personal jurisdiction over these Defendants, however, is the nature and extent of their activities to purposefully avail themselves of the privileges of acting in Massachusetts. See *Walden v. Fiore*, 571 U.S. 277, 290 (2014)(where defendant's seizure of money outside the forum state allegedly resulting in harm to plaintiff was the defendant's only contact with the forum state,  personal jurisdiction over the defendant found lacking.). For contacts to be sufficient enough to render jurisdiction in the forum state, they must be of the defendant's choosing and "not random, isolated, or fortuitous." *Keeton v. Hustler Magazine, Inc.,*  465 U.S. 770, 774 (1984). There is no connection between the facts giving rise to this matter and the Commonwealth of Massachusetts as it relates to these Defendants. A Massachusetts court's exercise of personal jurisdiction over the New Jersey Defendants would offend traditional notions of fair play and substantial justice given the facts alleged in this case.

If in the alternative, this Court believes Massachusetts long-arm statute reaches to the full extent that the Constitution allows, and the Court proceeds directly to the Constitutional analysis as it has done in other cases, the plaintiff has still failed to establish personal jurisdiction. *See Provanzano v. Parker*, 796 F.Supp.2d at 253.(review of Massachusetts' long-arm statute skipped and court proceeded to constitutional analysis). The First Circuit uses a three-part analysis to

determine the appropriateness of specific jurisdiction. *Id.* "First, an inquiring court must ask whether the claim that undergirds the litigation directly relates to or arises out of the defendant's contacts with the forum. Second, the court must ask whether those contacts constitute taking purposeful advantage of the benefits and protections afforded by the forum's laws. Third, if the proponent's case clears the first two hurdles, the court then must analyze the overall reasonableness of an exercise of jurisdiction in light of a variety of pertinent factors that touch upon the fundamental fairness of an exercise of jurisdiction." *Phillips Exeter Academy v. Howard Phillips Fund*, 196 F.3d 284, 288 (1st Cir. 1999). Solitary telephone conversations and limited mailings in or from a State are insufficient to establish a defendant purposefully availed itself to the jurisdiction of that State. *Massachusetts Sch. of Law v. ABA*, 142 F.3d 26, 36-37 (1st Cir. 1998) (citing *Aylward v. Fleet Bank*, 122 F.3d 616, 618 (8th Cir. 1997) and U*.S.S. Yachts, Inc. v. Ocean Yachts, Inc*., 894 F.2d 9, 11 (1st Cir. 1990)).

The Defendants, in this case, are not alleged to have had any contact with Massachusetts. The heart of the claim that undergirds this litigation is the revocation of the plaintiff's license to practice medicine in New Jersey. All relevant acts or omissions to the plaintiff's claims allegedly occurred in either the District of Columbia, Illinois, Maryland, or New Jersey. The plaintiff has not alleged and cannot claim that these defendants had relevant contacts with this forum in good faith. Despite filing multiple actions arising from the same fact pattern, Dr. Kaul has not previously alleged any relevant activity occurred in Massachusetts. For the above reasons, this Court does not have personal jurisdiction over the Defendants and must dismiss this case for lack of jurisdiction.

Finally, a federal court may not exercise personal jurisdiction over a defendant until proper service of process has been effected under Fed. R. Civ P. Rule 4. *Omni Capital Int'l Ltd.*

*v. Rudolf Wolff & Co.*, 484 U.S. 97, 104 (1987). Service of process must take place within 90 days after the complaint is filed, or the court "must dismiss the action without prejudice against that defendant or order that service be made within a specified time." Fed. R. Civ. P. 4(m). On May 10, 2021, this Court granted the plaintiff until 90 days after the issuance of summons to effect service.[Doc. 10]. The summonses were issued on May 11, 2021. [Doc. 12]. As reflected in the docket, the plaintiff has not served or effected proper service of process on defendants Judge Jay Howard Solomon; The New Jersey Board of Medical Examiners; and Attorney Eric Kanefsky. Therefore, as to these defendants, this Court may not exercise personal jurisdiction pending service. If the Court deems necessary, the defendants request leave to supplement this filing with affidavits attesting to plaintiff's failure to effect proper service.

**C.**     **<u>*Res Judicata* and Collateral Estoppel Preclude the Plaintiff from this Successive Litigation.</u>**

This Court may consider the affirmative defense of *res judicata* on a Rule 12(b)(6) motion to dismiss in cases where (1) "the facts that establish the defense [are] definitively ascertainable from the allegations of the complaint, the documents (if any) incorporated therein, matters of public record, and other matters of which the court may take judicial notice, " and (2) "the facts so gleaned conclusively establish the affirmative defense." *In re Colonial Mortg. Bankers Corp.*, 324 F.3d 12, 16 (1st Cir. 2003). In deciding a Rule 12(b)(6) motion to dismiss based on a defense of res judicata, a may also consider matters of public record, including the record of the preclusive action. *Freeman v. Town of Hudson*, 714 F.3d 29, 36 (1st Cir. 2013); *Andrew Robinson Int'l, Inc. v. Hartford Fire Ins. Co.*, 547 F.3d 48, 51 (1st Cir. 2008).

Plaintiff's legal and factual claims in this civil action were previously the subject of a separate action filed by Plaintiff in the Superior Court of New Jersey, captioned *Richard Kaul, M.D. v. Robert Heary, M.D. et al.*, (the "State Court Litigation"). Exhibit 7. The State Court

Litigation was dismissed with prejudice. The plaintiff has also raised the same legal and factual claims in an amended complaint filed with the U.S. District Court for the District of New Jersey in *Kaul v. Christie, et al*, No. 2:16-cv-02364 ("District of N.J. Litigation"). Exhibit 3. The federal claims in the District of N.J. Litigation were dismissed with prejudice; the court then declined to exercise supplemental jurisdiction un 28 U.S.C. § 1367(c)(3) and dismissed all state-law based claims without prejudice for lack of subject matter jurisdiction.

Under the doctrine of *res judicata*, "a final judgment on the merits of an action precludes the parties or their privies from re-litigating issues that were or could have been raised in that action." *Allen v. McCurry*, 449 U.S. 90, 94 (1980). A dismissal with prejudice is a final judgment on the merits. *Lawlor v. Nat'l Screen Sers. Corp.*, 349 U.S. 322, 327 (1955). The Full Faith and Credit Act, 28 U.S.C. § 1738, encompasses the doctrine of claim preclusion and requires the federal court to "give the same preclusive effect to a state-court judgement as another court of that State would give." *Parsons Steel, Inc. v. First Alabama Bank*, 474 U.S. 518, 523 (1986); *Allen v. McCurry*, 449 U.S. at 96.

In determining the *res judicata* effect of a state court decision on a subsequent federal claim, the federal court must apply the claim preclusion law of the State that made the first disposition. *Kremer v. Chemical Construction Corp.*, 456 U.S. 461, 481-82 (1982); *Torromeo v. Fremont*, 438 F.3d 113, 115 (1st Cir. 2006). New Jersey law on claim preclusion is governed by the "Entire Controversy Doctrine," which is "strictly adhered to by New Jersey courts" and requires that plaintiffs "seek complete relief for vindication of the wrong he charges" in a single legal action. *Tancrel v. Mayor & Council of Bloomfield Twp.*, 583 F. Supp. 1548, 1551 (D.N.J. 1984) (quoting *Applestein v. United Board & Carton*, 35 N.J. 343, 356 (1961)); see also, N.J. Ct. R. 4:30A ("Non-joinder of claims required to be joined by the entire controversy

doctrine shall result in the preclusion of the omitted claims to the extent required by the entire controversy doctrine. . . ."). The Entire Controversy Doctrine applies both to subsequent actions asserting different legal theories and those requesting alternative relief. *Printing Mart-Morristown, Inc. v. Rosenthal*, 650 F. Supp. 1444, 1447 (D.N.J. 1987) (citing *Mori v. Hartz Mountain Dev. Corp.*, 193 N.J. Super. 47, 52-53 (App. Div. 1983)). The *Printing Mart* court held that the Entire Controversy Doctrine bars subsequent litigation even where the allegedly unlawful "transaction. . . is of a continuous and ongoing nature such that new violations ('predicate acts') occur over time." *Id.* at 1448-49.

New Jersey courts interpret the Entire Controversy Doctrine as involving a "transaction based" test that forecloses subsequent litigation not only of claims actually litigated but also of all claims arising out of the same controversy that could have been raised in the earlier action. *McNeil v. Legis. Apportionment Comm'n of State*, 177 N.J. 364, 395 (2003); *Blazer Corp. v. N.J. Sports & Exposition Auth.*, 199 N.J. Super. 107, 111 (App. Div. 1985). Similarly, "[u]nder New Jersey law, the doctrine of collateral estoppel operates to foreclose re-litigation of an issue when the party asserting the bar shows that: (1) the issue to be precluded is identical to the issue decided in the prior proceeding, (2) the issue was actually decided in the prior proceeding, (3) the court in the prior proceeding issued a final judgment on the merits, (4) the determination of the issue was essential to the prior judgment, and (5) the party against whom the doctrine is asserted was a party to or in privity with a party to the earlier proceeding." *Hogg's v. New Jersey*, 352 Fed. App'x 625, 629 (3d Cir. 2009).

Collateral estoppel, like the related doctrine of *res judicata*, has the dual purpose of protecting litigants from the burden of re-litigating an identical issue with the same party or his privy and of promoting judicial economy by preventing needless litigation." *Parklane*

*Hosiery Co., Inc. v. Shore*, 439 U.S. 322, 326 (1979). In *DiTrollio v. Antiles*, the Supreme Court of New Jersey explained the purposes of the doctrine are threefold: "(1) the need for complete and final disposition through the avoidance of piecemeal decisions; (2) fairness to parties to the action and those with a material interest in the action; and (3) efficiency and the avoidance of waste and the reduction of delay." 142 N.J. 253 (1995).

Dr. Kaul included as defendants in the State Court Litigation individuals whom he also included in this action: Dr. Heary and Dr. Przybylski. Plaintiff's causes of action in the State Court Litigation mirror several causes of action in the current civil action. To wit:

| State Court Complaint | District of Mass. Complaint |
|---|---|
| | USDC DISTRICT OF MASSACHUSETTS |
| Count 1 - Defamation | |
| Count 2 - Commercial Disparagement | Count 13 – Commercial Disparagement |
| Count 3 - Intentional Interference with Prospective Economic Advantage. | Count 14 - Intentional Interference with Prospective Economic Advantage. |
| Count 4 - Competition Unlawfully Restrained NJSA 56:9-1 et seq. | Count 8 – Conspiracy to Monopolize and  Count 9 – Conspiracy and Combination in Restraint of Trade |
| Count 5 -  Conspiracy | Counts – 1-5 RICO |
| Count 6 – Aid in the Commission of a Tort | Count 17 – Aid in the Commission of Tort |

Examining the factual allegations pled in both complaints shows that both this Federal Court civil action and the previously dismissed State Court Litigation arise from an identical set of allegations. In both cases, Dr. Kaul asserts an unlawful conspiracy by neurosurgeons and special interest groups to prevent the plaintiff and other members of the "interventional pain

community" from performing spine surgeries, as well as a conspiracy to revoke the plaintiff's

medical license. A side-by-side comparison of the complaint in the State Court Litigation and

this case highlights the two actions' similarity:

| State Court Complaint | District of Mass. Complaint |
|---|---|
| The expansion of the scope of work that physicians like Dr. Kaul are now qualified to perform with proper training encroaches upon the practice area of neurosurgeons who until recently, enjoyed a monopolistic hold over the minimally invasive surgical procedure market." (Complaint ¶ 45). | From at least 2002, neurosurgeons and hospitals held a monopoly on the minimally invasive spine surgery market, and in particular minimally invasive spine fusions. This monopoly was threatened in 2005, when Kaul performed the first minimally invasive outpatient lumbar fusion, which allowed patients to be discharged the same day." [Doc 1 p. 175] |
| Dr. Heary encouraged the Patient [on whom plaintiff operated] to file an action with the Board [of Medical Examiners]. (Complaint ¶ 57). | "On or about April 2008, Defendant Heary encouraged patient FK to file a lawsuit and a complaint with Defendant NJBME against Kaul" [Doc. 1 p. 265] |
| Dr. Heary was able to ensure that the patient's [on whom plaintiff operated] complaint was entertained by the Board [of Medical Examiners] due to his close business and personal relationships with one or more Board members. (Complaint ¶ 58).<br><br>Dr. Heary has advised other patients and doctors that Dr. Kaul is not qualified to perform minimally invasive spinal procedures. (Complaint ¶ 64) | Defendant Steven Lomazow, MD, ("Lomazow") is a neurologist who was a senior member of Defendant NJBME from 2008 to 2014, who engages in healthcare business with defendants, Heary, Kaufman, Przybylski, Allstate and Geico [Doc. 1 p. 20]<br><br>Examples of this defamatory conduct included: (i) comments made by Defendant Heary to Kaul's patient, Frances Kuren in 2008, in which Defendant Heary told Kuren that Kaul was not qualified to perform minimally invasive spine surgery, and that she should file a complaint with Defendant NJBME and initiate a lawsuit. Kuren's fraudulent actions precipitated the proceeding that resulted in the illegal revocation of Kaul's license; [Doc 1 p. 53]. |

| | |
|---|---|
| In 2011, Dr. Przybylski was the President of North American Spine Society…Defendants used their power, influence, and positions to downgrade the CPT code for endoscopic discectomies performed by interventional pain practitioners…<br><br>The Defendants knew that such a downgrade would ensure that only neurosurgeons would profit from such procedures, and that physicians in the interventional pain community would no longer be able to perform such procedures…<br><br>The purpose behind Defendants' actions was to secure the neurosurgeon's monopolistic hold on performing these types of procedures.<br>(Complaint ¶¶87-91) | Subsequent to the downgrading of the relative value units for endoscopic discectomy in 2011, the commercial potential of Kaul's practice was harmed. The scheme was engineered by a group of neurosurgeons, led by Defendant Gregory Przybylski, the 2011 President of the North American Spine Society. These neurosurgeons, because of their influential positions within their professional societies, had the codes modified on the understanding that the majority of minimally invasive spine surgeons, from interventional pain backgrounds, would be unable to perform open microdiscectomies. [Doc. 1 p. 161] |
| Upon information and belief, Defendants conspired to bring about the Attorney General's Motion and, specifically, Dr. Przybylski gave oral testimony during the hearing of the Motion intending to ensure that permanent suspension of Dr. Kaul's medical license in the State of New Jersey. (Complaint ¶ 62.) | On April 2, 2012 Defendant NJBME suspended Kaul's license based on false allegations that he was not qualified to perform minimally invasive spine. The allegations were premised on the reports of two 'experts', Defendants Przybylski and Kaufman, who were market competitors of Kaul, and who had received money from the State to testify. Defendants Przybylski and Kaufman continued their false testimony in April 2013, when they testified against Kaul in the proceedings in the New Jersey Office of Administrative Law, in Newark, NJ. The latter proceeding resulted in the illegal revocation of Kaul's license.[Doc. 1 p. 40]. |

An examination of the factual allegations pled in the District of N.J. Litigation in comparison to the present actions shows even more remarkable similarity. The plaintiff named a large group of defendants and John Does, including Defendants Governor Christie;

Judge Solomon; The New Jersey Board of Medical Examiners; Dr. Lomazow; Dr. Kaufman; and Dr. Przybylski. The causes of action compare as follows:

| District of N.J. Complaint | District of Mass. Complaint |
|---|---|
| Count One – RICO violation | Count One through Five – RICO violations |
| Count two – Sherman and Clayton Act violations | Count Six – Declaratory relief under the Sherman Act |
| Count Eight – Depravation of right under color of law | Count Twelve – Depravation of right under color of law |
| Count Ten – Commercial Disparagement | Count Thirteen – Commercial Disparagement |
| Count Eleven – Intentional interference with prospective economic advantage | Count Fourteen - Intentional interference with prospective economic advantage |
| Count Twelve – Aid in the commission of tort | Count Sixteen – Aid in the commission of tort |

The substance of the complaints are, at various parts, identical. For example, the following is a comparison of an excerpt from the plaintiff's overview of legal claims:

| District of N.J. Amended Complaint | District of Mass. Complaint |
|---|---|
| OVERVIEW OF PLAINTIFFS' LEGAL CLAIMS | Overview of Plaintiff's Legal Claims |
| 49. Defendants' commission of the crimes of wire fraud and mail fraud are the predicate acts that constitute the definition of a Racketeering Enterprise under the Racketeer Influenced and Corrupt Organizations Act of 1970 (RICO)(18 USC 1961, et seq.). | Defendants' commission of the crimes of wire fraud and mail fraud are the predicate acts that constitute the definition of a Racketeering Enterprise under the Racketeer Influenced and Corrupt Organizations Act of 1970 (RICO)(18 USC 1961, et seq.). |
| 50. RICO, as enacted, constitutes a potent weapon against enterprise liability. RICO's civil law provisions (hereinafter "civil RICO") provide injured plaintiffs with the incentive to sue by providing a treble damage award plus attorneys' fees. As does antitrust litigation, civil RICO suits enable private party enforcement of criminal statutes. | RICO, as enacted, constitutes a potent weapon against enterprise liability. RICO's civil law provisions (hereinafter "civil RICO") provide injured plaintiffs with the incentive to sue by providing a treble damage award plus attorneys' fees. As does antitrust litigation, civil RICO suits enable private party enforcement of criminal statutes. |

| | |
|---|---|
| 51. With deterrence in mind, RICO includes a provision allowing private parties to bring a civil suit for treble damages. The plaintiff must overcome two pleading burdens to state a claim for damages under RICO. | With deterrence in mind, RICO includes a provision allowing private parties to bring a civil suit for treble damages. Kaul must overcome two pleading burdens to state a claim for damages under RICO. |
| 52. First, the plaintiff must allege that the defendant has violated the substantive RICO statute, commonly known as "criminal RICO." In so doing, the plaintiff must allege the existence of seven constituent elements: (1) that the defendant (2) through the commission of two or more acts (3) constituting a "pattern" ( 4) of "racketeering activity" (5) directly or indirectly invests in, or maintains an interest in, or participates in (6) an "enterprise" (7) the activities of which affect interstate or foreign commerce. Second, the plaintiff must allege that he was injured in his business or property by reason of a violation of section 1962. (Pl.'s Amend. Complaint ¶¶59-52). | First, Kaul must allege that the defendant has violated the substantive RICO statute, commonly known as "criminal RICO." In so doing, Kaul must allege the existence of seven constituent elements: (1) that the defendant (2) through the commission of two or more acts (3) constituting a "pattern" (4) of "racketeering activity" (5) directly or indirectly invests in, or maintains an interest in, or participates in (6) an "enterprise" (7) the activities of which affect interstate or foreign commerce. Second, Kaul must allege that he was injured in his business or property by reason of a violation of section 1962. [Doc. 1 p. 57] |

The Entire Controversy Doctrine requires the granting of a motion to dismiss when "[a] comparison of the factual allegations made in the state and federal complaints shows them to be virtually identical," even when dismissal "result[ed] in barring what appears to be a meritorious claim" *See Rosenthal,* 650 F. Supp. at 1447, 1451; *Mori*, 472 A.2d at 51-52 (affirming dismissal of the action under the Entire Controversy Doctrine, because both actions involved the same subject matter and the same rights and liabilities).

In this case, dismissal pursuant to the Entire Controversy Doctrine is appropriate as to the successively named Defendants in the three cases and all other Defendants who, although not named as defendants in the State Court Litigation or District of N.J. litigation, are joined here under the same facts as those that form the basis of the underlying litigation. The plaintiff was required and could have sued all the Defendant's he now names in the dismissed

cases. Although the failure to join a party in an original lawsuit in New Jersey does not create an entire controversy bar to a subsequent action as to a different party, dismissal is warranted when: (i) the suit is a "successive action;" (ii) the plaintiff's failure to disclose the existence of other potentially liable parties in the earlier litigation was "inexcusable;" and (iii) the undisclosed parties' right to defend the successive action was "substantially prejudiced" by their omission. *Ricketti v. Barry*, 775 F.3d 611, 615 (3d Cir. 2015).

In the State Court Litigation and District of N.J. Litigation, the plaintiff utilized fictitious party practice, naming "John Does 1-5" and "ABC Associations 1-5" as placeholder defendants for various individuals and entities who Dr. Kaul claimed had engaged in the same factual and legal conduct that formed the basis for the causes of action against the named defendants. Dr. Kaul's failure to name the Defendants to whom he sought to preserve for later addition to the lawsuits is inexcusable because they were known State agencies, officials, and witnesses involved in the revocation of his license. The plaintiff cannot now complain that his new action is barred against those whom he intended to add by way of amendment and as to whom the legal and factual allegations of both lawsuits are essentially identical. *Ctr. For Prof'l Advancement v. Mazzie*, 347 F. Supp. 2d 150, 157 (D.N.J. 2004) (discouraging failure to join a party in a previous action when such failure "reflect[s] a strategy of piecemeal litigation").

The alleged wrongful revocation of Dr. Kaul's medical license and downgrade of CPT codes is central to both state and federal court complaints. In this successive action, the plaintiff should not be permitted to re-litigate his State Court and Federal Court case by simply making the same alleged conspiracy larger in scope. A close review of the successive

filings by Dr. Kaul demonstrates a consistent altering and expansion of his allegations to overcome previous causes for dismissal.

At the heart of all cases is the alleged conspiracy by New Jersey doctors and politicians to prevent Dr. Kaul from practicing minimally invasive spine procedures. His tactical decision to name certain defendants in the State Court Litigation or the New Jersey District Court case substantially prejudices the defendants he now adds to the alleged conspiracy. The new Defendants face RICO violations that were not previously raised in the State Court Litigation, which permits treble damages. *Kent Motor Cars, Inc. v. Reynolds & Reynolds, Co.*, 207 N.J. 428, 451 (2011) (the "ordinary operation" of statute allowing for treble damages in subsequent litigation "would work a substantial prejudice to [defendant] simply because it provides for treble damages"). The newly named defendants should not be forced to re-litigate the exact issues that were previously dismissed in other courts. The Entire Controversy Doctrine bars this action as to all defendants whom the plaintiff could have named in the previous litigation but did not.

Of note, Dr. Kaul's proper course to overturn the order revoking his license to practice medicine was to file an appeal with the Superior Court of New Jersey, Appellate Division. New Jersey Court Rule 2:2-3(2) provides that a plaintiff may appeal as of right a final decision of any state administrative agency. Dr. Kaul had forty-five days from the date of service of the decision to revoke his license to appeal the order. Dr. Kaul chose not to appeal the decision, and thus the NJBME's decision should not be disturbed. "[a] final order of an administrative agency in an adjudicatory proceeding . . . precludes relitigation of the same issues between the same parties, just as would a final judgment of a court of competent

jurisdiction." *Stowe v. Bologna*, 415 Mass. 20, 22 (1993)(citing *United States v. Utah Constr. & Mining Co*., 384 U.S. 394, 421-422 (1966)).

**D.      Plaintiff's Claims Are Barred by the Eleventh Amendment to the United States Constitution**

The Eleventh Amendment provides, "The judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. Amend. XI. The Eleventh Amendment incorporates common law principles of sovereign immunity and confirms that the judicial power established by Article III does not confer jurisdiction over suits against non-consenting States. *Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 54 (1996).

> The right of the Federal Judiciary to summon a State as defendant and to adjudicate its rights and liabilities had been the subject of deep apprehension and of active debate at the time of the adoption of the Constitution; but the existence of any such right had been disclaimed by many of the most eminent advocates of the new Federal Government, and it was largely owing to their successful dissipation of the fear of the existence of such Federal power that the Constitution was finally adopted.

*Edelman v. Jordan*, 415 U.S. 651, 660 (1974) (quoting 1 C. Warren, The Supreme Court in United States History 91 (rev. ed. 1973)). "The very object and purpose of the 11th Amendment were to prevent the indignity of subjecting a State to the coercive process of judicial tribunals at the instance of private parties." *Ex parte Ayers*, 123 U.S. 443, 508 (1887). Sovereign immunity extends to quasi-judicial agency officials and those "officials whose special function requires a full exemption from liability."  *Butz v. Economou*, 438 U.S. 478, 508 (1977).

Members of the State medical board are granted absolute immunity in their adjudicating of matters involving the revocations of a doctor's license to practice medicine. *Bettencourt v. Board of Registration in Med*., 904 F.2d 772, 783 (1st Cir. 1990). "This immunity applies no

matter how erroneous the act may have been, how injurious its consequences, how informal the proceeding, or how malicious the motive." *Cok v. Cosentino*, 876 F.2d 1, 2 (1st Cir. 1989)(citing *Cleavinger v. Saxner*, 474 U.S. 193, 199-200. (1985). In New Jersey, members of the boards of medicine, witnesses to medical license revocation hearings, and those that bring complaints are immune from liability in causes of actions arising from their participation in hearings and assisting in the governing the practice of medicine.  N.J. Stat. Ann. § 45:9-19.11. Testifying witnesses are granted immunity, absent a "plausible claim of bad faith or malice that would preclude such immunity." *Padmanabhan v. Hulka*, No. 18-1301, 2019 U.S. App. LEXIS 39449, at *4 (1st Cir. July 10, 2019).  A plausible claim under Fed. R. Civ. P. Rule 8(a)(2) requires that a "complaint should at least set forth minimal facts as to who did what to whom, when, where, and why." *Educadores Puertorriquenos en Accion v. Hernandez*, 367 F.3d 61, 68 (1st Cir. 2004).

It is "well established that even though a State is not named a party to the action, the suit may nonetheless be barred by the Eleventh Amendment." *Edelman*, 415 U.S. at 663. Specifically, suits against state officials and agencies that ultimately seek monetary recovery from state funds are barred by the Eleventh Amendment. *Edelman*, 415 U.S. at 663. Thus, "when the action is in essence one for the recovery of money from the state, the state is the real, substantial party in interest and is entitled to invoke its sovereign immunity from suit even though individual officials are nominal defendants." *Ford Motor Co. v. Department of Treasury*, 323 U.S. 459, 464 (1945)(overruled in part on other grounds in *Lapides v. Board of Regents*, 535 U.S. 613, 623 (2002)).

"It is clear, of course, that in the absence of consent a suit in which the State or one of its agencies or departments is named as the defendant is proscribed by the Eleventh Amendment." *Pennhurst*, 465 U.S. at 908. "This jurisdictional bar applies regardless of the nature of the relief

sought." *Id.* Eleventh Amendment immunity applies in cases against the State or a state agency, whether the relief sought is monetary, injunctive, or declaratory. *Puerto Rico Aqueduct & Sewer Authority v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 146 (1993) (suits against state agencies "are barred regardless of the relief sought"); *Green v. Mansour*, 474 U.S. 64, 71-73 (1985) (declaratory judgment that federal law was violated in the past is barred by the Eleventh Amendment); *Cory v. White*, 457 U.S. 85, 90-91 (1982) (holding Eleventh Amendment immunity applies to suit against a state or state agency for an injunction, regardless of whether monetary judgment is sought).

Eleventh Amendment immunity is not absolute; and a state may not be immune from suit if (1) the State consents to the suit in a federal forum; (2) a state waives its immunity by statute; (3) Congress abrogates state immunity clearly and "in furtherance of particular powers"; or (4) "other [federal] constitutional imperatives . . . take precedence over the Eleventh Amendment's federal-court bar." *Metcalf & Eddy, Inc. v. P.R. Aqueduct and Sewer Auth.*, 991 F.2d 935, 938-39 (1st Cir. 1993). Neither a waiver of sovereign immunity nor any Congressional abrogation of that immunity exists as to the claims asserted here. The plaintiff does not allege and New Jersey has not waived its immunity, and Congress did not abrogate the State's Eleventh Amendment immunity to the plaintiff's charges.

Congressional abrogation of state sovereign immunity must be the unequivocally intent of the U.S. Congress and pursuant to a valid grant of constitutional authority. *Tenn. v. Lane*, 541 U.S. 509, 509-10 (2004); *Bd. of Trustees of Univ. of Ala. v. Garrett*, 531 U.S. 356, 363 (2001). Although it does not appear that the Court of Appeals for the First Circuit has directly answered the issue, the court has in at least one case found that stated that RICO does not abrogate Eleventh Amendment immunity. *Tringale v. Commonwealth & Ssa*, Civil Action No. 15-cv-

11613-IT, 2016 U.S. Dist. LEXIS 200659, at *3 (D. Mass. Jan. 19, 2016). In addition, other jurisdictions have held that Eleventh Amendment immunity bars claims of RICO violations against state agencies. *See Kadonsky v. New Jersey*, 188 Fed. Appx. 81, 84 (3d Cir. 2006); *Black v. N. Panola Sch. Dist.*, 461 F.3d 584, 594 (5th Cir. 2006); *Akbar-El v. Ohio Dep't of Corr.*, 124 F.3d 196 (6th Cir. 1997); *Johnson v. Ill. Commerce Comm'n*, 176 Fed. Appx. 662, 663 (7th Cir. 2006); *Banks v. ACS Educ.*, 638 Fed. Appx. 587, 589 (9th Cir. 2016).

The test to determine if the Eleventh Amendment inoculates an agency or institution against federal court jurisdiction is to determine if the agency acts as an "arm of the state." *Fresenius Med. Care Cardiovascular Resources Inc. v. Puerto Rico*, 322 F.3d 56, 61 (1st Cir. 2003). Whether an entity is an arm of the State within the meaning of the Eleventh Amendment is a question of federal law. *Id.* A "two-stage" inquiry is used in determining if an entity is an arm of the State. The two-stage inquiry asks: (1) has the State clearly structured the entity to share its sovereignty? (2) If not, is there a risk that the damages will be paid from the public treasury. *Fresenius Med. Care Cardiovascular Resources Inc. v. Puerto Rico*, 322 F.3d at 68. The analysis of the agency's relationship to the State in step one requires a determination "whether the State has indicated an intention -- either explicitly by statute or implicitly through the structure of the entity -- that the entity share the State's sovereign immunity. If no explicit indication exists, the court must consider the structural indicators of the State's intention." *Redondo Constr. Corp. v. Puerto Rico Highway & Transp. Authority*, 357 F.3d 124, 126 (1st Cir. 2004).

New Jersey consistently defines "State agency" as including any department, division, office, public authority or any authority of instrumentality created or chartered by the state government. N.J. Stat. Ann. § 52:9S-1; N.J. Stat. Ann. § 52:14B-26; N.J. Stat. Ann. § 52:14B-

21.1; and N.J. Stat. Ann. § 52:31B-3.  "The State of New Jersey has provided for a comprehensive scheme whereby the practice of medicine is regulated by the defendant, State Board of Medical Examiners, N.J. Stat. Ann. § 45:9-1 et seq. [the New Jersey Medical Practices Act]." *Blass v. Weigel*, 85 F. Supp. 775, 782 (D.N.J. 1949). The State created the NJMBE with the explicit intent to create a government instrumentality to perform state governmental functions and to "license or otherwise regulate a profession or occupation." N.J. Stat. Ann. § 45:1-2.1. The New Jersey Medical Practices Act vests the NJMBE with broad authority to regulate the practice of medicine in the State of New Jersey. Members of the NJBME are selected by the governor of New Jersey and have the power to promulgate rules and regulations to protect patients and licensees. N.J.S.A §§ 45:1-2.2 and 45:9–2. "The Board's supervision of the medical field is critical to the State's fulfillment of its 'paramount obligation to protect the general health of the public.'" *In re License Issued to Zahl*, 186 N.J. 341, 352 (2006). Furthermore, the State has granted the following immunity and defense to the NJBME:

> A member of the State Board of Medical Examiners or the Medical Practitioner Review Panel, the medical director to the State Board of Medical Examiners, the Attorney General, any medical consultant to the board or review panel and any employee of the board or review panel shall not be liable in any action for damages to any person for any action taken or recommendation made by him within the scope of his function as a member, consultant or employee, if the action or recommendation was taken or made without malice. The Attorney General shall defend the person in any civil suit and the State shall provide indemnification for any damages awarded.

N.J. Stat. Ann. § 45:9-19.11.

The provision of state immunity and defense is something a legislature would not generally provide to an entity that was not an arm of the State or shared sovereignty. *Puerto Rico Ports Authority v. FMC,* 382 U.S. App. D.C. 139, 144 (2008) (citations omitted). New Jersey courts have ruled that the New Jersey Department of Law and Public Safety, and its subdivisions, the

Division of Consumer Affairs and the Board of Medical Examiners, are arms of the State for Eleventh Amendment purposes. *Zahl v. N.J. Dep't of Law & Pub. Safety*, Civ. Action No. 06-3749, 2008 U.S. Dist. LEXIS 24022, *60-62 (D.N.J. Mar. 26, 2008). Likewise, the Office of Administrative Law has been ruled a state agency, and thus immune from suit under the Eleventh Amendment. *Rodrigues v. Fort Lee Bd. of Educ*., 458 F. App'x 124, 127 (3d Cir. 2011).

The finances of New Jersey state agencies and the offices of elected officials are intertwined with the State of New Jersey and thus create the risk that the damages will be paid from the public treasury. For instance, by statute, all payments to the Board are handled and disposed of at the direction of the New Jersey Director of the Division of Budget and Accounting. N.J. Stat. Ann. § 45:9-2. It is also mandated that the State of New Jersey indemnify and pay any award for damages against the NJBME or its members. N.J. Stat. Ann. § 45:9-19.11.

As admitted by the plaintiff in his pleadings, the defendant NJBME is a state agency; Christopher J. Christie, Esq. is the former governor of New Jersey and sued in his official capacity; Jay Howard Solomon, Esq, was the New Jersey Administrative Law Judge, oversaw the hearing to revoke plaintiff's license to practice medicine; Steven Lomazow, MD was a senior member of NJBME when Mr. Kaul's license was revoked; Attorney Doreen Hafner is a Deputy Attorney General in the Office of the New Jersey Attorney General who filed and prosecuted the administrative case against Dr. Kaul; and Eric Kanefsky, Esq was the acting director of the New Jersey Division of Consumer Affairs and, in that role, suspended Kaul's Controlled Dangerous Substances (CDS) certificate pending the outcome of the hearing on his authorization to continue to hold a license to practice medicine in New Jersey. [Doc. 1 p. 20 – 26] In regards to the acts complained of by the plaintiff, each of these defendants was acting within their jurisdictional powers and functions as alter egos of the State.

In *Ex parte Young*, the Supreme Court recognized an exception to the Eleventh Amendment's grant of sovereign immunity where a plaintiff sues a state official acting in their official capacity for prospective relief from continuing violations of federal law. 209 U.S. 123 (1908). This exception is narrow, and "a suit against state officials that is in fact a suit against a State is barred regardless of whether it seeks damages or injunctive relief." *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 101-102 (1984). *Id.* at 101-102. Despite the labels Dr. Kaul uses, the gist of his complaint is that the State of New Jersey revoked his license to practice medicine. The bald assertions of a conspiracy fail to meet the minimum pleadings necessary to state a claim against these officials in their individual capacities. Therefore, because New Jersey has not consented to this suit, the Eleventh Amendment mandates the dismissal under Fed. R. Civ. P. Rule 12(b)(1) of all the plaintiff's claims against the following New Jersey State entities and officials: NJBME, Governor Christopher Christie, Judge Jay Howard Solomon; Dr. Steven Lomazow, Attorney Doreen Hafner and Attorney Eric Kanefsky.

Dr. Gregory Przybylski and Dr. Andrew Kaufman testified against Dr. Kaul at the administrative hearing to revoke his license to practice medicine. They are not state actors but rather testifying witnesses in a quasi-judicial proceeding. As such, they are immune from liability absent a showing of bad faith or malice. Dr. Kaul accuses each of committing perjury and partaking in a bribery scheme with former Governor Christie. [Doc. 1 p. 4]. In addition, the plaintiff claims to offer proof of a pattern of fraud by Dr. Przybylski, but the reference appears to only direct one to a self-serving letter written by the plaintiff. Dr. Kaul alleges Dr. Kaufman also committed perjury at his license revocation hearing. Dr. Kaufman is also accused by Dr. Kaul of being paid to give false testimony by the State of New Jersey against Dr. Kaul and by Allstate in other cases. [Doc. 1 p. 23]. The above allegations of the plaintiff are unsupported conclusions.

Nothing in the Complaint demonstrates that these two witnesses acted in bad faith or with malice. Dr. Kaul fails to meet the minimum standards required under Fed. R. Civ. P. Rule 8, to avoid the immunity granted by New Jersey to witnesses at hearings conducted by the New Jersey Board of Medical Examiners. As such, the charges against Dr. Gregory Przybylski and Dr. Andrew Kaufman must be dismissed under Fed. R. Civ. P. Rule 12(b)(1).

E.     **This Court Lacks Subject Matter Jurisdiction Because the Plaintiff's Claims Are the Functional Equivalent of Appeals of State Court.**

The plaintiff's Complaint attempts to overturn and re-litigate the 2014 Order that suspended his New Jersey license to practice medicine. The United States Supreme Court is granted exclusive "jurisdiction over appeals from final state-court judgments," as per 28 U.S.C. § 1257. *Lance v. Dennis*, 546 U.S. 459, 463 (2006) (per curiam). Consequently, lower federal courts lack subject matter jurisdiction to hear cases that are the functional equivalent of appeals of state court decisions. *Rooker v. Fidelity Trust Co*., 263 U.S. 413 (1923); *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983); *Exxon Mobil Corp. v. Saudi Basic Indus. Corp*., 544 U.S. 280, 284 (2005). The lower court's lack of subject matter jurisdiction under the above theory is called the *Rooker-Feldman* Doctrine. *Silva v. Commonwealth of Massachusetts*, 351 Fed.Appx. 450, 454 (1st Cir. 2009).

The *Rooker-Feldman* doctrine is narrowly "confined to [1] 'cases brought by state-court losers [2] complaining of injuries caused by state-court judgments [3] rendered before the district court proceedings commenced and [4] inviting district court review and rejection of those judgments.'" *Id.* (quoting *Exxon Mobil*, 544 U.S. at 284)(citations omitted). The doctrine does not "stop a district court from exercising subject-matter jurisdiction simply because a party attempts to litigate in federal court a matter previously litigated in state court." *Exxon Mobil*, 544 U.S. at 293. A federal plaintiff must, however, present an independent claim that goes beyond

complaining of the state court judgment itself. *Alston v. Town of Brookline Massachusetts*, 308 F.Supp.3d 509 (D. Mass. 2018).

1. Dr. Kaul Lost in State Court

The *Rooker-Feldman* Doctrine applies both to formal state judicial decisions and determinations that stem from proceedings that are judicial in nature. *McKenna v. Curtin*, 869 F.3d 44, 48 (1st Cir. 2017)(citing *Feldman*, 460 U.S. at 479). The plaintiff's basis for this Complaint is the revocation of his license to practice medicine by the NJBME and Office of Administrative Law. The revocation hearing and decision were State actions that were judicial in nature, in which Dr. Kaul lost. Therefore, Dr. Kaul's complaint here is based on actions taken by the state court and the issue of what was decided through the state disciplinary hearing.

2. Dr. Kaul is complaining of injuries caused by a New Jersey state-court judgment

A case is the functional equivalent of an appeal from a state court judgment when the federal claims are 'inextricably intertwined' with claims adjudicated in a state court. *Hill v. Town of Conway*, 193 F.3d 33, 39 (1st Cir. 1999)(citations omitted). The application of the *Rooker-Feldman* doctrine "does not depend on what issues were actually litigated in the state court." *Maymo-Melendez v. Alvarez-Ramirez*, 364 F.3d 27, 33 (1st Cir. 2004). A court must only find that the relief sought by the plaintiff "would effectively overturn the state court's decision." *Id.*

In this case, Dr. Kaul's federal court action is an attempt to overturn his state court loss. Dr, Kaul explicitly seeks reinstatement of his license to practice medicine and compensatory damages for the alleged injuries caused by the revocation. In the plaintiff's complaint, he asks this court in his Demand for Judgment for an order to provide, among other items, the following,

> 2. Declaring that the mechanism of physician regulation in New Jersey as described herein, is unconstitutional and violated Kaul's right to due process…
> 6. Ordering the immediate reinstatement of Kaul's plenary license to practice medicine and surgery in New Jersey.

> 7. Ordering the immediate reinstatement of Kaul's CDS Registration + an
> unrestricted plenary,,,
> 14. Expunging the prior revocation of Kaul's medical license from the public
> record + A Public Apology directed to Kaul's Children + Patients.license to
> practice Medicine + Surgery.
> [sic.]

[Doc. 1 p. 284 -285]

Plaintiff alleges that he is entitled to this relief because "[t]he defendants are jointly and severally

liable to Plaintiff for his damages suffered as a result of all of the aforementioned torts, claims

and counts." [Doc. 1 p. 283]. Despite his claims of a widespread conspiracy and racketeering, his

alleged "aforementioned torts, claims and counts" arise from the New Jersey Board of Medical

Examiners' revocation of his license to practice medicine. Accordingly, the plaintiff's injury was

caused by a state court judgment that satisfies the second element of the *Rooker-Feldman*

Doctrine.

3. The Revocation of Plaintiff's Medical License Pre-dates this Matter

According to the plaintiff's complaint, Dr. Kaul's medical license was revoked on March

24, 2014. [Doc.1 p. 65]. This complaint was filed on Feb. 24, 2021.  Accordingly, the revocation

of Plaintiff's medical license pre-dates this lawsuit and satisfies the third element of the *Rooker-*

*Feldman* Doctrine.

4. Reinstating Plaintiff's Medical License Requires Overturning the State's Decision

The plaintiff incontestably invites this Court to review and overturn the state court's

decision. Dr. Kaul plainly demands that this Court "Order the immediate reinstatement of an

unrestricted plenary medical license" and "[e]xpunge the prior revocation of plaintiffs medical

license from the public record."  [Doc. 1 p. 284] Reinstating Plaintiff's medical license or

awarding damages that arose due to the lost income associated with the license revocation would

be tantamount to overturning the State's decision. *See Harris v. N.Y. State Dep't of Health*, 202

F. Supp. 2d 143 (S.D.N.Y. 2002)(federal court's review of the revocation of a medical license would be an "unwarranted meddling into the governmental province reserved for the states…"). Accordingly, the fourth and final element of the *Rooker-Feldman* doctrine is satisfied.

In *Harris v. N.Y. State Dep't of Health*, the district court held that a plaintiff who lost his medical license before the state licensing board could not subsequently challenge the New York Department of Health's ruling in federal court. 202 F. Supp. 2d at 162.  The plaintiff asserted various causes of action, including 42 U.S.C. § 1983 and the Americans with Disabilities Act ("ADA"), based on the loss of his license. *Id*. at 146. The plaintiff had lost his license because, when applying to hospitals, he had denied being subject to discipline when in fact, his license had been suspended. *Id*. at 150. The plaintiff alleged that he had mis-answered the questions because of a disability and the Department of Health denied him his rights under the ADA and due process by failing to account for his dyslexia. *Id*. at 149. The court found that the plaintiff's claims "amount[ed] to a request for direct or indirect appellate review of a final judgment rendered by a state court resolving the same matters." *Id*. at 165. In granting the defendant's motion to dismiss with prejudice, the court recognized that "the jurisdictional grounding of *Rooker-Feldman* . . . 'provides for a limited, uniform federal law of preclusion in cases that varying state laws may not foreclose.'" *Id*. at 162 (quoting David P. Currie, Res Judicata: The Neglected Defense, 45 U. Chi. L. Rev. 317, 324 (1978)).

In this case, Dr. Kaul asks this Court to find that the Order suspending his license violated his constitutional rights. In doing so, the plaintiff has reworked arguments advanced during his appearances before the NJBME. The board of medical examiners considered these arguments and rejected them. For the above reasons, this Court lacks subject matter jurisdiction

over the plaintiff's claims under the *Rooker-Feldman* Doctrine and must dismiss the plaintiff's complaint with prejudice.

**F.    Plaintiff's Complaint is Duplicative Litigation that Should Be Dismissed Under the First-to-File Rule.**

The first-to-file rule was created by the U.S. Supreme Court and "intended to promote judicial efficiency and to avoid duplicative litigation." *EMC Corp. v. Parallel Iron, LLC*, 914 F. Supp. 2d 125, 127 (D. Mass. 2012). The rule sets forth the principle that "[i]n all cases of concurrent jurisdiction, the Court which first has possession of the subject must decide it." *Smith v. McIver*, 22 U.S. 532, 535 (1824). The rule is generally followed by courts "unless considerations of judicial and litigant economy, and the just and effective disposition of disputes, require otherwise." *A123 Sys. v. Hydro-Quebec*, 657 F. Supp. 2d 276, 279 (D. Mass. 2009). Exceptions to the general rule may be given when there is "sound reasons that make it unjust or inefficient to continue the first-filed action, such as convenience and availability of witnesses, absence of jurisdiction over all necessary or desirable parties, the possibility of consolidation with related litigation, or considerations relating to the real party in interest." *Id.*

In the instant action, the plaintiff first filed a nearly identical case in the United States District Court for the Southern District of New York in 2016. *See Kaul v. Christie, et al*, No. 1:16-cv-01346 (S.D.N.Y. filed Feb. 2, 2016). The S.D.N.Y. District Court Judge elected to transfer the case *sua sponte* to the District of New Jersey. *See Kaul v. Christie, et al*, No. 2:16-cv-02364 (D.N.J. filed April 27, 2016). On October 1, 2019, Dr. Kaul filed a nearly identical case in the United States District Court for the District of Columbia. *See Kaul v. Federation of State Medical Boards, et al.*, No. 1:19-cv-03050 (filed Oct. 1, 2019). On December 1, 2020, the court severed and transferred all claims against New Jersey defendants to the District of New Jersey; the remaining claims were dismissed by motion. On March 30, 2021, Dr. Kaul filed

44

another nearly identical complaint in the United States District Court for the District of Connecticut. *See Kaul v. Murphy*, *et al.,* No. 3:21-cv-00439 (D. Conn. Filed Mar. 30, 2021). On April 23, 2021, the court in the District of Connecticut transferred Dr. Kaul's case *sue sponte* to the District of New Jersey.

Dr. Kaul has at least three open cases that pre-date the filing here in the District of Massachusetts, arising from his former medical practice and revocation of license to practice medicine within the State of New Jersey. *See Kaul v. Christie, et al*., No. 2:16-cv-02364 (D.N.J. filed Jun. 8, 2016); *Kaul v. Schumer, et al.*, 2:19-cv-13477 (D.N.J. filed June 6, 2019); *Kaul v. Murphy, et al.*, 2:21-cv-09788 (D.N.J. filed April 26, 2021); *Kaul v. Federation of State Medical Boards, et al.*, 2:20-cv-18853 (D.N.J. filed Dec. 14, 2020). The disputes in this District and in New Jersey are essentially identical.

It would be duplicative and inefficient for both suits to go forward simultaneously. There are purely no compelling reasons to keep this litigation within Massachusetts. Every defendant, except for two, resides or is headquartered in New Jersey. The two entities that reside in Massachusetts are alleged to have acted as part of a conspiracy that occurred in New Jersey. Keeping the case in this jurisdiction will be inconvenient to witnesses, and there exists a possibility of consolidation with related litigation in New Jersey. There should be no question as to which forum is best suited to proceed.

On June 30, 2021, the plaintiff has filed motions and requests with the District of New Jersey, for the voluntary dismissal of open cases in that district and a notice of appeal to the U.S. Court of Appeals, Second Circuit. A copy of the notices are attached hereto as Exhibit 10. The plaintiff is blatantly attempting, as part of his litigation strategy, to rob the federal courts of its power to decide jurisdiction and venue. *See Kellogg Brown & Root Servs. v. United States ex rel.*

*Carter,* 575 U.S. 650 (2015)(once the first-filed action ends the first-to-file bar is lifted). The plaintiff is, however, unable to unilaterally dismiss cases in which the defendants have answered or responded under Fed. R. Civ P. Rule 41(1)(A)(i). For example, in *Kaul v. Murphy,* 2:21-cv-09788 (filed Apr. 26, 2021) the defendant Michael Murphy responded to the complaint on June 9, 2021.[D.N.J. ECF Doc. 21]. The defendant Abbott Brown also responded to the complaint in the District of New Jersey on June 10, 2021. [D.N.J. ECF Doc. 22]. Thus, the plaintiff lacks the ability to dismiss his claims without a court order under Rule 41(a)(2). Furthermore, additional cases brought by the plaintiff remain pending that arose from the revocation of his medical license; and he is seeking an appeal of the transfer of his 2016 New York case to New Jersey. Exhibit 10 "Notice of Appeal." Therefore, this Court can and should dismiss this complaint under the first to file rule while the first-filed actions remain pending.

**G.    New Jersey is the Proper Venue for this Litigation**.

The federal venue statute states that "[a] civil action may be brought in (1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located; (2)  a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action." 28 U.S.C. § 1391(b). In accordance with 28 U.S.C. § 1406 "(a) The district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." Venue in this District is improper

because the Defendants do not reside here, and the events giving rise to Plaintiff's claims

occurred in New Jersey.

Dr. Kaul has not asserted how the District of Massachusetts is the proper venue. The

events constituting the basis for Dr. Kaul's claims occurred in the State of New Jersey. In the

Complaint, the plaintiff provides a location for each count and general allegation. Dr. Kaul

alleges New Jersey as the location of each allegation, with the occasional addition of the District

of Columbia, Maryland, or Illinois. For example, in Count Two, the plaintiff states:

> At all relevant times, the CHC RICO Defendants operated an ongoing
> association-in-fact enterprise, which was formed for the purpose of ensuring that
> that the horizontal agreements and market share distributions of the other CHC
> RICO Defendants continued to grow, by fraudulently excluding Kaul,
> monopolizing the market and then artificially increasing their prices. Most of
> these meetings occurred behind closed doors in Morris County, NJ and
> Washington, D.C. Defendants conducted a pattern of racketeering activity under §
> 18 U.S.C. 1961(4).

[Doc. 1 p. 71]

Each count, however, circles back to the gist of the complaint, which is the revocation of Dr.

Kaul's license and ability to practice medicine; hence in Count Two the plaintiff follows up the

above allegation by claiming:

> At all relevant times, the CHC RICO Association-In-Fact Enterprise constituted a
> single "enterprise" or multiple enterprises within the meaning of 18 U.S.C. §
> 1961(4), as legal entities, as well as individuals and legal entities associated-in-
> fact for the common purpose of engaging in the CHC RICO Defendants profit
> making scheme, and the fraudulent scheme to provide 'experts' *to ensure the
> revocation of Kaul's license*.

[Doc. 1 p. 72] (emphasis added).

Despite the unsupported allegations of meetings occurring in other jurisdictions, Dr. Kaul only

practiced medicine in New Jersey and thus could only possibly be excluded from the New Jersey

marketplace. The plaintiff is engaged in obvious forum shopping. After failing to successfully

bring a claim in several other jurisdictions, Dr. Kaul has for the first time in half a decade of litigation alleged conspiratorial activates occurred in Massachusetts. This is a blatant attempt to shoehorn the New Jersey based claims into a Massachusetts court. The complaint is without sufficient allegations to suggest the complaint arises from anywhere other than New Jersey. For the above reasons, Massachusetts is the improper venue.

The June 30th motions for voluntary dismissal are an affront to this Courts power. The dismissal of his complaints from the proper venue does not, however, deprive this court of its power to dismiss or transfer this case. In light of his motions for dismissal in the New Jersey District Court, the proper action in response to Dr.Kaul's filing of this complaint in the wrong venue is a dismissal pursuant to 28 U.S.C.S. § 1406.

## H.   Transfer to New Jersey is Appropriate in the Interest of Justice pursuant to 28 U.S.C. § 1404(a).

In the alternative to other requests, the Defendants request this Court transfers this case to the District of New Jersey. A court may transfer claims "[f]or the convenience of the parties and witnesses, in the interest of justice." 28 U.S.C. § 1404(a). District courts have discretion in making determinations of convenience under Section 1404(a), and notions of convenience and fairness are considered on a case-by-case basis. *Astro-Med, Inc. v. Nihon Kohden America, Inc.*, 591 F.3d 1, 12 (1st Cir. 2009)(citations omitted). Among the factors ordinarily considered are: "(1) the convenience of the parties, (2) the convenience of the witnesses, (3) the relative ease of access to sources of proof, (4) the availability of process to compel attendance of unwilling witnesses, (5) cost of obtaining willing witnesses, and (6) any practical problems associated with trying the case most expeditiously and inexpensively." *Optos, Inc. v. Topcon Medical Systems, Inc.*, 777 F.Supp.2d 217, 237 (D. Mass. 2011). Thus, a plaintiff's choice of forum is accorded

less deference where the plaintiff does not reside in the chosen forum, and the operative events did not occur there. *Iragorri v. United Tech. Corp.*, 274 F.3d 65, 72 (2d Cir. 2001).

The filing of identical claims in multiple jurisdictions with bald assertions of events happening in each jurisdiction demonstrates this plaintiff is forum shopping his conspiracy theory to anywhere that might give him an audience. The enactment of §1404(a) was intended to "remedy the evils of forum-shopping." *Torres v. S.S. Rosario*, 125 F.Supp. 496, 497 (S.D.N.Y. 1954). The appearance of plaintiff forum shopping destroys any weight given to the plaintiff's selection of forum. *Group-A Autosports, Inc. v. Billman*, 2014 WL 3500468, at *4 (D. Mass. 2014).

In this case, the underlying events occurred in New Jersey, where all but two of the Defendants reside. All documentary evidence and witnesses are likely to be found in New Jersey. For example, the allegations against defendant Boston Partner's Inc, a Massachusetts corporation, are that it  conspired " in furtherance of their scheme to eliminate Kaul from the practice of medicine and minimally invasive spine surgery, in order to eliminate a $45 million debt owed principally by them to him/his corporations, for clinical services he had rendered to injured clients of Defendant Allstate." [Doc. 1 p. 65]. Dr. Kaul was only licensed in New Jersey and his clinical services were rendered only in New Jersey. Therefore, any alleged conspiracy by Boston Partner's, Inc. would have to include actors in New Jersey and be directed at Dr. Kaul's New Jersey practice. But, a proper analysis considers where the underlying events occurred, not necessarily the location of "injury," and the Complaint explicitly states that such underlying events occurred outside of Massachusetts. The plaintiff does not make any allegation of any events happening in Massachusetts. Based on the totality of the circumstances, the existing case in New Jersey, the consistency of other District Courts transferring identical cases file by Dr.

Kaul to New Jersey, it is in the interest of justice to transfer this action to the United States District Court for the District of New Jersey, pursuant to 28 U.S.C. § 1404(a).

## V.      CONCLUSION

For the above stated reasons, the defendants requests this Court grant its motion to dismiss pursuant to Fed. R. Civ P. Rule 12(b)(1), 12(b)(2), 12(b)(6), 28 U.S.C. § 1406, or in the alternative to transfer the case to the U.S. District Court, District of New Jersey pursuant to 28 U.S.C. § 1404.

Respectfully submitted,
Christopher J. Christie, Esq.; Jay Howard Solomon,
Esq.; The New Jersey Board of Medical Examiners;
Steven Lomazow, M.D.; Andrew Kaufman, M.D.;
Gregory Przybylski, M.D.; Doreen Hafner, Esq.;
and Eric Kanefsky, Esq.,

By their attorneys

Dated: June 30, 2021                    /s/ *Paul E. Dwyer*_____
                                        Paul E. Dwyer, Esq, (553848)
                                        Mark T. Boivin, Esq. (666149)
                                        McElroy, Deutsch, Mulvaney & Carpenter, LLP
                                        Metro East Office Park
                                        117 Metro Center Boulevard, Suite 1004
                                        Warwick, RI  02886
                                        Telephone:  (401) 298-9010
                                        Facsimile:  (401) 921-2134
                                        Email: pdwyer@mdmc-law.com

## CERTIFICATE OF SERVICE

I hereby certify that on June 30, 2021, a copy of the foregoing filing was filed electronically through the ECF system. Notice and copies of this filing will be sent to the ECF registered parties through the Court's Electronic Case Filing System. Parties may access this filing through the Court's system. A copy of the filing was sent via electronic mail to the plaintiff at drrichardkaul@gmail.com.

                                        _/s/ *Paul E. Dwyer*_____
                                        Paul E. Dwyer, Esq.